Henry J. Jaffe (*pro hac vice* pending)
Joseph C. Barsalona II
Amy M. Oden (admitted *pro hac vice*)
Edward Cho-O'Leary (admitted *pro hac vice*)
**PASHMAN STEIN WALDER HAYDEN, P.C.**
233 Broadway, Suite 820
New York, New York 10279
(646) 828-8081

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 (Subchapter V) |
| Kris Daniel Roglieri | Case No. 24-10157 (REL) |
| Debtor. | |

**MOTION OF DEBTOR FOR ENTRY
OF AN ORDER (I) AUTHORIZING ARRANGEMENT BETWEEN
DEBTOR AND U.S. ATTORNEY REGARDING CERTAIN VEHICLES,
(II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY
TO IMPLEMENT SUCH ARRANGEMENT, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed counsel, hereby moves this Court (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to sections 105(a), 362, and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing an arrangement between the Debtor and the Office of the United States Attorney for the Northern District of New York (the "U.S. Attorney" or the "Government") regarding certain Vehicles (as defined below) owned by the Debtor (the "Arrangement"), (ii) modifying the automatic stay to the extent necessary to implement the Arrangement, and (iii) granting related relief. In support of this Motion, the Debtor incorporates by reference the *Declaration Pursuant*

to *Local Bankruptcy Rule 2015-2* sworn to on the 22nd day of February, 2024 [D.I. 27] (the "First Day Declaration")[1] and respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 362(d), and 363(b) of the Bankruptcy Code, Bankruptcy Rules 4001 and 9006, and rule 9013-1 of the Local Bankruptcy Rules for the Northern District of New York (the "Local Rules").

## BACKGROUND

### I. The Chapter 11 Case

4. On February 15, 2024 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code as a debtor defined in Bankruptcy Code section 1182(1) and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act (this "Chapter 11 Case").

5. On February 16, 2024, the United States Trustee appointed Mark Schlant, of Zdarsky, Sawicki & Agostinelli LLP to serve as the Subchapter V trustee (the "Subchapter V Trustee"). No other trustee, examiner, or official committee has been appointed in this case.

6. Since the Petition Date, the Debtor has continued managing his property as a debtor in possession.

7. Additional detail regarding the Debtor, his businesses, the events leading to commencement of this case, and the facts and circumstances supporting the relief requested herein

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

2

is set forth in the First Day Declaration and incorporated herein by reference.

## II. Events Leading to Commencement of Chapter 11 Case

8. The Debtor is an individual who is primarily in the business of commercial financing and providing education and training on opportunities and processes to secure financing.

9. The Debtor's current financial predicament was caused primarily by alleged fraud claims commenced against Prime Capital Ventures, LLC ("Prime Capital"), an entity wholly owned by the Debtor, and other defendants in the United States District Court for the Northern District of New York (the "District Court") captioned *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC* bearing index number 24-00055 (the "Receivership Action"). As noted in the First Day Declaration, an involuntary bankruptcy was filed, and subsequently dismissed, in this Court. *In re Prime Capital Ventures, LLC*, 23-11302 (Bankr. N.D.N.Y.) (the "Involuntary Proceeding").

10. As a result of the Receivership Action, a court-appointed receiver (the "Receiver") took possession of Prime Capital's property and certain of the Debtor's personal property. Furthermore, based upon the allegations in the Receivership Action and the Involuntary Proceeding, prepetition on February 2, 2024, the Debtor believes that the FBI obtained a warrant and seized a substantial number of cars, watches, and other personal property belonging to the Debtor from the Debtor's personal residence.

## III. The Postpetition Warrants

11. The FBI recently opened an investigation into Mr. Roglieri following various allegations of fraud asserted against him in other civil and bankruptcy matters from late 2021 to early 2024, the approximate time period in which Prime Capital was operating (the "Prime Capital Period").

