**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:*<br><br>KRIS DANIEL ROGLIERI,<br><br>Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 24-10157-1-rel |

**1800 PARK AVENUE LLC'S OBJECTION TO DEBTOR'S
(1) APPLICATION FOR ENTRY OF AN ORDER UNDER SECTIONS 327(a), 328(a), AND 1107(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL RULES 2014-1 AND 2016-1 AUTHORIZING RETENTION AND EMPLOYMENT OF PASHMAN STEIN WALDER HAYDEN, P.C. AS COUNSEL FOR THE DEBTOR *NUNC PRO TUNC* TO THE PETITION DATE; AND
(2) MOTION FOR ENTRY OF AN ORDER ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR RETAINED PROFESSIONALS**

Creditor 1800 Park Avenue LLC ("**1800 Park**") respectfully submits this (a) objection to *Debtor's Application for Entry of an Order under Sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1 Authorizing Retention and Employment of Pashman Stein Walder Hayden, P.C. as Counsel for the Debtor* Nunc Pro Tunc *to the Petition Date* filed March 6, 2024 [Doc. 44] ("**Application to Retain Counsel**"), and (b) objection to *Debtor's Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals* filed March 6, 2024 [Doc. 46] ("**Motion to Establish Compensation Procedures**"), and states as follows:

**BACKGROUND**

1.      In October 2023, 1800 Park approached Prime Capital Ventures, LLC ("**Prime Capital**") regarding a construction loan request to fund a line of credit for over $105 million.

2. On October 20, 2023, 1800 Park received a "Terms and Contingent Letter of Intent" with Prime Capital for that line of credit, which was executed on October 25, 2023. Under the term sheet, 1800 Park would have been required to fund an ICA deposit to Prime Capital in the amount of $26,277,562.

3. Prime Capital issued to 1800 Park a "Commitment to Fund Letter" dated December 12, 2023, in which Prime Capital committed to fund the line of credit in the amount of $98,905,467 (the "Commitment to Fund"). The Commitment to Fund was executed by Debtor on behalf of Prime Capital, and was countersigned by 1800 Park on December 12, 2023.

4. On December 18, 2023, 1800 Park received draft loan documents that stated the lender was "Prime Commercial Lending, LLC" not Prime Capital. No explanation was provided for the change from Prime Capital to Prime Commercial Lending, LLC ("**PCL**") at the time the draft loan documents were provided.

5. On December 19, 2023, certain petitioning creditors initiated an involuntary bankruptcy proceeding against Prime Capital Ventures, LLC, under chapter 7 of the Bankruptcy Code in this Court (Case # 23-11302-1-rel; the "**Involuntary Proceeding**").

6. On December 19, 2023, at 11:22 a.m., Erik Martin (who has a signature block of Vice President, Prime Commercial Lending) sent an email in which he stated that "If we don't make this soft close happen this week, we may lose the deal altogether. The ICA will jump as well as the rate, and may require a whole new underwrite."

7. 1800 Park did not want to lose the potential financing, so it negotiated that it would send a $5 million initial deposit, which would be held in trust and not used for any other purpose until such time as the parties could attempt to close the potential financing. This initial deposit was

governed by a Deposit Agreement executed on December 22, 2024, by Debtor, purportedly on behalf of PCL, and 1800 Park (the "**Deposit Agreement**").

8. The Deposit Agreement specifically states:

> The Lender [Prime Commercial Lending, LLC] hereby acknowledges receipt of such funds and agrees to hold the Deposit Amount in a separate and distinct account for Borrower, subject to the terms and conditions of this Agreement. The Deposit Amount should be **held as a trust fund** and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto.

(Emphasis added).

9. In accordance with the Deposit Agreement, 1800 Park wired $5,000,000 to the KeyBank account number ending in 2233, which was provided by Kimmy Humphrey (who has an email signature block of Vice President, Prime Commercial Lending).

10. The existence of the Involuntary Proceeding and the *Order Appointing Interim Chapter 7 Trustee* entered December 21, 2023, were never disclosed to 1800 Park until after the $5 million deposit was made.

11. 1800 Park demanded that its $5 million be returned, which was formalized in a letter from counsel for 1800 Park, dated January 3, 2024, sent to PCL pursuant to the notice provisions of the Deposit Agreement (the "**Demand Letter**").

12. Scott Diberardinis of PCL acknowledged receipt of the Demand Letter in an email received at 4:30pm MST on January 3, 2024.

13. It was later discovered that the KeyBank account ending in 2233 (the "**Prime Capital Account**") was not in the name of PCL as falsely represented by Debtor; rather, it was in the name of Prime Capital.

