UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

---

In re:

Kris Daniel Roglieri,

                Debtor.

Chapter 11 (Subchapter V)

Case No. 24-10157 (REL)

**Related Dkt. No. 65**

---

**OBJECTION AND RESERVATION OF RIGHTS OF DENALI STATE BANK AND WOODSIDE CREDIT, LLC TO THE MOTION OF DEBTOR FOR ENTRY OF AN ORDER (I) AUTHORIZING ARRANGEMENT BETWEEN DEBTOR AND U.S. ATTORNEY REGARDING CERTAIN VEHICLES, (II) MODIFYING THE AUTOMATIC STAY, TO THE EXTENT NECESSARY TO IMPLEMENT SUCH ARRANGEMENT, AND (III) GRANTING RELATED RELIEF**

Denali State Bank ("Denali") and Woodside Credit, LLC ("Woodside") (Denali and Woodside, collective "Secured Creditor"), by and through their undersigned counsel, Harris Beach PLLC, submit this objection and reservation of rights ("Objection") to the *Motion for Entry of an Order (I) Authorizing Arrangement Between Debtor and U.S. Attorney Regarding Certain Vehicles, (II) Modifying the Automatic Stay, to the Extent Necessary to Implement Such Arrangement, and (III) Granting Related Relief* (the "Motion") [Dkt. No. 65], and in support thereof respectfully state as follows:

## BACKGROUND

### A. Purchase of the 2020 Lamborghini Aventador

1. On or about April 10, 2020, Debtor financed the purchase of a 2020 Lamborghini Aventador with VIN ZHWUM6ZD9LLA09436 (the "Vehicle") from Lamborghini Paramus ("Seller") with Woodside pursuant to a Promissory Note and Security Agreement (the "Contract"). A copy of the Contract is attached hereto as **Exhibit A**.

2. Pursuant to the Contract, the Debtor financed the sum of $473,363.76 of the purchase price of the Vehicle at an interest rate of 6.50%. The Contract provides that the Debtor shall make one hundred and eighty (180) monthly payments in the amount of $4,134.52 beginning on May 25, 2020.

3. The Contract also provides that Debtor grants Woodside a security interest in the Vehicle. *See* Exh. A, "Security Interest." Furthermore, Debtor agreed to not permit the Vehicle to be seized in any legal proceeding. *See Id.*, "Use of Vehicle".

4. The Contract specifically gives Woodside the right to assign the Contract with such terms of the Contract to be binding on Debtor to the benefit of Woodside and any successors and assigns. *See Id.*, "Other Terms."

5. Pursuant to the Contract, Debtor is in default under the Contract by, *inter alia*, (a) failing to make timely payment, (b) failing to keep his promises or fulfill his obligations under the Agreement, (c) becoming insolvent or filing a petition in bankruptcy, or (d) using the Vehicle in a manner that is prohibited by the Agreement. *See Id.*, "Default."

6. Upon default, Woodside and/or its assigns, may (a) declare that all that is owed become immediately due and payable, (b) file suit for the unpaid sums owed under the Contract, (c) take immediate possession of the Vehicle, and (d) exercise any other legal or equitable remedy. *See Id.*, "Remedies."

7. On or about April 13, 2020, funds were wired directly from Woodside to Seller for the purchase of the Vehicle. A redacted copy of the wire transfer is attached hereto as **Exhibit B**.

8. On or before July 24, 2020, Woodside filed a validly perfected purchase money security interest in the Vehicle (the "Lien"). A copy of the Notice of Recorded Lien from the New York State Department of Motor Vehicles on the title of the Vehicle is attached hereto as **Exhibit C**.

2

**B. The Assignment of the Contact**

9. On or about April 14, 2020, Woodside assigned its interest and obligations in the Contract and Lien to Denali (the "Assignment") pursuant to the terms and conditions of the Master Loan Purchase and Sale Agreement between Denali and Woodside (the "Master Loan Agreement"). A redacted copy of the Assignment is attached hereto as **Exhibit D**. A copy of the Master Loan Agreement, without exhibits, is attached hereto as **Exhibit E**.

10. Additionally, on or about January 7, 2019, Woodside and Denali entered into a Master Power of Attorney whereby Denali is appointed the true and lawful attorney for Woodside with full power of substitution to: (a) execute in the name of Woodside any financing statements, insurance policies, assignments, instruments, documents, and statements that Woodside is obligated to give Denali under the Master Loan Agreement; and (b) to do such other further acts and deeds, in the name of Woodside that Denali may deem necessary or desirable to enforce any lien or perfect Denali's security interest or lien in any collateral purchased by Denali under the Master Loan Agreement. A copy of the Master Power of Attorney is attached hereto as **Exhibit F**.

11. As of the Petition Date, the Debtor owed the Secured Creditor the sum of $397,445.59 under the Contract. A copy of the loan information payoff as of February 15, 2024 is attached hereto as **Exhibit G**. The Secured Creditor will be filing a proof of claim prior to any deadline set by the Court in relation to the amount owed as of the Petition Date for the Vehicle. As of March 25, 2024, the amount owed to the Secured Creditor for the Vehicle was $394,120.49[1]. A copy of the loan information payoff as of March 25, 2024 is attached hereto as **Exhibit H**.

