UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    Kris Daniel Roglieri

                      Debtor.

Chapter 11, Subchapter V
Case No.: 24-10157

**UNITED STATES TRUSTEE'S MOTION TO CONVERT OR DISMISS**

TO:    THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
         UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, United States Trustee for Region 2, in furtherance of his duties and responsibilities set forth in 28 U.S.C. 586(a), does hereby move for an order of this Court to convert or dismiss this case for cause pursuant to 11 U.S.C. § 1112(b). The United States Trustee hereby states as follows:

**PRELIMINARY STATEMENT**

There is cause to convert or dismiss this subchapter v case on at least three grounds, including: (i) substantial loss or diminution of the estate with no reasonable likelihood of rehabilitation; (ii) failure to timely file tax returns and pay income taxes owed, if any; and (iii) failure to maintain appropriate books and records.

The Debtor filed this case on February 15, 2024. In the two-week period from January 26, 2024 to February 15, 2024, the Debtor depleted $1.5 million from his personal bank account. The loss of $1.5 million from the estate has, unquestionably, negatively impacted creditors and constitutes a "substantial loss or diminution of the estate."

The Debtor has not filed federal tax returns for 2022 and 2023. All tax returns must be

filed in order to ensure that the Debtor's tax liabilities are accurately reflected in any proposed plan. Moreover, failure to file or pay post-petition taxes (such as the 2023 federal return and associated liability, if any) constitutes cause to convert or dismiss. 11 U.S.C. § 1112(b)(4)(I).

The Debtor testified at the initial 341 meeting and the adjourned 341 meeting that he has no job, no income, and no prospects for same. The Debtor's monthly operating reports confirm these facts. (ECF 97, pg. 2; ECF 118, pg. 2). With no income, the Debtor cannot "rehabilitate" his financial situation through chapter 11. 11 U.S.C. § 1112(b)(4). This case can *only* proceed as a liquidation.

Even if he wanted to propose a liquidating plan, most of the Debtor's assets have either been seized by the FBI or are under the control of the Permanent Receiver appointed by Hon. Mae A. D'Agostino in a pending case in the U.S. District Court for the Northern District of New York. With possession and control over his assets in the hands of third-parties, the Debtor cannot conduct a chapter 11 liquidation.

There is no bankruptcy purpose to be achieved by this Debtor under chapter 11. As set forth herein, the case should be converted.

**FACTS**

1. Kris Daniel Roglieri ("Debtor") commenced this voluntary subchapter v case on February 15, 2024 ("Petition Date") by filing a voluntary chapter 11 petition. (ECF 1).

2. The United States Trustee appointed Mark Schlant, Esq. as subchapter v trustee. (ECF 11).

3. The United States Trustee conducted the first meeting of creditors and the

adjourned first meeting of creditors on March 14, 2024 and April 4, 2024, respectively. The Debtor appeared and testified on both dates. The United States Trustee closed the 341 meeting.

4.	On March 13, 2024, the Debtor filed a Statement Concerning Financial Records. (ECF 26).

5.	On March 22, 2024, the Debtor filed Schedules and a Statement of Financial Affairs. (ECF 80, 81). The Debtor disclosed a house worth approximately $1.5 million and over $26,000,000 in personal property. Below is a summary of the Debtor's most valuable personal property according to his Schedule A/B.

| *Category* | *Schedule A/B* | *Value* | *Liens* |
|---|---|---|---|
| Vehicles | Part 2, Q. 3 | $19,490,000 | $1,000,000 |
| Jewelry | Part 2, Q. 12 | $3,300,000 | $0.00 |
| LLCs | Part 2, Q. 19 | $2,000,000 | $0.00 |
| Collectibles | Part 2, Q. 8 | $806,000 | $0.00 |
| Clothes | Part 2, Q. 11 | $200,000 | $0.00 |
| **TOTAL** | | **$25,796,000** | |

6.	Upon information and belief, the FBI seized Debtor's personal property in two raids conducted on February 2, 2024 and March 5, 2024. (ECF 65).

7.	On April 12, 2024, the Debtor filed Official Form 426, Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest ("Related Entity Report"). (ECF 113).

