**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>KRIS DANIEL ROGLIERI,<br><br>Debtor. | Chapter 11<br>Case No. 24-10157-1- rel |

### PIPER CAPITAL FUNDING LLC'S JOINDER IN UNITED STATES TRUSTEE'S MOTION TO CONVERT OR DISMISS

Creditor and party in interest Piper Capital Funding, LLC ("Piper") hereby joins in the *United States Trustee's Motion to Convert or Dismiss* (the "Trustee Motion") [ECF Doc. No. 119], as well as the *Compass-Charlotte 1031, LLC's Joinder in United States Trustee's Motion to Convert or Dismiss* (the "CC Joinder") [ECF Doc. No. 124], and respectfully requests that this Court enter an Order converting the instant Chapter 11 case of Kris Daniel Roglieri (the "Debtor") to a case under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

On or about May 31, 2023, Piper entered into a certain Revolving Warehouse Line of Credit Agreement (the "LOC Agreement") with Prime Capital Ventures, LLC ("Prime"), an entity owned and controlled by the Debtor. Under the LOC Agreement, Prime agreed to extend a line of credit to Piper in the maximum amount of $31,800,000. Once in receipt of the funds granted by the LOC Agreement, Piper would then use the same to extend short term bridge loans to certain borrowers until Prime would later extend long term loans to those same borrowers, at which time Piper would receive full payment on its earlier bridge loan. As a condition to entering into the LOC Agreement, Piper agreed to pay to Prime $10,6000,000 (the "ICA Payment"), which, pursuant to the LOC Agreement, was to be deposited into an Interest Credit Account (the "ICA Account") in the Royal Bank of Canada in a hedge fund account (presumably in the name of a

"Berone" entity, which appears to be a joint venture with Prime) and credited against interest owing by Piper under the LOC Agreement.

However, as was the case with many of Prime's borrowers, Piper became yet another victim of a fraudulent scheme perpetrated by the Debtor through Prime. Indeed, there is little to no evidence that the ICA Payment ever made it into the ICA Account as contemplated under the LOC Agreement. Rather, and as with all "ponzi" schemes, it appears that a large portion of the funds provided by Piper to Prime was used to satisfy amounts owing to at least one of Prime's earlier creditors; put simply, Prime, under the direction and control of the Debtor, used Piper's "new money" to pay old and existing creditors. It is unclear as to what use was made of the remainder of the ICA Deposit, but it is not beyond the bounds of objective reasonableness to assume that such funds were used in a myriad of ways not contemplated by the LOC Agreement or disclosed by the Debtor (or, more importantly, agreed to by Piper). Now, while the Debtor enjoys the protections of the Bankruptcy Code, Piper is at the mercy of its investors who contributed a portion of the ICA Deposit which funds eventually made their way to an undeniably fraudulent enterprise manufactured by the Debtor. As set forth herein, as well as in the Trustee Motion and Joinder, cause exists to convert the Debtor's case to one under Chapter 7 of the Bankruptcy Code.

As noted in the CC Joinder, the Trustee Motion conclusively establishes that cause exists to convert the Debtor's Chapter 11 case, and that such conversion is undoubtedly in the best interest of the Debtor's many defrauded creditors. Indeed, the Trustee Motion has illustrated that several of the examples of "cause" set forth in Bankruptcy Code section 1112(b)(4) are present in the instant case and militate in favor of taking the Debtor "out of possession" in order to appoint an impartial, and independent, Chapter 7 trustee.

Bankruptcy Code section 1112, governing conversion, is intended, among other things, to safeguard the preservation of the assets of a debtor's estate by "preventing the debtor in possession from gambling on the enterprise" at the creditors' expense when chances of rehabilitation are grim, particularly where there is "substantial or continuing loss to or diminution of the estate . . . ." *See In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (1995); *see also In re Reserves Resort, Spa & Country Club LLC*, Case Nos. 12-13316(KG), 12-13317(KG), 2013 Bankr. LEXIS 2808, at *5 (Bankr. D.Del. Jul. 12, 2013) (*citing* 11 U.S.C. § 1112(b)(4)(A)). Additionally, section 1112(b) implicitly reinforces the requirement that a Debtor commence, and maintain, a Chapter 11 case in good faith. *In re Hartford & York LLC*, No. 13-45563-ess, 2014 Bankr. LEXIS 997, *9 (Bankr. E.D.N.Y. Mar. 13, 2024); *see also In re Weber*, 209 B.R. 793, 801 (Bankr. D.Mass. 1997) ("To protect against dismissal or conversion pursuant to § 1112(b), a debtor must exhibit good faith at each stage of a bankruptcy case: in its commencement, during its prosecution, and at confirmation.").

