Christian H. Dribusch
Chapter 7 Trustee
187 Wolf Road
Albany, New York 12205
(518) 227-0026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| KRIS DANIEL ROGLIERI | Case No. 24-10157 |
| *Debtor*. | |

------------------------------------------------------------------X

**CHATER 7 TRUSTEE OBJECTION TO THE FIRST AND
FINAL FEE APPLICATONOF PASHMAN STIN WALDER HAYDEN, P.C.**

CHRISTIAN H. DRIBUSCH, hereby affirms that:

1. I am an attorney duly licensed to practice law in the State of New York and in the United States District Court for the Northern District of New York.

2. I am also the Chapter 7 Trustee appointed to the bankruptcy estate of Kris Daniel Roglieri ("*Roglieri Bankruptcy Estate*").

3. *As currently presented*, I object to the first and final fee application ("*Fee Application*") for Pashman Stein Walder Hayden, P.C. ("*Pashman*") because: (1) the Fee Application does not apply the Johnson factors; (2) the Fee Application provides no justification for its deviation from the prevailing rates in the Northern District of New York; and (3) the Fee Application does not provide sufficient information to determine whether the appropriate amount of time was spent on a matter.

## APPLICABLE STANDARD TO THE REVIEW OF A FEE APPLICATION

4. A bankruptcy court has the authority to assess the reasonable value of fees requested. In re Lewis, No. 10-30305, 2012 WL 5880467, at *2 (Bankr. N.D.N.Y. Nov. 20, 2012); see also In re Moukazis, 479 B.R. 247, 248 (Bankr. E.D.N.Y. 2012). "The Court is now tasked with determining reasonable remuneration..." In re Hillman, 22-10175 (Bankr. N.D.N.Y. Feb 02, 2024).

5. The burden of proof to show that the services rendered were necessary, appropriate and reasonable is on the applicant. See, In re Pettibone Corp., 74 B.R. 293, 299 (Bankr.N.D.Ill.1987); In re Bennett Funding Group, Inc., 213 B.R. 234 (Bankr. N.D.N.Y. 1997).

6. Any judgment disallowing certain fees is a finding that applicant has failed to meet its burden of proof as to those fees. See, In re Bennett Funding Group, Inc., 213 B.R. 234 (Bankr. N.D.N.Y. 1997)

7. The standard to review an applicant's fee application is 11 U.S.C. ("*Bankruptcy Code*") § 330(a)(3) which provides:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

8. "To determine a presumptively reasonable fee award, the Second Circuit utilizes a modified lodestar approach which includes in its analysis the twelve relevant factors originally

enumerated in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974) ('Johnson factors')..." <u>In re Hillman</u>, 22-10175 (Bankr. N.D.N.Y. Feb 02, 2024). [1]

9.  "Generally, when determining a reasonable hourly rate, a court considers 'the prevailing rates in the district in which the court sits.' <u>Polk v. New York State Dep't of Correctional Servs.</u>, 722 F.2d 23, 25 (2d Cir. 1983)." <u>In re Hillman</u>, 22-10175 (Bankr. N.D.N.Y. Feb 02, 2024).

10. Once the reasonable hourly rate is determined, the Court must decide the appropriate amount of time spent on a matter while "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." <u>Arbor Hill</u>, 522 F.3d at 190. Additionally, "[i]n determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours. . . ." <u>Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC</u>, No. 17-cv-8987, 2022 U.S. Dist. LEXIS 25036, at *34 (S.D.N.Y. Feb. 9, 2022) (quoting <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999)). <u>In re Hillman</u>, 22-10175 (Bankr. N.D.N.Y. Feb 02, 2024).

## **APPLICATION OF THE STANDARD**

11. The Fee Application and hearing thereon are Pashman's opportunity to meet its burden of proof on the Fee Application. Careful preparation of the Fee Application with supporting affidavits can meet the burden, however, for the reasons discussed below, the Fee

---

[1] The twelve Johnson factors are:
(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the level of skill required to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case;
(5) the attorney's customary hourly rate;
(6) whether the fee is fixed or contingent;
(7) the time limitations imposed by the client or the circumstances;
(8) the amount involved in the case and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the undesirability of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

Application *as presently submitted*, does not sustain Pashman's burden of proof that the Fee Application satisfies the requirements of Bankruptcy Code § 330(a)(3).

12. First, the Fee Application does not apply the Johnson factors.

13. Second, the fee Application does not establish that the deviation from "the prevailing rates in the district in which the court sits" is appropriate.

