Christian H. Dribusch
THE DRIBUSCH LAW FIRM
187 Wolf Road
Albany, New York 12205
(518) 227-0026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

In re:

KRIS DANIEL ROGLIERI

          *Debtor*.

Chapter 7

Case No. 24-10157

---

CHRISTIAN H. DRIBUSCH, as the Chapter 7
Trustee to the bankruptcy estate of Kris Daniel Roglieri

          *Plaintiff,*

    -against-

KRIS DANIEL ROGLIERI

          *Defendant*.
-----------------------------------------------------------------X

Adv. Pro. No. 24-9####

**COMPLAINT TO DENY DEBTOR A DISCHARGE UNDER 11 U.S.C. § 727**

Christian H. Dribusch as the Chapter 7 Trustee to the bankruptcy estate of Kris Daniel Roglieri alleges upon information and belief, as follows:

**THE PARTIES**

1.    Christian H. Dribusch (the "Trustee" or "Plaintiff") is the Chapter 7 Trustee to the bankruptcy estate of Kris Daniel Roglieri having been appointed on May 15, 2024.

2.    Kris Daniel Roglieri is the debtor ("Debtor") in the captioned case.

3. Debtor voluntarily commenced a Chapter 11 bankruptcy case February 15, 2024.

4. The Debtor's voluntary bankruptcy petition, schedules, statements, and related documents as amended, which have been filed in the voluntary Chapter 11 case are collectively referred to as the "Petition."

5. The Debtor case was converted to Chapter 7 on May 14, 2024.

6. The time for the Trustee to object to discharge is August 19, 2024.

## JURISDICTION AND VENUE

7. The United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court" or "Court") has jurisdiction to hear this action based upon 28 U.S.C. 157(a) and 1334(a) of the United States Code.

8. This is a core proceeding under 28 U.S.C. § 157(b).

9. Venue in this Court is appropriate under 28 U.S.C. §§ 1408 and 1409(a).

## ALLEGATIONS

*Debtor certification of Petition.*

10. The Debtor made a sworn statement that the Petition was true and correct.

*Debtor Single Member Limited Liability Company Entities.*

11. The Debtor was the single member of Prime Capital Ventures, LLC, Prime Capital Lending, LLC, Commercial Capital Training Group, LLC, National Alliance of Commercial Loan Brokers, LLC, Finance Marketing Group, LLC, Shark Ventures, LLC, and FUPME, LLC (collectively, the "Debtor Entities").

*Debtor failure to disclose income on the Petition.*

12. It has been alleged by numerous of its victims that under the direction and control of the Debtor, Prime Capital Ventures, LLC engaged in a Ponzi type operation collecting and misusing customer deposits and other funds in contravention of agreements and law.

13. The Debtor has been charged by the United States of America with a criminal offense as it pertains to the Debtor's operation of Prime Capital Ventures, LLC.

14. Prior to Debtor's bankruptcy filing, substantial funds from Prime Capital Ventures, LLC were transferred to the Debtor and the other Debtor Entities.

15. At least **$16,396,702.63** was transferred from Prime Capital Ventures, LLC's accounts to the following:

   a. <u>Debtor's personal account:</u>
      Transfers out to Roglieri Account    $6,580,683.93
      Transfers in from Roglieri Account     $670,000.00
      **Net to Roglieri Account             $5,910,683.93**

   b. <u>Commercial Capital Trading Group's Account:</u>
      Transfers out to CCTG Account        $5,111,625.70
      Transfers in from CCTG Account         $288,000.00
      **Net to CCTG                        $4,823,625.70**

   c. <u>Prime Commercial's Lending Account:</u>
      Transfers out to PC Account          $5,632,893.00
      Transfers in from PC Account             $9,500.00
      **Net to PCL Account                 $5,642,393.00**

   d. <u>National Association of Commercial Loan Broker's Account:</u>
      Transfers out to NACLB Account          $20,000.00

16. The Debtor Entities' accounts show that the Debtor was receiving luxury goods and services which were purchased with Debtor Entities' funds.

17. The Debtor purchased directly or through Debtor Entities at least $15,352,299.81 of luxury vehicles, watches, jewelry, antiques and private plane travel.

18. The Debtor did not disclose the receipt of Debtor Entity paid luxury goods and services as Debtor income on the Petition.

19. The Debtor Entities' accounts show that the Debtor's personal expenses, including without limitation, expenses incurred under Barclay, Discover, and JP Morgan Chase credit cards were paid by the Debtor Entities.

