Christian H. Dribusch (507021)
187 Wolf Road
Albany, NY 12205
[T] 518.227.0026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

In re:

KRIS DANIEL ROGLIERI

          Debtor.

Chapter 7

Case No. 24-10157

------------------------------------------------------------------- X

## MOTION TO RETAIN REAL ESTATE BROKER

TO: THE HONORABLE ROBERT E. LITTLEFIELD, JR. U.S. BANKRUPTCY JUDGE:

Chapter 7 trustee Christian H. Dribusch files this motion pursuant to §327(a) of Title 11 of the United States Code for authority to retain Davies-Davies Associates Real Estate, LLC ("DDA") as trustee's real estate broker. In support of the motion, trustee Dribusch respectfully represents as follows:

Parties, Jurisdiction and Venue

1.    The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 United States Code (the "Bankruptcy Code") on February 15, 2024, with the Bankruptcy Court (the "Court") for the Northern District of New York (the "District"). The case was converted to Chapter 7 on May 15, 2024.

2.    Christian H. Dribusch is the chapter 7 trustee to the bankruptcy esate.

3.    This motion made pursuant to Bankruptcy Code §327(a), is a core proceeding under 28 U.S.C. §157(b)(2)(A) because it relates to matters concerning the administration of the bankruptcy estate.

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334.

5. Venue is proper by virtue of 28 U.S.C. §1409(a), as the proceeding arises and relates to a case under the Bankruptcy Code pending before this District.

Motion and Basis

6. Trustee Dribusch seek's an order of this Court permitting the retention of DDA as trustee's real estate broker. The listing agreement proposed by DDA is attached as Exhibit A.

7. Among the assets in this case is a residence located at 40 North Road, Queensbury, New York (the "Property").

8. In order to market the Property effectively and thereby to liquidate the same for the best and highest price trustee Dribusch has solicited the assistance of DDA, a licensed real estate broker, which has, on trustee Dribusch's behalf, examined the Property and has agreed to advertise the Property at the broker's expense, to show the Property to interested parties, to represent trustee Dribusch as seller in connection with the sale of the Property, and to advise trustee Dribusch with respect to obtaining the highest and best offers available in the present market for theProperty.

9. Based on the foregoing, trustee Dribusch would like to employ DDA as trustee real estate broker, to procure and submit to trustee Dribusch offers to purchase the Property. In consideration for its services, the broker will receive as commission, upon consummation of any sale, an amount equal to two and one-half (2.5%) percent of the purchase price for a purchaser procured by the real estate broker. The real estate broker will be authorized to offer up to one and one-half (2.0%) percent to apply to a buyer broker, if any.

10. Trustee Dribusch is informed and believes that the proposed commission of DDA is competitive and reasonable in light of the commissions charged by other brokers in the area. The

listing of the Property is subject to the terms and conditions multiple listing service or such other services which the broker intends to use. Accordingly, the sale of the real property may be subject to a co-broker arrangement.

11. The broker has viewed the Property and has recommended a listing price of $1,999,000.00

12. DDA has been informed and understands that no sale may be consummated until after an Order upon notice and a hearing.

13. Trustee Dribusch is informed and believes and, therefore, alleges the employment DDA on the terms and conditions provided for herein, is in the best interest of the bankruptcy estate.

14. Trustee Dribusch is satisfied from the Declaration of Daniel Davis that the real estate broker is a disinterested person within the meaning of 11 U.S.C. §101(14).

15. DDA is aware of the provisions of 11 U.S.C. §328(a) and has agreed, notwithstanding the terms and conditions of employment herein set forth, that the Court may allow compensation different from the compensation provided herein if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions.

WHEREFORE, trustee Dribusch request's that he be authorized to employ DDA as real estate broker on the terms and conditions set forth herein.

Dated: October 24, 2024

/s/ *Christian H. Dribusch*
Christian H. Dribusch
cdribusch@chd-law.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

In re:

KRIS DANIEL ROGLIERI

           Debtor.

Chapter 7

Case No. 24-10157

------------------------------------------------------------------------ X

     Daniel Davis, a licensed broker in the office of Davis-Davis Associates Real Estate, LLC ("DDA") being duly sworn, declares as follows:

    1.    I am a realtor duly licensed by the State of New York.

    2.    I am familiar with trustee Dribusch's application and the Property described therein, and believe that I am qualified to represent trustee Dribusch in connection with the marketing of the Property. I have agreed to accept employment on the terms and conditions set forth in trustee Dribusch's application, which is incorporated herein by reference.

