Christian H. Dribusch
THE DRIBUSCH LAW FIRM
187 Wolf Road
Albany, New York 12205
(518) 227-0026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| KRIS DANIEL ROGLIERI | Case No. 24-10157 |
| *Debtor*. | |

-------------------------------------------------------------------X

## TRUSTEE OBJECTION TO DEBTOR MOTION TO REMOVE TRUSTEE

CHRISTIAN H. DRIBUSCH, hereby affirms that:

1.      I am an attorney duly licensed to practice law in the State of New York and in the United States District Court for the Northern District of New York.

2.      I am the Chapter 7 Trustee appointed to administer the bankruptcy estate of the captioned Debtor.

3.      This affirmation is made in opposition to Debtor's motion to remove me as the Chapter 7 trustee which has been filed as electronic court record ("ECF") #345 ("Motion").

4.      Under ECF #337, I previously responded to the Debtor's concerns filed under ECF #331 and #332.

5.      Under ECF #348, I responded to the Debtor's additional concerns in the Motion.

6.      My responses under ECF #337 and #348 are incorporated herein by reference.

7.      I have performed my 11 U.S.C. ("Bankruptcy Code") §704 fiduciary duties under extraordinary circumstances.

8. First, shortly after my appointment, the Debtor was detained by the United States Government with the Debtor bankruptcy estate assets left physically unsecured including doors open to the 40 North Road residence which had valuable artwork, sculptures, and pedestals, keys left in open cars valued at six figures, and an unknown party (later determined to be Ms. Oliver) having unfettered access to and using bankruptcy estate assets without Bankruptcy Court authority (including a valuable Mercedes to commute between the Rensselaer train station and the 40 North Road residence (58 miles each way)).

9. Second, I was dealing with a demonstrably angry and vengeful Debtor who seemingly had minimal regard for the law and posed a meaningful risk of physical harm. As described by the United States District Court, Northern District of New York in its decision affirming the Magistrate on the Debtor's appeal of the continuation of detention:

> The answer is simple: the Court is taking Defendant at his word. Defendant's statements include the following: "You f*** with the hand that feeds you and you're gonna get f***ed up the a** royally"; "And listen, I'll gladly talk about this, but my fear is I'll rip off your f***cking throat and piss down your f***cking neck"; "I don't give a f*** abou[t] the cops"; "I'm f***cking gonna wack anybody that comes after me"; "You wanna come after me with guns you gonna get the same"; "I feel myself getting angry and vengeance to those that are doing this . . . . Including the attor[n]ies, judge, receiver, etc." "I don't play by the rules . . . Never have and never will . . . .And that's dangerous as I feel myself getting to that point with all involved against me."
>
> The Court has rarely seen such degrading, threatening, and worrisome communications in the context of a financial fraud case. Defendant did not mince words in his text messages. He communicated precisely how he was feeling—angry and vengeful. He stated that he did not care about authority and discussed the use of guns and physical violence and the specific individuals he was angry toward.
>
> Quoting *United States of America vs. Kris Roglieri*, Case 1:24-cr-00392-MAD Document 71 Filed 01/30/25 Page 31 of 41.

10. Third, from the inception of the bankruptcy case, the Debtor's conduct has been detrimental to the administration of the Debtor bankruptcy estate. As a result of the Debtor's conduct, it was necessary for me to commence an adversary proceeding seeking denial of the Debtor's discharge. I obtained an Order denying the Debtor a discharge on numerous grounds including the Debtor's knowing failure to disclose assets on the Debtor Schedules, making false oaths or accounts, concealing recorded information for which the Debtor's financial condition or business transactions could be ascertained, withholding from the trustee recorded information, failing to disclose loss or deficiency of Debtor assets, and failing to obey Court Orders. The Debtor not only engaged in improper conduct in the Debtor's individual case but also engaged in improper conduct described under Bankruptcy Code §727(a)(7) in the case of Prime Capital Ventures, LLC. See, ECF #301

11. Functioning in this challenging environment, the Debtor bankruptcy estate has been competently administered with appropriate Bankruptcy Court authorizations.

