Christian H. Dribusch (507021)
187 Wolf Road
Albany, NY 12205
(518) 227-0026

Date:  April 23, 2025
Time:  9:15 a.m.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In re:

KRIS DANIEL ROGLIERI                                  Chapter 7

                        *Debtor*                     Case No.  24-10157

---------------------------------------------------------------X

**MOTION AUTHORIZING TRUSTEE'S SALE OF REAL ESTATE
FREE AND CLEAR OF LIENS AND ENCUMBRANCES
PURSUANT TO 11 U.S.C. §363(b) AND (f)**

TO:    HON. ROBERT E. LITTLEFIELD, UNITED STATES BANKRUPTCY JUDGE

Christian H. Dribusch, Chapter 7 trustee (the "*Trustee)* moves this Court for entry of an order authorizing the Trustee to sell 40 North Road, Queensbury, New York ("*Property*") pursuant to a real property sale agreement (the "*Motion*").

The proposed real property sale agreement is attached hereto as Exhibit A ("*Agreement*")

In support of the Motion, the Trustee alleges as follows:

PARTIES, JURISDICTION AND VENUE

1.    The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court for the Northern District of New York.  See, ECF #1.

2.    The Debtor case has been converted to Chapter 7 and the Trustee has been appointed by the Office of the United States Trustee. See, ECF #159 and #160.

3.      This Motion made pursuant to Bankruptcy Code 363(f) and §105 is a core proceeding under §157(b)(2)(A) of title 28 of the United States Code because it relates to matters concerning the administration of the bankruptcy estate.

4.      This Court has jurisdiction over this proceeding pursuant to §157 and §1334 of title 28 of the United States Code.

5.      Venue is proper by virtue of §1409(a) of title 28 of the United States Code as the proceeding arises and relates to a case under the Bankruptcy Code pending before the Northern District of New York.

## FACTUAL BASIS FOR THE MOTION

6.      The Trustee requests an Order pursuant to Bankruptcy Code § 363(b) and (f) and §105 authorizing the sale of the Property, *free and clear of all liens, encumbrances, and other interests,* to Meadowview Lakes, LLC or their nominees ("*Purchaser*"), according to terms set forth in the Agreement.

7.      The Agreement is subject to Court approval.  The proposed sale is subject to higher and better offers being made on the return date of the Motion.  The Trustee proposes a bid protection requiring that the next higher and better offer be not less than $1,625,000.00, with $1,000.00 increments thereafter.

8.      The Trustee retained Davis-Davies Associates Real Estate, LLC ("*Broker*") as a real estate broker. ECF #304.

9.      The Broker has marketed the Property extensively since retention in November 2024 and has recommended that the Trustee seek Bankruptcy Court approval of the proposed sale of the Property.

10.    A copy of the last owner search ("*LOS*") is annexed hereto as <u>Exhibit B</u>. The LOS shows the following encumbrances:

- Key Bank National Association first mortgage.
- Key Bank National Association second mortgage.
- New York State Tax Warrant.
- Toadflax LLC first mechanic lien.
- Toadflax LLC second mechanic lien.

11.    April 1, 2025 payoffs on the Key Bank National Association Mortgages are annexed hereto as *Exhibit C*.  To facilitate the sale Key Bank National Association has agreed to accept the payoff amounts reflected on Exhibit C plus additional advances, if any, made prior to closing in satisfaction of their mortgages.

12.    New York State is agreeing to accept $320,325.16 from the proceeds of sale with the balance of its secured claim in the amount of $99,424.28 to be paid from the proceeds of the sale of personal property to which its Tax Warrant extends.  New York State has an avoidable tax penalty for the benefit of the estate in the amount of $138,932.26.  New York State will have either a priority or general unsecured claim for the $138,932.26.  *New York State's consent is conditional upon distributions on its claim being made to it as described in this paragraph.*

13.    Toadflax LLC filed two mechanic liens for *post-petition* services without first obtaining relief from the automatic stay and thus such filings are void under the applicable law of the Second Circuit Court of Appeals.

14.    The other anticipated costs associated with the sale of the Property include:

- Realtor commissions of approximately $68,000[1].
- Real estate counsel fees of approximately $2,000.[2]
- Transfer fees of approximately $7,000.

---

[1]  The Trustee will file a separate fee application to seek Bankruptcy Court approval of the broker fees.
[2]  The Trustee has filed a motion returnable April 23, 2025, to approve retention and compensation for Lecce & Arcodia as proposed real estate counsel.

- Possible Debtor exemption in the amount of $102,400.[3]

15.     The sale is to be free and clear of all liens, claims, security interests and encumbrances of every kind and nature and other interests, with all such liens, claims, pledges, security interests, encumbrances and interests *attaching* to the proceeds of sale to the same extent and in the same order of priority of any existing liens, claims, security interests, encumbrances, and interests of record, or as may be determined by the Court.

16.     The Agreement was negotiated with Purchaser at arm's length.   Accordingly, the Trustee believes that Purchaser is a good faith purchaser and is entitled to the protections of Bankruptcy Code § 363(m) should Purchaser be the successful bidder.

## POINTS AND AUTHORITY FOR SALE

*Bankruptcy Code § 363(b) and (f) Sale.*

17.     Bankruptcy Code § 363(b)(1) authorizes the trustee (or a debtor in possession, who has the rights and powers of a trustee) to use, sell or lease property of the estate other than in the ordinary course of business.

18.     Bankruptcy courts have substantial discretion when deciding whether to approve the sale of substantially all the Debtor's assets outside of a plan of reorganization, especially when there is an articulated business justification. See *Official Committee of Unsecured Creditors of the LTV Aerospace and Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 975 F.2d 141, 144 (2d Cir. 1992); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983)

19.     Bankruptcy Code §363(b)(1) provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property

---

[3] The Trustee anticipates that the Debtor may seek a homestead exemption under applicable New York State exemption laws.

of the estate." Courts generally apply some form of a business judgment test in determining whether to approve a proposed use, sale, or lease of estate property under section 363(b)(1). *See ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO, L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Stearns Holdings, LLC*, 607 B.R. 781, 792 (Bankr. S.D.N.Y. 2019); *In re Friedman's, Inc.*, 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); *see generally* Collier on Bankruptcy ("Collier") ¶ 363.02 (16th ed. 2020).

20.     Under this deferential standard, a bankruptcy court will generally approve a reasoned decision by a trustee or DIP to use, sell, or lease estate property outside the ordinary course of business. *See In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va.), *aff'd*, 553 B.R. 556 (E.D. Va. 2016).

21.     Section 363(f) of the Bankruptcy Code authorizes a trustee or DIP to sell property "free and clear of any interest in such property of an entity other than the estate," but only if:

- applicable nonbankruptcy law permits sale of such property free and clear of such interest;
- such entity consents;
- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
- such interest is in bona fide dispute; or
- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. 363(f).

22.     A bankruptcy court's power to order sales free and clear of a competing interest without the consent of the party asserting the interest has been recognized for more than a century. *See Ray v. Norseworthy*, 90 U.S. 128, 131–32 (1875). It promotes the expeditious liquidation of estate assets by avoiding delay caused by sorting out disputes concerning the validity and extent of competing interests, which can later be resolved in a centralized forum. It also facilitates the estate's realization of the maximum value possible from an asset. A prospective

buyer would discount its offer significantly if it faced the prospect of protracted litigation to obtain

clear title to an asset. *See In re WBQ P'ship*, 189 B.R. 97, 108 (Bankr. E.D. Va. 1995); *accord In

re Realia, Inc.*, 2012 WL 833372, at *10 (B.A.P. 9th Cir. Mar. 13, 2012) (noting that that "the

purpose of the 'free and clear' language is to allow the debtor to obtain a maximum recovery on its

assets in the marketplace"), *aff'd*, 569 F. App'x 544 (9th Cir. 2014).

23.     In this case, ample justification exists for the approval of the sale of the Property.  The

Trustee marketed the sale of the Property aggressively through a Broker prior to accepting the

Purchaser's offer as the highest and best offer.    The sale will allow the reduction of the New York

State secured claim which would otherwise attach to the proceeds of the sale of personal property and

thus additional funds will become available to benefit the unsecured creditors.  Finally, the bankruptcy

estate will be able to recover advances made to protect and preserve the Property without the need to

seek a Bankruptcy Code 506(c) surcharge.

24.     The two primary secured creditors, Key Bank National Association and New York

State Department of Taxation and Finance have had extensive participation in the administration of

the Property and are consenting to the proposed sale pursuant to Bankruptcy Code 363(f)(2).