12. The U.S. Attorney asserts that any property purchased during the Prime Capital Period (the "Prime Purchased Assets") may have been bought with purported "fraud proceeds"[2] derived from Prime Capital ("Prime Capital Funds") and therefore the U.S. Attorney is seeking to seize all such property while it continues its investigation.

13. On February 21 and 23, 2024 the FBI obtained additional warrants signed by Magistrate Judge Hummel in *In re Seizure of Property Described in Schedule A*, No. 1:24-MJ-22 (CFH) (N.D.N.Y.), attached hereto as **Exhibit B** (the "Postpetition Warrants") authorizing the seizure of an additional seven (7) vehicles belonging to the Debtor from the Debtor's personal residence. Pursuant to an email dated February 28, 2024, the U.S. Attorney advised counsel to the Debtor that the Postpetition Warrants would be executed on March 5, 2024.

14. On February 29, 2024, counsel to the Debtor and the U.S. Attorney engaged in telephonic discussions regarding the Postpetition Warrants. As a result of these discussions, counsel jointly identified two vehicles (the "Vehicles")[3] listed in the Postpetition Warrants that the Debtor maintains were indisputably purchased prior to the Prime Capital Period and thus do not (and cannot) constitute "Prime Purchased Assets". Nevertheless, the U.S. Attorney has alleged that certain "improvements" were made to the Vehicles with Prime Capital Funds during the Prime Capital Period, thus purportedly making the *entire* applicable Vehicle subject to seizure. Specifically, the Postpetition Warrants identify the following amounts of Prime Capital Funds attached to the applicable Vehicle:

---

[2] For the avoidance of doubt, Mr. Roglieri vigorously disputes any alleged fraud purportedly committed by Prime Capital or by him notwithstanding the U.S. Attorney's current position.

[3] The Vehicles are listed as follows:
- 2014 Mercedes SLS, VIN WDDRJHA7EA010865
- 2020 Lamborghini Aventador, VIN ZHWUM6ZD9LLA09436

4

| Vehicle | Prime Capital Funds attached to the Vehicles (the "**Improvements**") |
|---|---|
| 2014 Mercedes Benz SLS (the "2014 Mercedes-Benz") | - $65,251.69 paid to Ai Design pertaining to "service, work, and improvements" (the "Mercedes Improvements") |
| 2020 Lamborghini Aventador (the "2020 Lamborghini") | - $142,185.63 paid to S2T LLC, d/b/a Lamborghini Paramus, for work performed;<br>- $41,606.28 paid to Ai Design "for repairs and improvements" (collectively, the "Lamborghini Improvement") |

15. As discussed in Section C *infra*, the Government's disputed interest in these Vehicles should not deprive the estate of its property right and ability to sell the Vehicles, subject to the protection of the Government's alleged interest in such property.

**IV.    Proposed Arrangement Between Debtor and U.S. Attorney**

16. While Mr. Roglieri continues to maintain his innocence and disputes the U.S. Attorney's position with respect to *all* of the Prime Purchased Assets (not just the Vehicles), the Debtor proposes what he believes to be a reasonable arrangement with respect to the Vehicles that would satisfy the U.S. Attorney's stated concerns while continuing to meet Mr. Roglieri's fiduciary obligations to maximize the value of the Debtor's estate for the benefit of his creditors.

17. Under the proposed Arrangement, the Debtor would agree not to assert a violation of the stay if the Vehicles that have seized in accordance with the Postpetition Warrants and held in the U.S. Attorney's possession pending this Court's approval of sale or bid procedures with respect to the Vehicles, with the expectations that the Court would, after the conclusion of a sale process, enter one or more orders approving the sale of one or both of the Vehicles. Following the approval of such sale or sales, the Debtor has proposed that the first proceeds received of any sale of the 2020 Lamborghini up to $183,791.91, and the first proceeds of the sale of the 2014 Mercedes-Benz up to $65,251.69, would be deposited into the registry of the District Court

5

pursuant to Fed. R. Civ. P. 67 and Local Rule 67.1 (collectively, the "Registry of Court Deposits") pending a determination as to the respective rights of the Debtor and/or his bankruptcy estate, on the one hand, and the Government, to these sale proceeds under applicable law. Under this proposal any further proceeds received from the sale of the Vehicles would be available to the Debtor's bankruptcy estate (collectively, the "Remaining Estate Proceeds").