14. The bank account statement for this Prime Capital Account had a $1,923.66 account balance on December 22, 2023 prior to the $5 million deposit. The statement shows 1800 Park's $5 million wired in as follows:

| 12-22 | 629232 | Wire Deposit | 1800 Park Ave Ch 8794 | 5,000,000.00 |

15. That same statement then shows that exact amount being transferred out with an internet transfer on December 22, 2023, with the full $5 million being transferred to another KeyBank account ending in 4465 (the "**PCL Account**"), the same account referenced in the *Supplemental Declaration of Joseph C. Barsalona II*, filed March 18, 2024 [Doc. 69] ("**Supplemental Barsalona Declaration**"), as being the source of the retainer funds paid to Pashman Stein Walder Hayden, P.C. ("**Pashman**").

16. Review of the December 2023 bank account statement for the PCL Account reflects that it is in the name of PCL and that the ending balance in this account for the day prior to the internet transfer of the $5 million was $57,045.90. The account statement for this PCL Account shows that immediately after the $5 million was transferred into it, the funds were dissipated. Among other things, portions of 1800 Park's $5 million deposit were wired to the law firms which have appeared to represent Prime Capital in the Involuntary Proceeding as well as other litigation.

| 12-26 | 653078 | Wire Withdrawal | Cullen and Dykma 1915 | 50,000.00 |
| 12-29 | 744418 | Wire Withdrawal | Hogan Lovells 9982 | 400,000.00 |

17. That same statement shows 1800 Park's $5 million trust funds being used for the following unauthorized purposes:

(a) On December 26, 2023, $84,000 wired to "Wrist Afficionad", which upon information and belief is Wrist Aficionado, a luxury watch seller, according to its website wristaficionado.com; and

(b) On December 26, 2023, $101,000 wired to "Xo Global, Llc", which upon information and belief is XO Global, LLC, a private air charter broker operating under the brand XO.

18. PCL's use of the 1800 Park funds for any purpose was directly contrary to the terms of the Deposit Agreement, which specified that those funds were "**held as a trust fund** and shall not be subject to any lien, attachment, trustee process or any other judicial process of any creditor of any party hereto."

19. Despite repeated demands on Debtor, representatives of PCL/Prime Capital and Prime Capital's counsel, no money has been returned to 1800 Park.

20. On January 9, 2024, the Involuntary Proceeding was dismissed and a few days later, on January 12, 2024, one of the petitioning creditors, Compass-Charlotte 1031, LLC, filed a new action against Prime Capital and others in the United States District Court for the Northern District of New York (Case Number 1:24-cv-00055-MAD-CFH) in which Paul Levine was appointed as receiver for Prime Capital (the "**Receiver Action**").

21. On January 30, 2024, Judge D'Agostino entered a temporary restraining order in the Receiver Action [Receiver Action Doc. 78] ("**Receiver Action TRO**") restraining certain parties, including the Debtor, Prime Capital, and PCL, "from withdrawing or encumbering funds to themselves, to each other, or to their respective affiliates and/or family members, from any bank accounts where Third-Party Plaintiff Prime Capital Ventures, LLC, or any Third-Party Defendant herein deposited, held or received in connection with loan financing to Prime's Borrowers…"

22. As indicated in Debtor's recent filings, Debtor is currently under federal criminal investigation by the United States Attorney for the Northern District of New York and search warrants were executed by the FBI on February 2, 2024.

23. On February 7, 2024, PCL paid a $100,000 retainer to Pashman related to representation of Debtor in a chapter 11 bankruptcy proceeding expected to be filed. This retainer was paid out of an account held by PCL that was subject to, and in violation of, the Receiver Action TRO. *See* Supplemental Barsalona Declaration. Upon information and belief, this money was directly from the $5 million deposit paid by 1800 Park that was to be held in trust and which 1800 Park demanded be returned.

24. On February 15, 2024 (the "**Petition Date**"), Debtor filed for protection under Chapter 11, Subchapter V, of the United States Bankruptcy Code (this "**Chapter 11 Case**"); Mark J. Schlant was appointed as Subchapter V Trustee.

25. The Section 341 Meeting of Creditors was held on March 14, 2024, at which Debtor represented under oath that he was the sole person with access to the Prime Capital Account and the PCL Account, and sole person with the power to transfer or withdraw funds from those accounts.