---

[1] A payment was credited to the Debtors' account after the Petition Date.

3

### C. The Bankruptcy Case

12. On February 15, 2024, (the "Petition Date"), Debtor[2] commenced a voluntary bankruptcy case under chapter 11 of the Bankruptcy Code as a debtor defined in Bankruptcy Code section 1182(1), and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the Small Business Debtor Reorganization Act.

13. On February 16, 2024, the United States Trustee appointed the Subchapter V Trustee. No other trustee, examiner, or official committee has been appointed in this Chapter 11 Case.

14. Since the Petition Date, the Debtor has continued to manage his property as debtor-in-possession.

15. On or about March 13, 2024, the Debtor filed the Motion.

16. On or about March 22, 2024, the Debtor filed his bankruptcy schedules. In Schedule A/B, the Debtor listed the Vehicle as having a current value of $650,000. *See* Dkt. No. 80, page 31 of 47.

17. In Schedule D, the Debtor listed Denali as a secured creditor of the Vehicle in the amount of $450,000, with the Vehicle having a value of $650,000, and acknowledged the Lien based on the Contract. See Dkt. No. 22, page 13 of 47.

### ARGUMENT

18. The Secured Creditor objects to the Motion and Proposed Order because: (a) there is no reference at all to the secured claim of the Secured Creditor, despite acknowledging the same in the Debtors' bankruptcy schedules; (b) to the extent the Secured Creditor consents to any sale of the Vehicle, which it has not done so at this time, any proceeds must first be used to pay the Secured

---

[2] Capitalized terms not defined herein are defined in the Motion.

4

Creditor the amount owed under the Contract; (c) the Vehicle was purchased prior to the Prime Capital Period such that the Vehicle should not be, nor should have been, seized by the Government; and (d) the Secured Creditor reserves its right to assert any defenses to the seizure of the Vehicle and application of any proceeds contemplated by the Motion and Proposed Order in any future proceeding in this Court or any other court.

19. Pursuant to the Motion, in relation to the Vehicle, the Debtor is seeking approval of an agreement with the Government whereby: (a) the Debtor would agree to not assert a stay violation if the Vehicles that have been seized in accordance with the Postpetition Warrants and held in the Government's possession pending the Court's approval of sale or bid procedures, with the expectation that the Court would enter one or more orders approving the sale of the Vehicles (which includes the subject Vehicle); (b) the first proceeds received of any sale of the Vehicle up to $183,791.91 would be deposited into the Registry of Court Deposits pending a determination of the respective rights of the Debtor on the one hand, and the Government on the other hand under the applicable law; and (c) after a sale, any further proceeds from the sale of the Vehicle would be available to the Debtor's bankruptcy estate.

20. The basis for the relief requested in the Motion is that the Government is asserting that any alleged "improvements" made to the Vehicle were made with Prime Capital Funds during the Prime Capital Period, thus making the entire Vehicle subject to seizure. The Government is purportedly alleging that $183,791.91 of "improvements" were made to the Vehicle during the Prime Capital Period with Prime Capital Funds.

21. In the first instance, there is no authority cited in the Motion for the position that any alleged "improvements" made to the Vehicle using any alleged Prime Capital Funds renders the entire

Vehicle subject to seizure. In addition, since, based on the Motion, it appears that the Prime Capital Period is from late 2021 through early 2024, there is no evidence to support the Government's position that they can seize the Vehicle at all since the Vehicle was purchased in or around April of 2020 which is about one (1) year prior to the Prime Capital Period. Furthermore, other than a block at the end of paragraph 14 in the Motion, there is no documentary evidence supporting the position that any "improvements" were made to the Vehicle and the costs of those "improvements."

22. The Motion also contemplates that upon the sale of the Vehicle, the first $183,791.91 of any sale proceeds will be deposited with the Registry of Court Deposits while the Debtor and Government determine their respective rights to those funds. While the Debtor argues in the Motion that it is not seeking approval of the allocation of proceeds from any sales [Motion at ¶ 22], this statement is inaccurate given that paragraph 6 of the Proposed Order provides that following the Court's approval of the sale of the Vehicle, *the first* $183,791.91 from the sale of the Vehicle shall be deposited into the Registry of Court Deposits pending a determination as to the respective rights of *only* the Debtor and the Government. *See* Proposed Order, ¶ 6. Notably, there is no reference to the Secured Creditor's Lien on the Vehicle, or that the Secured Creditor is owed $397,445.59 as of the Petition Date (which is acknowledged in the Debtors' bankruptcy schedules[3]). Furthermore, the Debtor is currently in default of his obligations under the Contract by, at a minimum, failing to keep his promises under the Contract by permitting the Vehicle to be seized and the filing of this Bankruptcy Case.