8.	The Debtor is the sole member of seven LLCs: Prime Capital Ventures, LLC; Prime Commercial Lending, LLC; Commercial Capital Training Group, LLC; National Alliance of Commercial Loan Brokers, LLC; Shark Ventures, LLC; Digital Marketing Training Group,

LLC; and FUPME, LLC.[1] (ECF 27).

9. In his Statement Concerning Financial Records. (ECF 26), the Debtor stated that in his personal capacity, he has not kept balance sheets, statement of operations, or cash flow statements. (ECF 26, ¶ 2).

10. In the Related Entity Report, the Debtor confirmed that he did not maintain ordinary financial statements for Prime Commercial Lending, LLC; Commercial Capital Training Group, LLC; National Alliance of Commercial Loan Brokers, LLC; or Digital Marketing Training Group, LLC. (ECF 113, pgs. 4, 10, 16, 28).[2]

11. Regarding Prime Capital Ventures, LLC, the Debtor averred that the Permanent Receiver, Paul A. Levine, Esq., "is in control of PCV's financial records and the Debtor is unable to provide this information." (ECF 113, pg. 22).

## ARGUMENT

### A. Cause Exists to Convert or Dismiss the Case

Pursuant to 11 U.S.C. § 1112(b)(1), the Court "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

11 U.S.C. § 1112(b)(4) contains examples of cause, including: (i) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

---

[1] Upon information and belief, FUPME is an acronym for "F*ck You Pay Me."
[2] According to the Debtor, Shark Ventures, LLC, Digital Marketing Training Group, LLC, and FUPME, LLC are non-operating holding companies and have no assets.

rehabilitation; (ii) gross mismanagement; (iii) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; and (iii) failure to file or confirm a plan, within the time fixed by this title or by order of the court.

The examples of cause listed in U.S.C. § 1112(b)(4) are illustrative, not exhaustive. In re C-TC 9th Avenue Partnership, 113 F.3d 1304, 1311 (2nd Cir. 1997). "[T]his section was meant to provide the Court with the means to convert or dismiss a case based on the facts peculiar to each case." In re Seaview Estates, Inc., 213 B.R. 427, 432 (Bankr. E.D.N.Y. 1997).

The Court has "wide discretion to determine whether cause exists to convert or dismiss a case." In re BH S&B Holdings, LLC, 439 B.R. 342, 326 (Bankr. S.D.N.Y. 2010). For example, failure to maintain appropriate books and records can be "cause" to convert or dismiss. In re CCN Realty Corp., 23 B.R. 261 (Bankr. S.D.N.Y. 1982).

    1.    Substantial or Continuing Loss or Diminution of The Estate and No Reasonable Likelihood of Rehabilitation

One and one-half months prior to this bankruptcy filing, the Debtor had approximately $500 in his personal KeyBank account (-2848).[3] However, in January 2024, the Debtor deposited over $1.7 million into his personal bank account. See excerpts from the Debtor's January 2024 personal bank statement below.

---

[3] Pursuant to Local Bankruptcy Rule 9013-2, only excerpts of bank statements are duplicated herein.

## Key Advantage Checking®

Account held by KRIS D ROGLIERI, TINA M ROGLIERI
Account number ending in 2848

### Account Summary

| | |
|---|---|
| Beginning Balance on December 27, 2023 | $509.09 |
| Deposits (Money In) | |
|   Deposits | $1,708,138.78 |
|   Interest | $0.31 |
| Withdrawals (Money Out) | |
|   Withdrawals | -$1,049,802.79 |
|   Checks | -$16,977.23 |
|   Fees and Charges | -$100.00 |
| Ending Balance on January 26, 2024 | $641,768.16 |

December 27, 2023 to January 26, 2024 | Page 2 of 5

## Key Advantage Checking® (continued)

### Account Summary (continued)

| | |
|---|---|
| Annual Percentage Yield (APY) Earned | 0.01% |
| Number of Days This Statement Cycle | 30 |
| Interest Earned and Paid on January 26, 2024 | $0.31 |
| Interest Paid Year-to-Date | $0.31 |