As a general matter, bankruptcy judges have "wide discretion" in determining whether cause for conversion exists under Bankruptcy Code section 1112(b). *In re BH S&B Hldngs., LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010). However, once a court determines that sufficient cause has been demonstrated, it "has no choice, and no discretion," and must either dismiss or convert a Chapter 11 case. *Lynch v. Barnard*, 590 B.R. 30, 36 (E.D.N.Y. 2018) (*quoting In re Friedberg*, No. 3:12-CV-0940, 2013 U.S. Dist. LEXIS 55987, 2013 WL 869937 at *3 (D. Conn. March 5, 2013)).

As demonstrated by both the Trustee Motion and the CC Joinder, it is manifest that sufficient cause to convert the Debtor's case to one under Chapter 7 of the Bankruptcy Code is present. As an initial matter, the Debtor's likelihood of rehabilitation is far from reasonable; it is

nonexistent. The Debtor has no income, collapsing business enterprises, and a majority of his personal property rests with the Federal Bureau of Investigations. Put simply, "[i]t does not appear there is anything here that can be rehabilitated for we have to return to the basic premise, namely, that the [Debtor] is unemployed, [he] has no income, there is nothing to rehabilitate." *In re Kanterman*, 88 B.R. 26, 28 (S.D.N.Y. 1988). In contrast however, the Debtor continues to incur expenses as his Chapter 11 case progresses, including United States Trustee fees and, presumably, attorney fees. *See In re Angel Fire Water Co., LLC*, No. 13-10868 ta11, 2015 Bankr. LEXIS 170, at *11 (Bankr. D.N.M. Jan. 20, 2015). Furthermore, the Debtors most recent monthly operating report shows substantial negative cash flow projected for the month of May. *See* ECF Doc. No. 118.

Additionally, as set forth in the CC Joinder, the mounting evidence continues to indicate that the Debtor was at the center of a massive fraud (including the Debtor's "business" dealings with Piper) the effects of which continue to reverberate to this day. "[F]raud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case" is sufficient for a court to grant relief under Bankruptcy Code section 1112. *In re No Rust Rebar, Inc.*, 641 B.R. 412, 422 (Bankr. S.D. Fla. 2022).

Finally, the Debtor's good faith in both the commencement and continuation of the instant Chapter 11 case is suspect at best. As noted in the Trustee Motion, the Debtor made substantial prepetition transfers, seemingly in an effort to reduce the value of his post-petition estate and shield his assets from the reach of the creditors in this case. *See* ECF Doc. No. 119 at 7. Furthermore, the Debtor has concealed his ownership interest in at least one business enterprise and utilized ill gotten gains to pay his counsel, which funds were subsequently ordered to be disgorged. *See* ECF Doc. No. 108. Finally, the Debtor commenced the instant case under the likely threat of substantial

litigation arising from his prepetition conduct.  However, "[a] bankruptcy filing is made in bad faith if the petition was found to have been filed solely to avoid the consequences of adverse state court litigation."  *In re D&G Const. Dean  Gonzalez, LLC*, 635 B.R. 232, 239 (Bankr. E.D.N.Y. 2021).

For the reasons set forth herein as well as the reasons set forth in the Trustee Motion and the CC Joinder, Piper respectfully requests that this Court grant the Trustee Motion and convert the Debtor's case to one under Chapter 7 of the Bankruptcy Code, cause for which having been undoubtedly shown and such result being in the best interest of the Debtor's creditors.

Dated: New York, New York,
May 7, 2024

                Respectfully submitted,

                WHITE AND WILLIAMS LLP

By:    */s/ Jon T. Powers*
                Jon T. Powers, Esq.
                7 Times Square, Suite 2900
                New York, NY 10036-6524
                Telephone:  212.868.4837
                Facsimile:  646.622.9871
                Email: powerst@whiteandwilliams.com

*Counsel to Piper Capital Funding LLC*