14. Third, the Fee Application does not explain what matters Pashman worked on, how engaging in such matters was intended to benefit or otherwise was necessary to the administration of the Roglieri Bankruptcy Estate, the time expended on each matter, and the result achieved on each matter. Accordingly, the Fee Application does not establish "the appropriate amount of time spent on a matter." Once more information is provided, I, the Bankruptcy Court, or any other party in interest can review the approximately 114 pages of time entries[2] to determine whether an appropriate amount of time was spent on a matter while "bear[ing] in mind that reasonable, paying client, wishes to spend the minimum necessary to litigate the case effectively." From a review of the data available in the Fee Application, examples of areas of concern include, but are not limited to:

> **Case Administration (B110)**: (76.80 hours; $35,322.50). Pashman should provide clarity about the due diligence it performed to ensure accuracy in the preparation of the Petition, Schedules, and Statements.
>
> **Asset Analysis and Recovery (B120)**: (89.00 hours; $48,274). Pashman should be clear about what Roglieri Bankruptcy Estate assets were allegedly seized by the Receiver, the nature of the discussions between Pashman on behalf of the Debtor and the Receiver, the results of those discussions, and how those discussions either benefited or were necessary

---

[2] Some entries do not provide enough information to understand it. For example, 2/26/2024 "Legal research on motion issues." What motion? What issues?

to administration of the Roglieri Bankruptcy Estate. The Fee Application should discuss what third party claims Pashman determined are recoverable by the Roglieri Bankruptcy Estate, what was done to recover on the third-party claims, and the status of those third-party claims as of the conversion date.

**Asset Disposition (B130)**: (39.70 hours; $29,304.50). The interplay between bankruptcy and forfeiture law is complex. The proposed "Arrangement" advanced by Pashman does not appear to be within the applicable guidelines for resolution by the United States Department of Justice (USDOJ) which has intricate rules pertaining to the civil/criminal settlement of potential forfeiture proceedings. The Fee Application should provide clarification on Pashman's analysis regarding either why the Arrangement fits within the application of the USDOJ guidelines on forfeiture or how applicable bankruptcy law supports the viability of advancing the Arrangement over the objection of the USDOJ.

**Fee/Employment Applications (B160)**: (56.80 hours; $33,375). Pashman should explain how expending 56.80 hours incurring $33,375 in fees to file a retention application for their firm and a retention application for special counsel was "the minimum necessary to litigate the case effectively."

**Fee/Employment Objections**: (101.00 hours; $51,711.00). Pashman should justify how expending 101 hours incurring $51,711 in fees to resolve objections to their retention application was "the minimum necessary to litigate the case effectively."

**Other Contested Matters (excluding assumption/rejection motions) (B190)**: (165.40 hours; $95,868.00). For the reasons articulated above under Asset Disposition, Pashman should explain how the Arrangement was a realistic outcome under the applicable USDOJ

guidelines or otherwise could reasonably be advanced under applicable bankruptcy law over the objection of the USDOJ.

**Claims Administration and Objection (B320)**: (132.40 hours; $57,487.50). Pashman needs to provide clarity on why items like extension of time to file schedules and preparing and filing schedules and the statement of financial affairs falls under the Claims Administration and Objection category rather than Case Administration (B110) as such services are neither the administration of a claim nor an objection to claim. Pashman should detail the expenditure of an aggregate of 209.20 (B110 + B320) hours for basic case administration.

## PRESERVATION OF ALLEGED MALPRACTICE CLAIM

15.    During the withdrawal motion, the Debtor indicated that Pashman's advice was "borderline malpractice." There is case law suggesting that any malpractice claim which is not raised or preserved in an award under a final fee application may be waived. In an abundance of caution, because the issue was raised by Mr. Roglieri during the withdrawal motion, the Roglieri Bankruptcy Estate *reluctantly* is compelled to request that it be preserved to provide adequate time to analyze it.

## SERVICE ON THE DEBTOR

16.    Upon information and belief, based upon a review of the service documents, Pashman may not have served the Fee Application upon Mr. Roglieri who is detained at the Rensselaer County Correctional Facility. If not served, Pashman should serve Mr. Roglieri who ought to have adequate time to review and respond to the Fee Application as supplemented.

## CONCLUSION

Pashman does not sustain its burden of proof to meet the minimum requirements of Bankruptcy Code §330(a)(3) because: (1) the Fee Application does not apply the Johnson factors; (2) the Fee Application provides no justification for its deviation from the prevailing rates in the Northern District of New York; and (3) the fee Application does not provide sufficient information to determine whether the appropriate amount of time was spent on a matter.

Accordingly, the Fee Application should be denied unless it is supplemented with an opportunity for the parties in interest to evaluate the supplemented Fee Application.

Dated: July 3, 2024

By: */s/ Christian H. Dribusch*
    Christian H. Dribusch