20. The Debtor did not disclose on the Petition that the Debtor received income in the form of the Debtor Entities payment of expenses including credit cards used for Debtor's personal expenses.

*Debtor failure to account for the Debtor Entities in the Debtor Bankruptcy Case.*

21. The Debtor filed Periodic Reports (official bankruptcy form 426) for the Debtor Entities which were certified to be "complete, accurate, and truthful."

22. Despite some of the Debtor Entities having received millions of dollars, each Periodic Report signed by the Debtor states that the entity in question "did not maintain formal financial records such as (1) balance sheets (2) statement of income (loss), or (3) statement of cash flows or that "no financial information is available for this entity" or "no financial information exists."

23. Bank statements for many of the Debtor Entities were in the possession, custody, and control of the Debtor when the Periodic Reports were prepared.

24. In the Periodic Reports, the Debtor did not account for the substantial funds received and disbursed through the Debtor Entities because of Debtor's possession, custody and control of the Debtor Entities' bank accounts with KeyBank.

25. The Debtor did not disclose that third parties were holding onto funds belonging to Debtor Entities.

-4-

26. The Debtor has not provided an accounting for the funds received and disbursed sufficient to explain the diminution in the value of the Debtor Entities and the Debtor's membership interests therein.

*Debtor failure to disclose assets in the Petition.*

27. The Debtor listed assets on Schedule A/B (the "Petition Assets").

28. Pursuant to Court Order, the Trustee accessed the Debtor's residence and inventoried personal property (the "Inventory Assets").

29. The Inventory Assets substantially differ from the Petition Assets.

30. There are numerous items of personal property included in the Inventory Assets which were not disclosed under the Petition Assets.

*Debtor's nondisclosure of creditors and codebtors.*

31. The Debtor was to list all secured creditors on the Debtor Petition.

32. The Debtor did not disclose on Schedule D that the New York State Department of Taxation and Finance filed a lien for $588,732.30.

33. The Debtor failed to list the New York State tax obligation under question 16c. of the Petition.

34. The Debtor was to list all nonpriority unsecured claims on Debtor's Schedule E/F of the Petition.

35. The Debtor failed to list unsecured creditors, including without limitation, the equitable distribution claim of Tina Roglieri.

36. The Debtor was to list all codebtors under Schedule H of the Petition.

37. The Debtor did not disclose that National Alliance of Commercial Loan Brokers, LLC was a codebtor of the Caesars Entertainment debt of $436,237.18.

38. The Debtor did not disclose that Commercial Capital Training Group, LLC was a codebtor on the Chase Bank debt of $25,0000.

39. The Debtor did not disclose that one or more of the Debtor Entities are codebtors of the Barclay Damon debt of $60,000.

40. The Debtor did not disclose that the Commercial Capital Training Group, LLC was a codebtor on the KeyBank merchant processing agreement.

41. The Debtor did not disclose that National Alliance of Commercial Brokers, LLC was a codebtor on the KeyBank merchant processing agreement debt.

42. The Debtor did not disclose that FUPME, LLC was a codebtor of the Cook Keith & Davis debt of $5,271.22.

43. The Debtor did not disclose that one or more of the Debtor Entities are codebtors of the Hogan and Lovells US LLP debt for $886,672.84.

44. The Debtor did not disclose that Prime Capital Ventures, LLC was a codebtor of Onward Holdings, LLC debt of $3,000,000.

45. The Debtor did not disclose that one or more of the Debtor Entities are codebtors of the SBA Department of Treasury debt of $709,655.31.

46. The Debtor did not disclose that Commercial Capital Training Group, LLC is a codebtor of the KeyBank line of credit debt of $100,000.

47. The Debtor did not disclose that Prime Capital Ventures, LLC was a codebtor of the Sheppard Mullin debt of $666,170.51.

*Debtor failure to document income and expenses.*

48. On the Petition, the Debtor was to disclose the income and expenses on Debtor Schedule I and Schedule J.

49. On Schedule I, the Debtor failed to document the income received from Debtor wholly owned entities including without limitation, Prime Capital Lending, LLC, Commercial Capital Training Group, LLC, and National Alliance of Commercial Loan Brokers, LLC.

50. The Debtor failed to document the Debtor expenses on Schedule J, including without limitation the $26,583.33 of monthly home maintenance expenses, the $2,500 in monthly utilities, the $1,306.66 in monthly pool and security system, the $2,700 in monthly food and housekeeping supplies, the $3,194.86 in monthly medical and dental payments, the $1,716.67 in transportation costs, and the $1,500.00 in entertainment.