    3.    To the best of my knowledge, information and belief, I have not held nor do I hold any adverse interest to the Debtor. I have no ties to any interested parties herein or the Office of the United States Trustee. Based on these facts I believe I am a disinterested person within the meaning of 11 U.S.C. §101(14), and am eligible to serve as a broker for trustee Dribusch in this case.

    4.    DDA, its members and associates, are disinterested persons within the meaning of 11 U.S.C. Section 101(14), having no interest adverse to the estate or debtor and are eligible to serve as realtor for trustee Dribusch pursuant to the provisions of 11 U.S.C. Section 327(a).

5.  DDA, its members and associates, has no connections with the Debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

6.  DDA understand that any fees or reimbursements are subject to Court approval. Further, DDA has not, and will not, enter into any sharing agreements contrary to 11 U.S.C. §504. DDA will, however, use the multiple listing service or other similar service to market the Property. In consideration for services, DDA will receive, upon consummation of any sale, a commission in an amount set forth in the Debtor's retention application, subject to approval by the Court. No retainer has been requested or received with regard to this matter.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 24, 2024
        25 DCD RM

_____
Daniel Davis

Sworn to before me this
25 ~~24~~th day of October 2024.

_____
Notary Public
County of Albany
State of New York

ROSE MELLON
Notary Public, State of New York
Warren Co. #01ME6223424
Commission Expires June 14, 2026

# EXHIBIT A

# GLOBAL MLS, Inc.
## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
*As this is a legally binding contract, it is recommended you consult an Attorney before signing.*

Listing Broker: **Davies~Davies & Associates Real Estate, LLC**

Listing Agent: **Daniel L. Davies**

OWNER: **Kris Roglieri Estate**

PROPERTY Address: **40 North Rd**

City: **Queensbury**  State: **New York**  Zip: **12804**

1. **GRANT OF EXCLUSIVE RIGHT TO SELL**
   In consideration of the above mentioned Listing BROKER (or, BROKER) undertaking to find a Buyer for said PROPERTY, the undersigned OWNER (OWNER refers to each and all parties who have an ownership interest in the PROPERTY), grants to the BROKER the sole and exclusive right to sell OWNER'S PROPERTY described above for $ **1,999,000.00** from: **October 28, 2024** until and including: **April 28, 2025**. (the LISTING PERIOD) The OWNER hereby authorizes the BROKER to submit this listing to Global Multiple Listing Service, Inc. (Herein referred to as GMLS) in accordance with the Rules and Regulations of GMLS within **2** business days to GMLS for online circulation to all members during the LISTING PERIOD, and that the LISTING BROKER will use its best efforts to find a buyer.

2. **LOCAL, STATE AND FEDERAL FAIR HOUSING LAWS**
   It is agreed that this PROPERTY is listed and will be shown to buyers in full compliance with local, state and federal fair housing laws against discrimination on the basis of race, color, religion, sex, national origin, disability, age, marital status, children, sexual orientation, military status or other characteristic protected by law.

3. **GLOBAL MLS NOT AGENT**
   The OWNER understands and agrees that the Greater Capital Association of Realtors® (GCAR), the Southern Adirondack Realtors®(SAR) and/or GMLS are not OWNER's agents and that none of the terms of this agreement shall make any one or all of them the OWNER's agent.

4. **USE OF LISTING CONTENT: INTELLECTUAL PROPERTY LICENSE**
   Unless OWNER delivers to BROKER a written certification, in a form acceptable to BROKER that OWNER does not desire the Listing Content to be disseminated by a multiple listing service, OWNER acknowledges and agrees that all photographs, images, graphics, video recordings, virtual tours, drawings, written descriptions, remarks, narratives, pricing information and other copyrightable elements relating to the PROPERTY provided by OWNER to BROKER or Broker's Agent ("OWNER Listing Content"), or otherwise obtained or produced by BROKER or Broker's Agent in connection with this Agreement ("Broker Listing Content"), and any other changes to the OWNER Listing Content or the Broker Listing Content, may be filed with one or more multiple listing services, included in compilations of listings and otherwise distributed, publicly displayed and reproduced. OWNER hereby grants to BROKER a non-exclusive, irrevocable, worldwide, royalty free license to use, sublicense through multiple tiers, publish, display and reproduce the OWNER Listing Content, to prepare derivative works of the OWNER Listing Content, and to distribute the OWNER Listing Content or any derivative works thereof. OWNER represents and warrants to BROKER that the OWNER Listing Content, and the license granted to BROKER for the OWNER Listing Content, does not violate or infringe upon the rights, including any copyright rights, of any person or entity. OWNER acknowledges and agrees that as between OWNER and BROKER, all Broker Listing Content is owned exclusively by BROKER, and OWNER has no right, title or interest in or to any Broker Listing Content. Data including photographs and sketches relating to OWNER'S PROPERTY may be aggregated with that of other properties listed by participants in the GMLS, online networks and websites and become copyrighted data pursuant to agreements with the BROKER.