12. This Motion by an angry, vengeful, uncooperative Debtor whose discharge has been denied has no merit.

**TRUSTEE DUTY TO SECURE THE MAIL**

13. The sworn to statements submitted with the Debtor's Motion make clear that the Debtor and Ms. Oliver's knowingly and willfully interfered with the Chapter 7 trustee duty to secure recorded information.

14. I would routinely look in the mailbox at the 40 North Road residence as part of my statutory duty to secure the mail addressed to the Debtor. As confirmed by the unidentified

witness, I did not secure any mail from the mailbox. My recollection is that I always found the mailbox to be empty.

15. On one occasion I was able to secure the mail from Ms. Oliver who had neither my consent nor Bankruptcy Court authority to withhold the Debtor mail at the residence. Despite Ms. Oliver's acknowledgment of my instruction to surrender the mail and my advising Debtor's criminal counsel that the bankruptcy estate would secure and retain the Debtor's mail only to the extent that it related to property of the bankruptcy estate or administration of the bankruptcy estate, Ms. Oliver has nevertheless knowingly and willfully withheld the mail. Thus, I have not taken possession of any mail addressed to the Debtor since Ms. Oliver filed a forwarding address on the Debtor's behalf in June 2024.

16. Upon information and belief, securing the mail is a fiduciary activity which pre-dates the 1978 Bankruptcy Code and, except for perhaps a brief period between 1983 and 1986, represents the general procedure for a Chapter 7 trustee in the administration of a bankruptcy estate.[1] It is part of the Chapter 7 trustee's duties under Bankruptcy Code §704 to collect and reduce to money property of the bankruptcy estate and to investigate the financial affairs of the Debtor.

## TRUSTEE DUTY TO SECURE THE COMPUTER

17. The Debtor assertion that I improperly accessed the Debtor's computer is without basis.

18. In finding that the Chapter 7 trustee was authorized to access a computer, the United States Bankruptcy Court, Northern District of New York held in *In Regan* that:

> In order to determine if the Trustee violated his duties or otherwise acted inappropriately in this case, the court must begin with a review of his statutory obligations.

---

[1] In 1986 Congress amended 11 U.S.C. 521(a)(4) to add "whether or not immunity is granted under section 344 of this title". See, PUBLIC LAW 99-554—OCT. 27, 1986.

11 U.S.C. § 704, entitled "duties of trustee," provides in relevant part: (a) The trustee shall - (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest.... and (4) investigate the financial affairs of the debtor. In investigating the financial affairs of Debtor, the Trustee became aware that the Computer allegedly contained information regarding Debtor's assets and tax returns (See February 28, 2019 hearing at Doc. No. 26). As a result, the Trustee accessed the Computer, which Debtor claims was through hacked entry and made without his authorization (See Objection at ¶ 28).

The court finds Debtor's argument unpersuasive. The Trustee's access was consistent with his duty to collect property of the estate and investigate Debtor's assets. More importantly, the Computer review was conducted pursuant to this court's [5] Order on Motion for Relief from Stay (the "Stay Relief Order" at Doc. No. 27). To the extent that the Trustee needed additional authorization beyond his investigative authority as trustee, which he did not, the Stay Relief Order clearly granted him access: "ORDERED that Attorney Thomas D. Cramer shall immediately make available to Trustee William J. Leberman, Esq., the computer in his custody for inspection and copying of all information pertinent to the administration of his Chapter 7 estate..."[6] Id.

In accordance with his statutory obligations and the authority specifically granted by the court in the Stay Relief Order, the Trustee gained access to the Computer to inspect and copy any available information pertinent to the administration of Debtor's chapter 7 estate. There was no requirement that the Trustee obtain Debtor's permission or passwords prior to said inspection and review. As a result, the Trustee's actions involving Debtor's Computer were authorized, and do not warrant his removal.

19. Bankruptcy Code §704 authorizes access to the Debtor's computer.

20. In addition to the Bankruptcy Code, there is also an Order directing the Debtor to turnover property of the bankruptcy estate. See, ECF #188.