25.     The Bankruptcy estate has a bona fide dispute with Toadflax, LLC.  An interest

may be stripped in a §363 sale if it is in "bona fide dispute." *See* Bankruptcy Code 363(f)(4).  For

an interest to be in bona fide dispute, it does not need to be the subject of current adversarial

proceedings. See *In re Gaylord Grain L.L.C.*, 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004). A bona

fide dispute exists if there is an "objective basis" for a "factual or legal dispute" over the interest's

validity. *See, e.g., In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995). The term "bona fide

dispute" also appears in §303 of the Bankruptcy Code. Courts look to interpretations of §303 for

guidance when interpreting §363(f)(4).  The bankruptcy court does not need to resolve the dispute,

but it must identify that it exists. *See In re Collins*, 180 B.R. at 452 ("Clearly this standard does not require the Court to resolve the underlying dispute, just determine its existence."). The trustee, therefore, must present evidence demonstrating an objective basis for the bona fide dispute. See *In re Octagon Roofing*, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991).

26.     As evidenced by the LOS, Toadflax filed post-petition mechanic liens (6/28/2024)[4] which are void *ab initio* as a violation of the automatic stay and therefore there is at minimum bona fide dispute under Bankruptcy Code 363(f)(4) although, as noted, the mechanic liens likely do not exist at all because they are void. See, *Rexnord Holdings Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir. 1994). Accordingly, the Bankruptcy Court has the authority to authorize the sale free and clear of Toadflax's void mechanic liens. If an action is void *ab initio,* the party seeking validation must move to annul the stay. *In re Best Payphones Inc.,* 279 B.R. 92, 97 (Bankr. S.D.N.Y. 2002).

27.     Even if the Toadflax mechanic liens were not void or subject to *bona fide* dispute, the sale would generate sufficient funds so that the liens would attach and thus satisfy the requirements of Bankruptcy Code 363(f)(3)

28.     The sale should be approved free and clear of liens and encumbrances because the secured parties have either provided their consent to the sale, there is a bona fide dispute, or the sale will generate proceeds greater than the aggregate value of the lien on the Property.

29.     The Trustee further requests authority to pay the secured claims including real property taxes, Key Bank National Association mortgage liens per Exhibit B and its consent, New York State Tax Warrant per paragraph 12 and its consent, and pay other customary closing costs from the proceeds at closing.

---

[4] Upon information and belief, the mechanic liens were also not properly served upon the Trustee.

30.      The Trustee will file a separate application to request the Bankruptcy Court approve the Broker fees.

31.      The Trustee will file a Report of Sale after closing the transaction.

**WHEREFORE**, the Trustee  respectfully requests that this Court enter an Order pursuant to 11 U.S.C. § 363(b) and (f), §105 authorizing the sale of the real estate free and clear of liens and other interests, such liens, and other interests to attach to the proceeds of sale, pursuant to the terms and conditions set forth in this Motion and the Agreement, authority to make the payments provided for herein, together with such other and further relief as to this Court may seem just and proper.

Dated this 2nd day of April 2025

By: */s/ Christian H. Dribusch*
Christian H. Dribusch
cdribusch@chd-law.com

# GLOBAL MLS, Inc.

## CONTRACT FOR PURCHASE AND SALE OF REAL ESTATE

THIS IS A LEGALLY BINDING CONTRACT. IF NOT UNDERSTOOD, WE RECOMMEND CONSULTING AN ATTORNEY BEFORE SIGNING.

**1. IDENTIFICATION OF PARTIES TO THE CONTRACT**

   **A. SELLER** - The Seller is **Kris Roglieri Estate**
     residing at **40 North Road, Queensbury, NY 12804**
     (the word "Seller" refers to each and all parties who have an ownership interest in the property).

   **B. BUYER** - The Buyer is **Andrew Genovese, Ashlie Genovese**
     residing at **19 Honey Hollow Road, Queensbury, New York 12804**
     (the word "Buyer" refers to each and all of those who signed below as Buyer).

**2. PROPERTY TO BE SOLD**

   Seller agrees to sell and Buyer agrees to purchase the property known as **40 North Road**, located in the City, Village or Town of **Queensbury** in **Warren** County, State of New York. The property includes all of Seller's transferable rights, privileges, and easements, if any, related to the property. The lot size is as per deed and approximately **14.11 acres**. A copy of the deed must be provided by the Seller.
   Tax Map Number(s): **523400** **302.7-1-37**

**3. ITEMS INCLUDED IN SALE**

   The items listed in A, B & C below, if now in or on said premises, are included in the sale. Seller warrants that Seller has good legal title free and clear of all liens and encumbrances to all these articles or has stipulated in D below that such are rental items. Such items will be in working order at the time of closing. The condition of the personal property is made without warranty.

   **A. GENERAL ITEMS** - The following items, if now in or on said premises, are included in the sale unless specifically excluded from this Contract. None of these articles shall be removed from the premises by the Seller after signing this contract.

| | | |
|---|---|---|
| Awnings | Flagpoles | Radiator Covers |
| Bathroom Mirrors | Generators (built-in/hard-wired) | Shades & Blinds |
| Built-in Appliances (including range hood) | Heating/Central Air & Associated Fixtures | Sheds |
| Built-in Cabinets | Hot Tub/Spa/Sauna | Shrubs, Trees, Plants & Other Landscaping |
| Built-in Closet Systems | Invisible Fence, Transmitter Receiver/Collar | Solar Panels (if owned by Seller) |
| Built-in Security & Alarm Systems | Light Bulbs, Switch Plates & Outlet Covers | Storm & Screen Doors |
| Compactors & Disposals | Lighting Fixtures, Paddle Fans & Remotes | Storm Windows & Screens |
| Door Hardware incl. Knockers | Mailboxes | Television Aerials, Rotors & Satellite Dishes |
| Drapery, Valences, Curtain & Traverse Rods | Owned Fuel Tanks (propane, oil, etc.) | Television Wall Mounts |
| Garage Door Openers & Remotes | Playground Equipment (Swing Set etc.) | Wall-to-Wall Carpeting, as placed |
| Fencing | Plumbing Fixtures | Water Filters & Treatment Systems |
| Fire, Smoke & Carbon Monoxide Detectors | Pool and all Pool Equipment/Supplies | Weathervanes |
| Fireplace Mantels, Inserts, Doors, Screens | Pumps (including Water & Sump) | Wood Furnaces |

   **B. APPLIANCES** - The following appliances indicated below are also included in the purchase price:

   ☒ Stove    ☒ Refrigerator    ☐ Dishwasher    ☐ Microwave    ☐ Freezer    ☐ Washer    ☐ Dryer    ☐ Wood Stove

   **C. OTHER INCLUDED ITEMS:** _____

   **D. LEASED/RENTAL ITEMS** -The following are leased/rental items: _____

   **E. ITEMS EXCLUDED FROM SALE:** _____

**4. PURCHASE PRICE**

   The purchase price is **One Million, Six Hundred Thousand and 00/100** DOLLARS
   (**$1,600,000.00**). The Buyer shall pay the purchase price as follows:
   A. $ **50,000.00** deposit held pursuant to paragraph 15
   B. $ **50,000.00** additional deposit on **after attorney review is completed**
   C. $ **1,500,000.00** in certified check, bank draft, or attorney escrow account check at closing (Purchase Price - A - B = C)
   D. $ _____ seller's contribution (as referenced in paragraph 5Biii)
   E. $ _____

   All costs and fees relative to the closing for both the Buyer and Seller shall be paid by certified funds or attorney escrow checks. **No third-party checks will be accepted at closing.**

**5. FINANCING**

   **A. ☒ CASH**

     The mortgage contingency is hereby waived. Buyer shall provide written verification of available funds prior to the close of attorney review as specified in paragraph 17.

   **B. ☐ MORTGAGE**

     i. This Agreement is contingent upon Buyer obtaining approval of a ☐ Conventional, ☐ FHA, ☐ VA (if FHA or VA, see attached required addendum), or ☐ _____ mortgage loan of $ _____ for a term of not more than ___ years at a ☐ fixed or ☐ adjustable interest rate not to exceed the prevailing rate. Buyer agrees to use diligent efforts to obtain said approval and shall apply for a mortgage loan within _____ business days after the Seller has accepted this contract.

     ii. Buyer agrees to apply for such mortgage loan to at least one lending institution or licensed mortgage broker. Upon receipt of a written mortgage commitment (the "Commitment Date") or in the event Buyer chooses to waive this mortgage contingency, Buyer shall provide notice in writing to both attorneys of Buyer's receipt of the mortgage commitment or of Buyer's waiving of this contingency. Upon receipt of such notice this contingency shall be deemed waived or satisfied as the case may be. In the event notice as called for in the preceding sentence has not been received on or before _____, then either Buyer or Seller may terminate, or the parties may mutually agree to extend, this contract by written notice to both attorneys. Upon receipt

Page 1 of 5

Buyer Initials _____ _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

GlobalMLS 7/2024

Seller Initials _CHD_

Southern Adirondack Realty, LLC, 7 Chinaman Circle Queensbury NY

**Exhibit A**

of termination notice from either party, and in the case of notice by the Buyer, proof of Buyer's inability to obtain said mortgage approval, this agreement shall be cancelled, null and void and all deposits made hereunder shall be returned to the Buyer. If Buyer does not receive clear to close by their lender within twenty (20) business days of the Commitment Date, then upon no less than three (3) business days' notice at any time thereafter, Seller may terminate this contract by written notice to Buyer in accordance with Paragraph 22.

iii. **Seller's Contribution:** At closing, as a credit toward prepaids, closing costs and/or points, Seller shall credit to Buyer $_____ of the purchase price.

iv. In the event Buyer's lender requires certain improvements as part of their mortgage commitment, said repairs must be acceptable to the parties prior to installation and, if acceptable, shall be performed at the expense of the Buyer unless otherwise agreed to in writing. The Buyer shall be responsible for the risk of loss to said improvements in the event the closing does not occur through no fault of the Seller.

v. This contract ☐ is or ☒ is not contingent on the sale of another property prior to the transfer of title.