18.  The Arrangement would maximize the value of the proceeds for the estate, while depositing a reserve up to the amount of the Improvements to preserve the U.S. Attorney's rights to such sale proceeds. For the avoidance of doubt, the Debtor will file a subsequent motion authorizing a procedure for the sale of the Vehicles and are not seeking such relief pursuant to this Motion.

19.  On March 4, 2024, counsel to the Debtor sent to the U.S. Attorney (i) a letter attached hereto as **Exhibit C** (the "Letter") memorializing the Debtor's understanding of the Arrangement and (ii) a proposed consent order attached hereto as **Exhibit D** (the "Consent Order") to be submitted to Magistrate Judge Hummel seeking permission for the sale of the two Vehicles through the Bankruptcy Court and providing for the deposit of proceeds of any sale up to the amount the U.S. Attorney alleges in the Postpetition Warrants to be tainted into the registry of the District Court pursuant to F.R.C.P. Rule 67. The Consent Order process before the District Court remains ongoing.[4] As of March 12, 2024, the U.S. Attorney advised counsel that it had referred the Consent Order matter to the Asset Forfeiture unit, who is going to further research certain issues raised by the proposal.

---

[4] The Debtor will file a copy of the as-entered Consent Order under notice, if available, prior to any hearing on this Motion.

6

20. On March 5, 2024, the FBI executed the Postpetition Warrants at the Debtor's personal residence. The Vehicles are currently being stored with the Government, subject to entry of the Consent Order (as may be amended) by Magistrate Judge Hummel and an order approving this Motion.

21. The Debtor believes that the Arrangement will be mutually beneficial and will preserve the rights and interests of all parties with respect to the Vehicles (including any sale proceeds thereof), while allowing the Debtor to obtain the maximum possible sale price for the Vehicles to the benefit of all stakeholders.

## RELIEF REQUESTED

22. By this Motion, the Debtor seeks entry of the Proposed Order (i) authorizing the Arrangement, (ii) modifying the automatic stay to the extent necessary to implement the Arrangement, and (iii) granting related relief. For the avoidance of doubt, the Debtor is not, through this Motion, seeking the approval of: (a) any sale or bid procedures pertaining to the Vehicles; or (b) any sale of the Vehicles or allocation of sale proceeds, and any such relief will be requested by separate motion(s).

## BASIS FOR RELIEF

**A.     Entry into the Arrangement is a sound exercise of the Debtor's business judgment.**

23. The Debtor seeks approval of the Arrangement pursuant to sections 105(a), 362, and 363 of the Bankruptcy Code so far as such undertakings constitute the use, sale, or lease of property of the estate other than in the ordinary course of the business.

24. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Though the Bankruptcy Code does not specify a standard for

7

determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, the Second Circuit has required that such use, sale, or lease be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (approving the debtors' entry into a transaction pursuant to section 363 of the Bankruptcy Code because the Debtors "advanced good business reasons" for the transaction, and it was "a reasonable exercise of [] the Debtors' business judgment").

25. Once a debtor sets forth good business reasons for the transaction under review, there "is a presumption that in making a business decision the [debtor] acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Allard*, No. 18-14092 (MG), 2019 WL 4593854, at *4 (Bankr. S.D.N.Y. Sept. 20, 2019) (citation omitted). Thus, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

26. Bankruptcy Court approval of the Arrangement will protect both the U.S. Attorney and the Debtor by ensuring that the Debtor has the requisite authority to enter into such an arrangement as a transaction outside the ordinary course of business under section 363(b) of the Bankruptcy Code. It will also provide assurance to the U.S. Attorney that the Debtor will not assert that seizure of the Vehicles violated the automatic stay, especially since the U.S. Attorney only has an interest in the Improvements and not the Vehicles themselves. Finally, it will prevent other creditors and parties-in-interest from questioning or collaterally attacking this reasonable and measured approach that preserves the rights and interests of all parties with respect to the Vehicles,

8

which the Debtor strongly believes is likely to achieve a maximum sale price value through a "free and clear" bankruptcy sale process.