26. The Supplemental Barsalona Declaration indicates that Pashman reviewed, <u>for the first time</u>,[1] a number of filings in the Receiver Action and the Involuntary Proceeding, including the *Declaration of Jeffery Huston* [Receiver Action Doc. 23] and *Emergency Motion for*

---

[1] In his Application to Retain Counsel, Debtor certified to this Court that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that "Pashman attorneys have become familiar with the Debtor and its financial affairs through assisting the Debtor with preparing this chapter 11 case for filing." Debtor's Application to Retain Counsel at 4 [¶ 10]; Fed.R.Bankr.P. 9011(b). If this were true, Pashman's attorneys would have known, or should have known, that any money received from Debtor should be scrutinized to ensure: (a) Form B2030 was accurate at the time of filing, (b) proper disclosure of the source of the funds, and (c) that the retainer would not be subject to bona fide claims by others.

*Clarification Regarding Court's Retention of Jurisdiction Over All Matters Pertaining to the $5,000,000 Deposit* [Involuntary Proceeding Doc. 123].[2]

## ARGUMENT

### Application to Employ Counsel

27. "A professional employed under § 327(a) must be disinterested and have no interest that is adverse to the estate at the outset and remain so disinterested throughout the life of the chapter 11 case." *In re S. Station, LLC*, 464 B.R. 46, 56 (Bankr. D. Utah 2011); *see also* 11 U.S.C. § 327(a).

28. "To be eligible for appointment under section 327(a) the lawyer must be 'disinterested,' which means, so far as bears on this case, that he must not have an interest materially adverse to the creditors by reason of any connection with the debtor." *Matter of Grabill Corp.*, 983 F.2d 773, 775 (7th Cir. 1993).

29. Creditors are per se interested and thus barred from employment by section 327(a). *In re Siliconix, Inc.*, 135 B.R. 378, 380 (N.D. Cal. 1991).

30. Based upon: (a) the KeyBank account statements, (b) representations made under oath at the Section 341 Meeting of Creditors, and (c) the Supplemental Barsalona Declaration, it is evident that Debtor used 1800 Park's trust funds to pay the lawyers representing Prime Capital and the Debtor, including Pashman, as well as other expenses, all in violation of multiple court orders and agreements.

---

[2] In light of the well-known allegations asserted by creditors against Debtor and his business entities, and the ongoing federal criminal investigation, it is surprising that Pashman apparently did not review the allegations prior to initiating this Chapter 11 Case, particularly given the underlying allegations of fraud and their likely effect on the Chapter 11 Case and the Debtor. Nonetheless, had it done so, Pashman would have readily understood that any money received from the Debtor would likely be the subject of a bona fide dispute.

31. 1800 Park reserves all rights with respect to the $100,000 retainer paid to Pashman and expects to seek entry of an order directing the entire amount to be returned to 1800 Park as a fraudulent transfer in violation of the Deposit Agreement and in violation of the Receiver Action TRO, including disgorgement of the Prepetition Amount actually paid to Pashman out of the retainer.

32. To the extent that this Court orders disgorgement of the Prepetition Amount, Pashman will be owed a debt for the unpaid legal services, which arose petition, and therefore, will be a creditor of the bankruptcy estate, which disqualifies it under section 327(a).

33. 1800 Park also reserves all rights with respect to future payments to counsel for Debtor in light of Debtor's established pattern of conduct of unlawfully using other people's money.

## Motion to Establish Compensation Procedures

34. 1800 Park joins in the Receiver, Paul Levine's, objection to the Motion to Establish Compensation Procedures (*see Receiver's Limited Opposition to Debtor's Motion to Retain Counsel and Objection to Motion to Establish Compensation Procedures* filed March 11, 2024 [Doc. 57]).

35. 1800 Park also joins in the United States Trustee's objection to the Motion to Establish Compensation Procedures (*see United States Trustee's Objection to Debtor's Motion to for Interim Compensation Procedures* filed March 20, 2024 [Doc. 75]).

36. There is no justifiable reason to deviate from the established statutory timeframe for seeking interim compensation every 120 days as provided for in 11 U.S.C. § 331.

**CONCLUSION**

37. Because Pashman accepted funds for prepetition legal work that will be subject to disgorgement, it will not be disinterested and thus barred from employment by section 327(a).

38. Furthermore, as noted by the Receiver and US Trustee, subchapter V cases have very compressed timelines, which obviates any need to deviate from the established statutory timeframe for seeking interim compensation.

WHEREFORE, in light of the foregoing, 1800 Park requests that this Court deny Debtor's Application to Employ Counsel and his Motion to Establish Compensation Procedures.

Dated: March 20, 2024     Respectfully submitted,

**CARPENTER, HAZLEWOOD, DELGADO & BOLEN LLP**

By:   /s/ Chad P. Miesen
        Chad P. Miesen, Esq.
        1400 E. Southern Avenue, Suite 400
        Tempe, Arizona 85282
        (480) 427-2800
        Email: chad@carpenterhazlewood.com
        *Attorneys for 1800 Park Avenue LLC*