23. The Secured Creditor is in first position to be paid from any sale proceeds of the Vehicle (to the extent the Secured Creditor consents to any sale – which is has not), and the Motion and Proposed Order fail to address the Secured Creditor's claims and/or interests in the Vehicle at all. *See*

---

[3] Notably, the Debtor asserts the Secured Creditor is owed $450,000 in his bankruptcy schedules.

6

11 U.S.C. §§ 506 and 507. Accordingly, any Order granting the Motion must provide that the Secured Creditor is to be paid *first*, *in full*, from any sale proceeds of the Vehicle (to the extent the Secured Creditor consents to any sale), and if there are any proceeds remaining after the Secured Creditor is paid in full from the sale proceeds of the Vehicle, then the Debtor and Government can determine their respective rights in those remaining funds.

24. Furthermore, to the extent the Vehicle was properly seized (which Secured Creditor denies) and/or to the extent the Court grants the relief requested in the Motion and Proposed Order over this Objection, the Secured Creditor reserves the right to assert its rights, claims, interests and any appropriate defenses applicable in any sale proceeds of the Vehicle that are deposited in the Registry of Court Deposits and any remaining funds thereafter.

25. 21 U.S.C. § 853(n)(6) provides for at least two (2) defenses to criminal forfeitures of seized property. The first defense applies to a third-party who can demonstrate it has a legal right, title, or interest in the property that was vested in the third-party, rather than the defendant, or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which give rise to the forfeiture of the property. *See* 21 U.S.C. § 853(n)(6)(A). This provision "applies to third parties who had an interest in property before the subject crime was committed (and so before the government's interest vested)…" *United States v. Chowaiki*, 369 F.Supp.3d 565, 572 (S.D.N.Y. 2019).

26. The second defense is related to a bona fide purchaser for value. *See* 21 U.S.C. § 853(n)(6)(B). In *United States v. Huntington National Bank*, 682 F.3d 429 (6th Cir. 2012), the Sixth Circuit held that Huntington National Bank ("Huntington") was a bona fide purchaser for value under 21 U.S.C. § 853(n)(6)(B) in relation to a criminal seizure of property because (a) Huntington held a security interest in the account that was subject to seizure, (b) in exchange for the security interest, Huntington

7

provided loans and a line of credit to the subject criminal principals, and (c) Huntington had no cause to believe that the account was, or would be, subject to forfeiture. *See* 682 F.3d 429-438. Notably, the bona fide purchaser defense applies to third-parties who acquire a legal interest in property *after* the acts giving rise to the forfeiture have occurred. *See Id.* at 433 (emphasis added).

27.    As referenced above, in this case the Secured Creditor has a validly perfected Lien in the Vehicle and is owed $397,445.59 as of the Petition Date. The Vehicle was purchased in or around April of 2020 which is about one (1) year prior to the Prime Capital Period asserted in the Motion. The Lien was filed on or before July 24, 2020, which is also prior to the Prime Capital Period. Accordingly, the Secured Creditor had a right, title or interest in the Vehicle that was vested in the Secured Creditor, rather than the Debtor, or was superior to any right, title or interest of the Debtor at the time of the alleged criminal acts of the Debtor during the Prime Capital Period. To the extent the Vehicle was purchased during the time period of any alleged criminal acts, or any "improvements" were made during the Prime Capital Period (for which Secured Creditor contends that any alleged "improvements" made to the Vehicle are subject first to the Lien of the Secured Creditor), the Secured Creditor is a bona fide purchase for value because it acquired the Lien in exchange for funds advanced to purchase the Vehicle, and the Secured Creditor had no cause to believe the subject Vehicle was subject to forfeiture. *See Huntington National Bank*, 682 F.3d at 428-438.

## RESERVATION OF RIGHTS

28.    Nothing herein shall be considered a waiver of any rights or claims that the Secured Creditor might have against the Debtor under the Contract, the Bankruptcy Code or applicable law. The Secured Creditor reserves the right to amend and/or supplement this Objection and/or join in any other statements and/or objections related to the relief requested by the Debtor in the Motion. The Secured

Creditor also reserves its rights to assert any legal right, title, or interest in the Vehicle, as well as any potential defenses, in any forfeiture proceeding or proceeding before this Bankruptcy Court in relation to the Vehicle.

## **CONCLUSION**

29. For the reasons set forth above, the Secured Creditor respectfully requests that the Court: (a) deny the relief requested in the Motion, and (b) grant such other and further relief as the Court deems just and proper. To the extent the Court does not deny the relief requested in the Motion, the Secured Creditor respectfully requests that the terms of any Order should reflect that the Secured Creditor must be paid in full from any sale proceeds of the Vehicle first (to the extent it consents to any sale) for the amount the Secured Creditor is owed at the time of the sale of the Vehicle.

Dated: March 27, 2024                              Respectfully submitted,

*/s/ Brian D. Roy*
Brian D. Roy, Esq.
HARRIS BEACH PLLC
333 W. Washington Street, Suite 200
Syracuse, New York 13202
Telephone: (315) 423-7100
Email: broy@harrisbeach.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27, 2024, I electronically filed the foregoing with the Clerk of Court by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send a notice of electronic filing.

*/s/ Brian D. Roy*
Brian D. Roy, Esq.