### Deposits

| Date | Description | | Amount |
|---|---|---|---|
| 12/28 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $3,000.00 |
| 12/28 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $12,000.00 |
| 12/29 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $8,000.00 |
| 01/03 | CREDIT ADJUSTMENT | | $14.00 |
| 01/03 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $15,000.00 |
| 01/08 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $6,000.00 |
| 01/08 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $11,000.00 |
| 01/10 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $18,000.00 |
| 01/16 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $7,000.00 |
| 01/19 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $2,000.00 |
| 01/19 | DEPOSIT   BRANCH 0423 NEW YORK | | $22,124.78 |
| 01/19 | INTERNET TRF FR DDA ENDING IN 4465 | 3290 | $29,000.00 |
| 01/24 | INTERNET TRF FR DDA ENDING IN 2134 | 3290 | $10,000.00 |
| 01/26 | WIRE DEPOSIT   CMD, LLC   0321 | | $215,000.00 |
| 01/26 | INTERNET TRF FR DDA ENDING IN 4541 | 3290 | $450,000.00 |
| 01/26 | WIRE DEPOSIT   CMD, LLC   0321 | | $900,000.00 |
| **Total Deposits** | | | **$1,708,138.78** |

6

Following the influx of $1.7 million in January 2024, the Debtor made numerous purchases, payments, and transfers, including to company bank accounts that he exclusively controlled. In total, the Debtor spent or transferred nearly $1.5 million between January 26, 2024 and the Petition Date (February 15, 2024). By the end of February 2024, the Debtor had less than $250,000 in his personal bank account.

**Key Advantage Checking®**
Account held by KRIS D ROGLIERI, TINA M ROGLIERI
Account number ending in 2848

**Account Summary**

| | |
|---|---:|
| Beginning Balance on January 26, 2024 | $641,768.16 |
| Deposits (Money In) | |
|     Deposits | $0.00 |
|     Interest | $3.11 |
| Withdrawals (Money Out) | |
|     Withdrawals | -$365,019.64 |
|     Checks | -$30,999.10 |
|     Fees and Charges | -$99.00 |
| **Ending Balance on February 27, 2024** | **$245,653.53** |

The spend down of nearly $1.5 million on the eve of the bankruptcy filing is highly irregular, especially for a debtor who had only $500 in his bank account a month earlier. Regardless of what the Debtor spent the windfall on, the unavoidable conclusion is that there has been a substantial or continuing loss to or diminution of the estate. <u>In re Sal Caruso Cheese, Inc.</u> 107 B.R. 808, 820 (Bankr. N.D.N.Y.1989) (holding that significant "pre-petition transfers, which would appear to stand a good chance of being avoided, are contributing to a continuing loss or diminution of the estate.").

The Debtor has no reasonable likelihood of rehabilitation. A chapter 11 rehabilitation is premised on the existence of "a cash flow from which current obligations can be met." <u>In re</u>

Rundlett, 136 B.R. 376 (Bankr. S.D.N.Y.1992); *see also* In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 685 (Bankr. N.D.N.Y. 1988).

> Rehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include a complete liquidation. 11 U.S.C. § 1123(b)(4). Rehabilitation signifies that the debtor will be reestablished on a second financial basis, which implies establishing a cash flow from which current obligations can be met.

In re Rundlett, 136 B.R. 376 (Bankr. S.D.N.Y.1992), *citing* In re Kanterman, 88 B.R. 26, 29; and In re Greene, 57 B.R. 272 (Bankr.S.D.N.Y.1986).

Since mid-December 2023 when the involuntary chapter 7 case against Prime Capital Ventures, LLC was filed, the Debtor's businesses experienced a rapid decline. At this point, the Debtor has no source of income. This is confirmed in the schedules. The Debtor's Schedule I shows a negative monthly income of ($93,509.16). (ECF 80, pg. 26). The Schedule J shows a monthly net loss of ($152,751.93). (ECF 80, pg. 27). With no income, the Debtor has nothing to rehabilitate, therefore, there is no bankruptcy purpose to be achieved by the Debtor under chapter 11.

    2.    Failure to Timely File Tax Returns

Pursuant to 11 U.S.C. § 1116(6), made applicable by 11 U.S.C. § 1187(b), a subchapter v debtor must, "timely file tax returns," and "timely pay all taxes entitled to administrative expense priority." Failure to file post-petition tax returns is a statutory ground constituting cause to convert or dismiss. 11 U.S.C. § 1112(b)(4)(I).