*Debtor nondisclosures under the Petition Statement of Financial Affairs.*

51. The Debtor filed a statement of financial affairs ("<u>SOFA</u>") as part of the Petition.

52. Under SOFA #4 and #5, the Debtor was to disclose Debtor prior years as well as current income.

53. The Debtor used his various LLCs as a conduit to pay Debtor's personal expenses on credit cards and to otherwise purchase luxury goods and services.

54. The Debtor did not disclose the income the Debtor received from the Debtor's Entities including without limitation the payment of personal expenses incurred on credit cards and the purchase of luxury vehicles, jewelry, antiques, and services such as private plane charters.

55. Under SOFA #8, the Debtor was to disclose payments or transfers on account of debt which benefitted insiders within 1-year of the Debtor bankruptcy filing.

56. The Debtor did not disclose payments or transfers on account of debts which benefited Debtor Entities and others, including without limitation, payments on two cars which the Debtor transferred to Shark Ventures, LLC.

57. Under SOFA #9, the Debtor was to disclose lawsuits.

58. The Debtor did not disclose the lawsuit captioned *Tina M. Roglieri vs. Kris D. Roglieri* filed with the Supreme Court, Warren County, on January 1, 2024 under index number EF2024-72165.

59. Under SOFA #12, the Debtor was to disclose property which is in possession of a court appointed receiver within 1-year of the Debtor bankruptcy filing.

60. The Debtor failed to disclose a Richard Mille Tourbillion Skull RM 052 Watch was turned over to Prime Capital Ventures, LLC's receiver.

61. Under SOFA #13, the Debtor was to disclose gifts in value of more than $600 per person made within 2-years of the Debtor bankruptcy filing.

62. The Debtor did not disclose numerous gifts made to family and friends during the 2-year period prior to the Debtor's bankruptcy filing.

63. Under SOFA #16, the Debtor was to disclose payments or transfers made to anyone Debtor consulted with about seeking bankruptcy or preparing a bankruptcy petition within 1-year of the Debtor bankruptcy filing.

64. The Debtor failed to disclose payments made to Hogan, Lovells US LLP, Barclay Damon, LLP and other parties in relation to seeking bankruptcy or preparing a bankruptcy petition, including, without limitation, the Debtor's transfer of $250,000.00 to Commercial Capital Training Group, LLC on January 26, 2026 which funds were wired to Hogan Lovells US LLP on January 16, 2024 ($200,000.00) and January 30, 2024 ($50,000.00).

65. Hogan Lovell US LLP provided the Debtor with some consultation about Debtor seeking bankruptcy and/or preparing a bankruptcy petition

66. Under SOFA #18, the Debtor was to disclose transfers made outside the ordinary course of Debtor's business or financial affairs within 2 years of the filing of the Petition.

67. The Debtor did not disclose that on or about January 26, 2024, the Debtor received funds from the sale of two cars sold outside the ordinary course of business or financial affairs of the Debtor which funds were deposited in the Debtor's personal KeyBank account.

68. On or about January 26, 2024, the Debtor made an undisclosed transfer of $200,000 from his KeyBank account of the Debtor wholly owned entity Capital Commercial Training Group, LLC account with KeyBank.

69. On January 30, 2026, the Debtor made an undisclosed transfer of $14,000 from Debtor's KeyBank account to Capital Commercial Training Group, LLC KeyBank account.

70. On January 30, 2026, the Debtor made an undisclosed transfer of $16,500 from Debtor's KeyBank account to Capital Commercial Training Group, LLC KeyBank account.

71. On January 30, 2025, the Debtor made an undisclosed transfer of $50,000 from Debtor's KeyBank account to Capital Commercial Training Group, LLC KeyBank account.

72. On February 8, 2026, the Debtor made an undisclosed transfer of $60,000 from Debtor's KeyBank account to Capital Commercial Training Group, LLC KeyBank account.

73. Under SOFA #17, the Debtor was to disclose whether the Debtor or anyone acting on behalf of the Debtor paid or transferred property to anyone who promised to help Debtor deal with creditors or make payments to creditors.

74. The Debtor failed to disclose payments made on behalf of the Debtor by the Debtor Entities to Hogan, Lovells US LLP and others to defend claims of creditors including, without limitation, the lawsuits captioned *Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC* (1:240cv-00055-MAD-CFH) or *Onward Holding v. Prime Capital Ventures* (23-cv-833 (JNP)).