5. **POSSESSION OF KEY TO PROPERTY**
   OWNER understands that providing BROKER with a key and/or use of a lock box to the PROPERTY does not in any way make BROKER, other members of GMLS, GMLS, GCAR or SAR, custodian of said PROPERTY or responsible thereof. OWNER is responsible for the condition, maintenance and/or utilities for the PROPERTY including snow removal and lawn maintenance. For vacant properties, arrangements should be made for third parties to inspect the PROPERTY regularly and report any problems to OWNER. Listing BROKER is not responsible for the condition of the PROPERTY. OWNER agrees to indemnify and hold harmless the Listing BROKER and cooperating

# GLOBAL MLS, Inc.
## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
*As this is a legally binding contract, it is recommended you consult an Attorney before signing.*

brokers from any claim arising out of personal injuries to any persons injured on the PROPERTY and/or loss or damage to personal PROPERTY except if caused by the gross negligence of the Listing BROKER or cooperating broker. In the event any claim or action is commenced against the Listing BROKER or a cooperating broker as a result of the Listing BROKER or cooperating broker obeying the lawful instructions of the OWNER, then, and in such event, the OWNER hereby agrees to defend, indemnify and hold harmless the Listing BROKER or cooperating broker in any such claim or action. OWNER shall have the right to select counsel in such event, subject to the approval of the Listing BROKER and/or cooperating broker, which approval shall not be unreasonably withheld.

6. **OWNER'S AUTHORIZATIONS AND OBLIGATIONS**
   OWNER grants BROKER full discretion to determine the appropriate marketing approach for the PROPERTY. BROKER will undertake to provide a ready, willing and able Buyer and will engage in marketing activity which may include advertising, showing of listed premises and/or the conduct of open houses. OWNER consents that said PROPERTY may be shown at any reasonable hour, and agrees to refer any and all inquiries concerning said PROPERTY to BROKER. OWNER understands and hereby authorizes the following in order to facilitate the sale of said PROPERTY:
   - use of a lock box and OWNER accepts responsibility for any damages arising from the use of the lockbox;
   - photographing of the PROPERTY and the use of said photographs in promoting its sale;
   - placement of PROPERTY information on the Internet for marketing purposes;
   - placement of a "For Sale" sign on the PROPERTY.
   
   BROKER may use the OWNER Listing Content, sale or lease price and terms upon closing for Broker Market Evaluation, Networking and Appraisal purposes, and for disclosing to other persons as BROKER may deem desirable, including disclosing the information in online property networks and websites. The authorization by OWNER to publish this listing also includes the right of the BROKER to advertise the OWNER Listing Content in any medium or media including electronic formats not limited to the Internet.

7. **PRESENTATION OF PURCHASE OFFER AND SUBSEQUENT OFFERS (Offers Received After A Contract Has Been Accepted)**
   OWNER agrees that any offer to purchase/lease the PROPERTY shall be submitted through the Listing BROKER. In the event a cooperating broker requests to be present when the purchase offer/lease is delivered to the OWNER, the OWNER [ ] agrees to or [X] denies such request. Once OWNER accepts and signs a written agreement to purchase, Listing BROKER has an obligation to disclose the existence of accepted offers, including offers with unresolved contingencies, to any broker seeking cooperation. Listing BROKER shall continue to submit to OWNER all offers and counter-offers until closing or execution of a lease unless OWNER waives this obligation in writing. Listing BROKER shall not be obligated to continue to market the PROPERTY after an offer has been accepted by OWNER. OWNER should consult an attorney regarding any subsequent offers because a written agreement for the property may already exist and brokerage commission claims may be involved.