21. Finally, under Bankruptcy Code §521(a)(2)(4) and Federal Rule of Bankruptcy Procedure Rule 1019(4) the Debtor had a duty to surrender recorded information which includes paper (e.g., mail) and electronic data (e.g., computer). See, ECF #348.

## DEBTOR'S OTHER GRIEVANCES

22. As explained in the response (ECF #348), the Debtor's litany of other grievances consisting of not listing shoes and sunglasses in an inventory, not sending notice to the Rensselaer County jail address, not providing a Scheduling Order, not allowing Ms. Oliver to reside at the 40

North Road residence after Ms. Oliver was found to be improperly taking bankruptcy estate assets, not remitting undeclared exemptions, and not paying Debtor's post-conversion personal National Grid bill are all without merit.

## THE STANDARD ON TRUSTEE REMOVAL

23. Section 324(a) of the Bankruptcy Code provides that a bankruptcy court may remove a trustee for cause, which generally requires a showing of "fraud and actual injury to the debtor interests." *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965); *Surabian v. Picard*, 2014 WL 917091, at *2, 2014 U.S. Dist. LEXIS 31356, at *5 (S.D.N.Y. Mar. 7, 2014) (collecting cases); *In re Regan*, 18-31694 (Bankr. N.D.N.Y. Oct 14, 2021) citing *In re Haworth*, 356 Fed. Appx. 529, 530 (2d Cir. 2009) holding that even if the trustee acted improperly, absent fraud or actual injury to the debtor's interest, there was no cause for removal.

24. Cause requires more than "unsupported inferences". *Matter of Carla Leather, Inc.*, 44 B.R. 457, 473 (Bankr. S.D.N.Y. 1984), aff'd, 50 B.R. 764 (S.D.N.Y. 1985). It must be demonstrated through specific facts and the moving party bears the burden to prove them. *In re Regan, 18-31694 (Bankr. N.D.N.Y. Oct 14, 2021)*. Unsupported allegations that the Trustee made false statements and material omissions are plainly insufficient. *In re Regan*, 18-31694 (Bankr. N.D.N.Y. Oct 14, 2021) citing *Holzer v. Barnard*, 2016 U.S. Dist. Lexis 98175 (E.D.N.Y. 2016).

25. A trustee is given great deference in exercising business judgment in the performance of the trustee's duties under Bankruptcy Code §704. As explained by the Bankruptcy Court in *In re: Regan*:

> When analyzing trustee conduct, courts give great deference to a trustee's business judgment. *In re Kerner*, 599 B.R. 751, 756 (Bankr. S.D.N.Y. 2019) ("The trustee is given a substantial degree of discretion in deciding how best to administer the estate committed to his care and his actions are measured by a business judgment standard"). Moreover, courts "will not entertain objections to the trustee's management of the debtor's estate where the trustee's conduct

> involves [her] good faith business judgment, is made on a reasonable basis, and is within the scope of the trustee's authority under the Code. *In re Belmonte*, 524 B.R. 17, 29 (Bankr. E.D.N.Y. 2015) (quoting *In re Taub,* 441 B.R. 211, 216 (Bankr. E.D.N.Y. 2010)). A trustee should not be removed for "mistakes in judgment where that judgment was discretionary and reasonable under the circumstances." *In re Bennett*, 2007 Bankr. Lexis 2970 at 29 (Bankr. N.D.N.Y.2007).
> *In re Regan*, 18-31694 (Bankr. N.D.N.Y. Oct 14, 2021)

26. "The party seeking to remove a trustee must make a 'strong showing because the effect of removal is deleterious to the continuity of the administration of the estate.'" *In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 317 (Bankr. S.D.N.Y. 2016) (citing *Matter of Carla Leather, Inc.*, 44 B.R. at 473).

27. "Removal should be exercised only 'if the administration of the estate in bankruptcy would suffer more from the discord created by the present trustee than would be suffered from a change in administration.'" *In re Concept Packaging Corp.*, 7 B.R. 607, 609 (Bankr. S.D.N.Y. 1980) (quoting *Freeport Italian Bakery, Inc.,* 340 F.2d at 55).