## 6. MORTGAGE EXPENSE AND RECORDING FEES
The Mortgage Recording Tax imposed on the mortgagor, mortgage and deed recording fees, expenses of drawing papers and any other expenses to be incurred in connection with procuring a mortgage, shall be paid by the Buyer. The Seller further agrees to pay the expenses of procuring and recording satisfactions of any existing mortgages.

## 7. TITLE AND SURVEY
A 40-year abstract of title, 5-year tax search, and any continuations thereof: or a fee title insurance policy, shall be obtained at the expense of the ☒ Buyer ☐ Seller. The Seller shall cooperate in providing any available survey, abstract of title, or title insurance policy information without cost to Buyer. The Buyer shall pay the cost of updating any such survey or the cost of a new survey. Where the property is improved with a manufactured home, which is included in the sale, the Seller shall provide the original title, a copy of the HUD seal affixed to the property, and confirmation that title will be conveyed free and clear of all liens.

## 8. CONDITIONS AFFECTING TITLE
The Seller shall convey and the Buyer shall accept the property subject to all covenants, conditions, restrictions, easements of record, and zoning and environmental protection laws so long as the property is not in violation thereof and any of the foregoing does not prevent the intended use of the property for the purpose of_____**Single Family Residence**_____; also ☐ is subject or ☒ is not subject to any existing tenancies, any unpaid installments of street and other improvement assessments payable after the date of the transfer of title to the property, and any state of facts which an inspection and/or accurate survey may show, provided that nothing in this paragraph renders the title to the property unmarketable. Seller further agrees not to grant any leases, easements, or restrictions against the property on or after the date of this agreement. If Buyer correctly rejects Seller's title to the property as unmarketable, Seller shall have a reasonable length of time to cure the objection. If Seller is unable to cure the objection, Seller's sole responsibility shall be to return all deposits to Buyer without interest, and upon such payment this contract shall be terminated, and Seller shall be discharged of all liability to Buyer.

## 9. DEED
The property shall be transferred from Seller to Buyer by means of a Warranty Deed with Lien Covenant furnished by Seller, unless otherwise agreed to in writing by both parties. However, if Seller is transferring the property as an executor, administrator, trustee, guardian, or other fiduciary, the deed usual to such cases shall be acceptable. The deed and real property transfer gains tax affidavit will be properly prepared and signed so that it will be accepted for recording by the County Clerk in the County in which the property is located. Seller agrees to cooperate in signing any reasonable title affidavits requested by a title company of the Buyer's choice, executing any reasonable Closing Disclosure or other forms requested by Buyer's lender.

## 10. TAX COMPLIANCE
A. Seller shall pay the New York State Real Property Transfer Tax imposed by Tax Law Section 1402 and, if applicable, Buyer shall pay the Additional Tax (aka "Mansion Tax" or "Luxury Tax") imposed by Tax Law Section 1402-a and calculated on the TP-584 provided by the Seller with allowance for any applicable tax credits.
B. If required by law, Seller will complete and execute Form IT-2663 (Non-NYS Residential Tax Gains) and pay the required tax.
C. Seller represents and warrants to Buyer that all occupancy taxes arising out of rentals of the property have been or will be paid before closing. In the event of a breach of this representation and warranty, Seller shall indemnify Buyer from any liability Buyer may suffer for such tax obligation that shall have arisen during Seller's ownership of the property. This paragraph shall survive the closing of title.

## 11. TAX AND OTHER ADJUSTMENTS
The following, if any, shall be apportioned so that the Buyer and Seller are assuming the expenses of the property and income from the property pro-rated as of the date of title transfer:
A. Seller shall assign to Buyer all written leases, rents, security deposits affecting the premises; and furnish a signed Estoppel Certificate from each Tenant.
B. Taxes, sewer, water, and condominium or homeowner association fees.
C. Municipal assessment yearly installments except as set forth in paragraph "8".
D. Fuel, based upon fair market value at time of closing as confirmed by a certification provided by Seller's supplier.

## 12. PRE-CLOSING INSPECTION
Buyer, or their chosen representative, has the right to inspect the property at a reasonable hour within 48 hours prior to the transfer of title to ascertain there has been no material change in the condition of the property and included items from contract. Seller shall leave the premises in broom clean condition and be promptly notified of any problems discovered.



Buyer Initials_____

Seller Initials 

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

**Exhibit A**

**13. TRANSFER OF TITLE**
The transfer of title to the property from Seller to Buyer will take place at a location within 30 miles of the premises, at the county clerk's office where the property is located, or at a location that is mutually agreeable to the parties. The closing will be **on or about** _____06/30/2025_____. Both Seller and Buyer shall provide an unexpired, government-issued photo identification at closing.

**14. POSSESSION**
Buyer shall be granted possession of the property at closing, including keys, garage door openers, and/or security codes.

**15. DEPOSITS**
Check payable to: <u>Davies-Davies & Associates RE</u>    Financial Institution: <u>Arrow Bank</u>
It is agreed that if the offer is accepted by the Seller, the deposit will be delivered to the Listing Broker within __3__ days. All deposits made by the Buyer will be held in a non-interest-bearing escrow account held by the Listing Broker at the institution identified above until the contingencies and terms have been met. The Buyer will receive credit on the total amount of the deposit toward the purchase price. The Listing Broker shall then apply the total deposit to the brokerage fee. Any excess of deposit over and above such fee will go to the Seller. Upon the satisfaction of all contingencies in this contract, the deposit(s) made by the Buyer pursuant to Paragraph 4A &4B shall be deemed non-refundable, provided however, that Buyer shall receive a refund of all deposits made by Buyer if:
a.   Seller is in default of its obligations under this agreement, or
b.   Seller is unable to deliver a marketable title, or
c.   This contract is terminated pursuant to any other provision of this Contract.
In the event of a dispute over the release of any funds, if the Broker holding the deposit determines, in its sole discretion, that sufficient progress is not being made toward a resolution of the dispute, that Broker may commence an interpleader action and pay the deposit monies into Supreme Court of the county where the property is located. The Broker's reasonable costs and expenses, including attorney's fees, shall be paid from the deposit upon the resolution of the interpleader action and the remaining net proceeds of the deposit shall be disbursed to the prevailing claimant. In the event the deposit is insufficient to cover the Broker's entitlement, the non-prevailing party shall pay the remaining balance.

**16. REAL ESTATE BROKER AND COOPERATING BROKER COMPENSATION**
   **A.   REAL ESTATE BROKER:** The Seller and Buyer agree that <u>Davies-Davies and Associates RE, LLC</u> (Listing Broker) and <u>Southern Adirondack Realty, LLC</u> (Selling Broker) brought about the sale, and Seller agrees to pay the brokerage commission as set forth in the listing agreement and Buyer agrees to pay brokers' commission as set forth in the buyer's broker agreement, if applicable.

   **B.   COOPERATING BROKER COMPENSATION:** The Cooperating Broker shall be paid ☒ **2.00**% of the purchase price or ☐ $_____ no later than closing, unless otherwise agreed upon in writing. The Seller is offering to contribute ☒ **2.00**% of the purchase price or ☐ $_____ towards this fee and the Cooperating Broker to apply this amount against its commission under any agency agreement with Buyer. Nothing herein shall be deemed to have altered the agency relationships disclosed.