27. Based on the foregoing, entry into the Arrangement constitutes a proper exercise of the Debtor's sound business judgment and is in the best interests of the Debtor's estate.

**B.    Relief from the automatic stay to implement the Arrangement is warranted.**

28. The Vehicles are property of the Debtor's estate pursuant to section 541(a) of the Bankruptcy Code and are therefore subject to the automatic stay pursuant to section 362(a) of the Bankruptcy Code. *See* 11 U.S.C. §§ 362(a), 541(d).

29. Section 362(d) of the Bankruptcy Code authorizes the Court, after notice and a hearing, to modify the automatic stay granted under section 362 of the Bankruptcy Code. Courts routinely grant such modifications to effectuate agreements that comport with a debtor's business judgment. *See, e.g.*, *In re The Great Atl. & Pac. Tea Co., Inc.*, Case No. 15-23007 (RDD) (Bankr. S.D.N.Y. July 21, 2015) [Docket No. 88] (modifying the automatic stay set forth in section 362 of the Bankruptcy Court to the extent necessary to implement and effectuate the DIP agreement); *In re Chassix Holdings, Inc.*, Case No. 15- 10578 (MW) (Bankr. S.D.N.Y. Mar. 13, 2015) [Docket No. 67] (accord); *In re The Reader's Digest Assoc.*, Case No. 09-23529 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2009) [Docket No. 26] (accord); *In re Lear Corp.*, Case No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 7, 2009) [Docket No. 59] (accord).

30. As set forth above, the Arrangement comports with the Debtor's business judgment, and therefore the Court should modify the automatic stay to the extent necessary to implement the Arrangement.

**C.     The Arrangement is consistent with applicable forfeiture law.**

31.     The Arrangement is consistent with applicable law regarding forfeiture of property alleged to have been purchased with tainted funds. Crime "proceeds" are property that a person would not have but for the criminal offense . . . ." *United States v. Swartz*, 391 F. Supp. 3d 199, 212 (N.D.N.Y. 2019), *aff'd sub nom. United States v. Swartz Fam. Tr.*, 67 F.4th 505 (2d Cir. 2023). "Extending the scope of a forfeiture to include proceeds that have never been acquired either by a defendant or his joint actors would be at odds with the broadly accepted principle that forfeiture is calculated based on a defendant's gains." *United States v. Contorinis*, 692 F. 3d 136, 147 (2d Cir. 2012). "Because criminal forfeiture focuses on disgorgement' of a defendant's 'ill-gotten gains,' the calculation of a forfeiture amount . . . is usually based on the defendant's actual gain." *United States v. Walters*, 910 F. 3d 11, 31 (2d Cir. 2018) (quoting *Contorinis*, 692 B.R. at 146) (internal quotation marks omitted); *see also United States v. Dobruna*, 146 F. Supp. 3d 458, 460 (E.D.N.Y. 2015) ("[B]ecause forfeiture serves no punitive function, the disgorgement amount may not exceed the amount obtained through the wrongdoing. . . . This comports with the broadly accepted principle that forfeiture is calculated based on a defendant's gains.") (quoting *Contorinis*, 692 B.R. at 147) (internal quotation marks omitted).

32.     The Debtor's Vehicles were indisputably purchased ***before*** the alleged fraudulent acts occurred and therefore could not have been purchased with "ill-gotten gains." If any, the only "ill-gotten gains" would be the value of the Improvements. *See United States v. Wolf*, 375 F. Supp. 3d 428, 436 (S.D.N.Y. 2019) (holding that when proceeds obtained as a result of a violation are invested in real property, *equivalent equity* in that real property constitutes tainted property); *United States v. Caspersen*, 275 F.Supp.3d 502, 504 (S.D.N.Y. 2017) (holding that "the use of crime proceeds to pay off a [home equity line of credit] secured by real property results in the

Document      Page 11 of 13

Government's acquisition of an interest in the real property to the extent of the payment"); *United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011), *aff'd sub nom. United States v. Crew*, 537 F. App'x 3 (2d Cir. 2013) (holding that, where a defendant paid his mortgage and funded renovations using criminal proceeds, equity in the real property in the amount of the proceeds invested was "offense property").