The United States Trustee made a reasonable request for copies of the Debtor's 2022 and 2023 tax returns. Neither has been provided. In emails to the United States Trustee, Debtor's

counsel has advised that the Debtor's 2022 federal tax returns are "on extension" and his 2023 federal tax return has not yet been filed.[4] In the March 2024 monthly operating report, the Debtor confirmed that he has not filed his 2022 and 2023 tax returns. (ECF 118, pg. 14).

Without tax returns for 2022 and 2023, the United States Trustee, the Court, and creditors cannot assess the Debtor's prepetition financial picture. Nor can parties effectively analyze any proposed chapter 11 plan without the most basic of all financial reports – federal tax returns.

It should be noted that the Debtor filed his 2021 federal tax return on the docket. (ECF 26-1). The 2021 return shows that the Debtor owed $490,401 to the IRS. The Debtor produced his 2020 federal tax return to the United States Trustee. According to his 2020 federal tax return, the Debtor owed the IRS $548,134.[5] Based on his prior tax history, the Debtor likely could have substantial tax liabilities for 2022 and 2023. If so, those amounts must be addressed in any proposed plan.

In addition to constituting "cause" to convert or dismiss, the absence of the tax returns will prevent the Debtor from filing a confirmable plan before expiration of the 90-day deadline imposed pursuant to 11 U.S.C. § 1189(b). Moreover, it appears unlikely that the Debtor will qualify for an extension of time to file a chapter 11 plan. Extensions may be granted only if the Court finds that the delay in filing a plan is, "attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b). "Meeting that burden, however, is no small feat. It is a stringent one." In re Online King, LLC, 629 B.R. 340, 349 (Bankr.

---

[4] Upon request, the IRS issues extensions of time to file one's tax returns. Such extensions, however, do not change a debtor's duties pursuant to the Bankruptcy Code.

[5] The Debtor testified at the 341 meeting that he timely satisfied his 2020 and 2021 personal income tax obligations.

E.D.N.Y.2021) (denying motion to extend 90-day subchapter v plan filing deadline).

> In short, if the Debtor thought its case was such that it needed 180 days of exclusivity, it should have elected to proceed as a non-subchapter V small business debtor. Under § 1121(e)(1), a debtor in a non-subchapter V small business case has the exclusive right to file a plan during the first 180 days of a chapter 11 case. Of course, a non-subchapter V small business chapter 11 case does not offer a debtor the multiple benefits of proceeding in subchapter V, including the sole and exclusive right to file a plan. *See* Seven Stars, 618 B.R. at 340. Here, it appears that the Debtor wanted to take advantage of the benefits offered by proceeding under subchapter V, but did not wish to be saddled with the prospect of moving the case along so as to aid from the clear cost-savings envisioned by the SBRA.

Id. at 350.

3.   Failure to Maintain Appropriate Books and Records

Failure to maintain appropriate books and records is cause to convert or dismiss a chapter 11. See AdBrite Corp., 290 B.R. 209, 217 (Bankr. S.D.N.Y.2003) (*citing* In re Larmar Estates, Inc., 6 B.R. 933, 936 (Bankr. E.D.N.Y.1980) ("failure to maintain books and records constitutes cause for dismissing or converting the . . . Chapter 11 case.").

The Debtor is a highly experienced entrepreneur. It is undisputed that he owned and operated several multi-million dollar businesses for years and earned millions of dollars in personal income. Upon information and belief, the Debtor's extraordinary personal income was exclusively derived from his wholly-owned businesses. Yet, the Debtor claims that he did not maintain any financial statements – business or personal.

According to his 2020 and 2021 tax returns, the Debtor's "taxable income" was $3,146,420 and $1.2 million, respectively. See excerpts below.



The Debtor admits that as to his personal financial affairs, he has not kept balance sheets, statement of operations, or cash flow statements. (ECF 26, ¶ 2). He also admits that as the sole member of Prime Commercial Lending, LLC, Commercial Capital Training Group, LLC, National Alliance of Commercial Loan Brokers, LLC, and Digital Marketing Training Group, LLC, he did not keep balance sheets, statement of operations, or cash flow statements. (ECF 113, pgs. 4, 10, 16, 28).