75. Under SOFA #18, the Debtor was to disclose whether the Debtor sold, traded, or transferred any Debtor property to anyone outside the Debtor ordinary course of business or financial affairs.

76. The Debtor failed to disclose the transfer of several cars from Debtor to the single member Montana limited liability company Shark Ventures, LLC.

77. Under SOFA #27, the Debtor was to disclose certain business connections and interests within 4-years of the Debtor Petition.

78. The Debtor did not disclose business connections and or interests in CCTGCRM, LLC, Durham Commercial Capital Corporation, and other business entities.

*Debtor transfers to insiders outside the ordinary course of Debtor business or financial affairs.*

79. On January 26, 2024, the Debtor transferred $100,000 as a gift to Tina Roglieri outside the ordinary course of the Debtor business or financial affairs.

80. On January 3, 2024, the Debtor transferred $15,000 as a gift to Tina Roglieri outside the ordinary course of the Debtor business or financial affairs.

81. On December 29, 2023, the Debtor transferred $8,000 as a gift to Tina Roglieri outside the ordinary course of the Debtor business or financial affairs.

82. On December 28, 2023, the Debtor transferred $12,000 as a gift to Tina Roglieri outside the ordinary course of the Debtor business or financial affairs.

83. In December 2023, Debtor transferred a Mercedes Benz GLE 63 AMG SUV to Tina Roglieri outside the ordinary course of the Debtor business or financial affairs.

84. On December 25, 2023, the Debtor transferred a $70,000 watch to Linda Oliver outside the ordinary course of the Debtor business or financial affairs.

85. On December 25, 2023, the Debtor transferred a $30,000 bracelet to Linda Oliver outside the ordinary course of the Debtor business or financial affairs.

86. Tina Roglieri and Linda Oliver are insiders of the Debtor.

87. The payments reflected under paragraphs 67 through 71 to Debtor Entities were likewise made to an insider outside the ordinary course of business.

*Debtor dissipation of membership value in Debtor Entities*

88.     The Debtor facilitated the transfer of funds and other personal property from Prime Capital Ventures, LLC, Prime Commercial Lending, LLC and National Alliance of Commercial Loan Brokers, LLC to Commercial Capital Training Group, LLC.

89.     The Debtor thereafter transferred the assets including without limitation operations, funds, good will, client lists, and other personal property of Commercial Capital Training Group, LLC and the National Alliance of Commercial Loan Brokers, LLC to third parties.

90.     The Debtor also facilitated the transfer of assets, including operations, funds, goodwill, client lists, and other personal property of Prime Commercial Lending, LLC to third parties.

91.     The Debtor facilitated the transfer of assets from the Debtor Entities to dissipate the value of the Debtor membership interest in the Debtor Entities as a potential source of payment to creditors of the Debtor bankruptcy estate.

92.     The third parties are preserving the value of the transferred assets for the benefit of the Debtor.

*Debtor noncompliance with Turnover Order in Debtor Case.*

93.     The Court issued a Turnover Order against the Debtor ("Turnover Order").

94.     The Debtor was served with the Turnover Order.

95.     Pursuant to the Turnover Order, the Debtor was "to immediately turn over possession, custody, and control of the Estate Assets including but not limited to those described in EXHIBIT A annexed hereto to the Trustee."

96.     The Debtor has not turned over all the Estate Assets.

97.     Pursuant to the Turnover Order, "If the Debtor is no longer in possession, custody, or control of an Estate Asset, the Debtor is to provide the Trustee with a detailed affidavit

explaining why the Debtor is no longer in possession, custody, or control over the Estate Asset and providing details and contact information for whoever is in possession, custody, or control of the Estate Asset."

98. The Debtor has not provided the Trustee with an affidavit as required under the Turnover Order.

99. As required under the Turnover Order, the Debtor was "to disclose the location of all books and records of the Estate Companies."

100. The Debtor has not disclosed the location of the books and records of the Estate Companies.

*Debtor noncompliance with Order in Prime Capital Ventures, LLC Involuntary Case*

101. On December 19, 2023, Prime Capital Ventures, LLC had an involuntary bankruptcy petition filed against it. See, NDNY Bankruptcy Case No. 23-11302.

102. As part of the involuntary proceeding, the Bankruptcy Court issued an Order Granting Motion of Petitioning Creditors for Appointment of Interim Trustee Over Prime Capital Ventures, LLC And for Related Relief. ECF #13 ("PCV Order").

103. The Debtor was served with the PCV Order.

104. The Debtor did not comply with the PCV Order because no property or records were turned over to the Interim Trustee.