8. **BUYER'S MORTGAGE** (if Applicable)
   The OWNER agrees to accept a purchase offer contingent for a reasonable period of time, on the Buyer's ability to finance the purchase price by any of the prevailing methods of mortgage financing. Any other type of mortgage loan or financing must be approved by OWNER.

9. **APPLICATION OF DEPOSIT**
   The OWNER authorizes the Listing BROKER to hold any and all deposits made as part of the purchase price in an escrow account until closing or cancellation of the purchase contract with written consent of all parties to the contract. In the event of a claim of default by the OWNER or the Buyer, the deposits will be held by the BROKER in an escrow account pending final resolution or the written mutual consent of the parties. OWNER further agrees the BROKER shall apply and pay any deposits or other money received as part of the purchase price toward the brokerage fee which is due under this agreement.

10. **INSPECTION CONTINGENCIES**
    The OWNER agrees to accept a purchase offer contingent, for a reasonable period of time, on the Buyer's ability to obtain inspections regarding unknown circumstances which could affect the habitability of the PROPERTY.

11. **DISCLOSURE OF TERMS OF CONTRACT**
    OWNER agrees that the terms of purchase may be disclosed to all members of GMLS upon closing.

12. **COMPENSATION: OWNER understands that compensation is not set by law or any Realtor® association or MLS and that compensation is fully negotiable between the OWNER and the LISTING BROKER. An offer of compensation to the Cooperating**

# GLOBAL MLS, Inc.
## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
*As this is a legally binding contract, it is recommended you consult an Attorney before signing.*

Broker who produces the buyer for the Property is not required. However, OWNER may choose to offer compensation directly to the Cooperating Broker or through the BROKER to the Cooperating Broker. OWNER may receive requests for compensation from a Cooperating Broker as part of the purchase offer or separately. OWNER has the right to accept, deny or negotiate the amount of compensation being requested by the Cooperating Broker.

**13. BROKERAGE FEE: AMOUNT WHEN DUE AND PAYABLE**

A) LISTING BROKER COMPENSATION

   I. OWNER shall pay the LISTING BROKER compensation of ___2.500___ percent (%) of the selling price or a fee of _____ dollars ($) at closing whichever is the greater sum unless otherwise modified in paragraph 13(B).

   II. In the event of dual agency OWNER shall pay the LISTING BROKER compensation of ___4.000___ percent (%) of the selling price or a fee of _____ dollars ($) at closing whichever is the greater sum.

   III. In the event of dual agency with designated sales agent OWNER shall pay the LISTING BROKER compensation of ___4.000___ percent (%) of the selling price or a fee of _____ dollars ($) at closing whichever is the greater sum.

   IV. In the event of an unrepresented buyer, OWNER shall pay the LISTING BROKER compensation of ___4.000___ percent (%) of the selling price or a fee of _____ dollars ($) at closing whichever is the greater sum. (for an explanation of the types of agency, please see the NYS Agency Disclosure Form).

The compensation set forth in (I), (II), (III), or (IV) above shall be earned and payable under any of the following conditions:

(a) If the LISTING BROKER or COOPERATING BROKER produces a buyer ready, willing and able to purchase the PROPERTY on such terms and conditions acceptable to the OWNER;

(b) If through the LISTING BROKER or COOPERATING BROKER's efforts a buyer and the OWNER reach an agreement upon all the essential terms of a transaction;

(c) If the PROPERTY is sold or rented during the term of this LISTING AGREEMENT whether or not the sale or rental is a result of the LISTING BROKER'S efforts and even if the PROPERTY is sold as a result of the efforts of the OWNER or any other broker or agent not acting under this LISTING AGREEMENT;

(d) If the LISTING BROKER or COOPERATING BROKER is the procuring cause of a transaction.

If within ___90___ days after the expiration of the LISTING PERIOD, OWNER accepts a purchase offer on the PROPERTY from any person to whom the PROPERTY has been shown during the LISTING PERIOD, OWNER will pay LISTING BROKER the aforementioned compensation as if LISTING BROKER had made the sale provided the PROPERTY goes to closing. The preceding sentence shall not apply if during said period, OWNER lists the PROPERTY with another real estate broker.