28. If a trustee is removed from any case, absent court order providing otherwise they must be removed from all cases in which they serve pursuant to section 324(b) of the Bankruptcy Code. Removal is "thus, a powerful device, to be deployed only in the most severe cases." *In re Belmonte*, 524 B.R. 17, 28 (Bankr. E.D.N.Y. 2015).

29. In this case, the decisions made in securing the Debtor bankruptcy estate property and investigating the Debtor's financial affairs: (a) were made pursuant to the authority under Bankruptcy Code §704; (b) were reasonable under circumstances where the Debtor was detained by the Federal Bureau of Investigations (FBI) and was no longer residing at a physically unsecured residence containing valuable property and unlocked vehicles exceeding six figure values; and (c) were made in a good faith effort to secure property or ascertain the financial affairs of the Debtor bankruptcy estate.

**TRUSTEE DUTIES PERFORMED UNDER THE BANKRUPTCY CODE**

30. The record lacks support for Debtor's contentions that the Trustee lacked authority, improperly performed duties or violated a reasonable business judgment standard, or did not act in good faith.

*Chapter 7 trustee duty to collect and monetize the property of the debtor bankruptcy estate.*

31. Pursuant to Bankruptcy Code §704(a)(1), a Chapter 7 trustee has a duty to "(1) collect and reduce to money the property of the bankruptcy estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of parties in interest;"

32. The disclosed and undisclosed personal property of the Debtor bankruptcy estate have been secured, inventoried, mostly sold, and otherwise accounted for in this case. See generally, ECF ## 188, 197, 205, 242, 243, 258, 265, 267, 268, 278, 283, 296, 305, 306, 317, 318, 319, 322, 354, 355, and 357.

33. The abandoned 40 North Road residence has been secured, winterized, and insured. A Bankruptcy Court approved professional has been marketing the residence for sale. See, ECF #298 and #304.

34. Diligent and cooperative communication with the United States Government has resulted in the Bankruptcy Court approved release of four (4) vehicles. See ECF ## 326, 327, and 343.

35. The Bankruptcy Court approved the negotiated release of two (2) additional vehicles. See, ECF #317 and #318.

36. An inventory of shoes and sunglasses has been filed (ECF #354) with a request for authority to conduct a sale of them (as well as the undisclosed trade names) (ECF #355).

*Chapter 7 trustee duty to investigate the debtor's financial affairs.*

37. Pursuant to Bankruptcy Code §704(a)(4), a Chapter 7 trustee has a duty "(4) investigate the financial affairs of the debtor;"

38. Investigation of the Debtor's financial affairs includes, among other things, securing recorded information. As discussed, *supra*, the Debtor and Ms. Oliver have interfered with the surrender of recorded information.

*Chapter 7 trustee duty to oppose the discharge of the debtor.*

39. Pursuant to Bankruptcy Code §704(a)(6), a Chapter 7 trustee has a duty "(6) if advisable, oppose the discharge of the debtor;"

40. An adversary proceeding objecting to the Debtor's discharge has resulted in an Order denying the Debtor a discharge. See ECF #244 and #301.

*Chapter 7 trustee duty to furnish bankruptcy estate administration information.*

41. Pursuant to Bankruptcy Code §704(a)(7), a Chapter 7 trustee has a duty "(7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest:"

42. Throughout the case, the Bankruptcy Court has been kept informed on the status of case administration through Bankruptcy Court hearings and ECF filings.

43. Throughout the case the creditors, the Office of the United States Trustee, and the Debtor have been kept informed on the status of the administration of the Debtor case through Bankruptcy Court hearings, ECF filings, in person meetings, telephonic conferences, email, and /or Zoom meetings.

44. The Debtor also received special treatment when the Bankruptcy Court provided the Debtor with a one-on-one opportunity to discuss case administration with me through a Zoom meeting (See ECF #288 and #289). The Debtor chose not to avail the opportunity.