**17. ATTORNEY APPROVAL**
This agreement is contingent upon Buyer and Seller obtaining approval of this agreement by their attorney as to all matters, without limitation. This contingency shall be deemed waived unless Buyer's or Seller's attorney on behalf of their client notifies the other party or their counsel in writing, as called for in Paragraph 22, of their disapproval of this agreement no later than (date) ___04/18/2025___ (*suggested minimum of three (3) business days*). If Buyer's or Seller's attorney so notifies, then this agreement shall be deemed cancelled, null and void, and all deposits shall be returned to the Buyer.
Seller and Buyer are hereby advised it is highly recommended that they retain the services of an attorney. If Seller or Buyer chooses not to retain the services of an attorney, Seller and/or Buyer assume all risks associated with not retaining an attorney and each holds the real estate brokers and their associated licensees harmless from any damages that may occur as a result thereof. Seller and Buyer understand that the real estate brokers and their associated licensees are prohibited from practicing law without a license and are unable to provide any legal services to Seller or Buyer under any circumstances.

**18. TIME PERIOD OF OFFER**
Buyer and Seller understand and agree that, unless earlier withdrawn, this offer is good until ___11___ a.m. _____ p.m. on _____04/04/2025_____, and if not accepted, executed, and delivered to the Buyer by the Seller prior to that time, then this offer becomes null and void.

**19. CONDITION OF PREMISES**
The buildings on the premises are sold "as is" without warranty as to condition, and Buyer agrees to take title to the buildings "as is" and in their present condition subject to reasonable use, wear, tear, and natural deterioration between the date hereof and the closing of title except that in the case of destruction within the meaning of the provisions of Section 5-1311 of The General Obligations Law of the State of New York entitled "Uniform Vendor and Buyer Risk Act," said section shall apply to this contract. Seller will maintain the property (including but not limited to structures, seasonal grounds maintenance, fixtures, appliances, and personal property specifically listed in this agreement) in its present condition, normal wear and tear excepted, and leave the property in broom swept condition at closing.

**20. INSPECTIONS:** The offer to purchase is contingent upon satisfactory results of a home inspection completed by a licensed home inspector, architect, engineer, or code enforcement official authorized by statute to conduct such inspections. All Buyer contractors and consultants shall have public liability insurance in force and effect at all times they access the property.

Buyer Initials _____    Page 3 of 5    Seller Initials _____
GlobalMLS 7/2024

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

**Exhibit A**

*This agreement is contingent upon all the following applicable provisions unless crossed out and initialed by the Buyer.*

**A. RIGHT OF INSPECTION**
Buyer and/or their representative shall be given access to the property for any tests or inspections required by the terms of this contract upon reasonable notice to the Seller or Seller's representative.

**B. STRUCTURAL & HAZARDOUS INSPECTIONS**
For the purposes of the following inspections, a substantial defect shall be defined as any individual repair which will reasonably cost over ☐ $2000 or ☐ $_____ to correct:
STRUCTURAL INSPECTION- A determination that the dwelling(s) and property are free from any substantial structural, mechanical, electrical, plumbing (including pool, hot tub, or irrigation), roof covering, or municipal water and sewer defects.
HAZARDOUS MATERIALS/SUBSTANCES- Buyer may have a qualified individual or entity test the ground and buildings on the property for asbestos, mold (mildew is not classified as mold), or any contamination from any hazardous materials whose presence or discharge on the property is a violation of any applicable law or regulation.
ACTIVE PEST INFESTATIONS (insects and wildlife)- A determination by a Certified Exterminator or other qualified professional that the premises are free from active infestation or damage by wood destroying organisms, insects, or wildlife.

**C. ADDITIONAL INSPECTIONS**
RADON INSPECTION- The Buyer may have the habitable dwelling(s) located on the property tested by a reputable service for the presence of radon gas. The Seller agrees to maintain a "closed-house condition" during the test. "Closed house condition" shall mean that the Seller shall keep the windows closed and minimize the number of times the exterior doors are opened or left open. The Seller agrees to comply with all reasonable requirements of the testing service in connection with the test, provided such compliance shall be at no cost to Seller. If the test reveals that the level of radon gas exceeds the US EPA action level of four (4) picocuries per liter or higher, the presence of radon gas shall be considered a substantial defect.
SEPTIC SYSTEM INSPECTION- A test of the septic system by a licensed professional engineer, licensed plumber septic system contractor, County Health Department, or other qualified person indicating that the system is in working order. Upon conclusion of the inspection, the Buyer at their sole expense shall return the premises in the same condition as it was upon the commencement of the inspection and for repairing any and all damage that has occurred on the premises as a result of the inspection. If the Buyer fails to restore the property to its pre-inspection condition, as determined by the Seller, the Seller will cause the restoration to be performed and the Buyer will be responsible for any and all costs associated therewith if contract does not close. ☐ Municipal Building and Code Inspection of septic system required (see addendum)
WELL WATER FLOW AND/OR QUALITY TESTS- (a) A potability water quality test to meet the standards of the New York State Department of Health to be performed by a New York State approved laboratory, (b) any chemical, metal, inorganic, or other tests as the Buyer may request, and (c) a flow test to be performed indicating a minimum flow sufficient to produce three (3) gallons per minute for two (2) hours, or the minimum required to obtain financing on the subject property as dictated by the Buyer's lender.
UNDERGROUND STORAGE TANKS- The presence of any petroleum contamination on or underground shall be considered a substantial defect.

**D. EXCLUSIONS**
The following buildings or items on the premises are excluded from these inspections: _____

**E. NOTIFICATIONS**
All tests and/or inspections contemplated pursuant to this Paragraph shall be completed on or before _____ and at Buyer's expense, and shall be deemed waived unless Buyer provides written notice of the failure of any of these tests and/or inspections, which notice is to be sent in accordance with Paragraph 22 of this Agreement, no later than _____.
If Buyer so notifies and further supplies written confirmation by a copy of the test results and/or inspection report(s), or letter(s) from the inspector, then this entire agreement shall be deemed canceled, null and void, and all deposits made hereunder shall be returned to Buyer or, at Buyer's option, said cancellation may be deferred for a period of ten (10) days in order to provide the parties an opportunity to otherwise agree in writing.

**F. WAIVER OF INSPECTION**
_____ (Please initial if Buyer waives inspections) Buyer elects to waive all inspections indicated above, and Buyer understands it is highly recommended that an inspection be conducted by an individual or entity qualified to do so. By waiving the inspection, Buyer assumes all risks associated with such waiver now and in the future, and holds the attorneys, real estate brokers, and their associated licensees involved in this transaction harmless from any damages that may occur as a result of such waiver.

**21. DISCLOSURES/ADDENDA ATTACHED**
☒ Property Condition Disclosure OR ☐ Exemption applicable, exemption claimed: _____
☒ Lead Paint Disclosure
☐ Carbon Monoxide/Smoke Detector Disclosure      ☐ Rent and Security Schedule          ☐ Vacant Land Addendum
☐ Closed Pool/Hot Tub/Irrigation Disclosure       ☐ Mortgage Assumption Contingency    ☐ FHA/VA
☐ Other(s) _____               ☐ Homeowner's Association Docs       ☐ 48 Hour Contingency

**22. NOTICES**
All notices contemplated by this Agreement shall be in writing, delivered by first class mail postmarked no later than the required date or by electronic transmission by 11:59 p.m. on such required date. Such notice shall be effective on the date it is sent. Any notices shall be sent to the other party's attorney if known, if not then to the other party by serving the first named Buyer or Seller at the address set forth for such party. This contract may be signed in counterparts, by facsimile, or upon electronic signature. **A courtesy copy of contract amendments shall be sent to both brokers.**

Buyer Initials _____ DS _____ Initial

Seller Initials _CHD_

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

**Exhibit A**

23. **ENTIRE AGREEMENT**
This contract contains all agreements of the parties hereto. There are no promises, agreements, terms, conditions, warranties, representations, or statements other than contained herein. This agreement shall apply to and bind the heirs, legal representatives, successors and assigns of the respective parties. It may not be changed orally. The parties agree that the venue for any issues concerning this contract shall be the county in which the property is located. This contract may not be assigned without the consent of the Seller.

24. **OTHER TERMS (if any)**
1. Closing shall be contingent upon the seller conveying the property free and clear of all liens.
2. Property shall be maintained until the closing, including lawn care.
3. Closing may be adjusted sooner/later than the closing date, as needed.
4 Subject to Bankruptcy Court approval. CHD

Seller will furnish Seller's Taxpayer Identification Number or Statement of Exemption from Information Reporting upon closing. By signing below, Seller affirms under penalty of perjury that Seller is not a foreign person as defined by Internal Revenue Code §§897 and 1445 and the Regulations there under as same may be amended (the Foreign Investment in Real Property Tax Act herein referenced as FIRPTA).