33. Thus, where (as here) the value of the Vehicles exceeds the alleged fraud proceeds used to make the Improvements, the Vehicles themselves remain estate property, subject to the Government's alleged interest. It would be a violation of the automatic stay for the Government to interfere with the Debtor's ability to sell its property pursuant to section 363(b) of the Bankruptcy Code, especially where, as here, the Government's alleged interest is being adequately protected. Accordingly, the Arrangement appropriately balances the Government's rights under forfeiture law with the Debtor's ability to administer its estate to maximize value for its stakeholders.

## RESERVATION OF RIGHTS

34. To be clear, nothing in this Motion should be construed as a waiver of any right or interest of any assets in which the Debtor has asserted an ownership interest, including the Prime Purchased Assets (including the Vehicles that are the subject of this Motion), or in any sale proceeds of such assets. Moreover, the Debtor's agreement not to pursue any stay violation claim against the Government is conditioned on the parties' prompt entry into the Arrangement on terms mutually acceptable to the Government and the Debtor.

35. Nothing contained in this Motion or any actions taken by the Debtor pursuant to relief granted in the proposed order is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of any of the Debtor's rights

11

to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion (or any motion that may be filed hereafter) are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

### REQUEST FOR WAIVER OF STAY

36. As discussed herein, there are immediate and material benefits to the Debtor, and immediate entry and implementation of the Proposed Order is of vital importance to the Debtor. To implement the foregoing successfully, the Debtor seeks a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) to the extent that such rule applies.

### NOTICE

37. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) the Debtor's creditor matrix; (iv) the Receiver; (v) the U.S. Attorney, 445 Broadway, Room 218, Albany, NY 12207 (Attn: Michael Barnett, Esq. and Joshua Rosenthal, Esq.); (vi) the District Court, James T. Foley U.S. Courthouse, Suite 509, 445 Broadway, Albany, NY 12207, Attn: The Honorable Christian E. Hummel, U.S.M.J. (c/o John Domurad, Clerk of the Court); and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

38. The Debtor has not previously sought the relief requested herein from the Court or any other court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court (a) enter the Proposed Order substantially in the form annexed hereto as **Exhibit A** granting the relief requested in this Motion and (b) granting such other and further relief as may be just and proper.

Dated:  March 13, 2024　　　　　　　　**PASHMAN STEIN WALDER**
　　　　New York, New York　　　　　　**HAYDEN, P.C.**

　　　　　　　　　　　　　　　　　　/s/ Joseph C. Barsalona II
　　　　　　　　　　　　　　　　　　Henry J. Jaffe (*pro hac vice* pending)
　　　　　　　　　　　　　　　　　　Joseph C. Barsalona II
　　　　　　　　　　　　　　　　　　Amy M. Oden (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　Edward Cho-O'Leary (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　　233 Broadway, Suite 820
　　　　　　　　　　　　　　　　　　New York, New York 10279
　　　　　　　　　　　　　　　　　　Telephone: (646) 828-8081
　　　　　　　　　　　　　　　　　　Email: hjaffe@pashmanstein.com
　　　　　　　　　　　　　　　　　　　　　　jbarsalona@pashmanstein.com
　　　　　　　　　　　　　　　　　　　　　　aoden@pashmanstein.com
　　　　　　　　　　　　　　　　　　　　　　echo-oleary@pashmanstein.com

　　　　　　　　　　　　　　　　　　*Proposed Counsel to the Debtor and*
　　　　　　　　　　　　　　　　　　*Debtor in Possession*