As for Prime Capital Ventures, LLC, the Debtor claims that the books and records are in the possession of the Permanent Receiver, Mr. Levine. Upon information and belief, however, the Permanent Receiver has not been provided with financial statements such as income statement, balance sheet, and statement of cash flows for Prime Capital Ventures, LLC.

11

The Debtor is the sole member of each of the LLCs.  As such, the revenues and expenses of the LLCs directly impact the Debtor's personal income.  Without appropriately maintained financial statements, it is impossible to adequately assess the pre-petition financial affairs of the Debtor or his wholly owned businesses from which his income was derived.

For an entrepreneur with many years of business experience in the financial industry who handled multi-millions of dollars on a regular basis and produced such a high level of personal income for himself, it is inconceivable that he did not maintain financial statements in the ordinary course of his business.  Under these unique facts, the absence of financial statements supports conversion or dismissal of this case.

### B. Conversion is in the Best Interests of Creditors and the Estate

Once the Court determines that cause has been established under 11 U.S.C. § 1112, the Court must then assess the best interest of creditors and the estate.  Depending on the facts, the Court will either convert or dismiss the case.

Here, the facts weigh heavily in favor of conversion.  The stakes in this case are extremely high.  According to the schedules, the Debtor has over $27 million is assets, including but not limited to a home, +/-18 supercars, collectibles and artwork, his membership interests in various LLCs.

The Debtor's LLCs are facing litigation in numerous state court actions as well as in District Court.  A permanent receiver has been placed in control of Prime Capital Ventures, LLC.  A TRO is in effect as to Prime Commercial Lending, LLC, Commercial Capital Training Group, LLC, The Finance Marketing Group, National Alliance of Commercial Loan Brokers, and

FUPME, LLC.

Between late January and mid-February 2024, the Debtor spent or otherwise transferred approximately $1.5 million.  The efforts of creditors to trace and recover millions of dollars they paid to the LLCs and which came under the exclusive control of the Debtor would be substantially hampered if the Court dismisses this case.  Instead, if the case is converted, the United States Trustee will appoint a chapter 7 trustee to administer the case.  This would allow for the orderly administration and liquidation of assets without interference by the Debtor.

Moreover, a chapter 7 trustee would be in a position to explore the possibility of the FBI and/or U.S. Attorney allowing the trustee to administer the Debtor's assets currently in the possession of the FBI.  The trustee could also investigate potential claw-backs and recoveries for the benefit of creditors.

## CONCLUSION

The Debtor is not in possession of his most valuable assets; they have been seized by the FBI.  The Debtor's main businesses are under the control of the Permanent Receiver appointed by the Federal District Court.  The Debtor spent down $1.5 million in cash from his personal bank account in the weeks prior to his voluntary bankruptcy filing. The Debtor failed to file federal tax returns for 2022 and 2023.  And despite generating millions of dollars in revenues per year, the Debtor did not maintain ordinary financial records for his businesses or himself.

The Debtor has demonstrated his inability to manage his own financial affairs (and those of his businesses).  Due to the unique facts of this case, the Debtor cannot rehabilitate his

financial affairs (he has no income) and is unable to propose a confirmable plan of liquidation (he lost possession of most of his assets).

Based on the unique facts presented, the Court should grant this motion pursuant to 11 U.S.C. § 1112(b)(4) and either convert or dismiss the case. Upon information and belief, conversion is in the best interests of creditors.

**WHEREFORE**, the United States Trustee respectfully requests the Court immediately convert this case to a case under chapter 7 on the Bankruptcy Code, and for such other and further relief as the Court deems just and proper.

Dated: Albany, New York
April 23, 2024

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By: */s/ Lisa M. Penpraze*
Assistant United States Trustee
Leo O'Brien Federal Building
11A Clinton Ave, Room 620
Albany, NY 12207
Bar Roll No.: 105165
lisa.penpraze@usdoj.gov
Voice: (518) 434-4553
Fax:   (518) 434-4459