105. In Prime Capital Ventures, LLC's involuntary case, Debtor authorized Prime Capital Ventures, LLC to falsely represent to the Court that the deposits of petitioning creditors and others were in accounts at KeyBank and Citibank.

106. In the Prime Capital Ventures, LLC involuntary case, Debtor authorized Prime Capital Ventures, LLC to falsely represent to the Court that Prime Capital Ventures, LLC had $2,000,000 on deposit at KeyBank and $2,000,000 on deposit at Citibank.

107. In the Prime Capital Ventures, LLC involuntary case, Debtor authorized Prime Capital Ventures, LLC to falsely represent to the Court that Prime Capital Ventures, LLC had $52,000,000 on deposit at Royal Bank of Canada wealth management in an account under the name of Berone Capital.

108. In the Prime Capital Ventures, LLC involuntary case, Debtor authorized Prime Capital Ventures, LLC to falsely represent to the Court that Berone had provided Prime Capital Ventures, LLC a line of credit with which Prime Capital Ventures, LLC could pay its obligations to borrowers.

109. In the Prime Capital Ventures, LLC involuntary case, Debtor authorized Prime Capital Ventures, LLC to falsely represent to the Court the then present state of its alleged accountant relationship and information that had allegedly been forwarded to that alleged accountant.

110. In the Prime Capital Ventures, LLC'" involuntary case, Debtor authorized Prime Capital Ventures, LLC to falsely represent to the Court that Prime Capital Ventures, LLC had 26 employees.

111. In the Prime Capital Ventures, LLC involuntary case, Debtor authorized Prime Capital Ventures, LLC to falsely represent to the Court that when deposits were received by Prime Capital Ventures, LLC, that Debtor caused those deposits to be transferred to Berone Capital.

112. During the pendency of the Prime Capital Ventures, LLC involuntary case, in contravention of the PCV Order, the Debtor authorized Prime Capital Ventures, LLC to transfer $5,000,000 from its account to Prime Commercial Lending, LLC without interim Trustee or Court authority.

*Trustee reservation of right to amend based upon the discovery of additional facts.*

113. Debtor has not been fully cooperative in the disclosure of Debtor's assets and financial affairs.

114. Plaintiff may learn of additional facts during discovery and examination of the Debtor's assets and financial affairs.

115. Plaintiff reserves the right to amend this Complaint upon discovery of new information obtained during the continuing investigation of the Debtor's assets and financial affairs.

## OBJECTIONS TO DEBTOR DISCHARGE

### CLAIM FOR RELIEF ON COUNT I
**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(2))**

116. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 115 above, as if fully stated herein.

117. The Debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

118. The Debtor's discharge should be denied.

### CLAIM FOR RELIEF ON COUNT II
**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(3))**

119. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 115 above, as if fully stated herein.

120. The Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or

preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained and such failure to act or failure to act was not justified under all the circumstances of the case.

121. The Debtor's discharge should be denied.

### CLAIM FOR RELIEF ON COUNT III
### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4))

122. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 115 above, as if fully stated herein.

123. The debtor knowingly and fraudulently, in or in connection with the case (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers relating to the debtor's property or financial affairs.

124. The Debtor's discharge should be denied.

### CLAIM FOR RELIEF ON COUNT IV
### (Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(5))

125. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 115 above, as if fully stated herein.

126. The Debtor has failed to explain satisfactorily, before the determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the Debtor's liabilities.

127. The Debtor's discharge should be denied.

**CLAIM FOR RELIEF ON COUNT V**
**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(6))**

128. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 115 above, as if fully stated herein.

129. The Debtor has refused, in the case, to obey any lawful order of the court.

130. The Debtor's discharge should be denied.

**CLAIM FOR RELIEF ON COUNT VI**
**(Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(7))**

131. Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 115 above, as if fully stated herein.

132. In connection with the involuntary bankruptcy case of PCV, Debtor committed within the last year one or more acts specified in Code §§727(a)(2), (3), (4), (5) and / or (6)

133. The Debtor's discharge should be denied.

**RELIEF REQUESTED**

WHEREFORE, the Plaintiff respectfully requests that the Court enter relief and judgment denying the Debtor a discharge and otherwise granting Plaintiff such other and further relief as the Court deems just and equitable.

Dated: August 15, 2024

        **THE DRIBUSCH LAW FIRM**

        By: */s/ Christian H. Dribusch*
        Christian H. Dribusch, Esq.
        187 Wolf Road
        Albany, New York 12205
        cdribusch@chd-law.com