(B) COOPERATING COMPENSATION (please initial one below)

_____/_____ PLEASE INITIAL: OWNER **IS NOT** offering compensation to COOPERATING BROKERS *(please continue to part C of this section)*

OWNER **IS** offering compensation to COOPERATING BROKERS *(please initial one of the following and fill in paragraph below)*:

_____/_____ OWNER is offering compensation directly to COOPERATING BROKERS

_____/_____ OWNER is authorizing LISTING BROKER to offer cooperating compensation to COOPERATING BROKER

In addition to the compensation offered to the LISTING BROKER under paragraph 13(A), OWNER will offer compensation to COOPERATING BROKERS directly or through the LISTING BROKER, as OWNER has indicated above, who is the procuring cause of the PROPERTY sale/transfer during the LISTING PERIOD as set forth in paragraph 13(A). OWNER agrees to the following offers of compensation to COOPERATING BROKERS:

BUYER'S AGENT: ___2.000___ percent (%) of the selling price or a fee of _____ dollars ($) at closing;

BROKER'S AGENT: ___2.000___ percent (%) of the selling price or a fee of _____ dollars ($) at closing;

SUB AGENT: _____ percent (%) of the selling price or a fee of _____ dollars ($) at closing;

*Review the NYS Agency Disclosure Form to understand the types of Agency.*

# GLOBAL MLS, Inc.
## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
*As this is a legally binding contract, it is recommended you consult an Attorney before signing.*

(C) **RENTAL:** Should the OWNER desire to rent the PROPERTY between the EFFECTIVE DATE and prior to the end of the LISTING PERIOD, LISTING BROKER is hereby granted the sole and exclusive right to rent the PROPERTY. OWNER agrees to pay the LISTING BROKER a rental commission of _____. The commission for the term of the lease is due and payable (check one) __ upon execution of the lease __ upon date of occupancy. The commission for any renewal of the lease is due and payable upon the commencement of the new term. In the event that the PROPERTY is sold during the term of the lease the OWNER shall owe the LISTING BROKER the commission/fee set forth above in paragraph 13(A).

_____/_____ PLEASE INITIAL (if applicable) Seller Concessions. OWNER agrees to pay a fixed amount or percentage of the Purchase Price at Closing, toward buyer's loan closing fees, prepaid expenses, and/or other permitted closing costs to be paid by buyer or which are ordinarily deemed a buyer's expense.

OWNER may be required to deposit the Broker's commission with the County Clerk at the time of closing, in the event that OWNER does not pay the Broker his or her commission as set forth herein. Your obligation to deposit the Broker's commission with the County Clerk may be waived by the Broker.

**14. PROPERTY CONDITION DISCLOSURE**
As the owner of residential real property, OWNER understands that they must complete and sign a Property Condition Disclosure Statement (PCDS) as required by Real Property Law §462(2): "Except as is provided in section 463 of this article, every OWNER of residential real property pursuant to a real estate purchase contract shall complete and sign a property condition disclosure statement as prescribed by subdivision two of this section and cause it, or a copy thereof, to be delivered to a buyer or buyer's agent prior to the signing by the buyer of a binding contract of sale. A copy of the property condition disclosure statement containing the signatures of both OWNER and buyer shall be attached to the real estate purchase contract." OWNER should seek the advice of their attorney about filling out the PCDS or if the transfer qualifies for an exemption under Real Property §463.

OWNERs Initials _____ _____

**15.** OWNER is aware that it is in violation of NYS Penal Law to mechanically overhear a conversation by having any device (or devices) recording, streaming or otherwise documenting the conversation of an individual during real estate-related activities at the PROPERTY (open houses, showings etc.) if you are not a party to that conversation. If such a device is present and will be operating at any time a potential Buyer/Tenant is viewing the property, the OWNER/Landlord/Property Manager understands that the LISTING AGENT must disclose the presence of the device.

**16. LEGAL, PROFFESSIONAL AND TECHNICAL ADVICE**
OWNER acknowledges that Broker is not qualified to provide advice on legal matters, tax matters (including but not limited to, non-recognition of gain or loss from exchanges pursuant to 26USC section 1031), building inspections, public health, surveying, environmental issues or other technical matters. Upon request, BROKER will assist OWNER in engaging qualified professionals to consult in such fields. OWNER also acknowledges that BROKER has advised and recommended that he/she seek independent legal, tax or other counsel prior to entering into this agreement or into an agreement for the sale, lease or exchange of the PROPERTY.