45. Based upon the above, Debtor has failed to establish neglect or a breach of a Chapter 7 trustee statutory obligation or a violation of business judgment in this case

### DEBTOR'S MOTION FAILS BECAUSE THE DEBTOR ASSERTS NO FRAUD OR INJURY TO THE DEBTOR BANKRUPTCY ESTATE.

46. Assuming, *arguendo*, that there was neglect or breach of a Chapter 7 trustee statutory duty or improper action in violation of a reasonable business judgment, the Debtor Motion still fails because the Debtor makes no supportable allegation that there was fraud or actual injury to the Debtor bankruptcy estate. See, *In re Hayworth*, 356 Fed. Appx. 529, 530 (2d Cir. 2009); *In re Ampal-Am. L·real Corp.*, 554 B.R. 604, 624 (S.D.N.Y 2016), affd, 691 Fed. Appx. 12 (2d Cir. 2017). As the Bankruptcy Court explained in *Regan*:

> In light of the substantial degree of discretion given to a Trustee in administering assets of an estate, the court concludes Debtor has failed to establish the Trustee neglected or breached his statutory obligations in this case. The record lacks support for Debtor's contentions that the Trustee improperly performed his duties or that his actions violated a reasonable business judgment standard. Moreover, the court finds, just as in *Haworth*, that even if Debtor established that the Trustee's actions were improper, Debtor did not establish that they amounted to fraud or caused actual injury to Debtor's estate. *See In re Haworth*, 356 Fed. Appx. 529, 530 (2d Cir. 2009). No substantiated showing has been made to support any such conclusions.
> *In re Regan*, 18-31694 (Bankr. N.D.N.Y. Oct 14, 2021).

47. The record does not support the Debtor contention that duties were improperly performed or violated a reasonable business judgment standard. Moreover, the Debtor's record contains no support for a conclusion of fraud or injury to the Debtor bankruptcy estate. Thus, the Debtor Motion must fail.

## TRUSTEE REMOVAL SHOULD NOT OCCUR IF THE RESULT IS THAT THE DEBTOR BANKRUPTCY ESTATE WOULD NOT BENEFIT.

48. Even if the Court found "cause" under Bankruptcy Code §324(a), removal should not occur if it would not result in any benefit to the estate. See, *In re Ampal-Am. L·real Corp.*, 554 B.R. 604, 624 (S.D.N.Y 2016), affd, 691 Fed. Appx. 12 (2d Cir. 2017) (*quoting Freeport Italian Bakery, Inc*. 340 F.2d at 55).

49. Since the conversion to Chapter 7 in May 2024, the disclosed and undisclosed assets of the Debtor have been secured, the Debtor's discharge denied, and there have been two auction sales for which reports of sale have been filed with the Bankruptcy Court. Additionally, the Bankruptcy Court has approved a third auction of the artwork to be conducted during the 2025 Belmont Stakes weekend in Saratoga, New York, authorized the settlement and release of four (4) cars from the United States Government, authorized the settlement and release of two (2) other vehicles held by third parties, and authorized the retention of a professional to market the residence for sale. A request returnable March 12, 2025, is pending for the Bankruptcy Court to authorize the auction of shoes and sunglasses as well as previously undisclosed tradenames. Continuation of the administration of the Debtor bankruptcy estate without a change of Chapter 7 trustee would be beneficial to the bankruptcy estate.

## CONCLUSION

50. Since the Debtor's Motion does not satisfy the requirements to remove a Chapter 7 trustee, the Debtor Motion should be denied.

WHEREFORE, I request that the Debtor Motion be denied together with such other and further relief as the Bankruptcy Court may deem appropriate.

Dated: March 5, 2025

By: */s/ Christian H. Dribusch*
Christian H. Dribusch

## CERTIFICATE OF SERVICE

**CHRISTIAN H. DRIBUSCH**, certifies:

I am over the age of 18 years and reside in Delmar, New York. On March 5, 2025, I sent the trustee objection to Kris Roglieri's motion filed under ECF #345 as follows:

| | |
|---|---|
| Kris Daniel Roglieri | Kris Roglieri |
| 11 Hill Top Lane | N-4 #45131 |
| Poughkeepsie, NY 12603 | 4000 Main Street |
| | Troy, NY 12180 |

On March 5, 2025, the trustee response was also served upon the parties who appear on the ECF/PACER for the case.

Dated: March 5, 2025

/s/ Christian H. Dribusch
Christian H. Dribusch

Page | 12