**Signatures of Buyers:**

Dated: _____ Time: _____

Buyer Andrew Genovese

Buyer Ashlie Genovese

Selling Broker JEANNE DION

**Signatures of Sellers:**

Dated: 3/21/2025 _____ Time: _____

*Christian H. Dribusch, Trustee*

Seller Kris Roglieri Estate

Seller _____

Listing Broker _____

The following is for informational purposes only: **PLEASE COMPLETE**

**Attorney for Buyer:**

Name: Brandi Burns

Firm: Brandi Burns, Esq    Phone: (518)490-2289

Email: brandi@brandiburnsattorney.com

**Attorney for Seller:**

Name: _____

Firm: _____    Phone: _____

Email: _____

**Selling Agent:**

Name: Jeanne Dion

Brokerage: Southern Adirondack Realty,    Phone: (518)307-5129

Email: southernadirondack@gmail.com

**Listing Agent:**

Name: Dan Davies

Brokerage: Davies-Davies and Associates    Phone: (518)796-9068

Email: dan@daviesrealty.net

Property Tax Identification Number: 523400 302.7-1-37    City, Village, Town: Queensbury

Mailing Address of Property to Be Sold: 40 North Road, Queensbury, NY 12804

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

**Exhibit A**

# GL☉BAL MLS, Inc.
## DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS
### SELLER /BUYER

Seller Name(s): __Kris Roglieri Estate__

Property Address: __40 North Rd, Queensbury, New York  12804__

**Lead Warning Statement**

*Every Buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any know lead-based paint hazards. A risk assessment of inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure**

a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    a. ☐  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    _____

    b. ☒  Seller has no knowledge of lead-based paint and/or lead based paint hazards in the housing.

b)  Records and report available to the Seller (check (i) or (ii) below):

    a. ☐  Seller has provided the Buyer with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

    b. ☒  Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.
    Initial

**Buyer's Acknowledgement (initial all that apply)**

    _____ Initial   Buyer has received copies of all information listed above.

    _____ Initial   Buyer has received the pamphlet *Protect Your Family from Lead in Your Home.*

    Buyer has (check (i) or (ii) below):

    a. _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

    b. _____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

    _____ Initial   Seller has not provided records or reports to Buyer.

**Agent's Acknowledgement (initial)**

    g. _____ Agent has informed the Seller of the Seller's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | |
|---|---|---|
| *ANDREW GENOVESE* | Signed by: | *Christian Oakland, Trustee* |
| CE4B6175546D46A... | | |
| Buyer            Date | | Seller Kris Roglieri Estate            Date |
| *Ashlie Genovese* | | |
| C9A79EAFE6AB493... | | |
| Buyer            Date | | Seller            Date |
| | | |
| Buyer Agent            Date | | Listing Agent Daniel L. Davies            Date |
| | | Davies~Davies & Associates Real Estate, LLC |
| | | Listing Firm |

*2/22 - Global MLS  449 New Karner Road, Albany, NY  12205  518-464-0191

Page 1 of 1

# Exhibit A



**NEW YORK STATE OF OPPORTUNITY** | **Division of Licensing Services**

New York State
Department of State
Division of Licensing Services
P.O. Box 22001
Albany, NY 12201-2001
Customer Service: (518) 474-4429
https://dos.ny.gov

## Property Condition Disclosure Statement

**Name of Seller or Sellers:** Kris Roglieri Estate

**Property Address:** 40 North Rd, Queensbury, New York 12804

**General Instructions:**

The Property Condition Disclosure Act requires the seller of residential real property to cause this disclosure statement or a copy of thereof to be delivered to a buyer or buyer's agent prior to the signing by the buyer of a binding contract of sale.

**Purpose of Statement:**

This is a statement of certain conditions and information concerning the property known to the seller. This Disclosure Statement is not a warranty of any kind by the seller or by any agent representing the seller in this transaction. It is not a substitute for any inspections or tests and the buyer is encouraged to obtain his or her own independent professional inspections and environmental tests and also is encouraged to check public records pertaining to the property.

A knowingly false or incomplete statement by the seller on this form may subject the seller to claims by the buyer prior to or after the transfer of title.

"Residential real property" means real property improved by a one to four family dwelling used or occupied, or intended to be used or occupied, wholly or partly, as the home or residence of one or more persons, but shall not refer to (a) unimproved real property upon which such dwellings are to be constructed or (b) condominium units or cooperative apartments or (c) property on a homeowners' association that is not owned in fee simple by the seller.

**Instruction to the Seller:**

a. Answer all questions based upon your actual knowledge.
b. Attach additional pages with your signature if additional space is required.
c. Complete this form yourself.
d. If some items do not apply to your property, check "NA" (Non-applicable). If you do not know the answer check 'Unkn' (Unknown).

**Seller's Statement:**

The seller makes the following representations to the buyer based upon the seller's actual knowledge at the time of signing this document. The seller authorized his or her agent, if any, to provide a copy of this statement to a prospective buyer of the residential real property. The following are representations made by the seller and are not the representations of the seller's agent.

### GENERAL INFORMATION

1. How long have you owned the property? ............................   Bankruptcy Estate

2. How long have you occupied the property? ..   NA

3. What is the age of the structure or structures? ..................................
   *Note to buyer - If the structure was built before 1978 you are encouraged to investigate for the presence of lead based paint.*

4. Does anybody other than yourself have a lease, easement or any other right to use or occupy any part of your property other than those stated in documents available in the public record, such as rights to use a road or path or cut trees or crops? ..........  ...............   [_] Yes [_] No [✓] Unkn [_] NA

5. Does anybody else claim to own any part of your property? If yes, explain below   [_] Yes [_] No [✓] Unkn [_] NA

6. Has anyone denied you access to the property or made a formal legal claim challenging your title to the property? *If yes  explain below* ................................   [_] Yes [_] No [✓] Unkn [_] NA

Dunn-Davies Associates, PO Box 201 Cloverdale NY 12820                    Phone: 5185559606      Fax: 5185559652         40 North Rd
Daniel Davies                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

DS
 R

Initial
RG

**Exhibit A**

## Property Condition Disclosure Statement

7.  Are there any features of the property shared in common with adjoining landowners or a home-owner's association, such as walls, fences or driveways? *If yes, describe below* ............ [_] Yes [_] No [✓] Unkn [ ] NA

_____

_____

8.  Are there any electric or gas utility surcharges for line extensions, special assessments or homeowner or other association fees that apply to the property? *If yes, describe below* ...... [ ] Yes [ ] No [✓] Unkn [_]NA

_____

_____

9.  Are there certificates of occupancy related to the property? *If no, explain below* .......... [ ] Yes [ ] No [✓] Unkn [_] NA

_____

_____

### ENVIRONMENTAL

**Note to Seller:**

In this section, you will be asked questions regarding petroleum products and hazardous or toxic substances that you know to have been spilled, leaked or otherwise been released on the property or from the property onto any other property. Petroleum products may include, but are not limited to, gasoline, diesel fuel, home heating fuel, and lubricants. Hazardous or toxic substances are products or other material that could pose short or long-term danger to personal health or the environment if they are not properly disposed of, applied or stored. These include, but are not limited to, fertilizers, pesticides and insecticides, paint including paint thinner, varnish remover and wood preservatives, treated wood, construction materials such as asphalt and roofing materials, antifreeze and other automotive products, batteries, cleaning solvents including septic tank cleaners, household cleaners, pool chemicals and products containing mercury and lead and indoor mold.

**Note to Buyer:**

If contamination of this property from petroleum products and/or hazardous or toxic substances is a concern to you, you are urged to consider soil and groundwater testing of this property.

10. Is any or all of the property located in a Federal Emergency Management Agency (FEMA) designated floodplain? *If yes, explain below* .... ..................... [_] Yes [_] No [✓] Unkn [_] NA

_____

_____

11. Is any or all of the property located wholly or partially in the Special Flood Hazard Area ("SFHA"; "100-year floodplain") according to the Federal Emergency Management Agency's (FEMA's) current flood insurance rate maps for your area? *If yes, explain below* .......... [ ] Yes [_] No [✓] Unkn [_] NA

_____

_____

12. Is any or all of the property located wholly or partially in a Moderate Risk Flood Hazard Area ("500-year floodplain") according to FEMA's current flood insurance rate maps for your area? *If yes, explain below* .... ....................... [ ] Yes [ ] No [✓] Unkn [_] NA

_____

_____

13. Is the property subject to any requirement under federal law to obtain and maintain flood insurance on the property? *If yes, explain below* ......................... [ ] Yes [_] No [✓] Unkn [_] NA

•   Homes in the Special Flood Hazard Area, also known as High Risk Flood Zones, on FEMA's flood insurance rate maps with mortgages from federally regulated or insured lenders are required to obtain and maintain flood insurance. Even when not required, FEMA encourages homeowners in high risk, moderate risk, and low risk flood zones to purchase flood insurance that covers the structure(s) and the personal property within the structure(s). Also note that homes in coastal areas may be subject to increased risk of flooding over time due to projected sea level rise and increased extreme storms caused by climate change which may not be reflected in current flood insurance rate maps.