**17. HOME EQUITY THEFT PREVENTION ACT (REAL PROPERTY LAW SECTION 265)**
OWNER acknowledges and represents that:
a) OWNER is aware of the Home Equity Theft Prevention Act as it affects the sale of real PROPERTY;
b) OWNER ☐ is ☐ is not in default of any mortgage affecting the PROPERTY by reason of there being payments due and unpaid for two months or more;
c) there ☐ is ☐ is not an action pending against the PROPERTY to foreclose a mortgage; and
d) the PROPERTY ☐ is ☐ is not shown on an active tax lien sale list.
OWNER hereby covenants and agrees to immediately notify BROKER in writing of any change in circumstance that renders inaccurate any of the representations made above.

**18. TERMINATION**
OWNER understands that he/she may revoke the Listing BROKER'S authority to be OWNER'S agent at any time, but that if he/she does so, the Listing BROKER shall retain its contract rights, including, but not limited to, recovery of its commission,

# GLOBAL MLS, Inc.
## EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT
*As this is a legally binding contract, it is recommended you consult an Attorney before signing.*

advertising expenses, and/or other damages incurred by reason of OWNER'S early termination of this listing.

## 19. ENTIRE AGREEMENT
The OWNER has read and understands this Agreement and does hereby acknowledge receipt of a copy thereof. This LISTING AGREEMENT is the entire agreement between the parties and may not be changed except in a writing signed by both parties. This LISTING AGREEMENT shall be binding upon the parties hereto, and their respective heirs, successors, or assigns as of the EFFECTIVE DATE. For purposes of this LISTING AGREEMENT, "OWNER" refers to each and all parties who have an ownership interest in the PROPERTY and the undersigned OWNER represents that they are the sole and exclusive OWNER and are fully authorized to enter into this LISTING AGREEMENT. As used in this LISTING AGREEMENT, the neuter includes the masculine and feminine, the singular includes the plural and the plural includes the singular, as the context may require. OWNER and LISTING BROKER understand that all extensions of this LISTING AGREEMENT must be done in writing and automatic renewals are specifically prohibited by 19 NYCRR§175.15. Any change to the LISTING AGREEMENT which would make the PROPERTY unavailable for sale through the MLS, including but not limited to any withdrawal, cancellation, reduction in term of listing or termination thereof, must be in writing signed by the LISTING BROKER OR MANAGER in order to have any binding legal force and effect.

## 20. EXPLANATION
An *"EXCLUSIVE RIGHT TO SELL"* listing means that if you, the owner of the PROPERTY, find a buyer for your property, or if another Broker finds a buyer, you must pay the agreed commission to the present BROKER.
An *"EXCLUSIVE AGENCY"* listing means that if you, the owner of the PROPERTY, find a buyer for your property, you will not have to pay a commission to the BROKER. However, if another Broker finds a buyer, you will owe a commission to both the selling Broker, and your present BROKER.
OWNERs Initials _____ _____

## 21. DISPUTE RESOLUTION
a. The parties agree that any dispute concerning the terms and conditions of this Listing Agreement that cannot be amicably resolved between them shall first be submitted to mediation proceedings conducted in accordance with the rules of the local Realtor® association. Mediation fees and costs, if any, shall be divided equally among the parties involved.
b. If the dispute is not timely resolved through mediation, either party may submit the dispute to binding arbitration before the local Realtor® association in accordance with the procedure set forth in the National Association of Realtors® Code of Ethics and Arbitration Manual. Each party shall bear its own fees and costs, and the fees of the arbitration.
c. The parties agree that arbitration as set forth above shall be the exclusive procedure for resolution of all disputes that cannot be resolved through mediation. Each party hereby waives the right to bring any lawsuit relating to any transaction covered by this Listing Agreement and further waives the right to join, or be part of, any class action or any other legal action relating to claims arising from any such transaction.
d. Notwithstanding any provision to the contrary contained in this Listing Agreement, if Broker is held to be liable for any matter arising from this Listing Agreement, the maximum liability of Broker shall not exceed the aggregate amount received by Broker in connection with the transaction in question, not including filing or related administrative fees.

ACCEPTED BY:

| | |
|---|---|
| _____ Date | _____ Date |
| Agent/Broker | OWNER |
| **Daniel L. Davies** | **Kris Roglieri Estate** |
| **Davies~Davies & Associates Real Estate, LLC** | _____ Date |
| Firm | OWNER |

_____
Prepared by

40 North Rd    Page 5 of 5
OWNERs Initials _____ _____    8/21/24 - GMLS, 449 New Karner Road, Albany, NY