_____

_____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas TX 75201    www.lwolf.com        15 North Rd

DS
[signature]

Initial
[initials]

**Exhibit A**

## Property Condition Disclosure Statement

14. Have you ever received assistance, or are you aware of any previous owners receiving assistance, from the Federal Emergency Management Agency (FEMA), the U.S. Small Business Administration (SBA), or any other federal disaster flood assistance for flood damage to the property? *If yes, explain below .* .............................................. [__] Yes [__] No [✓] Unkn [__] NA
    - For properties that have received federal disaster assistance, the requirement to obtain flood insurance passes down to all future owners. Failure to obtain and maintain flood insurance can result in an individual being ineligible for future assistance

15. Is there flood insurance on the property? *If yes, attach a copy of the policy* ......... [__] Yes [✓] No [__] Unkn [__] NA
    - A standard homeowner's insurance policy typically does not cover flood damage. You are encouraged to examine your policy to determine whether you are covered.

16. Is there a FEMA elevation certificate available for the property? *If yes, attach a copy of the certificate* ...................................................... [__] Yes [__] No [✓] Unkn [__] NA
    - An elevation certificate is a FEMA form, completed by a licensed surveyor or engineer. The form provides critical information about the flood risk of the property and is used by flood insurance providers under the National Flood Insurance Program (NFIP) to help determine the appropriate flood insurance rating for the property. A buyer may be able to use the elevation certificate from a previous owner for their flood insurance rating.

17. Have you ever filed a claim for flood damage to the property with any insurance provider, including the National Flood Insurance Program (NFIP)? *If yes, explain below* ............. [__] Yes [__] No [✓] Unkn [__] NA
    _____
    _____

18  Is any or all of the property located in a designated wetland? *If yes, explain below* ... [__] Yes [__] No [✓] Unkn [__] NA
    _____
    _____

19  Is the property located in an agricultural district? *If yes, explain below* ... [__] Yes [__] No [✓] Unkn [__] NA
    _____

20. Was the property ever the site of a landfill? *If yes, explain below* ... ....... [__] Yes [__] No [✓] Unkn [__] NA
    _____
    _____

21. Are there or have there ever been fuel storage tanks above or below the ground on the property? [__] Yes [__] No [✓] Unkn [__] NA
    - If yes, are they currently in use? ............................................. [__] Yes [__] No [✓] Unkn [__] NA
    - Location(s) _____

    - Are they leaking or have they ever leaked? *If yes, explain below* ... [__] Yes [__] No [✓] Unkn [__] NA

22. Is there asbestos in the structure? *If yes, state location or locations below* . ..... [__] Yes [__] No [✓] Unkn [__] NA

23  Is lead plumbing present? *If yes, state location or locations below* .......... [__] Yes [__] No [✓] Unkn [__] NA

24. Has a radon test been done? *If yes, attach a copy of the report* . [__] Yes [__] No [✓] Unkn [__] NA

DOS-1614-f (Rev. 01/24)

Page 3 of 7

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St. Suite 2200, Dallas  TX  75201    www.lwolf.com    48 Youth St.

Docusign Signed by:
Initial

ANDREW GENOVESE

CE486175546D4CA...

**Exhibit A**

## Property Condition Disclosure Statement

25. Has motor fuel, motor oil, home heating fuel, lubricating oil or any other petroleum product, methane gas, or any hazardous or toxic substance spilled, leaked or otherwise been released on the property or from the property onto any other property? *If yes, describe below* . . . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

_____

_____

26. Has the property been tested for the presence of motor fuel, motor oil, home heating fuel, lubricating oil, or any other petroleum product, methane gas, or any hazardous or toxic substance? *If yes, attach report(s)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

_____

27. Has the property been tested for indoor mold? *If yes, attach a copy of the report* . . . . . . . . .   [__] Yes [__] No [✓] Unkn

## STRUCTURAL

28. Is there any rot or water damage to the structure or structures? *If yes, explain below* . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

_____

_____

29. Is there any fire or smoke damage to the structure or structures? *If yes, explain below* . . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

_____

30. Is there any termite, insect, rodent or pest infestation or damage? *If yes, explain below*.   [__] Yes [__] No [✓] Unkn [__] NA

_____

31. Has the property been tested for termite, insect, rodent or pest infestation or damage? *If yes, please attach report(s)* . . . . . . . . . . . . . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

32. What is the type of roof/roof covering (slate, asphalt, other)? . .   _____

   • Any known material defects? . . . . . . . . . . . . . . . .   _____

   • How old is the roof? . . . . . . . . . . . . . . . . . . . .   _____

   • Is there a transferable warranty on the roof in effect now? *If yes, explain below* . . . . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

_____

_____

33. Are there any known material defects in any of the following structural systems: footings, beams, girders, lintels, columns or partitions? *If yes, explain below* . . . . . . . . . . . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

_____

## MECHANICAL SYSTEMS AND SERVICES

34. What is the water source? *(Check all that apply)* . . . . . . . . . . . .   [__] Well [__] Private [✓] Municipal

   [__] Other: _____

   • If municipal, is it metered? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   [__] Yes [__] No [✓] Unkn [__] NA

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    34 North 6th

_____

DocuSigned by:  Initial

*ANDREW GARGOVESE*

CE486175546D4CA...

**Exhibit A**

## Property Condition Disclosure Statement

35. Has the water quality and/or flow rate been tested? *If yes, describe below* . . .  . . . . . . .  . . .    [  ] Yes [  ] No [✓] Unkn [__] NA

_____  _____

_____  _____

36. What is the type of sewage system? (Check all that apply) . . . . . . . . . . . . . . . . . . . .    [__] Public sewer  [__] Private sewer

[__] Septic  [__] Cesspool

- If septic or cesspool, age? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    _____
- Date last pumped? . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . .    _____
- Frequency of pumping?  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    _____
- Any known material defects? *If yes, explain below* .  . . . . . . . . . . . . . .    [__] Yes [__] No [✓] Unkn [__] NA

_____

_____

37. Who is your electric service provider? . . . . . . . . . . . . . . . . . . . . . . . . . . .    _____
- What is the amperage? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    _____
- Does it have circuit breakers or fuses? . . . . . . . . . . . . . . . . . . . . .    _____
- Private or public poles? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    _____
- Any known material defects? *If yes, explain below* . . . . . . . . . . . . . . . . . . . . .    [__] Yes [__] No [✓] Unkn [__] NA

_____

38. Are there any flooding, drainage or grading problems that resulted in standing water on any
portion of the property? *If yes, state locations and explain below* . . . . . . . . . . . . . . .  . . . .    [__] Yes [__] No [✓] Unkn [__] NA

___  _____    _____

39. Has the structure(s) experienced any water penetration or damage due to seepage or a
natural flood event, such as from heavy rainfall, coastal storm surge, tidal inundation or
river overflow? *If yes, explain below* . . . .  . . . . . . . . . . . . . .  . . . . .    [__] Yes [__] No [✓] Unkn [__] NA

_____    _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    40 North Rd

DS
Ⱥ
Initial
ⱥG

**Exhibit A**

## Property Condition Disclosure Statement

Are there any known material defects in any of the following? *If yes, explain below. Use additional sheets if necessary.*

40. Plumbing system?........ ...... ....... ............ ...... ............ [ ] Yes [ ] No [✓] Unkn [ ] NA

41. Security system?.......... ...... ....... ............ ...... ............ [ ] Yes [ ] No [✓] Unkn [ ] NA

42. Carbon monoxide detector? ...... ....... ............ ...... ............ [ ] Yes [ ] No [✓] Unkn [ ] NA

43. Smoke detector?..... .... ...... ....... ............ ...... ............ [ ] Yes [ ] No [✓] Unkn [ ] NA

44. Fire sprinkler system? ....... ............ ...... ............ ...... ............ [ ] Yes [ ] No [✓] Unkn [ ] NA

45. Sump pump? ........ ...... -- ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

46. Foundation/slab? ......... ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

47. Interior walls/ceilings? ..... .... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

48. Exterior walls or siding? ...... ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

49. Floors? ....... ...... ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

50. Chimney/fireplace or stove? ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

51. Patio/deck? ...... ...... ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

52. Driveway?........... ...... ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

53. Air conditioner? . ...... ...... ...... ...... .. ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

54. Heating system?... . ...... ...... . ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

55. Hot water heater? ......... ...... ...... ...... ...... ...... ...... [ ] Yes [ ] No [✓] Unkn [ ] NA

56. The property is located in the following school district _____

*Note:* Buyer is encouraged to check public records concerning the property (e.g. tax records and wetland and FEMA's current flood insurance rate maps and elevation certificates).

*The seller should use this area to further explain any item above. If necessary, attach additional pages and indicate here the number of additional pages attached*

_____

_____

_____

DOS-1614-f (Rev 01/24)                                                    Page 6 of 7

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St  Suite 2200, Dallas TX 75201   www.lwolf.com        46 North R.I



**Exhibit A**

## Property Condition Disclosure Statement

**SELLER'S CERTIFICATION:**

Seller certifies that the information in this Property Condition Disclosure Statement is true and complete to the seller's actual knowledge as of the date signed by the seller. If a seller of residential real property acquires knowledge which renders materially inaccurate a Property Condition Disclosure Statement provided previously, the seller shall deliver a revised Property Condition Disclosure Statement to the buyer as soon as practicable. In no event, however, shall a seller be required to provide a revised Property Condition Disclosure Statement after the transfer of title from the seller to the buyer or occupancy by the buyer, whichever is earlier.

Seller's Signature

X _____, Trustee          Date  12/2/2024
Kris Roglieri Estate

Seller's Signature

X _____          Date _____

**BUYER'S ACKNOWLEDGMENT:**

Buyer acknowledges receipt of a copy of this statement and buyer understands that this information is a statement of certain conditions and information concerning the property known to the seller. It is not a warranty of any kind by the seller or seller's agent and is not a substitute for any home, pest, radon or other inspections or testing of the property or inspection of the public records.

Buyer's Signature
DocuSigned by:
X _____ANDREW GENOVESE_____          Date _____
GE486176646D4CA...

Buyer's Signature
Signed by:
X _____Ashlie Genovese_____          Date _____
C9A79EAFE6AB493...

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200 Dallas, TX 75201   www.lwolf.com          48 North Rd

**Exhibit A**

# JUDGMENT AND LIEN SEARCH
# 40 NORTH ROAD, QUEENSBURY
# OWNER:  KRIS ROGLIERI

A Jusgment and Lien Search was completed against the above property through March 11, 2025 in Warren County and the following items were found:

MORTGAGES:

1.  Kris D. Roglieri to Frist Niagara Bank $780,000.00 dated 4/8/13, recorded 4/11/13, 4732/270

    Assigned to Key Bank National Association 6434/248

    Kris D. Roglieri to Key Bank National Association $18,592.71 dated 7/23/21, recorded 8/12/21 6427/281

    CEMA – consolidated both mortgages above to one lien in the amount of $645,000.00 6637/67

    Assigned to MERS 6771/67

    Assigned to Key Bank 6926/16


2.  Kris D. Roglieri to Key Bank National Association $316,000.00 dated 11/6/18, recorded 11/21/18 5852/75

    Subordination Agreement 6653/141

LIENS:

1.  New York State Tax Warrant $572,907.88
2.  Mechanic's Lien filed by Toadflax Nursery, LLC $28,386.65, filed 6/28/24
3.  Mechanic's Lien field by Toadflax Nursery, LLC $11,315.96, filed 6/28/24

*Copies of tax warrant and mechanic's liens are attached

**Exhibit B**

 **Department of Taxation and Finance**

# Warrant



Civil Enforcement Division
W A Harriman Campus, Albany NY 12227-0001

## Commissioner of Taxation and Finance
### against

KRIS D ROGLIERI
40 NORTH RD
QUEENSBURY, NY 12804-2033

| Judgment Creditor | |
|---|---|
| Judgment Debtor(s) | **Warrant ID:** E-816811494-W003-9 |
| Last Known Address | **County of Judgment:** WARREN |

**The people of the state of New York to:  D HARPER**

an officer or employee of the Department of Taxation and Finance:  **Whereas**, a tax has been found due to the Commissioner of Taxation and Finance of the **state of New York** from the debtor(s) named, the nature and amount of which, together with the interest and penalties thereon, are as follows:

| Assessment ID | Period Ending | Tax | Penalty | Interest | Assessment Total |
|---|---|---|---|---|---|
| L-057787067-4 | 12/31/2020 | $349,974.00 | $135,433.12 | $87,500.76 | $572,907.88 |
| | | | | Total amount due → | $572,907.88 |

And whereas, said tax, interest and penalties now remain wholly unpaid;

Now therefore, we command you to file a copy of this warrant within five days after its receipt by you in the office of the clerk of the county named above, for entry by him/her in the judgment docket, pursuant to the provisions of the Tax Law.

And we further command you, that you satisfy said claim of said **Commissioner of Taxation and Finance** for said tax with penalties and interest out of the real and personal property in said county belonging to said debtor(s) and the debts due to him/her at the time when said copy of this warrant is so docketed in the office of the clerk of such county or at any time thereafter; and that only the property in which said debtor(s) who is/are not deceased has an interest or the debts owed to him/her shall be levied upon or sold hereunder; and return this warrant and pay the money collected, to the Commissioner of Taxation and Finance of the state of New York.

Levy and collect total amount due shown above plus accrued interest and any additional penalties provided by law.

Interest at the rate(s) pursuant to the Tax Law shall accrue on **$572,907.88** from December 5, 2023.

| | | |
|---|---|---|
| Issued By | _Kris Medley (signature)_ | for the Commissioner of Taxation and Finance |
| | _Deputy Tax Commissioner_ | |

DTF-977  (12/23) V2

---

**Exhibit B**

Instr # 2024-15013991
06/28/2024 09:08:55 AM
8 Pages
MECHANICS LIEN

Carrie L. Black, Warren County Clerk       FILED

# NOTICE OF MECHANIC'S LIEN UNDER LIEN LAW

To the Clerk of the County of **WARREN**_____ and all others whom it may concern:

**PLEASE TAKE NOTICE, that** TOADFLAX NURSERY, LLC _____
as a lienor has and claims a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor are **TOADFLAX NURSERY, LLC** _____
**1604 ROUTE 9, SOUTH GLENS FALLS,** New York **12803**_____, being a corporation composed
of shareholders, whose business address is at **1604 ROUTE 9**_____
**SOUTH GLENS FALLS**_____ New York **12803**_____, and whose principal place of
business is at **1604 ROUTE 9, SOUTH GLENS FALLS**_____, New York **12803**__.
If a partnership, the names and addresses of the partners are _____

_____
_ The name and address of the lienor's attorney, if applicable, is
**DANIEL J. HOGAN, MCPHILLIPS, FITZGERALD & CULLUM LLP, 288 GLEN STREET, GLENS FALLS, NY 12801**

(2) The owner of the real property is **KRIS D. ROGLIERI**_____ and the interest of the
owner, upon information and the belief of the lienor, is fee simple.

(3) The name of the person by whom the lienor was employed is **KRIS D. ROGLIERI**_____.

(4) The name of the person to whom the lienor furnished or is to furnish material or for whom
the lienor performed or is to perform professional services is **KRIS D. ROGLIERI**_____.

(5) The name of the person with whom the contract was made is **KRIS D. ROGLIERI**_____.

(6) The labor performed and material furnished was **LABOR & MATERIALS TO LOAD, DELIVER & INSTALL ANNUALS**
**05/17/24, 05/20/24, 05/21/24, 05/22/24, 05/23/24, 05/29/24, 05/30/24**_____.

(7) The materials actually manufactured for but not delivered to the real property are _____
_____

(8) The agreed price and value of the labor performed and the material furnished is **$28,386.65**_.

The agreed price and value of the material actually manufactured, but not delivered to the
real property is _____.

The total agreed price and value is **$28,386.65**___.

(9) The amount unpaid to the lienor for said labor performed and materials furnished is
**$28,386.65**__
The amount unpaid to the lienor for material actually manufactured, but not delivered to
the real property is _____.
The total amount unpaid is **$28,386.65**___.

(10) The total amount claimed for which this lien is filed is **$28,386.65**___.

**Exhibit B**

**(11)** The time when the first item of work was performed and materials furnished was
05/10/24 .

**(12)** The time when the last item of work was performed and materials furnished was
05/30/24 .

**(13)** The property subject to the lien is situated in the County of WARREN , City / Town of
QUEENSBURY , and known by the address 40 NORTH ROAD .
Section 302.7 Block 1 Lot 37

   That said labor and materials were performed and furnished for and used in the improvement of
the real property hereinbefore described. That 8 months (4 months if a single family dwelling) have not
elapsed dating for the last item of work performed, or from the last items of materials furnished, or
since the completion of the contract, or since the final performance of the work, or since the final
furnishing of the materials for which this lien is claimed.

Dated: 6/19/2024

BY: RICHARD MORRIS

Printed Name Richard W. Morris

**Exhibit B**

**VERIFICATION – CORPORATION**

STATE OF NEW YORK
COUNTY OF WARREN                      ,  ss:

      **RICHARD MORRIS**        ___, being duly sworn, says that deponent is the
_MEMBER_____ of _TOADFLAX NURSERY, LLC___, herein, that deponent has read the foregoing notice of
lien and knows the contents thereof, and that the same is true to deponent's own knowledge, except as
to the matters therein stated to be alleged upon information and belief, and that as to those matters
deponent believes it to be true. The reason why this verification is made by deponent is that deponent is
an officer, to wit, the _MEMBER_____ of _TOADFLAX NURSERY, LLC_____
which is a domestic corporation, and deponent is familiar with the facts and circumstances herein.

      The source of deponent's information and the grounds of deponent's belief as to all matters
therein stated upon deponent's knowledge are as follows:

Sworn to before me on this _19_
day of _JUNE_____ 20_24_

_____
Notary Public

      **WENDY J. CHAKALIS**
    Notary Public, State of New York
    Saratoga County #01CH6201278
    Commission Expires Feb. 17, 20_25_

**VERIFICATION – INDIVIDUAL**

STATE OF NEW YORK
COUNTY OF WARREN                      ,  ss:

        _____, being duly sworn, says
that deponent is (one of the co-partnership names in the within notice of lien and) the lienor(s)
mentioned in the foregoing notice of lien: that deponent had read the said notice and knows the
contents thereof, and that the same is true to deponent's own knowledge, except as to the matters
therein stated to be alleged on information and belief, and that as to those matters deponent believes it
to be true.

Sworn to before me on this _____
day of _____, 20___

_____

_____
Notary Public

**Exhibit B**



# INVOICE

**Toadflax**
Landscaping / Commercial / Residential
Route 9, PO Box 1432
South Glens Falls, New York 12803
518-793-2655
FAX 518-793-2826

| Date | Invoice # |
|------|-----------|
| 6/4/2024 | 28304 |

**Client:**

Kris Roglieri
40 North Road
Queensbury, NY. 12804

**Ship To:**

| P.O. Number | Terms | Rep | | | Project |
|-------------|-------|-----|--|--|---------|
| | | JL, D | | | |

| Item Code | Description | Quantity | Price Each | Amount |
|-----------|-------------|----------|------------|--------|
| 4130-07 | Labor & materials to load, deliver & install annuals 5/17/24, 5/20/24, 5/21/24, 5/22/24, 5/23/24, 5/29/24, 5/30/24 | 1 | 26,529.58 | 26,529.58T |

| | |
|--|--|
| **Subtotal** | $26,529.58 |
| **Sales Tax (7.0%)** | $1,857.07 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $28,386.65 |

A finance charge of 1.5% per month (18% annually) will be charged to any account overdue 30 days or more. Any account over 60 days or more may be denied additional credit and customer may be required to pay COD on all future orders unless other arrangements are made.

**Exhibit B**

Instr # 2024-15013992
06/28/2024 09:08:55 AM
8 Pages
MECHANICS LIEN

Carrie L. Black, Warren County Clerk    FILED

## NOTICE OF MECHANIC'S LIEN UNDER LIEN LAW

To the Clerk of the County of  WARREN  and all others whom it may concern:

**PLEASE TAKE NOTICE**, that  TOADFLAX NURSERY, LLC
as a lienor has and claims a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor are  TOADFLAX NURSERY, LLC
1604 ROUTE 9, SOUTH GLENS FALLS  New York 12803 , being a corporation composed
of shareholders, whose business address is at 1604 ROUTE 9,
SOUTH GLENS FALLS  New York 12803 , and whose principal place of
business is at  1604 ROUTE 9, SOUTH GLENS FALLS , New York 12803 .
If a partnership, the names and addresses of the partners are

The name and address of the lienor's attorney, if applicable, is
DANIEL J. HOGAN, McPHILLIPS, FITZGERALD & CULLUM LLP, 288 GLEN STREET, GLENS FALLS, NY 12801

(2) The owner of the real property is  KRIS D. ROGLIERI  and the interest of the
owner, upon information and the belief of the lienor, is fee simple.

(3) The name of the person by whom the lienor was employed is  KRIS D. ROGLIERI .

(4) The name of the person to whom the lienor furnished or is to furnish material or for whom
the lienor performed or is to perform professional services is  KRIS D. ROGLIERI .

(5) The name of the person with whom the contract was made is  KRIS D. ROGLIERI .

(6) The labor performed and material furnished was  2024 MAINTENANCE CONTRACT MONTHLY INSTALLMENT

(7) The materials actually manufactured for but not delivered to the real property are _____

(8) The agreed price and value of the labor performed and the material furnished is  $11,315.96 .

The agreed price and value of the material actually manufactured, but not delivered to the
real property is _____.

The total agreed price and value is  $11,315.96 .

(9) The amount unpaid to the lienor for said labor performed and materials furnished is
_____.

The amount unpaid to the lienor for material actually manufactured, but not delivered to
the real property is _____.
The total amount unpaid is  $11,315.96 .

(10) The total amount claimed for which this lien is filed is  $11,315.96 .

## Exhibit B

**(11)** The time when the first item of work was performed and materials furnished was
05/01/24 .

**(12)** The time when the last item of work was performed and materials furnished was
05/31/24 .

**(13)** The property subject to the lien is situated in the County of WARREN , City / Town of
QUEENSBURY , and known by the address 40 NORTH ROAD .
Section 302.7      Block 1      Lot 37

That said labor and materials were performed and furnished for and used in the improvement of the real property hereinbefore described. That 8 months (4 months if a single family dwelling) have not elapsed dating for the last item of work performed, or from the last items of materials furnished, or since the completion of the contract, or since the final performance of the work, or since the final furnishing of the materials for which this lien is claimed.

Dated: 6/19/2024

BY: RICHARD MORRIS

Printed Name

Richard W. Morris

**VERIFICATION – CORPORATION**

STATE OF NEW YORK
COUNTY OF **WARREN**                   ,  ss:

  **RICHARD MORRIS**          ___, being duly sworn, says that deponent is the
MEMBER           of TOADFLAX NURSERY, LLC    , herein, that deponent has read the foregoing notice of
lien and knows the contents thereof, and that the same is true to deponent's own knowledge, except as
to the matters therein stated to be alleged upon information and belief, and that as to those matters
deponent believes it to be true. The reason why this verification is made by deponent is that deponent is
an officer, to wit, the MEMBER          of TOADFLAX NURSERY, LLC
which is a domestic corporation, and deponent is familiar with the facts and circumstances herein.

  The source of deponent's information and the grounds of deponent's belief as to all matters
therein stated upon deponent's knowledge are as follows:

Sworn to before me on this  19
day of JUNE                , 20 20

Notary Public

WENDY J. CHAKALIS
Notary Public, State of New York
Saratoga County #01CH6201278
Commission Expires Feb. 17, 20 25

**VERIFICATION – INDIVIDUAL**

STATE OF NEW YORK
COUNTY OF                    ,  ss:

                     , being duly sworn, says
that deponent is (one of the co-partnership names in the within notice of lien and) the lienor(s)
mentioned in the foregoing notice of lien: that deponent had read the said notice and knows the
contents thereof, and that the same is true to deponent's own knowledge, except as to the matters
therein stated to be alleged on information and belief, and that as to those matters deponent believes it
to be true.

Sworn to before me on this _____
day of _____, 20___

_____
Notary Public

**Exhibit B**



**Toadflax**
Landscaping / Commercial / Residential
Route 9, PO Box 1433
South Glens Falls, New York 12803
518-793-2808
FAX 518-793-2828

# INVOICE

| Date | Invoice # |
|------|-----------|
| 6/4/2024 | 28297 |

**Client:**

Kris Roglieri
40 North Road
Queensbury, NY. 12804

**Ship To:**

| P.O. Number | Terms | Rep | Project |
|-------------|-------|-----|---------|
|  |  | JL, D |  |

| Item Code | Description | Quantity | Price Each | Amount. |
|-----------|-------------|----------|------------|---------|
| 4150-09 | 2024  Maintenance contract monthly installment<br>Payment applied was due  to overpayment | 1 | 11,517.58 | 11,517.58T |

| | |
|---|---|
| **Subtotal** | $11,517.58 |
| **Sales Tax (7.0%)** | $806.23 |
| **Payments/Credits** | -$1,007.85 |
| **Balance Due** | $11,315.96 |

A finance charge of 1.5% per month (18% annually) will be charged to any account overdue 30 days or more.  Any account over 60 days or more may be denied additional credit and customer may be required to pay COD on all future orders unless other arrangements are made.

**Exhibit B**

**Payoff 04/01/2025**

| | | |
|---|---|---|
| Principal | $ | 605,772.53 |
| Interest | $ | 15,144.30 |
| Escrow | $ | 11,335.60 |
| | $ | 632,252.43 |

**Exhibit C**

**Payoff 04/01/2025**

| | | |
|---|---|---|
| Principal | $ | 315,440.68 |
| Interest | $ | 25,543.37 |
| Fees | $ | 30.00 |
| | $ | 341,014.05 |

**Exhibit C**