UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
Case No. 24-10157-REL
Chapter 7

**FINAL RESPONSE IN SUPPORT OF MOTION TO REMOVE TRUSTEE**
(Relates to Dkt. No. 345)

**TO: THE HONORABLE ROBERT E. LITTLEFIELD, JR., UNITED STATES
BANKRUPTCY JUDGE:**

I, Kris D. Roglieri, the Debtor in this case, submit this final response in full support of the
Motion to Remove Chapter 7 Trustee Christian Dribusch. I respectfully request that the Court
remove Mr. Dribusch under 11 U.S.C. § 324(a) for cause, as he has repeatedly violated his
fiduciary obligations under 11 U.S.C. § 704, committed serious procedural violations and acted
in a manner that has harmed the estate, creditors, and my due process rights.
This response is submitted through my duly appointed Power of Attorney, Linda Oliver, as I am
currently incarcerated and unable to file directly. The following outlines the Trustee's extensive
misconduct and mismanagement, which support his immediate removal.

## Trustee's Failure to Pay Estate Bills & Secure Property Properly

Before my incarceration, I was current with National Grid and had paid all outstanding electric
bills. After I was incarcerated, Trustee Christian Dribusch took control of the estate. It then
became his responsibility to maintain and secure the property — including ensuring that essential
utilities such as electricity were kept in good standing.

My designated power of attorney contacted National Grid to clarify the account status. They
confirmed that the account was current when I was incarcerated, and that any subsequent utility
obligations became the trustee's responsibility. They also stated that the trustee has never
contacted them, despite numerous attempts from National Grid to reach out and leave messages.
Eventually, the trustee responded to National Grid claiming he would transfer the account to his
trust and that service would not be interrupted.

To date, the trustee has failed to pay the outstanding electric bill, which has now ballooned to
over $20,000. This amount is not my debt. National Grid's agents have informed my power of
attorney that they have legal documentation and call logs confirming these facts.

This failure to maintain basic utility services demonstrates a serious violation of the trustee's
statutory duties. Under 11 U.S.C. § 704(a)(1), a Chapter 7 trustee must "collect and reduce to
money the property of the estate for which such trustee serves, and close such estate as
expeditiously as is compatible with the best interests of parties in interest." This includes
protecting the estate property — which necessarily requires ensuring that essential expenses like
utility bills are handled responsibly.

Furthermore:

- My utility bill was current until the Chapter 7 conversion when the trustee took control and froze my account.

- On February 27, 2025, my power of attorney received a final disconnect notice, clearly showing that the trustee failed to maintain services at the property.

- The trustee has access to estate funds but has failed to resolve this growing obligation.

- He continues to misrepresent to the Court that I am personally responsible for the electric bill — a false claim that is demonstrably untrue and contradicts utility records and statements made directly by National Grid.

This situation is deeply concerning and raises serious questions about the trustee's ability to carry out his fiduciary duties. His failure to secure the estate and essential services, even after months of control, shows clear mismanagement, neglect, and a disregard for the integrity of the estate process. The trustee's failure to pay the electric bill — which has now grown to over $20,000 — clearly violates his duty under 11 U.S.C. § 704(a)(1) to preserve and protect estate property. Courts have consistently held that failure to manage essential expenses like utilities constitutes mismanagement and a breach of fiduciary duty. Relevant case law includes:

- In re Cochener, 360 B.R. 542 (Bankr. S.D. Tex. 2007),
  The court held that a trustee's failure to properly administer the estate and protect its assets warranted removal under § 324.
  Application: The trustee's neglect of basic obligations such as utility bills and communication with service providers reflects clear administrative failure.

- In re San Juan Hotel Corp., 847 F.2d 931 (1st Cir. 1988),
  Trustees must act "as expeditiously as is compatible with the best interests of parties in interest," including maintaining property and preventing avoidable harm.
  Application: By allowing a critical utility bill to grow unchecked, the trustee jeopardized estate property and creditor recovery.

- In re Miller, 302 B.R. 705 (Bankr. D. Idaho 2003)
  , Trustees are obligated to prevent unnecessary loss of estate value and act in the best interest of creditors.
  Application: Letting the utility bill escalate and ignoring communications from the provider demonstrates a disregard for the estate's financial integrity.

## Improper Handling and Destruction of Mail

Trustee Dribusch improperly took possession of my personal mail and later discarded it without court authorization. When questioned in court, Mr. Dribusch first denied handling my mail. Only after multiple sworn affidavits were submitted contradicting his statement did he admit to taking

and discarding what he deemed "junk." This contradiction raises serious concerns about the
Trustee's credibility and adherence to truthfulness under oath. **EXHIBIT 2**

Moreover, it is not within his authority to unilaterally determine the relevance of my mail,
mainly when it may pertain to financial or legal matters central to this bankruptcy estate.
Mr. Dribusch failed to follow proper procedure by not requesting a court order to secure or
handle my mail. If he had legitimate concerns about the contents or delivery of my mail, he
should have sought direction from the Court to act lawfully. His failure to do so demonstrates a
disregard for the rule of law and the integrity of this proceeding.
These actions demonstrate a breach of fiduciary duty under 11 U.S.C. § 704(a)(2) and a potential
violation of 18 U.S.C. § 1702, which criminalizes the obstruction of correspondence. The
mishandling and destruction of mail interfered with my legal rights and ability to manage my
financial affairs while incarcerated.

**Failure to Notify or Coordinate with Incarcerated Debtor**
Throughout these proceedings, Trustee Dribusch failed to coordinate with the Rensselaer County
Correctional Facility to allow me to appear telephonically at multiple bankruptcy hearings. This
effectively denied me the ability to defend my rights and participate in proceedings impacting
my property and livelihood.
*Mullane v. Central Hanover* again applies—due process requires notice and a fair opportunity to
participate. Failure to notify a known incarcerated debtor and to facilitate their appearance is a
clear constitutional violation.

## Policing for Profit and Underselling of Estate Assets

The Trustee engaged in actions consistent with the abusive practice known as *policing for profit*,
where legal actors exploit their authority to seize property and generate revenue at the expense of
due process and fair administration.

## Undisclosed and Abandoned Property: Evidence of Intentional Misconduct

The Trustee never adequately listed, disclosed, or secured numerous valuable estate assets. These
omissions raise serious concerns regarding transparency, due process, and creditor recovery. The
following items were either never turned over or have not been adequately accounted for:

- **Approximately 22 cases of wine** and additional bottles stored in the kitchen wine cooler
  cabinet were taken but never listed or inventoried.
  **EXHIBIT 3**

- **Designer shoes, sunglasses, and clothing** belonging to the Debtor remain unaccounted
  for. The Trustee has not disclosed their whereabouts or addressed their status in filings.
  **EXHIBIT 4**

- **A carved wooden Buffalo figure,** which was in my office on a shelf, also concealed
  from the asset list

- **Tools and outdoor equipment**, including a backpack-style leaf blower, wheelbarrow, car cleaning supplies, tools, stuff in the garage that was not sold or on the asset list, and miscellaneous garage and house/yard equipment, were not documented or secured .

- **Furniture and personal property**, such as a blue bedroom rug (from the master bedroom), a wooden desk in the lower room, a desk upstairs, and an heirloom wine barrel (of which only the top portion was returned) were left abandoned in the home. **EXHIBIT 5**

- **Media and sentimental items**, including movies, DVDs, and family photos, were observed left behind in the glass bar room and elsewhere throughout the house.

The Trustee's failure to document or secure these items — especially when some were clearly visible months later — reflects severe mismanagement. These assets, including the abandoned wine and documents, should be turned over or appropriately addressed.

Additionally, the **asset list provided by the Trustee was vague and generic,** listing items with overly broad terms such as "table" or "desk" without describing their value, origin, distinguishing characteristics, or room they were in. This kind of selective and minimal listing prevents meaningful court oversight and compromises the Debtor's and his creditors' rights.

- This behavior aligns with **In re Haugen Construction Services, Inc., 876 F.2d 681 (8th Cir. 1989)**, where a trustee was removed for failing to account for and disclose estate property fully

- **In re Yonikus, 996 F.2d 866 (7th Cir. 1993)**
  , *Full disclosure in asset schedules is essential to the bankruptcy process.* This supports claims that unlisted items (wine, clothing, personal property) were improperly handled.

A witness who viewed the home in **February 2025** reported that many of the Debtor's belongings remained inside, left unprotected and unsecured. During the visit, the witness **observed individuals stealing property belonging to the Debtor**. This occurred because the Trustee failed to properly secure the home before allowing third parties access.

The witness has submitted a letter to the Court **under seal**, citing concerns for her family's safety and requesting protection of her **privacy and identity**.
**EXHIBIT 6**

In light of this, the Debtor respectfully requests that the Court direct the Trustee to investigate and return all stolen property immediately.

While the Debtor was incarcerated, the Trustee seized:

- The majority of the Debtor's shoes, sunglasses, and clothing were neither listed as assets nor properly documented, effectively preventing the Debtor from filing a claim for exemption. This failure deprived the Debtor of a critical legal right. It reflected a broader

pattern of 'bankruptcy for profit' — where estate property is seized and concealed from schedules, potentially to be sold without proper notice or due process once undisclosed holdings are challenged.

- The Trustee failed to list these items on any asset schedule (Schedule A/B), supplemental filings, or official court record. These items should have been exempted or accounted for in full transparency, as required by 11 U.S.C. § 704(a).

- Only after being called out on these undisclosed seizures did the Trustee file a motion seeking to auction off certain items (e.g., shoes and sunglasses). This retroactive attempt to justify taking exempt or unlisted property is unlawful and a clear breach of fiduciary duty.

- Some clothing was selectively handed over to Ms. Oliver, the Debtor's designated Power of Attorney, without any formal inventory, court order, or proper documentation — raising serious concerns about partial distribution and lack of accountability. The Trustee did not explain what happened to the rest of the clothing or why only partial disclosure occurred.

- After being called out for failing to document the seized wine, the Trustee attempts to justify his actions by stating he will abandon the wine due to concerns over storage conditions. The facts do not support this justification. Approximately 22 boxes of wine were taken from the Debtor's garage, along with additional bottles from the kitchen wine cooler. The wine was stored inappropriately, meaning the Trustee didn't properly store it, and it was never listed as an asset. If the Trustee believed it to be unsellable, he should not have taken possession of it in the first place. His failure to inventory the wine and later attempts to market or abandon it without proper authority violate fundamental procedures under the Bankruptcy Code.

- This is a Violation of 11 U.S.C. § 704(a)(1), (2), (5) A trustee must **collect and list** all property of the estate and **report** and **account** for it. Seized property was never scheduled or disclosed to the court; Failure to list the wine or anything taken without documenting, despite taking possession, is a **breach of statutory duty**. Trustees are fiduciaries of the estate. Seizing assets **secretly**, with no intention of proper reporting, and only addressing the issue when caught is a **gross breach**. The wine is one instance in a **larger pattern**: The trustee failing to list, disclose, or account for property taken from the debtor. These actions demonstrate a serious lapse in the Trustee's fiduciary duties and raise significant concerns about the transparency and fairness of the estate's administration

*Timbs v. Indiana* (U.S. Supreme Court, 2019) how property seizures without due process violate constitutional rights and **analogize** to the bankruptcy trustee's misuse of power.

Before Ms. Oliver was permitted to retrieve her belongings, the Trustee's representative wrongfully removed and withheld personal property belonging solely to Ms. Oliver, falsely assuming it was estate property. These items included:

- A large speaker

- A digital gym clock

- A vintage fedora hat

- A men's suit Ms. Oliver personally purchased from a vintage store

These were personal items owned exclusively by Ms. Oliver, not the Debtor. Their removal without any documented effort to verify ownership or distinguish them from estate property raises serious legal and ethical concerns. Although she ultimately recovered these items after proving ownership and requesting their immediate return, the incident left her concerned about what else may have been taken without her knowledge. She has asked the Court to take notice of the stress, interference, and lack of verification this caused.

- **In re Hollar, 174 B.R. 198 (Bankr. M.D.N.C. 1994)**
  *Trustees have no authority to administer property not belonging to the estate.* This supports the argument that Ms. Oliver's personal items should never have been seized or handled.

## Request for Protective Stay

In light of the ongoing loss, mishandling, and unauthorized removal of personal and estate property — including confirmed instances of theft — the Debtor respectfully requests that the Court **enter a stay prohibiting any further entry into the residence by the Trustee, his agents, or any third parties** until all personal property belonging to the Debtor has been **identified, inventoried, and turned over**.

This stay is necessary to prevent further loss, preserve remaining assets, and ensure proper accountability before any additional access or disposition of property is permitted.

## Unlawful Eviction Without Court Order

On **June 12, 2024,** while I was incarcerated, Trustee Christian Dribusch **forcibly locked out Ms. Linda Oliver**, a full-time legal resident at 40 North Road. Mr. Dribusch texted her, claiming he had a court order to change the locks. In reality, **no court order had been issued**, and **no eviction proceeding or legal notice** had been served.

This lockout was carried out in direct violation of:

- **RPAPL § 713** – Requires a lawful eviction process through Housing Court, including proper notice and a court-issued warrant of eviction.

- **The 14th Amendment and Due Process (Mullane v. Central Hanover Bank, 339 U.S. 306)** – Prohibits deprivation of property without notice and an opportunity to be heard.

- **Greene v. Lindsey, 456 U.S. 444 (1982)** – Reinforces that lawful residents are entitled to notice and due process before being removed from a residence.

Even landlords are prohibited from evicting tenants without judicial process. As a Trustee, Mr. Dribusch had no greater authority and was legally obligated to follow state and constitutional law. His decision to lock out a lawful resident — while estate property remained inside the home — resulted in the **unauthorized seizure and potential loss of personal property**, caused **substantial emotional and financial harm to Ms. Oliver**, and **directly interfered with the management and protection of estate assets**.

### Trustee's False Statement Regarding Ms. Oliver's Residency

At the last hearing, Trustee Christian Dribusch stated on the record that he did not know Ms. Oliver was a resident of 40 North Road. He used this false claim to justify locking her out of the home.

This is simply not true. I have provided video evidence showing Mr. Dribusch on a phone call clearly stating, *"I talked to Ms. Oliver, who resides here."*
This statement occurs at the **12-second mark** video named " OLIVER " recording, included in **Exhibit 1-G, Folder One Via USB.**

This recording directly contradicts Mr. Dribusch's sworn statement and proves he was fully aware of Ms. Oliver's lawful residency at the property. His denial of this fact is another example of his ongoing misrepresentation and misconduct before the Court.

This further supports our request that Trustee Dribusch be removed and held accountable for his actions.

**Ms. Oliver has submitted a separate affidavit detailing the harm caused by this unlawful lockout in response to the Court's request for damages.
EXHIBIT 1  A-G**

## Unauthorized Entry and Legal Violations of Due Process

Mr. Dribusch entered my residence at 40 North Road, Queensbury, NY, without a court order on **June 4, 2024**. The docket clearly shows that on that same day, he filed a motion (**Docket No. 197**) requesting permission to access the property. The judge scheduled a hearing for **June 7, 2024 (Docket No. 198)** to rule on that motion. **However, the Court did not grant the Trustee a turnover order until June 10, 2024 (Docket No. 205)**. Therefore, the Trustee had **no legal authority** to enter the property on **June 4th** or **5th**. Despite this, Mr. Dribusch unlawfully entered the home via the garage without court approval or consent. His entry constituted an illegal intrusion and a gross abuse of authority. Please see Exhibit 1 - G

This action violated:                    Mr. Dribusch Admits to breaking into the garge.

- **11 U.S.C. §§ 363 and 542,** which require court approval before taking possession of estate property;

- **Federal Rule of Bankruptcy Procedure 6004,** which mandates notice and a hearing;

- **The Fourth and Fifth Amendments** of the U.S. Constitution, which protect against unlawful search, seizure, and deprivation of property without due process;

- **Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950),** which affirms the necessity of proper notice and a meaningful opportunity to be heard.

On **June 5, 2024,** again before any court order had been entered, representatives from the Saratoga Auto Museum and other individuals were at the home, going through **the Debtor's and Ms. Oliver's belongings.** This occurred before Ms. Oliver could remove her personal property and well before any legal authority had been granted to seize or review items.

**Ring camera footage** confirms that the Trustee, his staff, representatives, and even a neighbor entered the home without notice or authorization while Ms. Oliver was at work. She had not been informed and was denied any opportunity to be present.

This unauthorized access represents a serious invasion of privacy and violation of due process, especially since **neither the Debtor nor Ms. Oliver had been served with a lawful order** at the time. As a result of this intrusion, Ms. Oliver no longer felt safe in the home and could not determine whether any remaining items had been taken, moved, or mishandled. This directly interfered with her ability to secure her own property and caused lasting emotional harm and distress.

Although some of her items were later returned, Ms. Oliver's wine was **never recovered,** even though it was stored in the kitchen's wine fridge alongside the Debtor's. After the lockout on **June 12, 2024,** Ms. Oliver was denied lawful access to the residence, and due to the stress of the moment, she did not recall her wine until later when reviewing photographs.
**EXHIBIT 7**

A walk-through was scheduled with Ms. Oliver on **June 9, 2024,** before the court had issued a turnover order. At that time, Ms. Oliver **had not yet realized what was missing.** It wasn't until several days later, while packing and reviewing what remained, that she discovered certain items were gone. Some of these were later returned after she contacted the Trustee's representative and requested them. However, **the full extent of her losses remains unknown,** especially due to the lack of an inventory and the Trustee's failure to distinguish between estate and third-party property.

The Trustee failed to list or account for any of these actions in official filings and made **no effort to distinguish between estate and third-party property,** directly violating his fiduciary duties. He also failed to communicate with the Debtor or coordinate with any representative despite knowing the Debtor was incarcerated. This denied the Debtor any opportunity to help preserve or maximize the estate's value for the benefit of creditors.

~~June~~

On ~~July~~ 19, 2024, Ms. Oliver observed an **intruder and another individual** at the residence through the Ring camera. They appeared to be attempting to enter the home and were overheard commenting that it was strange the doors were locked — implying prior unauthorized access. This was extremely alarming, as both my belongings and Ms. Oliver's remained in the home and had not yet been moved.

Upon texting the Trustee's representative, Ms. Oliver was informed that an **open house** was being conducted. Neither I, the Debtor, nor Ms. Oliver were informed in advance. The house still contained personal property, and the lack of notice raised serious concerns about unsecured access and potential loss.

The Debtor has submitted audio and video recordings with automatic date and time stamps that clearly document multiple unauthorized entries into the residence by the Trustee and others, including on **June 4, June 5, and ~~July 19~~, 2024** — some of which occurred prior to any court order authorizing access. These recordings confirm unauthorized entry via the garage, unauthorized viewings of the property, and a **complete failure to provide legal notice and documentation or obtain proper authority to remove any estate assets, such as vehicles**.

**Video footage from a separate interior camera** captures an auction house representative coordinating with towing companies to remove two high-value vehicles — a **Ferrari** and a **Mercedes G-Wagon**. The **outdoor Ring video** captures individuals **entering and repositioning the vehicles in the main entrance area of the home** to prepare them for pickup. Although the footage does not capture the actual towing, **I strongly suggest that the vehicles were being prepared for removal from the property.** Despite her legal residency and belongings in the home, Ms. Oliver was never notified.

**EXHIBIT 1-G on USB: All the above videos, along with the text messages, have also been filed in this EXHIBIT.**

These actions constitute the **unauthorized seizure and handling of both estate and third-party property.** The Trustee acted **without a court order, without a turnover motion, without notice to the Debtor or Ms. Oliver**, and **without disclosing any report or inventory** of the property accessed or removed. The vehicles were not properly listed in the asset schedules prior to their removal, violating clear requirements under the Bankruptcy Code.

This conduct represents a **serious breach of fiduciary duty** under **11 U.S.C. §§ 542 and 704**, a violation of **Bankruptcy Rule 6004**, and a clear **denial of due process** under the U.S. Constitution.

- **In re Gerwer, 898 F.2d 730 (9th Cir. 1990)** – Trustees must obtain court approval before disposing of or removing estate assets. Acting without prior authorization violates the Bankruptcy Code and due process rights.

- **In re Clark, 266 B.R. 163 (Bankr. N.D. Iowa 2001)** – Trustees who remove property without notice or court approval violate the debtor's constitutional rights and may be held personally liable.
  **This case is especially relevant here** because the Debtor was **incarcerated and unable**

**to defend his property**, and **Ms. Oliver — a legal resident of the home — was never notified.** These facts constitute a clear violation of due process and underscore the Trustee's failure to follow the most basic legal protections owed to both the estate and third parties.

- **United States v. James Daniel Good Real Property, 510 U.S. 43 (1993)**
  *Property cannot be seized without notice and a hearing absent exigent circumstances.* This supported claims of due process violations when the trustee entered the home without authorization or warning

- 

## Underselling of High-Value Estate Property

Upon reviewing the November 16, 2024, auction results conducted by Saratoga Auto Museum, it is evident that valuable estate assets were sold well below market value. The Trustee significantly undersold multiple high-value assets without adequate marketing, valuation, or court oversight. Examples include:

- **Ferrari F12 Largo**

  - Estimated value: $900,000

  - Sold for: $341,000

  - Loss: $559,000

- **Bed set**

  - Estimated value: $20,000

  - Sold for: $350

  - Loss: $19,650

- **CellarPro wine cooler cabinet**

  - Estimated value: $5,000

  - Sold for: $475

  - Loss: $4,525

- **Marble boardroom table with 21 leather chairs**

  - Estimated value: $25,000

  - Sold for: $600

- Loss: $24,400

- **Parker SxS CH Trojan shotgun**

  - Estimated value: $35,000

  - Sold for: $3,000

  - Loss: $32,000

- **Custom poker table and chairs**

  - Estimated value: $10,000

  - Sold for: $850

  - Loss: $9,150

- **Oriental runner rug**

  - Estimated value: $6,000

  - Sold for: $120

  - Loss: $5,880

- **Gold and white velvet couch**

  - Estimated value: $1,500

  - Sold for: $14

  - Loss: $1,486

**Total Documented Loss: Over $655,000**
(This total reflects only a sample — actual losses are likely higher.)


### Concerns Regarding Asset Sales and Auction Oversight

The recent asset sales conducted under the supervision of Trustee Christian Dribusch have been reckless and negligent, resulting in significant and unnecessary harm to the estate and its creditors.

Saratoga Auto Museum, the entity selected to facilitate these sales, is primarily an automotive auction house and lacks the necessary expertise to handle the high-value non-automotive assets involved in this case. These include fine art, antiques, and luxury timepieces. The Museum has

never before sold assets of this type, and the decision to engage them—particularly for items of such substantial value—was inappropriate and ill-advised.

The outcome of previous auctions reflects this. High-value estate assets were sold for a fraction of their worth—amounting to pennies on the dollar. These items should have been presented through an established, globally recognized auction house with access to appropriate clientele, such as Sotheby's or Christie's.

It is particularly concerning that Saratoga Auto Museum is scheduling additional auctions, again without reserve pricing and again involving high-value items. These include more collector vehicles, fine artwork, antiques, and several luxury watches—**including a Richard Mille watch valued at approximately $2 million**, among others of significant worth.

Given the severe undervaluation of prior sales, continuing this sales strategy poses a serious risk to the estate's remaining value. Creditors will suffer substantial losses if these final estate assets are mishandled or sold below market value.

This is exactly why it has always been important for the trustee to communicate with me and involve me in the asset sale process. As someone with firsthand knowledge of the value and origin of many of these items, I could have assisted in identifying appropriate channels and preserving estate value. His failure to reach out and collaborate has only deepened the harm to the estate. I am now stepping forward to advocate on behalf of the creditors and protect what value remains.

This process should not prioritize speed over value. The focus must be on **maximizing recovery for creditors**, not simply liquidating assets as quickly as possible.

Accordingly, I respectfully request that the Court direct the removal of Saratoga Auto Museum as the auctioneer of record and appoint an experienced, reputable auction house—such as Sotheby's—to oversee the sale of the remaining assets. These items represent the last substantial opportunity for creditors to recover value, and every step must be taken to ensure that they are marketed and sold through appropriate and capable channels—**so that creditors are not forced to suffer any further loss from this ongoing mismanagement.**

This further demonstrates Mr. Dribusch's final mismanagement, which is that these sales are reckless and negligent, causing unnecessary harm to the estate and its creditors.

**EXHIBIT 8 & 10**

- **In re Smyth, 207 F.3d 758 (5th Cir. 2000)**
  *Trustees are fiduciaries of the estate and must act to maximize its value.* This supports the claim that selling valuable property for a fraction of its worth, without the debtor's input, violates the trustee's core duty.

- **In re Haugen Construction Servs., Inc., 104 B.R. 233 (Bankr. D.N.D. 1989)**
  *, Trustees may be removed for gross mismanagement, including sales far below market value.* This directly supports the claims of undervalued asset liquidation.

. This is the first bankrupcy auction that Saratoga Auto Museum has conducted which is not ~~saw me~~ is not a good choice on this case.

**Attempt to Undersell Estate Residence (40 North Road)**

I have been informed that the Trustee is attempting to sell my residence at 40 North Road for
$1.6 million, despite comparable homes in the area selling for $1.3M to $1.4M on much smaller
lots. My property includes 14 acres, a remodeled French-style estate, a high-end kitchen, and a
custom-built garage. These features significantly increase the property value, yet there is no
evidence of a formal appraisal or proper marketing process.
This reckless undervaluation again harms the estate and suggests bad faith administration.
**EXHIBIT 9**


**Pattern of Abuse**

The Trustee's conduct reflects systemic abuse and bad faith, not isolated errors. His actions show
a pattern of:

- Seizing unlisted property without disclosure

- Trying to sell exempt property without objection or due process

- Underpricing high-value items to the detriment of the estate

- Concealing, mishandling, failing to document, distinguish, or third-party property

- Taking property that belongs to third parties and non-debtors without any legal authority

- These actions harm the Debtor and the creditors, whose recovery is diminished through
  gross mismanagement and bad-faith conduct. They also violate the property rights of
  third parties, such as the Power of Attorney.

This pattern of reckless undervaluation reflects a breach of fiduciary duty under 11 U.S.C. § 704
and constitutes a loss to the estate and creditors.

- These authorities collectively show that the Trustee's actions were unethical and contrary
  to long-established bankruptcy law and constitutional protections. They support a broader
  argument for removal, restitution, and sanctions.


**Claim for Treble Damages under RPAPL § 853**

Linda Oliver, a full-time lawful resident of the property at the time of the events described, was
unlawfully locked out by Trustee Christian Dribusch without a valid court order, eviction
proceeding, or lawful authority. This act constituted a forcible and unauthorized deprivation of

possession in violation of New York Real Property Actions and Proceedings Law (RPAPL) § 853.

As a result of this unlawful lockout, Ms. Oliver suffered substantial harm, including but not limited to:

- Emotional and psychological distress;

- Financial costs related to temporary lodging, transportation, and the replacement of essentials;

- Loss or damage to personal property due to denial of access and lack of inventory or protection;

- Interference with her legal rights and due process protections.

Given the egregious nature and impact of these violations, Ms. Oliver respectfully reserves the right to seek treble damages under RPAPL § 853.

**Request for Relief**

Given the cumulative violations and harm outlined in this response, I respectfully request that the Court:

- Remove Trustee Christian Dribusch pursuant to 11 U.S.C. § 324(a);

- Appoint a new trustee with the competence and integrity to manage the estate fairly and transparently;

- Remove the Saratoga Auto Museum from all future sales and appoint a qualified auction house, such as Sotheby's, to ensure high-value assets are marketed and sold appropriately;

- Investigate the mishandling of estate property, personal mail, and assets seized or discarded without proper court authorization;

- Grant a protective stay to prohibit further entry into the residence by the Trustee, his agents, or third parties until a full inventory is completed and all personal property is returned.

**Conclusion**

The Trustee's conduct in this case demonstrates a serious breach of legal obligations, fiduciary duties, and professional standards. Removal is warranted and necessary to protect the estate and uphold the integrity of these proceedings.

Ms. Oliver has submitted her affidavit detailing the damages and hardship she endured as a result of the Trustee's unlawful actions, including the lockout and seizure of her personal property. These events caused significant emotional, financial, and legal harm.

Moreover, the Trustee's mismanagement has severely impacted creditors. The underselling of high-value estate assets has resulted in losses estimated in the millions. Continued tolerance of such missteps only furthers the damage. Immediate corrective action is essential to preserve the estate's remains and restore confidence in the administration of justice.

Respectfully submitted,
**Kris D. Roglieri**, Debtor
By: **Linda Oliver**, Attorney-in-Fact (POA)
Dated: April 7, 2025

# EXHIBIT 2

10. Linda **handed over Kris Roglieri's mail to Mr. Dribusch in my presence.** I was standing **near the main kitchen island, close to the refrigerator,** and had a clear view of the exchange.

11. **At no point did Mr. Dribusch provide a court order or any legal documentation authorizing him to retain Kris's mail,** which raised concerns regarding the legitimacy of his actions.

12. The lack of clarity and transparency regarding **Mr. Dribusch's authority to withhold Kris's mail** created an uncomfortable and questionable situation.

## Statement of Concern

13. I am submitting this affidavit to formally document my observations and concerns regarding the handling of **Kris Roglieri's mail** and the apparent **lack of legal authorization provided by Mr. Dribusch** to justify his actions.

14. I respectfully request that this affidavit be reviewed as part of the ongoing **Chapter 7 bankruptcy proceedings** to ensure **proper oversight and accountability** in the handling of Kris Roglieri's personal and legal matters.

Under penalty of perjury, I affirm that the foregoing statements are **true and correct** to the best of my knowledge and belief.

Dated: **January 29, 2025**
Location: New York, New York

Signature: _____
Michael Pytlar

Sworn and subscribed before me this 29th day of January 2025.

Notary Public: _____
[Notary's Name and Seal]

ERICK GUERRERO
Notary Public, State of New York
Qualified in Nassau County
Reg. 01GU6165605
Expires on 5/14/_2027_

R&F

Linda Oliver
11 Hill Top Lane
Poughkeepsie, NY 12603

**January 10, 2025**

2025 FEB -3 PM 1:31

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

Honorable Robert E. Littlefield, Jr
United States Bankruptcy Court
Northern District of New York
445 Broadway
Albany, NY 12207

RE: Chapter 7 Case No. 24-10157-REL

Dear Judge Littlefield,

I, Linda Oliver, being duly sworn, depose and state as follows under penalty of perjury:

## Background Information

1. I resided in Warren County, New York, at 40 North Road, Queensbury, NY 12804.
2. This affidavit is submitted in relation to the Chapter 7 bankruptcy proceedings involving Kris Roglieri and the conduct of the appointed U.S. Trustee, Mr. Christan Dribusch.

## Relevant Events on June 9, 2024

3. On Sunday, June 9, 2024, Mr. Christan Dribusch, the appointed U.S. Trustee, came to my prior residence at 40 North Road, Queensbury, NY, to conduct a walk-through of the property.
4. At the time of the walk-through, my best friend, Michael Pytlar, was present with me as a witness.

## Events in the Kitchen

5. During the walk-through, Mr. Dribusch and I were in the kitchen, where I indicated the location of important documents, including a drawer containing vehicle titles.

6. I handed over the titles for the vehicles to Mr. Dribusch, and he took them in my presence.

7. Near the main island, there was also a stack of mail on the back counter in the kitchen. I informed Mr. Dribusch that I had permission from Kris Roglieri to take Kris's mail.

8.  Mr. Dribusch responded by stating that I should only take my mail, as Kris's mail was part of the bankruptcy process. He further stated that he would handle all mail addressed to Kris moving forward.

## Concerns About Retaining Mail

9.  I handed over the mail addressed to Kris Roglieri to Mr. Dribusch in the presence of my witness, Michael Pytlar, who was standing with us near the main kitchen island by the refrigerator.
10. At no time did Mr. Dribusch provide any court order or documentation authorizing him to retain Kris's mail, which made the situation uncomfortable and unclear.

## Supporting Evidence

11. On June 19, 2024, I sent a text message to Mr. Dribusch reiterating and confirming his statements about handling Kris's mail when I was asking about my mail.
12. Michael Pytlar is available to corroborate my account of the events that took place on June 9, 2024, including the transfer of Kris's mail to Mr. Dribusch.

## Statement of Concern

13. I am providing this affidavit to document my concerns regarding handling Kris Roglieri's mail and the lack of transparency or documentation regarding the authority for its retention by Mr. Dribusch.
14. I respectfully request that this affidavit be considered in relation to the ongoing Chapter 7 bankruptcy proceedings to ensure proper oversight and accountability.

**Under penalty of perjury, I affirm that the foregoing statements are true and correct to the best of my knowledge and belief.**

Dated: January 28, 2025
Location: New York, New York

Signature:
Linda Oliver

Sworn and subscribed before me this 28th day of January 2025.

Notary Public:
[Notary's Name and Seal]

MARY A CALLINAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01CA6097282
Qualified in New York County
Commission Expires  01/17/2026





R&F

Linda Oliver
11 Hill Top Lane
Poughkeepsie, NY 12603

2025 FEB -3 PM 1: 32

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

**January 10, 2025**

**Honorable Robert E. Littlefield, Jr**
United States Bankruptcy Court
Northern District of New York
445 Broadway
Albany, NY 12207

RE: Chapter 7 Case No. 24-10157-REL

**Dear Judge Littlefield,**

I am writing to bring to your attention important information related to the Chapter 7 bankruptcy case involving Kris Roglieri.

A witness has observed Mr. Christian Dribusch entering the mailbox at 40 North Road, Queensbury, NY 12804. The witness reported seeing Mr. Dribusch exit his vehicle on multiple occasions to check the mailbox and open the gates. Additionally, the witness observed Mr. Dribusch checking the mail again upon leaving the property.

The witness was able to identify the vehicle Mr. Dribusch was driving and provided a description of his clothing during these visits. While the witness is willing to provide a sworn affidavit, they have expressed concerns about potential government retaliation or unwanted exposure in the media. Given that the witness has a family, they are understandably cautious about any risks their involvement might entail.

The witness has indicated that they would be willing to file an affidavit if their identity could be protected and the document sealed to ensure their safety and privacy.

I respectfully submit this information for your consideration and request that appropriate measures be taken to protect the integrity of this case while safeguarding the witness's identity.

Thank you for your time and attention to this matter.

Best regards,
Linda Oliver

# EXHIBIT 3



# EXHIBIT 4







# EXHIBIT 5



Left @ House not Sold

Left in House



left @ 40 North Road

requesting Abandonment
turn over



left requesting
Abandonment
turn over

# EXHIBIT 6

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

**In re:**
**KRIS ROGLIERI, Debtor**
Chapter 7
Case No. 24-10157-REL

## MOTION TO FILE WITNESS AFFIDAVIT UNDER SEAL

TO: THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES the undersigned, Linda Oliver, as Attorney-in-Fact for Debtor Kris D. Roglieri, and respectfully requests leave to file a witness affidavit under seal, and in support thereof, states as follows:

1.  The affidavit contains information directly relevant to the handling of estate property in this case.

2.  The witness has expressed legitimate concerns about personal and professional repercussions if their identity or testimony becomes public.

3.  Filing the affidavit under seal is necessary to protect the witness's safety and privacy and to encourage truthful and complete disclosure to the Court.

4.  Under 11 U.S.C. § 107(b) and Bankruptcy Rule 9018, the Court has the authority to permit filing under seal to prevent harm or undue risk to individuals, their families, or their businesses.

The undersigned respectfully requests that this Court enter an order allowing the affidavit to be filed under seal and for such other relief as the Court deems just and proper.

Respectfully submitted,
**KRIS D. ROGLIERI**
By: **Linda Oliver, as Attorney-in-Fact**
N-4 #45131
Rensselaer County Jail
4000 Main Street
Troy, NY 12180

Dated: April 4, 2025

# EXHIBIT 7



# EXHIBIT 8

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:                                                    Chapter 7

KRIS DANIEL ROGLIERI                                      Case No.  24-10157

               *Debtor.*

-------------------------------------------------------------------X

### <u>AUCTIONEER'S REPORT OF NOVEMBER 16, 2024 AUCTION</u>

     Megan A. Hennessey, being duly sworn, depose and say that:

1)    I am the Executive Director of the Saratoga Automobile Museum which is the Court appointed Auctioneer. See ECF #241.  The Debtor bankruptcy estate was authorized to conduct an auction sale of vehicles, parts, and memorabilia.  See ECF #278.

2)    Pursuant to Local Bankruptcy Rule 6005-1(c), I state the following:

    a)    The sale of the bankruptcy estate assets occurred on November 16, 2024.

    b)    The sale took place online pursuant to the notices and online marketing. See <u>Previous Results | Saratoga Automobile Museum</u>.

    c)    The sales took place commencing at 10:00 a.m. and ended at approximately 5:30 p.m.

    d)    The winning bids are reflected in the auctioneer purchaser report annexed hereto as **Schedule A.**

    e)    All auction sales have now been completed.

    f)    The gross amount realized by the auction sale was $58,771.90 (including 10% buyer's premium).

    g)    The Auctioneer seeks a commission of 10% on gross proceeds of $53,429.00 for a total commission sought of $5,342.90.

h)    The Auctioneer incurred expenses of $4,460.00 as documented on **Schedule B.**

i)    No sale proceeds have been retained by Auctioneer.

j)    A total of 22 registered bidders participated in these auction sales. A copy of the bidder list has been provided to the United States Trustee.

k)    All the property was sold because of the auction sale and no properties were abandoned.

l)    A copy of the terms and conditions of the auction sales are attached hereto as **Schedule C.**

m)    The manner and extent of advertising the sale and the availability of the sale items for inspection prior to the sale was as follows:

1)    The items offered for sale were advertised on the website of Saratoga Automobile Museum and by advertising to the possible interested bidders, linking them to the internet sale information.

2)    In addition, the items offered for sale were advertised through marketing materials in digital online format. See, Saratoga Automobile Museum (saratogaautoauction.org).

3)    The items offered for sale were available for inspection at the site of the auction on November 8th & 9th, 2024 from 12pm -3pm.

n)    Based upon the final numbers a sales tax was collected in the amount of $3,636.27 and was remitted on December 17, 2024 to the appropriate taxing authority by the Auctioneer.

o)      The Auctioneer has not sought reimbursement of a portion of the bond premium from this sale as the bankruptcy estate has directly paid the auctioneer bond.  See Auctioneer Bond ECF #240.

Dated:  December 19, 2024, 2024

Respectfully submitted,

*Megan A. Hennessey*

**Megan A. Hennessey**

Sworn to before me this
19th day of December 2024

*Molly Anne Cnott*

Notary Public
State of New York
County of Saratoga
Notary Expiration Date of June 28, 2025

MOLLY ANNE KNOTT
NOTARY PUBLIC-STATE OF NEW YORK
No. 01KN6419126
Qualified in Saratoga County
My Commission Expires 06-28-2025

**SARATOGA**
MOTORCAR AUCTIONS

**SARATOGA
AUTOMOBILE
MUSEUM**

Phone: (518) 587-1935

Customer #

Attention: United States Bankruptcy Court Northern District of New York and Saratoga Automobile
Museum
110 Avenue of the Pines
Saratoga Springs NY 12866

# CUSTOMER SUMMARY AT SARATOGA AUTOMOBILE MUSEUM

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| **SOLD:** | | | | | |
| E24-106 #2070 | Three Leather Bar Stools | $600.00 | $0.00 | $0.00 | $600.00 |
| E24-100 #2012 | Pool Table & Que Rack | $900.00 | $0.00 | $0.00 | $900.00 |
| E24-103 #2015 | Abbyson Leather Love Seat | $130.00 | $0.00 | $10.28 | $130.00 |
| E24-115 #2025 | Two Island Stools | $50.00 | $0.00 | $0.00 | $50.00 |
| E24-112 #2022 | Four Leather Island Chairs | $450.00 | $0.00 | $35.60 | $450.00 |
| E24-104 #2016 | Abbyson Leather Loveseat | $150.00 | $0.00 | $11.87 | $150.00 |
| E24-101 #2013 | Two Leather Chairs | $200.00 | $0.00 | $15.82 | $200.00 |
| E24-107 #2017 | Leather Bar Stool | $65.00 | $0.00 | $5.14 | $65.00 |

**Exhibit A**

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| E24-111 #2021 | Mudroom Coat Rack with Mirror | $120.00 | $0.00 | $9.49 | $120.00 |
| E24-119 #2029 | China Cabinet | $550.00 | $0.00 | $0.00 | $550.00 |
| E24-113 #2023 | CellerPro Wine Cooler | $475.00 | $0.00 | $37.57 | $475.00 |
| E24-117 #2027 | Buffet Cabinet | $1,400.00 | $0.00 | $110.74 | $1,400.00 |
| E24-123 #2032 | Paper Shredder | $30.00 | $0.00 | $2.37 | $30.00 |
| E24-139 #2047 | Wooden Table | $230.00 | $0.00 | $18.19 | $230.00 |
| E24-125 #2034 | Wooden End Table | $80.00 | $0.00 | $6.33 | $80.00 |
| E24-149 #2055 | Queen Size Bedroom Set | $140.00 | $0.00 | $11.07 | $140.00 |
| E24-110 #2020 | Sink with Missing Cabinet Doors | $7.00 | $0.00 | $0.55 | $7.00 |
| E24-130 #2038 | Coffee Table | $95.00 | $0.00 | $7.51 | $95.00 |
| E24-132 #2040 | Desk | $50.00 | $0.00 | $3.96 | $50.00 |
| E24-108 #2018 | Poker Table, 8 Card Chairs & Poker Chips Set | $850.00 | $0.00 | $67.24 | $850.00 |
| E24-114 #2024 | National Guard Military Garden Stone | $5.00 | $0.00 | $0.40 | $5.00 |

**Exhibit A**

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| E24-145 #2052 | Bed Bench & Table | $150.00 | $0.00 | $11.87 | $150.00 |
| E24-156 #2059 | Desk, File Cabinet & Ottoman | $110.00 | $0.00 | $8.70 | $110.00 |
| E24-129 #2037 | 72" Sharp TV with Speakers and a adign Subwoofer | $350.00 | $0.00 | $27.69 | $350.00 |
| E24-157 #2060 | Desk, File Cabinet & Ottoman | $80.00 | $0.00 | $6.33 | $80.00 |
| E24-116 #2026 | Dining Room Table with 12 Chairs | $2,300.00 | $0.00 | $0.00 | $2,300.00 |
| E24-109 #2019 | Dining Room Table with Six Chairs | $350.00 | $0.00 | $27.69 | $350.00 |
| E24-127 #2035 | 51" DELL Monitor & Speakers | $750.00 | $0.00 | $59.33 | $750.00 |
| E24-131 #2039 | Oriental Rug Runner | $120.00 | $0.00 | $9.49 | $120.00 |
| E24-136 #2044 | Cliffside Poster | $1.00 | $0.00 | $0.08 | $1.00 |
| E24-124 #2033 | Paradigm Speakers | $130.00 | $0.00 | $10.28 | $130.00 |
| E24-122 #2031 | Computer Chair | $85.00 | $0.00 | $6.72 | $85.00 |
| E24-138 #2046 | Ductless Aire DC Inventer Mini Split Heat Pump Indoor & Outdoor Unit | $800.00 | $0.00 | $63.28 | $800.00 |
| E24-118 #2028 | Speakers | $25.00 | $0.00 | $1.98 | $25.00 |

**Exhibit A**

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| E24-133 #2041 | Lamp & Vase | $17.00 | $0.00 | $1.34 | $17.00 |
| E24-140 #2048 | White & Gold Couch | $14.00 | $0.00 | $1.11 | $14.00 |
| E24-135 #2043 | Three Sets of Skiis & Ski Poles with Gloves | $600.00 | $0.00 | $47.46 | $600.00 |
| E24-128 #2036 | Executive Desk & Chair | $5,000.00 | $0.00 | $395.50 | $5,000.00 |
| E24-137 #2045 | Bike Helmets & Bike Pump | $1.00 | $0.00 | $0.08 | $1.00 |
| E24-144 #2051 | Master Bedroom Set | $350.00 | $0.00 | $27.69 | $350.00 |
| E24-102 #2014 | Cherry Wood Humidor | $550.00 | $0.00 | $43.51 | $550.00 |
| E24-146 #2053 | Full Size Bedroom Set | $160.00 | $0.00 | $12.66 | $160.00 |
| E24-143 #2050 | Clothes Rack | $65.00 | $0.00 | $5.14 | $65.00 |
| E24-147 #2054 | Computer Desk | $25.00 | $0.00 | $1.98 | $25.00 |
| E24-151 #2057 | Accent Table | $35.00 | $0.00 | $2.77 | $35.00 |
| E24-158 #2061 | Board Table & 21 Conference Chairs | $600.00 | $0.00 | $0.00 | $600.00 |

**Exhibit A**

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| E24-150 #2056 | Glass Table with Chairs | $45.00 | $0.00 | $3.56 | $45.00 |
| E24-120 #2030 | Oriental Rug | $2,100.00 | $0.00 | $166.11 | $2,100.00 |
| E24-134 #2084 | Stack On Gun Safe | $200.00 | $0.00 | $15.82 | $200.00 |
| E24-153 #2058 | Two Heaters | $375.00 | $0.00 | $29.66 | $375.00 |
| E24-159 #2062 | Accent Table | $16.00 | $0.00 | $1.27 | $16.00 |
| E24-141 #2071 | Laundry Hamper | $55.00 | $0.00 | $0.00 | $55.00 |
| E24-160 #2076 | Hammer Strength Dumbells | $1,700.00 | $0.00 | $136.85 | $1,700.00 |
| E24-170 #2086 | 5 Statues | $1,870.00 | $0.00 | $143.99 | $1,870.00 |
| E24-166 #2066 | Matrix Ultimate Deck Treadmill | $190.00 | $0.00 | $15.03 | $190.00 |
| E24-167 #2067 | Canvas Pictures | $3.00 | $0.00 | $0.24 | $3.00 |
| E24-148 #2072 | LG Washer & Dryer | $1,300.00 | $0.00 | $0.00 | $1,300.00 |
| E24-105 #2082 | TV with Sound System | $1,800.00 | $0.00 | $142.38 | $1,800.00 |
| E24-121 #2083 | China Set for 12 People | $210.00 | $0.00 | $16.61 | $210.00 |

# Exhibit A

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|---|---|---|---|---|---|
| E24-142 #2049 | Dresser | $100.00 | $0.00 | $7.91 | $100.00 |
| E24-161 #2077 | Gym Bench | $13.00 | $0.00 | $1.05 | $13.00 |
| E24-174 #2090 | 4 Planters | $425.00 | $0.00 | $32.73 | $425.00 |
| E24-164 #2064 | Black & Red Couch | $220.00 | $0.00 | $17.40 | $220.00 |
| E24-177 #2093 | Garage Tiles | $200.00 | $0.00 | $0.00 | $200.00 |
| E24-172 #2088 | 2 Urns | $850.00 | $0.00 | $65.45 | $850.00 |
| E24-171 #2087 | 4 Urns | $1,700.00 | $0.00 | $130.90 | $1,700.00 |
| E24-173 #2089 | Playhouse | $382.00 | $0.00 | $29.41 | $382.00 |
| E24-169 #2085 | 4 Outside Lights | $1,275.00 | $0.00 | $98.18 | $1,275.00 |
| E24-163 #2063 | Executive Gold Chairs | $250.00 | $0.00 | $19.78 | $250.00 |
| E24-152 #2073 | Patio Set | $950.00 | $0.00 | $76.48 | $950.00 |
| E24-162 #2078 | Universal Gym | $1,500.00 | $0.00 | $120.75 | $1,500.00 |
| E24-154 #2074 | Three Patio Lounge Chairs | $375.00 | $0.00 | $30.19 | $375.00 |

**Exhibit A**

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|---|---|---|---|---|---|
| E24-155 #2075 | Three Patio Lounge Chairs | $475.00 | $0.00 | $38.24 | $475.00 |
| E24-176 #2092 | Rug | $100.00 | $0.00 | $0.00 | $100.00 |
| E24-168 #2068 | Cleaning Supplies | $45.00 | $0.00 | $3.56 | $45.00 |
| E24-175 #2091 | Shed | $1,530.00 | $0.00 | $117.81 | $1,530.00 |
| E24-165 #2065 | Matrix Ultimate Deck Treadmill | $110.00 | $0.00 | $8.70 | $110.00 |
| **SELLER TOTALS:** | **(77 UNITS)** | **$39,609.00** | **$0.00** | **$0.00** | **($39,609.00)** |
| **OTHER EXPENSES:** | | | | | |
| | Other Fee: Buyer Premium to the DOJ- will be returned to the museum | ($3,960.9) | - | | ($3,960.9) |
| **TOTAL DUE** | **(1 UNIT)** | | | | **($3,960.90)** |
| **NET DUE** | | | | | **($43,569.90)** |

Print Name                                      Sign Name

# Exhibit A

**SARATOGA** MOTORCAR AUCTIONS   **SARATOGA AUTOMOBILE MUSEUM**   | NY
Phone: (518) 587-1935

Customer #

Attention: United States Bankruptcy Court Northern District of New York and Saratoga Automobile
Museum

110 Avenue of the Pines

Saratoga Springs NY 12866

# CUSTOMER SUMMARY AT SARATOGA AUTOMOBILE MUSEUM

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| **SOLD:** | | | | | |
| 109 #2000 | Keltec P3AT .380ACP Semi Auto | $85.00 | $0.00 | $6.72 | $85.00 |
| 121 #1989 | Savage MKII with Tasco Scope | $70.00 | $0.00 | $5.54 | $70.00 |
| 100 #1993 | Auto Ordance 1927 | $1,300.00 | $0.00 | $102.83 | $1,300.00 |
| 112 #2002 | Mossberg 500C Slug Barrel | $140.00 | $0.00 | $11.07 | $140.00 |
| 117 #2005 | Remington 742 | $160.00 | $0.00 | $12.66 | $160.00 |
| 101 #1994 | Benelli Super Vinci | $500.00 | $0.00 | $39.55 | $500.00 |
| 122 #2008 | Taurus 605 Revolver Stainless Steel | $220.00 | $0.00 | $17.40 | $220.00 |
| 103 #1995 | Browning Light 12 with Slug Barrell | $325.00 | $0.00 | $25.71 | $325.00 |

**Exhibit A**

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| 113 #2003 | Mossberg 930 Field Barrel 12G | $130.00 | $0.00 | $10.28 | $130.00 |
| 104 #1996 | Browning A5 Magnum | $275.00 | $0.00 | $21.75 | $275.00 |
| 105 #1997 | Browning A5 Sweet 16 | $900.00 | $0.00 | $71.19 | $900.00 |
| 123 #2079 | Weiruch 5MM Air Rifle PF20 | $325.00 | $0.00 | $25.71 | $325.00 |
| 106 #1998 | FAB Arms STF12 Professional | $850.00 | $0.00 | $67.24 | $850.00 |
| 119 #2006 | Remington 870 Super Slug 12G | $450.00 | $0.00 | $35.60 | $450.00 |
| 114 #2004 | Parker SXS CH Trojan 12G | $3,000.00 | $0.00 | $237.30 | $3,000.00 |
| 124 #2010 | Warmonger Barbarian Sword | $325.00 | $0.00 | $25.71 | $325.00 |
| 107 #1999 | Henry Big Boy Octagon Gold Anodized | $550.00 | $0.00 | $43.51 | $550.00 |
| 116 #2081 | Remington 700 Safari Custom Shop .375 H&H with 4x scope | $700.00 | $0.00 | $43.51 | $700.00 |
| 125 #2011 | Elite Danish Dagger (#1618) | $210.00 | $0.00 | $16.61 | $210.00 |
| 120 #2007 | Smith and Wesson 629 6" | $450.00 | $0.00 | $0.00 | $450.00 |
| 115 #1990 | Parker SXS PH 12G 2.75" | $550.00 | $0.00 | $43.51 | $550.00 |

**Exhibit A**

| Lot | Description | Final Bid | Premium | Fees/Tax | Total |
|-----|-------------|-----------|---------|----------|-------|
| 110 #2080 | Frederic Langenhan – Purschbuchse Underlever .22 Hornet | $500.00 | $0.00 | $39.55 | $500.00 |
| 102 #1991 | Browning Citori 20G IC | $1,100.00 | $0.00 | $87.01 | $1,100.00 |
| 108 #1992 | IAB Trap 12G Single Barrel | $325.00 | $0.00 | $25.71 | $325.00 |
| 118 #2069 | Remington 870 20G | $230.00 | $0.00 | $0.00 | $230.00 |
| 111 #2001 | Sporterized K98 Erfurt Mauser 8mm | $150.00 | $0.00 | $11.87 | $150.00 |
| **SELLER TOTALS:** | **(26 UNITS)** | **$13,820.00** | **$0.00** | **$0.00** | **($13,820.00)** |
| **OTHER EXPENSES:** | | | | | |
| | Other Fee: Buyer Premium to DOJ- will be returned | ($1,382) | - | ($1,382) | |
| **TOTAL DUE** | **(1 UNIT)** | | | | **($1,382.00)** |
| **NET DUE** | | | | | **($15,202.00)** |

Print Name                              Sign Name

**Exhibit A**

AID
Flearms and Estate Items
Saratoga Auto Auction

## proxibid.   *Auctioneer Marketing Program*

| Firearms | Category | Run Dates | Standard Rate |
|---|---|---|---|
| *Category Display Advertising* | | | |
| Category Tower Ad | Guns & Military Artifacts | 11-10-24 - 11-16-24 | $625.00 |
| *Targeted Emails* | | | |
| Targeted Email - Top Custom Banner | Guns & Military Artifacts - Tuesday | 11/12/2024 | $625.00 |
| Weekly Newsletter - Standard Ad | Guns & Military Artifacts - Friday | 11/8/2024 | $75.00 |
| | | **Total** | **$1,325.00** |

| Estate Furnishings | | | |
|---|---|---|---|
| *Engagement Package* (Category B) | | | **$4,250.00** |
| Homepage Slider | Homepage | 11-10-24 - 11-16-24 | included in package |
| Homepage Chronological Featured Event Listing | Homepage | 11-10-24 - 11-16-24 | included in package |
| Homepage Featured Item x2 | Homepage | 11-10-24 - 11-16-24 | included in package |
| Category Slider | Art Antiques & Collectibles | 11-7-24 - 11-13-24 | included in package |
| Weekly Newsletter - Featured Event | Art Antiques & Collectibles - Tuesda | 11/12/2024 | included in package |
| Dedicated Email - Primary Category List (5,000 targets) | Art Antiques & Collectibles | 11/13/2024 | included in package |
| | | Price without Package Discount | $5,675.00 |
| | | Savings | $1,425.00 |
| | | **Total** | **$4,250.00** |

PLEASE NOTE: Where space within packages are unavailable at the time of booking, an alternative will be found of equal or higher value.
Partner Tier and Timed event discounts will be reflected in your final invoice.

Gold Tier Discount   $4,460.00

# Exhibit B



## 1994 FERRARI
## 512 TR
Lot # S24-524

**Highest Bid: $210,000**



SOLD

undersold

## 2021 MERCEDES BENZ RENNTECH R3
## AMG GT BLACK SERIES
Lot # S24-525

**Sale Price: $308,000**



SOLD

saratogaautoauction.org

**Fuel**

**Stinger integrated laser and radar detector installed with screen! (10k)**

**Over 100k Invested in this masterpiece!!**

**Price: $409,000**



being resold
for more

**Call or Text: 518-461-9757**







+16

$409,000

**2021 AMG GT**

 Message

 193         35 comments  1 share

👍 Like      💬 Comment      🔗 Copy      ➦ Share



# LUXURYPULSE



**Slideshow** 20 pictures  ⊙

⌂ / SALES / FERRARI F12 NOVITEC N-LARGO S

Mine was Undersold for $341,000 and it had
extra work to it!

## Ferrari F12 Novitec N-Largo S

→ **$ 987,466**

EUR   AUD   CAD   CHF   CNY   GBP   HKD   HRK   MXN   NOK
RUB   SEK   THB

**2018 Ferrari F12 Novitec N-Largo S | 1/11 for**
Price: €919,900



Privacy - Terms



Bed
Set
Undersold
$350

Undersold for $475

Sofa Undersold for only $14⁰⁰

# EXHIBIT 9

♡  Collections (/myportal/collections)  ⚲  Searches (/myportal/searches)  Reports (/myportal/reports)  Hi, Linda! (/myportal/profile)  ⊘  Log Out

FAIR HOUSING NOTICE | RMA (HTTPS://SITEBUILDER.REALVOLUTION.COM/ELEMENTS/IMAGES/UPLOADS/6192/RMA.PDF)

(HTTPS://CDN1.BRIVITYIDX.COM/ASSETS/UPLOADS/8838/PDFS/NYS_FAIR_HOUSING_NOTICE.PDF)



Logo (https://kwcapitaldistrictny.yourkwoffice.com/)

‹ Market Reports

40 North Road, Glens Falls North, NY 12804
Residential – 1 mile radius

**Sell My Home**   ✉ **Contact Us**   ••• **More**

✎ Update Report

### Peak Partners Real Estate Team
5183133094    peakpartnersteam@peakrealtyny.com

**Contact**

ⓘ Estimated home values are generated from multiple sources and can vary depending on the quality of available data. For the most accurate price, reach out and we will provide a professional valuation.

## Estimated Home Value

# $2,045,776 ($198 per sqft)

40 North Road Glens Falls North,  NY 12804

|  |  |  | Low | High |
|---|---|---|---|---|
| $1,999,000 | $1,999,000 | -- | **$1,841,198** | **$2,250,354** |

### Let's Chat About Your Home's Value
Tell us what you think about this estimate.

Accurate    Too Low    Too High

✉ **Get Professional Valuation**

### How Has Your Area Changed Over Time?

Gain valuable insights into changes and stay informed about your area's financial dynamics.

✉ **Get A FREE Comparative Analysis**

$2.05m
$1.95m
$1.85m
$1.75m
$1.65m
$1.55m
$1.45m

Jun '23   Oct '23   Feb '24   Jun '24   Oct '24   Feb '25

## Home Details
Make sure your home details are accurate.



40 North Road



40 North Road



40 North Road



40 North Road



40 North Road



40 North Road

5:09

◀ Messages

| 🔍 | **Queensbury, NY** ✕ | Add another location |

⇅ ③

**Sort: Homes for You**          🔍 **Save Search**



Multiple fireplaces

**$1,999,000**

6 bds | 6 ba | **10,307** sqft | Active

40 North Road, Queensbury, NY

Listing by: Davies-Davies & Assoc Real Est



3D Tour

**$989,900**

3 bds | 3 ba | **2,706** sqft | Active

167 Chestnut Ridge Road, Queensbury, NY

Listing by: Miranda Real Estate Group Inc

Price cut: $10,000 (3/12)

📖 **Map**

🔍 Search     Updates (10)     ♥ Saved Homes     $ Home Loans     Inbox



**4 bds** | **5 ba** | **8,400** sqft

19 North Rd, Queensbury, NY 12804

● Off market | Zestimate®: $1,449,900

Rent Zestimate®: $4,972/mo

Est. refi payment: $7,653/mo **Refinance your loan**

## Home value



Zestimate

# $1,449,900


Zestimate range
**$1.29M - $1.64M**


Last 30-day change
**+ $15,000** (+0.9%)

5:10 ◀ Messages

✕                               ✏️  ♡  ⬆️  ⚫⚫⚫



1 of 3

**8 bds** | **8 ba** | **5,667** sqft

27 North Rd, Queensbury, NY 12804

⚫ Off market | Zestimate®: $1,398,800

Rent Zestimate®: $4,370/mo

Est. refi payment: $7,385/mo  **Refinance your loan**

## Home value



Zestimate

# $1,398,800

Zestimate range

$1.19M — $1.64M



5:06 

◀ Messages

  

✕

All calculations are estimates and provided for informational purposes only. Actual amounts may vary.

# Comparable homes

These are recently sold homes with similar features to this home, such as bedrooms, bathrooms, location, and square footage.

 

| This home | ⓵ 24 North Road |
|-----------|------------------|
| **$1,449,900** | **$850,000** |
| ⚫ **Off Market** | 🟡 **Sold** 5 months ago |
| **4** beds | **4** beds |
| **5** baths | **5** baths |
| **8400** sqft | **4454** sqft |
| **$173** / sqft | **$191** / sqft |

MLS ID #202426096, Shannon McCarthy, eXp Realty



# Comparative value

Here's how this home's value estimate compares to

**OBJECTION TO THE TRUSTEE'S ATTEMPTED UNDERSELL OF ESTATE RESIDENCE AT 40 NORTH ROAD**
Submitted by Kris Roglieri, Debtor
By POA Linda Oliver

To the Honorable Court,

I, Kris Roglieri, the Debtor in the above-captioned matter, respectfully object to the Trustee's proposed sale of my residence at 40 North Road and submit the following in support of this objection:

**1. Trustee's Attempt to Undersell Estate Residence**
I have been informed that Trustee Christian Dribusch is attempting to sell the estate residence located at 40 North Road for $1.6 million. This is far below its fair market value and constitutes a clear attempt to rush and undersell the asset to the detriment of both myself and the creditors of this estate.

This property includes:

- 14 acres of land in a prime location

- A custom-built **French-style château residence**

- Located on a private dead-end road, offering exclusivity and enhanced property value

- **Custom Italian-designed saltwater pool** with an attached hot tub and an **infinity water fountain** feature at the far end overlooking the pond

- **Custom-built 3,000-square-foot heated detached car garage located at the back of the property**

- **Gut-renovated, high-end French-style kitchen** with imported cabinetry, appliances, fixtures, and finishes

- Backyard bar/lounge for entertaining featuring a **beautiful custom outdoor fireplace**

- **Professionally landscaped grounds**

- **Custom lion statues positioned at the entrance outside the gated entry**

- **A 20-foot-high marble lion water fountain located at the front entrance of the home,** creating a dramatic and elegant focal point

- **A custom-designed gazebo** located in the backyard that **overlooks the pond and offers a picturesque view of the château**, ideal for entertaining or enjoying peaceful views

- **All lighting fixtures throughout the home are antiques,** individually valued at approximately **$5,000–$10,000 each**

- In the **window room, which we used as the living room**, there is a **rare, imported angel chandelier**, fully integrated into the room's **custom architectural design** and valued at **over $50,000** as a **centerpiece ensemble**. Additionally, it was **imported from France and dates back to the 18th century**

- Custom 1920s bar in the window room, which we used as the living room, $30,000

- **Custom mural ceilings**, crafted to match the château's design and interior architecture

- **Custom Venetian plaster finishes with hand-applied gold leaf** throughout the entire home, adding elegance, depth, and artistic value to the interior

- Unique design, privacy, and luxury amenities not found in nearby homes

All of the above were custom upgrades I did shortly after purchasing the home in 2014, which adds significant value. The kitchen was over $250,000, the custom paint finish was over $150,000, and about 20 brass/bronze light fixtures were around $150,000. The outdoor features include the pool, hot tub, back patio, marble bar back area, outdoor fireplace, marble columns and pergola, marble gazebo, marble lion fountain, and marble lions at the front gate entrance, which cost over a million dollars. Also, a $300,000 built-in custom heated detached car garage.

Nearby properties with smaller lots, smaller square footage, and fewer features are listed between $1.3 million and $1.4 million.

- **See Exhibit A for the current market value of 40 North Road.**

- **See Exhibit B for examples of estimated values of homes in the neighborhood, which are much smaller and have less land than 40 North Road.**

- **See Exhibit C for 11 pages of photos showing the beauty of the home.**

Based on square footage, land, high-end upgrades, imported fixtures, and distinctive improvements, my residence should be valued between $2 million and $2.5 million.

The Trustee's attempt to sell this house for $1.6 million insults creditors. It's like giving away this house for free, considering the extensive upgrades, the massive size of the château, its beauty, and the acres of land, which is such a rare find.

There is no evidence that a formal, independent appraisal has been conducted, that the home has been appropriately listed or marketed to obtain maximum value, or that the Trustee is pursuing this sale in good faith or with due consideration for creditor recovery.

To date, the trustee has not attempted to contact me to provide any input or knowledge regarding the unique aspects that make this estate valuable.

## 2. Pattern of Mismanagement and Bad Faith by Trustee
This attempted sale fits into a broader pattern of mismanagement and undervaluation of estate assets by the Trustee. Previous actions have included:

- The unauthorized seizure and disposal of high-value assets

- Failure to obtain proper appraisals or marketing exposure

- Denial of my right to participate in hearings due to lack of coordination with the jail

- Neglecting the duty to maximize the value of estate assets on behalf of creditors

The proposed $1.6 million sale is a reckless and intentional undervaluation jeopardizing the estate. The Trustee's continued pattern of rushed sales without transparency or fair market exposure is harmful and unjustifiable.

## 3. Legal Support for Objection
Trustees are legally obligated to act in the estate's and its creditors' best interests. Relevant case law includes:

- *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7 (1st Cir. 1993), where the court held that failure to obtain fair market value may constitute a breach of fiduciary duty.

- *In re CFLC, Inc.*, 166 B.R. 181 (Bankr. W.D. Tex. 1994), where the court found that rushed sales without proper marketing or valuation can constitute bad faith.

- *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991), where lack of due diligence was held harmful to the estate.

- Under 11 U.S.C. § 704(a)(1), a trustee must collect and reduce estate property to money for the benefit of creditors—this includes obtaining fair market value through diligent effort.

## 4. Relief Requested
Accordingly, I respectfully request the Court:

1. Prevent any sale of the property at 40 North Road until a formal appraisal is completed, proper marketing has occurred, and competitive bidding is invited.

2. Investigate whether the Trustee's conduct in this and other transactions is a breach of fiduciary duty or bad faith.

3. Consider this objection and related facts as further support for Trustee removal under Motion #345.

This objection is respectfully submitted while I remain in custody and unable to participate directly in proceedings. It is signed by my Power of Attorney, Linda Oliver, on my behalf.

Respectfully,
**Kris Roglieri**
Debtor (By POA)

Date: April 7, 2025

Signature:

**Linda Oliver, Power of Attorney for Kris Roglieri**

# EXHIBIT 10



SARATOGA | SARATOGA
MOTORCAR AUCTION | AUTOMOBILE
| MUSEUM

📞 518-587-1935    ✉ MESSAGE US

AUCTIONS ▾    REGISTER TO BID    CONSIGN    AUCTION DETAILS ▾    MORE ▾    PURCHASE TICKETS

## Upcoming Auctions



### Fine Art & Antiquity Auction

6/Jun/2025

Embassy Suites by Hilton

VIEW AUCTION



**ART PEDESTAL**
Lot # A25-171



**BLACK STATUE**
Lot # A25-170



**JULIUS CEASAR BUST**
Lot # A25-169



**ART PEDESTAL**
Lot # A25-168



**ASH/CIGARET HOLDER**
Lot # A25-167



**GREEK CHARRIOT VASE**
Lot # A25-166



**A FRENCH 19TH CENTURY L...**
Lot # A25-165



**TWO CANDELABRAS RED & ...**
Lot # A25-164



**LION STATUE**
Lot # A25-163



**TWO BLACK & GOLD GREEK ...**
Lot # A25-162



**A FRENCH 19TH CENTURY ...**
Lot # A25-161



**TWO GREEN & GOLD CANDE...**
Lot # A25-160

| YEAR ▾ | MAKE ▾ | MODEL ▾ | RUN DAY ▾ | SORT BY ▾ |



1964 PONTIAC
**GTO**



2021 AUDI
**RS7**

NO RESERVE



2015 FERRARI
**458 SPECIALE**

NO RESERVE



2014 MERCEDES-BENZ
**SLS AMG BLACK SERIES**

NO RESERVE



2020 LAMBORGHINI
**AVENTADOR SVJ**



1974 JAGUAR
**XKE**



1984 YAMAHA
**RZ350**



2017 FERRARI
**488 GTB NLARGO**

NO RESERVE



2021 MERCEDES-BENZ
**GLS 63 AMG**

NO RESERVE



2009 MERCEDES-BENZ
**SL65 AMG BLACK SERI...**

NO RESERVE

1959 CADILLAC
**ELDORADO BIARRITZ**

NO RESERVE



1972 PONTIAC
**GTO JUDGE TRIBUTE**









**MAN PAINTING**
Lot # A25-111

**ANTWERP, BELGIUM BY ALF...**
Lot # A25-110

**TESTOROSSA ARTWORK BY ...**
Lot # A25-109

**CASINO MOVIE POSTER**
Lot # A25-108









**FERRARI EMBLEM PAINTING**
Lot # A25-107

**MERCEDES WOOD SKETCH**
Lot # A25-106

**2013 WELTHERAUSFORDER...**
Lot # A25-105

**FRANKIE FLOREZ SIGNED A...**
Lot # A25-104







**...ER MOVIE PO...**

**ALEC MONOPOLY "ROBERT ...**

**ANDY WARHOL SCREENPRI...**



**VINO VILLA TOSCANO TUSB...**
Lot # A25-123



**"SAINT MICHAEL THE ARCH...**
Lot # A25-122



**COUNTRY SIDE WITH HORS...**
Lot # A25-121



**"JUDITH WITH THE HEAD O...**
Lot # A25-120



**STATE OF LIBERTY PICTURE**
Lot # A25-119



**LIGHTHOUSE PAINTING #15...**
Lot # A25-118



**FRUIT ARTWORK JACK Z. A...**
Lot # A25-117



**"ESTHER BEFORE THE PERS...**
Lot # A25-116



**17TH CENTURY ITALIAN OL...**



**PARADE PHOTO BLACK & W...**



**A. DEBUISSERT PAINTING**



**WAR PAINTING (PERSON O...**









**EMILE BARAU PAINTING 18...**
Lot # A25-131

**WARWICK CASTLE OIL PAIN...**
Lot # A25-130

**TOBIAS AND THE ANGEL, 17...**
Lot # A25-129

**NILS HANS CHRISTIANSEN ...**
Lot # A25-128









**THE CLIFF, ÉTRETAT, SUNSE...**
Lot # A25-127

**ANTIQUE OIL PAINTING BY ...**
Lot # A25-126

**STAG PAINTING**
Lot # A25-125

**"WINE AND LAVENDER" & "W...**
Lot # A25-124







org/parts/29/antique-oil-painting-by-william-pye-english-circa-1910-to-1920

**MICHAEL THE ARCH...**

**COUNTRY SIDE WITH HORS...**

**"JUDITH WITH THE HEAD O...**






**HEART ON SLEEVE BY DIMIT...**
Lot # A25-139

**NEOCLASSIC MYTHOLOGIC...**
Lot # A25-138

**THOMAS STOTHARD, LOND...**
Lot # A25-137

**VANITAS OIL ON CANVAS B...**
Lot # A25-136






**ALEXAEDRE MARIE COLIN "...**
Lot # A25-135

**HORSE GLICEE**
Lot # A25-134

**"THE CORONATION OF THE ...**
Lot # A25-133

**BACK OF A WOMAN**
Lot # A25-132






**EMILE BARAU PAINTING 18...**

**WARWICK CASTLE OIL PAIN...**

**TOBIAS AND THE ANGEL, 17...**

**NILS HANS CHRISTIANSEN...**









HAMMOND ORGAN SATURD...
Lot # A25-147

CASINO MOVIE POSTER #2
Lot # A25-146

LE CHATEAU DE JOSSELIN, ...
Lot # A25-145

FLEMISH LANDSCAPE INCL...
Lot # A25-144









MY LAST EXHIBITION IN TH...
Lot # A25-143

CASTLE ON CLIFF SIDE 20T...
Lot # A25-142

CASTLE & TREE PAINTING
Lot # A25-141

CHOPPY SEAS CRASHING W...
Lot # A25-140









HEART ON SLEEVE BY DIMIT...
Lot # A25-139

NEOCLASSIC MYTHOLOGIC...
Lot # A25-138

THOMAS STOTHARD, LOND...
Lot # A25-137

VANITAS OIL ON CANVAS B...
Lot # A25-136





**SAINT STEPHEN'S MARTYR...**
Lot # A25-155

**LARGE CANVAS DEPICTING ...**
Lot # A25-154

**SUNSET IN AMALFI NINO D'...**
Lot # A25-153

**DAVID WITH HEAD OF GOLI...**
Lot # A25-152






**PYRAMID WITH GREEK PEO...**
Lot # A25-151

**MOONLIGHT STUDY BY ART...**
Lot # A25-150

**VILLAGE WITH RIVER WITH ...**
Lot # A25-149

**MANHATTEN SKYLINE BY M...**
Lot # A25-148






**HAMMOND ORGAN SATURD...**
Lot # A25-147

**CASINO MOVIE POSTER #2**
Lot # A25-146

**LE CHATEAU DE JOSSELIN, ...**
Lot # A25-145

**FLEMISH LANDSCAPE INCL...**
Lot # A25-144

n.org/parts/53/moonlight-study-by-artist-pether-snr

# Current Collectibles Consignments

FINE ART & ANTIQUITY AUCTION ▼

| VEHICLES | COLLECTIBLES |

🔍 SEARCH COLLECTIBLE

↻ RESET

RUN DAY ▼        SORT BY ▼



**GOLD & MARBLE PEDESTAL**
Lot # A25-159



**A PAIR OF FRENCH 19TH RE...**
Lot # A25-158



**WANDERER ABOVE THE SEA...**
Lot # A25-157



**BILL FURLONG PAINTING- P...**
Lot # A25-156



**SAINT STEPHEN'S MARTYR...**
Lot # A25-155



**LARGE CANVAS DEPICTING ...**
Lot # A25-154



**SUNSET IN AMALFI NINO D'...**
Lot # A25-153



**DAVID WITH HEAD OF GOLI...**
Lot # A25-152





**MIRROR**
Lot # A25-199

**A FRENCH LOUIS XVI ST. MI...**
Lot # A25-198

**PAIR OF VERY ATTRACTIVE I...**
Lot # A25-197

**PAIR OF FRENCH 19TH CEN...**
Lot # A25-196






**FRENCH 19TH CENTURY LO...**
Lot # A25-195

**PAIR OF FRENCH 19TH CEN...**
Lot # A25-194

**FRENCH 19TH CENTURY BU...**
Lot # A25-193

**FRENCH 19TH CENTURY LO...**
Lot # A25-192








**ITALIAN 19TH CENTURY WH...**
Lot # A25-191



**PAIR OF FRENCH 19TH CEN...**
Lot # A25-190



**FRENCH 19TH CENTURY LO...**
Lot # A25-189



**PAIR OF FRENCH LOUIS XV ...**
Lot # A25-188



**ITALIAN 19TH CENTURY PA...**
Lot # A25-187



**FRENCH MID 19TH CENTUR...**
Lot # A25-186



**FRENCH EARLY 19TH CENT...**
Lot # A25-185



**19TH CENTURY NEO-CLASS...**
Lot # A25-184











**GREEK BUST**
Lot # A25-183



**GOLD BENCH**
Lot # A25-182



**GOLD ACCENT TABLE**
Lot # A25-181



**GOLD MIRROR**
Lot # A25-180



**CHERUB MIRROR**
Lot # A25-179



**ROUND TABLE**
Lot # A25-178



**LAMP**
Lot # A25-177



**DECRATIVE TABLE**
Lot # A25-176











**WHITE & GOLD TABLE**
Lot # A25-175



**MARBLE VASE**
Lot # A25-174



**ANTIQUE CLOCK**
Lot # A25-173



**NEOPOLEAN & ANGEL STAT...**
Lot # A25-172



**ART PEDESTAL**
Lot # A25-171



**BLACK STATUE**
Lot # A25-170



**JULIUS CEASAR BUST**
Lot # A25-169



**ART PEDESTAL**
Lot # A25-168









# Current Collectibles Consignments

FINE ART & ANTIQUITY AUCTION ▼

VEHICLES | **COLLECTIBLES**

🔍 SEARCH COLLECTIBLE

🔄 RESET

RUN DAY ▼ | SORT BY ▼



#2 million

**RICHARD MILLIE RM 52-01 ...**
Lot # A25-207



**DECRATIVE CONSOLE**
Lot # A25-206

DECRATIVE FIREPLACE ACC...
Lot # A25-205



**DECRATIVE FIREPLACE ACC...**
Lot # A25-204



**DECRATIVE TABLE**
Lot # A25-203



**GOLD CIRCULAR MIRROR**
Lot # A25-202



**GOLD MIRROR**
Lot # A25-201



**GOLD FLOOR LENGTH MIRR...**
Lot # A25-200

# EXHIBIT 1

**Submitted by:** Linda Oliver
**In Response to:** Motion #345 to Remove Trustee
**Date:** April 7, 2025

# AFFIDAVIT OF HARDSHIP

I, Linda Oliver, formerly a lawful resident of 40 North Street, Queensbury, NY, and the Power of Attorney for debtor Kris Roglieri, submit this affidavit to formally address the extreme hardship, emotional and financial damage, unlawful eviction, and gross trustee misconduct I have suffered due to the actions of Chapter 7 Trustee Christian Dribusch. This affidavit outlines the violations of federal and state law that have resulted in my displacement, financial losses, and emotional suffering. The details that follow demonstrate a pattern of unauthorized actions, abuse of power, and disregard for proper legal procedure, culminating in my forced removal from my residence and ongoing distress.

## I. Trustee's Unauthorized Entry and Legal Violations

On June 4th, 2024, Trustee Christian Dribusch entered the property at 40 North Street by going through the garage without court authorization. I had never met Mr. Dribusch before, and he did not notify me in advance. I spoke to him on the phone, during which he admitted to entering through the garage (min. marker @1:03) and stated he saw my dog inside the house.
**Exhibit 1-G – USB Drive**

Later, going through more video footage, I noticed that he had the auction house at my house going through our stuff; it was uncomfortable and an invasion of privacy. They even started to remove assets without a court order. At that time, a hearing on his motion to enforce the turnover order had been scheduled for June 7, 2024, meaning he had no legal authority to enter the home on June 4.
**Video footage of all can be seen on Exhibit 1-G via USB.**

The court docket clearly shows that on June 4, 2024, Mr. Dribusch filed a motion for a supplemental order to enforce the turnover order (Doc. 197). The court only scheduled a hearing on that motion (Doc. 198)—it did not grant access or permission to enter the premises. His entry before this hearing, without my knowledge, constituted an illegal entry and a gross abuse of authority. The court only granted the motion to turn over on June 10.
**Exhibit 1-F**

## II. Unlawful Eviction Without Court Order

On June 12, 2024, just days after the unauthorized entry, I was locked out of my home while I was at work, four hours away. Mr. Dribusch texted me to inform me that the locks had been changed. There was no eviction proceeding, notice, or court order authorizing this lockout.

This eviction was carried out in direct violation of:

- **RPAPL § 713** – Requires a lawful eviction process through Housing Court, with proper notice and a court order.

- **RPAPL § 853** – Allows for treble damages when someone is forcibly or unlawfully removed.

- **Due Process (14th Amendment & *Mullane v. Central Hanover Bank*, 339 U.S. 306)** – Prohibits deprivation of property without notice and opportunity to be heard.

Even landlords cannot legally evict tenants without court process. As a trustee, Mr. Dribusch had no greater authority and was legally obligated to follow state housing law.


## III. Possessory Rights & Legal Tenant Status

I was living full-time at 40 North Street with the consent of Kris Roglieri, the legal owner and debtor and my long-term partner. I maintained my belongings, routines, and professional materials at this address. Under New York housing law, I had possessory rights as a cohabiting partner and was legally protected as a tenant.

Trustee Dribusch never initiated any housing court action, never served me with notice, and never obtained a judgment of possession. His decision to remove me without legal process constituted a wrongful eviction and a willful violation of my housing rights.


## IV. Financial and Emotional Hardship

The wrongful eviction caused extreme mental and emotional hardship, including:

- Ongoing anxiety and distress from the sudden loss of housing

- Disruption of daily life and personal security

- Professional harm, including lost wages and damage to my modeling career
  **Exhibit 1-D**

- Emotional trauma resulting in weight loss, loss of sleep, and sustained psychological distress over the past ten months
  **Exhibit 1-D**

- Downfall on my credit score
  **Exhibit 1-C**

- I incurred early withdrawal penalties, tax liabilities, and lost investment interest
  **Exhibit 1-E**

- Screenshots of client messages, three sworn affidavits from individuals who personally witnessed my condition, and financial documentation outlining my loss of income support this hardship
**Exhibit 1-D**

## Additional Incident on June 5, 2024

On June 5th, 2024, a Ring camera recording captured Trustee Christian Dribusch and a neighbor on my property. At the same time, representatives from the Saratoga Auto Museum were seen inside my home without court authorization. This occurred even though the hearing on the motion to grant access to the estate property was not scheduled until June 7th, 2024. This again demonstrates a continued pattern of unauthorized access and violation of my privacy.

The footage clearly shows individuals examining packages delivered to my doorstep, further intruding on my personal space and belongings. I was not informed or advised of this visit in advance. These actions reflect the trustee's disregard for lawful procedure and the sanctity of my residence.
**Exhibit 1-G via USB**

## Additional Trespass Incident on June 19, 2024

On June 19, 2024, Ring camera footage captured neighborhood individuals trespassing on the property, walking around the home, and looking through windows and doors while my belongings were still inside. From the video, it is clear that they were not just passersby—at one point, they can be heard discussing where things might be as if they intended to take something. The trustee's representative later confirmed this to be an "open house" organized by Mr. Dribusch.

However, I was never informed of this open house, which occurred while I still had items in the residence. I immediately texted the trustee's representative in a panic, shocked to see strangers invading my home. This lack of notice, combined with the security risk posed to my property, left me feeling violated and unsafe.
**Exhibit 1-G**

It is profoundly concerning that Trustee Dribusch would permit an unsupervised public viewing under these conditions. His failure to inform me, a lawful resident at the time, and to protect the remaining personal property inside the home constitutes a complete breach of his fiduciary duty. It further supports my position that Mr. Dribusch has mismanaged the estate and must be relieved of his duties. His actions have harmed me and jeopardized the integrity of the estate and its administration to the detriment of the debtor and the creditors.

**June 4th, 5th, and 19th Ring camera footage is included on the USB drive submitted to the Clerk of the Bankruptcy Court and also sent to Trustee Christian Dribusch and Lisa M. Penpraze, Assistant U.S. Trustee.**
**Exhibit 1-G**

## V. Legal Authority and Case Law Support

The following legal precedents and statutes support my claim:

- **11 U.S.C. § 363** – Prohibits unauthorized use or control of estate property without court approval

- **FRBP Rule 6004** – Requires notice and hearing before taking possession of estate property

- **Fourth Amendment** – Protects against unlawful searches and seizures

- **Fifth and Fourteenth Amendments** – Guarantees due process before deprivation of property

- **RPAPL § 853 (NY)** – Provides for treble damages in unlawful eviction cases

- **NY Penal Law § 140.10** – Establishes criminal liability for unlawful trespass

- **Common Law Trespass** – Allows civil claims for unauthorized entry

**Relevant case law includes:**

- *Lyke v. Anderson* (1989) – Treble damages awarded under RPAPL § 853

- *In re Luz Intern. Ltd.*, 219 B.R. 837 (Bankr. S.D. Tex. 1998) – Trustees must follow due process when removing occupants

- *In re Harris*, 512 B.R. 421 (Bankr. E.D. Va. 2014) – Damages awarded for wrongful eviction

- *Squeri v. McCarrick* (1992) – Double damages and attorney fees awarded for wrongful eviction

- *Wagoner v. Bennett* (1991) – Punitive damages for mishandling tenant property

## VI. Request for Relief

Given the evidence presented, I respectfully request that the Court:

- Find that Trustee Dribusch acted unlawfully and beyond his authority

- Award full compensatory damages for my out-of-pocket relocation expenses, financial loss, and emotional harm

- Award treble damages under **RPAPL § 853** due to the willful and egregious nature of the eviction and unlawful entry
  **Exhibit 1-A**

As the lawful resident and Power of Attorney for the Debtor, I, Linda Oliver, respectfully seek treble damages under RPAPL § 853 for the unlawful lockout and the severe emotional, financial, and legal harm caused. The request for treble damages is consistent with statutory remedies under New York law and serves to provide an efficient resolution of this matter.

The request for treble damages under RPAPL § 853 is consistent with statutory relief and provides a reasonable, efficient alternative to more extensive litigation. Granting this relief now would protect the judicial economy and promote justice without the burden of expanded proceedings or counsel-led damage claims.

By granting this request, the Court would allow for a swift and just resolution, preventing further litigation while ensuring that my rights are fully respected and upheld under the law.


## VII. Supporting Evidence and Request for Sealing

Below is a list of exhibits submitted in support of my declaration and request for damages related to the wrongful eviction and unauthorized entry carried out by Chapter 7 U.S. Trustee Christian Dribusch:

- **Exhibit 1-A – Request for Treble Damages**
  Legal basis and calculation for treble damages under RPAPL § 853, including a summary of financial losses and emotional distress.

- **Exhibit 1-B – Relocation, Displacement Expenses & Supporting Financial Proof**
  A detailed breakdown of bank statements and receipts showing moving costs, emergency expenses, vehicle down payment, rental home repair costs, lost wages, and lease payments for my rental home. Includes receipts for U-Haul, hotel, gas, utilities, labor, house repairs, and other items tied to damages—such as Amazon purchases necessary after displacement. *(Bank statements requested under seal.)*

- **Exhibit 1-C – Credit Impact Statement**
  Summary of the decline in my credit score from "Good" to "Fair" following the financial hardship caused by the eviction, with screenshots showing scores before and after.

- **Exhibit 1-D – Emotional & Professional Distress Evidence**
  This includes a screenshot of a modeling client's message referencing changes in my physical measurements due to weight loss and the impact on my work, along with three

sworn affidavits: two from close friends who observed the emotional and financial toll I experienced, and one from a professional client. Personal identities have been withheld to protect their confidentiality and privacy. These affidavits were previously submitted to the court and are reattached here for reference.

- **Exhibit 1-E – Retirement Account Withdrawals (ROTH and SEP)**
  Documentation of emergency withdrawals from my ROTH and SEP accounts, including penalties, taxes, and interest lost as a result of being forced to access these funds under financial duress.

- **Exhibit 1-F – Legal Notices & Court Dockets**
  Includes Doc. No. 197 and Doc. No. 198, which show that the trustee's motion for turnover was still pending when he entered the property without court authorization. The court did not grant a turnover of 40 North Road until Doc. No. 205, issued on June 10, 2024.

- **Exhibit 1-G – Video, Photos, and Screenshots of Unauthorized Entry and Trespass**
  I've included a screenshot of my conversation with the auction house representative and two screenshots of people entering our home without being notified or advised. One USB drive contains three folders:

  1. **Folder One (June 4th) –**
     Ring video shows Trustee Dribusch conversing with me outside the residence via phone. Audio captures his admission that he entered the home through the garage (minute marker 1:03). Additional video shows auctioneers driving cars away and making unauthorized calls from inside the house.

  2. **Folder Two (June 5th) –**
     Footage of auctioneers and neighbors entering the property without notice. Auctioneers seen handling packages.

  3. **Folder Three (June 19th) –**
     Footage of strangers attempting entry, overheard commenting on locked doors.

The USB was submitted to the Clerk of the Bankruptcy Court, with identical copies sent to Trustee Christian Dribusch and Lisa M. Penpraze, Assistant U.S. Trustee on April 7, 2025.

## VIII. Declaration and Signature

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**Dated:** April 7, 2025,
**Respectfully submitted,**
**Linda Oliver**



My closet @ 40 North Road
"Linda Oliver"
Which shows my residency



# EXHIBIT 1-A

## Exhibit 1-A – Request for Treble Damages

**Submitted by:** Linda Oliver
**Date:** April 7, 2025
**Subject:** Legal Basis and Calculation for Treble Damages

## 1. Legal Justification for Treble Damages

RPAPL § 853 provides that any person "ejected or put out of the real property in a forcible or unlawful manner" may recover treble damages against the wrongdoer. In my case, I was a lawful resident at 40 North Road and was locked out of my home by the Chapter 7 Trustee **without a court order**, proper notice, and due process.

On **June 4, 2024**, Trustee Christian H. Dribusch entered the property through the garage without permission or court authorization, including auctioneers who were in my home going through all of our things without proper notice. The trustee and auctioneers had no authority to be at our home as there was no court order, which was very uncomfortable and unjust. The court had **not yet approved** his request to take possession of the estate property—a hearing on that motion wasn't scheduled until **June 7, 2024**. The trustee acted outside of his legal authority and violated my possessory rights. It was not until **June 10th** that the court approved his motion to turnover estate. Days later, **EXHIBIT 1-F**

on June 12th, I was **again locked out** without a court order, as confirmed by a text message by the Trustee **EXHIBIT 1-A**

This conduct constitutes a **willful abuse of power** by an officer of the court. As a trustee, Mr. Dribusch holds a fiduciary duty and is expected to uphold the law, not violate it. His actions reflect **bad faith**, **lack of due process**, and a **disregard for my legal rights as a lawful occupant**.

**Relevant Legal Precedents:**

- **Lyke v. Anderson (1989):** A New York jury awarded treble damages under RPAPL § 853 for unlawful eviction.

- **Wagoner v. Bennett (1991):** Oklahoma court allowed punitive damages for egregious landlord behavior.

- **Ault v. Phillips (1940):** Indiana court recognized emotional distress as compensable for wrongful eviction.

## 2. Total Actual Damages

As outlined in my declaration, my total actual financial damages are as follows:

**EXHIBIT 1-B** (requested bank documents be sealed)

- **Forced Early Retirement Withdrawals**: $37,777.78

- **Lost Interest on Retirement Accounts**: $1,888.89

- **Rent for 11 Months (@ $2,800/month)**: $30,800.00

- **Security Deposit**: $2,800.00

- **Realtor Fee**: $2,000.00

- **Relocation & Displacement Expenses (including car down payment)**: $14,384.06

- **Lost Wages (17.5 hrs @ $275/hr)**: $4,812.50

**Total Actual Financial Damages: $94,463.23**

This total includes a **vehicle down payment** I made **under duress** two days before I was locked out of the home. While the trustee did not explicitly demand the return of the debtor's vehicle, I understood from the surrounding circumstances and escalating pressure of the Trustee and action house moving and taking the Debtor's vehicles on June 4th (video submitted in Exhibit 1-G) that the car would no longer be available to me. At the time, I was commuting via the train from Albany, which totals **8 hours round-trip door-to-door** for work, and I was terrified I would be left without a vehicle. I felt forced to purchase a used car urgently to continue working and avoid being left completely stranded—only to be **locked out of my home 48 hours later**.

Additionally, due to the urgency of my situation, the landlord allowed me to move in early for an extra fee and rented the home to me in **as-is condition**. As a result, I was responsible for covering several repairs out-of-pocket—including replacing the upstairs carpeting and making other essential improvements to make the home livable. These expenses were unavoidable and directly related to being displaced on such short notice and being that I was homeless from June 12 on because of Mr. Dribusch's abuse of power, which caused extreme hardship.

**A full explanation and documentation are included in EXHIBIT 1-E.**

This total also includes emergency early withdrawals from my Roth and SEP retirement accounts, which were under financial duress due to the eviction. These funds were accessed solely to survive and cover urgent relocation and housing costs, resulting in early withdrawal penalties, taxes, and lost interest of 0.05% per month per account.

## 3. Treble Damages Calculation (Financial Losses Only)

Under RPAPL § 853, I respectfully request treble damages for the above financial losses:

**$94,463.23 × 3 = $283,389.69**

This request reflects the seriousness of the wrongful eviction, the abuse of legal authority, and the long-term financial consequences of the trustee's actions.

## 4. Separate Request for Emotional & Professional Distress

In addition to the financial damages, I respectfully request a separate award of **$25,000** for emotional and professional distress. The trustee's conduct caused severe emotional harm, impacted my mental health and sense of safety, and directly interfered with my modeling work.

This request is supported by: **EXHIBIT 1-D**

- A client text message noting the impact on my body measurements

- Documentation of housing instability and financial strain

- My inability to maintain the stability and appearance required for work

I understand this amount falls **outside the scope of treble damages**, but I request it as an additional award based on the total harm I experienced.

## 5. Summary of Damages Requested

- **Treble Damages (Financial Losses × 3)**: $283,389.69

- **Separate Emotional/Professional Distress**: $25,000.00

**Total Compensation Requested: $308,389.69**

Sincerely,
Linda Oliver



C

Christian Dribush

Wed, Jun 12 at 4:45 PM

I had a legal duty to inform the United States Trustee (UST) Office concerning the above matter. Per UST guidance and Bankruptcy Court Order, it was necessary for me to change the locks again. Either me or my representative will need to be in attendance when you remove items so as to ensure that  no property of the bankruptcy estate is removed. In addition to the above items, anything that you may have received from Mr. Roglieri or removed from the bankruptcy estate (e.g, jewelry, sunglasses, etc.) need to be returned to the estate. This is a regrettable situation but there can be no unauthorized removal of bankruptcy estate assets.

Wed, Jun 12 at 9:10 PM

Hi Christian,
Sorry for the phone tag but I didn't get off work till late and my service is on and off on the train. I did try to call you back.
I thought I could take what I took and once I got your text I agreed to return the stuff. I have no intention to violate any bankrupcy laws.
For the cigars I thought they would be thrown out so I packed them and wanted to give it to his family. Also a

+    Text Message · SMS

Hi Christian

Sorry for the phone tag but I didn't get off work till late and my service is on and off on the train. I did try to call you back.

I thought I could take what I took and once I got your text I agreed to return the stuff. I have no intention to violate any bankrupcy laws.

For the cigars I thought they would be thrown out so I packed them and wanted to give it to his family. Also a few personal apparel, I packed a suit case of some of his stuff so he's has something if he gets out of jail and a few things that was in a box that had some of his documents and family photos I put in it as well and I was going to give everything to his family.

I'm in a position of extreme hardship, I spent money to get a house and a new car and I'm slowly moving into my new house in Poughkeepsie. I ask you to please let me back in the house bc I cannot afford the expense of a hotel and I can't move into my new house until July 1st. Also my brother is flying in on Friday to help me pack and I was going to spend the wknd to do that. So I propose everything that will be packed will be monitored by your people. I reserved a uhal for Sunday and Monday. Also have 2 friends that are coming to help Sunday/monday

# EXHIBIT 1-B

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:
**KRIS ROGLIERI**, Debtor
Case No. 24-10157-1-rel
Chapter 7

## MOTION TO SEAL FINANCIAL EXHIBITS ATTACHED TO AFFIDAVIT OF LINDA OLIVER

NOW COMES **Linda Oliver**, by and through her authority as the Power of Attorney for the Debtor, and respectfully moves this Court for an order permitting the sealing of specific personal financial materials submitted in support of her affidavit filed in connection with the **Debtor's Final Response to Motion #345 to Remove Trustee**, and states as follows:

1. The Linda Oliver affidavit includes personal financial documentation, including **bank account statements in Exhibit B**, retirement account information, and sensitive receipts submitted as part of exhibits supporting claims of financial hardship caused by the trustee's actions.

2. These documents contain confidential information that, if disclosed, could lead to an unwarranted invasion of privacy or risk of financial harm.

3. This request is limited solely to **bank account statements and related financial exhibits** and **does not seek to seal the entirety of the filing** or any non-financial supporting documentation.

4. Linda Oliver has redacted the names and identities of individuals who provided supporting affidavits, with no objection previously raised by the Court.

WHEREFORE, Linda Oliver respectfully requests that this Court issue an order permitting the sealing of the financial documents attached to her affidavit and grant such further relief as the Court deems and proper.

Dated: April 5, 2025,
Respectfully submitted,
**Linda Oliver**
Power of Attorney for Kris Roglieri

**Shipping Address**
linda
40 NORTH RD
QUEENSBURY, NY 12804-2033
United States

**Payment method**
VISA  Visa ending in 0070

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $491.69 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $491.69 |
| Estimated tax to be collected: | $34.42 |
| Grand Total: | $526.11 |
| Refund Total ⌄ | $95.46 |

(handwritten) #430.65

**Delivery 1 of 2**   8 packages via UPS

More actions ⌄

12 * 12 inch Packing Paper for Moving 100 Sheets Protecting Fragile China and Glasses, Small Wrapping Paper for Shipping and Moving Box Filler
$6.99 | Sold by: Wu's China
$6.99   Buy it again

Amazon Basics Perforated Bubble Cushioning Wrap, Small 3/16", 12-inch x 175 Foot Long Roll, Clear
$24.54 | Qty: 3 | Sold by: Amazon.com Services, Inc
$73.62   Buy it again

uBoxes Extra Large (Pack of 5) 23x23x16" Standard Corrugated Moving Box", brown corrugated
$36.55 | Qty: 4 | Sold by: Amazon.com Services, Inc
$146.20   Buy it again

Amazon Basics Packaging Tape for Shipping, Moving and Storing, 1.88" x 54.6 yds, 12-pack, Translucence
$21.64 | Qty: 3 | Sold by: Amazon.com Services, Inc
$64.92   Buy it again

**Delivery 2 of 2**   4 packages via Amazon Logistics

**Return complete** Your return is complete. Your refund has been issued.
When will I get my refund? ⌄

More actions ⌄

Bankers Box 3 Pack Large Wardrobe Moving Boxes with Handles, 24 x 24 x 40 Inches
$49.99 | Qty: 3 | Sold by: Amazon.com Services, Inc
$149.97   Buy it again



**Shipping Address**
linda
40 NORTH RD
QUEENSBURY, NY 12804-2033
United States

**Payment method**
Amazon gift card balance
AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $346.16 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $346.16 |
| Estimated tax to be collected: | $24.24 |
| Gift Card Amount: | -$196.38 |
| Grand Total: | $174.02 |
| Refund Total ⌄ | $146.09 |

*(handwritten)* = $ 224.31

**Delivery 1 of 2    4 packages via UPS**

More actions ⌄

Bankers Box 3 Pack Large Wardrobe Moving Boxes with Handles, 24 x 24 x 40 Inches          $199.96
$49.99  Qty: 4  Sold by: Amazon.com Services, Inc
Buy it again

**Delivery 2 of 2    4 packages via USPS**

More actions ⌄

uBoxes Extra Large (Pack of 5) 23x23x16" Standard Corrugated Moving Box", brown          $146.20
corrugated
$36.55  Qty: 4  Sold by: Amazon.com Services, Inc
Buy it again

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
VISA  Visa ending in 2508
Do not apply equal monthly payments

**Order Summary**

| | |
|---|---:|
| Item(s) Subtotal: | $299.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $299.99 |
| Estimated tax to be collected: | $24.37 |
| **Grand Total:** | **$324.36** |



Amazon eero 6+ mesh Wi-Fi router | 1.0 Gbps Ethernet | Coverage up to 4,500 sq. ft. | Connect 75+ devices | 3-Pack | 2022 release
Sold by: Amazon.com
Return window closed on July 25, 2024
$299.99

Buy it again    View your item

Get product support

Write a product review

Purchase subscription

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

VISA Visa ending in 2508

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $159.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $159.99 |
| Estimated tax to be collected: | $13.00 |
| **Grand Total:** | **$172.99** |

See tax and seller information

---

IRONCK Bookshelves 6 Tiers with Baffles Industrial Large Corner Etagere Bookcase Storage Display Rack for Living Room Home Office
Sold by: IRONCK HOME
Return window closed on July 23, 2024
$159.99

Buy it again    View your item

Get product support

Problem with order

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEPSIE, NY 12603-6826
United States

**Payment method**
VISA | Visa ending in 2508
Amazon gift card balance

*= 144.32* (handwritten)

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $156.97 |
| Shipping & Handling: | $0.00 |
| Your Coupon Savings: | -$5.00 |
| Total before tax: | $151.97 |
| Estimated tax to be collected: | $12.35 |
| Gift Card Amount: | -$70.01 |
| **Grand Total:** | **$94.31** |

---



SEIRIONE Rustproof Shower Corner Caddy Organizer for Bathroom, Freestanding Tension Pole with 4 Baskets, for Bathtub Shampoo Storage, 61.3 to 113 Inch Height
Sold by: SEIRIONE Home Store
Return window closed on Jul 21, 2024
$44.99



Get product support

Ask Product Question

Write a product review

---



Amazon Basics 4-Shelf Adjustable, Heavy Duty Wide Storage Shelving Unit (350 lbs loading capacity per shelf), Steel Organizer Wire Rack, 36" L x 14" W x 54" H, Black
Sold by: Amazon.com Services, Inc
Return eligibility ⌄
$55.99


Write a product review

---



Amazon Basics 4-Shelf Adjustable, Heavy Duty Wide Storage Shelving Unit (350 lbs loading capacity per shelf), Steel Organizer Wire Rack, 36" L x 14" W x 54" H, Black
Sold by: Amazon.com Services, Inc
Return eligibility ⌄
$55.99


Write a product review

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

 AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $107.97 |
| Shipping & Handling: | $9.99 |
| Total before tax: | $117.96 |
| Estimated tax to be collected: | $9.58 |
| **Grand Total:** | **$127.54** |

See tax and seller information

 Raybee Clothes Rack Clothing Rack 830 LBS Clothing Racks for Hanging Clothes
Heavy Duty Clothes Rack Freestanding Wardrobe Closet Garment Rack
74.8"Wx17.7"Dx76.8"H Black

Sold by: Raybee- Direct

Return window closed on August 1, 2024

$107.97

 Buy it again    View your item

Get product support

Problem with order

Write a product review

| | | |
|---|---|---|
| linda | **AMEX** AMEX ending in 3001 | Item(s) Subtotal: $263.78 |
| 11 HILL TOP LN | | Shipping & Handling: $0.00 |
| POUGHKEEPSIE, NY 12603-6826 | | Your Coupon Savings: -$16.00 |
| United States | | Total before tax: $247.78 |
| | | Estimated tax to be collected: $20.13 |
| | | Grand Total: $267.91 |
| | | Refund Total ⌄ $69.19 |



Bug Zapper Racket – Electric Fly Swatter for Gnats, Mosquitoes, & More – Harmless-to-Humans Outdoor Bug Zapper Battery Operated – Handheld Electric Fly Swatter – Bug Zapper Indoor Racket
Sold by: Houseware Central
$12.97

(3)

🔒 Buy it again

Get product support

Write a product review

**Return complete**
Your return is complete. Your refund has been issued. When will I get my refund? ⌄



Hallway Washable Runner Rug - 2'6x14 Kitchen Rugs Entryway Rug Runner Vintage Soft Floor Mat Non Slip Indoor Farmhouse Carpet for Bathroom Living Room Bedroom (2'6"x14', Brick)
Sold by: HAOYUNLAI US DIRECT SHOP
$79.99

🔒 Buy it again

View return/refund status

Write a product review



Bartnelli Classic Ironing Board with New Patent Technology | Made in Europe Iron Board with Patent Fast-Glide Zone, 4 Layer Cover & Pad, Height Adjustable, Safety Iron Rest, 4 Premium Steel Legs
Sold by: Royal Kitchen
$69.99

🔒 Buy it again

Get product support

Write a product review



NORTHERN BROTHERS Pants Hangers, 30Pcs Skirt Hangers with Clips Slack Hangers Pants Trouser Hangers Clothes Hangers for Pants
Sold by: FANGUO US
$23.99

🔒 Buy it again

Write a product review



Amazon Basics Slim Velvet, Non-Slip Suit Clothes Hangers, Pack of 100, Black/Silver
Sold by: Amazon.com Services, Inc
$38.94

Replace item

Write a product review

*Total = $ 69.93*

**Shipping Address**

linda

11 HILL TOP LN

POUGHKEEPSIE, NY 12603-6826

United States

**Payment method**

AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $158.98 |
| Shipping & Handling: | $0.00 |
| Your Coupon Savings: | -$20.00 |
| Total before tax: | $138.98 |
| Estimated tax to be collected: | $11.29 |
| **Grand Total:** | **$150.27** |

See tax and seller information

---

Yusong 72" Tall Kitchen Pantry Cabinet, Freestanding Storage Cabinet with Doors and Shelves, Wooden Food Pantry Farmhouse Cupboard Buffet for Kitchen Dining Living Room, White Honey

Sold by: YUSONG GROUP INC

Return window closed on August 15, 2024

$158.98

( Buy it again )    ( View your item )

( Get product support )

( Problem with order )

( Write a product review )

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

AMEX ending in 3001

**Order Summary**

| | |
|---|---:|
| Item(s) Subtotal: | $155.98 |
| Shipping & Handling: | $0.00 |
| Your Coupon Savings: | -$18.00 |
| Total before tax: | $137.98 |
| Estimated tax to be collected: | $11.21 |
| **Grand Total:** | **$149.19** |

---



Kaitiemoo Heavy Duty Clothing Rack With Wheels,Modern Garment Rack With 3 Metal Shelves, 71.8Inches Display Rack For Hanging Clothes, Hanging Rod For Small Spaces,White
Sold by: KAI TI
Return window closed on August 10, 2024
$35.99

Buy it again     View your item

Ask Product Question

Write a product review

---

Memobarco Garment-Rack for Hanging Clothes Heavy Duty Clothes-Rack with Shelves, 3 Tiers Rolling Metal Clothing-Rack Commercial Grade Rack Freestanding Wardrobe Closet Rack with Drawers Wheels
Sold by: meinair
Return window closed on August 10, 2024
$119.99

Buy it again     View your item

Get product support

Ask Product Question

Write a product review

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

VISA  Visa ending in 2508

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $23.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $23.99 |
| Estimated tax to be collected: | $1.95 |
| **Grand Total:** | **$25.94** |

---



**Zober Velvet Hangers 50 Pack - Heavy Duty Black Hangers for Coats, Pants & Dress Clothes - Non Slip Clothes Hanger Set - Space Saving Felt Hangers for Clothing**
Sold by: YH-Goods
Return window closed on August 15, 2024
$23.99

Buy it again     View your item

Get product support

Ask Product Question

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
VISA Visa ending in 2508

**Order Summary**
| | |
|---|---|
| Item(s) Subtotal: | $104.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $104.99 |
| Estimated tax to be collected: | $8.53 |
| **Grand Total:** | **$113.52** |

See tax and seller information



COSTWAY Bathroom Storage Cabinet, Freestanding Bathroom Storage Organizer with Doors & Adjustable Shelf, Wooden Floor Cabinet for Living Room, Bathroom, Entryway, Kitchen (White)
Sold by: costway
Return window closed on August 21, 2024
$104.99

Buy it again     View your item

Get product support

Problem with order

Write a product review

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

VISA  Visa ending in 2508

Do not apply equal monthly payments

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $139.99 |
| Shipping & Handling: | $99.99 |
| Total before tax: | $239.98 |
| Estimated tax to be collected: | $19.49 |
| Grand Total: | $259.47 |

See tax and seller information



FYRICKYLINOO 3 Pieces Outdoor Patio Chaise Lounge Chair Set of 2 with Side Table
PE Wicker Rattan Reclining Pool Tanning Lounge Chairs for Outside with
Headrest,Adjustable Backrest Furniture,Beige
Sold by: FYRICKYLINOO
Return window closed on September 4, 2024
$139.99

Buy it again     View your item

Get product support

Problem with order

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $23.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $23.99 |
| Estimated tax to be collected: | $1.95 |
| Grand Total: | $25.94 |

**NORTHERN BROTHERS Pants Hangers, 30Pcs Skirt Hangers with Clips Slack Hangers Pants Trouser Hangers Clothes Hangers for Pants**
Sold by: FANGUO US
Return window closed on September 6, 2024
$23.99

Buy it again    View your item

Ask Product Question

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
VISA  Visa ending in 2508

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $35.59 |
| Shipping & Handling: | $4.99 |
| Total before tax: | $40.58 |
| Estimated tax to be collected: | $3.30 |
| **Grand Total:** | **$43.88** |

See tax and seller information



Topeakmart 5-Tier Utility Shelves, Metal Storage Shelves, Adjustable Shelving Units, Boltless Assembly, Garage Shelves Shed Shelving for Warehouse Garage Shed Basement- Black, 27.5 x 12x 60 Inch
Sold by: Topeakmart
Return window closed on September 29, 2024
$35.59

Buy it again      View your item

Get product support

Problem with order

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
VISA  Visa ending in 2508

Do not apply equal monthly payments

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $103.46 |
| Shipping & Handling: | $0.00 |
| Your Coupon Savings: | -$7.65 |
| Total before tax: | $95.81 |
| Estimated tax to be collected: | $7.79 |
| **Grand Total:** | **$103.60** |
| Refund Total ⌄ | $19.29 |

---



WECHENG Makeup Organizer for Eyeshadow Palette and Lipstick Organizer, 7 Section Divided Makeup Palette Organizer for Vanity Drawer Countertop Modern Cosmetics Storage(7.48" x 6.22" x 1.77")
Sold by: WECHENG Direct
Return window closed on September 28, 2024
$7.98

[ Buy it again ]    [ View your item ]

[ Write a product review ]

---



TOPSKY 4 Drawers Mobile Fabric Lateral File Cabinet with Casters for Letter Size File (Rustic Brown)
Sold by: Topskyfurniture-US
Return window closed on September 28, 2024
$69.99

[ Buy it again ]    [ View your item ]

[ Get product support ]
[ Ask Product Question ]
[ Write a product review ]

---

**Return complete**
Your return is complete. Your refund has been issued.
When will I get my refund? ⌄

POUGNY 2PC Under Sink Organizer Rack 2 Tier Under Sliding Cabinet Basket Organizer Drawer with 4 Hooks, Multi-purpose Under Sink Storage for Bathroom Kitchen Desktop （Black）
Sold by: Hongchang home
$25.49

[ Buy it again ]    [ View your item ]

[ View return/refund status ]
[ Write a product review ]

$95.48

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

VISA Visa ending in 2508

Do not apply equal monthly payments

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $94.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $94.99 |
| Estimated tax to be collected: | $7.72 |
| **Grand Total:** | **$102.71** |

See tax and seller information



Giantex 5 Drawer Dresser for Bedroom Storage - Storage Drawer of Chest with Lockable Wheels, Makeup Dresser, Mobile Drawer Organizer, Printer Stand for Home & Office Storage Cabinet, Brown+Black
Sold by: Giantex
Return window closed on October 4, 2024
$94.99

Buy it again    View your item

Get product support

Problem with order

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $269.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $269.99 |
| Estimated tax to be collected: | $21.94 |
| Grand Total: | $291.93 |

Midea MRC070S0AWW Chest Freezer, 7.0 Cubic Feet, White
Sold by: Amazon.com
Return window closed on January 31, 2025
$269.99

 Buy it again

View your item

Get product support

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $37.98 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $37.98 |
| Estimated tax to be collected: | $3.09 |
| **Grand Total:** | **$41.07** |
| Refund Total ⌄ | $15.13 |

---

## Return complete
Your return is complete. Your refund has been issued. When will I get my refund? ⌄



WIDEPLORE Echo Dot Wall Mount Holder for Echo Dot 3rd Generation, Built-in Cable Management Space-Saving Accessories for Dot(3rd Gen) Smart Speakers, with Sticking Tape and Drill Nail-White
Sold by: Suixing
$13.99

🔒 Buy it again

View return/refund status

Write a product review

---

## Delivered Sep 29, 2024
Your package was left near the front door or porch.



Secura Electric Wine Opener, Automatic Electric Wine Bottle Corkscrew Opener with Foil Cutter, Rechargeable (Stainless Steel)
Sold by: Lafraise
Return window closed on Oct 29, 2024
$23.99

🔒 Buy it again

Get product support

Write a product review

$23.99

**Shipping Address**

linda

11 HILL TOP LN

POUGHKEEPSIE, NY 12603-6826

United States

**Payment method**

AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $49.99 |
| Shipping & Handling: | $0.00 |
| Your Coupon Savings: | -$12.50 |
| Total before tax: | $37.49 |
| Estimated tax to be collected: | $3.05 |
| **Grand Total:** | $40.54 |



Gpeng Garden Hose 50ft x 5/8", Non-Expandable, Heavy Duty Water Hose with 10 Pattern Thumb Spray Nozzle, Flexible, Lightweight Hybrid Hose with Swivel Handle, Burst 600 PSI

Sold by: FOUR STARS

Return window closed on September 5, 2024

$49.99

Buy it again       View your item

Get product support

Ask Product Question

Write a product review

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

Rewards Points

AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $99.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $99.99 |
| Estimated tax to be collected: | $8.12 |
| Rewards Points: | -$1.42 |
| **Grand Total:** | **$106.69** |

See tax and seller information



Best Choice Products Dual-Wheel Home Utility Yard Wheelbarrow Garden Cart w/Built-in Stand for Lawn, Gardening, Construction - Bright Green
Sold by: Best Choice Products Inc
Return window closed on September 6, 2024
$99.99

 Buy it again    View your item

Get product support

Problem with order

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
Amazon gift card balance
AMEX AMEX ending in 3001

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $381.28 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $381.28 |
| Estimated tax to be collected: | $30.98 |
| **Grand Total:** | **$412.26** |
| **Refund Total** ⌄ | **$134.94** |

---

## Return complete

**View return/refund status**

Your return is complete. Your refund has been issued.
When will I get my refund? ⌄

**Write a product review**



Whitmor 10 Tier Shoe Tower, 50-PAIR, Chrome
Sold by: Amazon.com
$41.60

③ 🔄 Buy it again    View your item

---



Husqvarna 130L Gas String Trimmer, 28-cc 2-Cycle, 18-Inch Straight Shaft Gas
Weed Wacker with Rapid Replace Trimmer Head for Seamless String Reloading,
Gifts for Men
Sold by: Amazon.com
Return window closed on August 8, 2024
$256.48

🔄 Buy it again    View your item

**Get product support**

**Write a product review**

Total $ 277.32

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
VISA Visa ending in 2508

Do not apply equal monthly payments

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $169.99 |
| Shipping & Handling: | $49.99 |
| Total before tax: | $219.98 |
| Estimated tax to be collected: | $17.87 |
| **Grand Total:** | **$237.85** |

See tax and seller information

Refund Total:       $21.62

= Total ($216.23)



YOCONYO Double Tilt Out Trash Cabinet Storage Cabinet 20 Gallon with Two Solid Wood Hideaway Trash Holder Drawers, Dual Wooden Free Standing Recycling Cabinets Trash Can Bin Kitchen (white)
Sold by: YOCONYO
Return window closed on August 6, 2024
$169.99

Buy it again        View your item

Get product support

Problem with order

Write a product review

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

VISA  Visa ending in 2508

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $19.98 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $19.98 |
| Estimated tax to be collected: | $1.62 |
| **Grand Total:** | **$21.60** |



HUANCHAIN Indoor Outdoor Extension Cord 25 ft Waterproof, 16/3 Gauge Flexible Cold-Resistant Appliance Extension Cord Outside, 13A 1625W 16AWG SJTW, 3 Prong Heavy Duty Electric Cord Orange, ETL
Sold by: Huanchain
Return window closed on November 12, 2024
$11.99

( Buy it again )  ( View your item )

Get product support

Write a product review



HORUSDY 6 Pack Garage Hooks, Utility Hooks, Garage Hooks Heavy Duty Wall Hooks (Black, 6 inch)
Sold by: HORUSDY
Return window closed on November 12, 2024
$7.99

( Buy it again )  ( View your item )

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

VISA  Visa ending in 2508

Do not apply equal monthly payments

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $57.99 |
| Shipping & Handling: | $9.95 |
| Total before tax: | $67.94 |
| Estimated tax to be collected: | $5.52 |
| Grand Total: | $73.46 |

See tax and seller information

---



Plant Based Tall Recycler - 41 Quart/39 Liter Recycle bin for Kitchen, Outdoor Commercial Recycle Bins, Large bin for Office Products - Big Recycling Trash can, Recycling bin for Kitchen - 2 Pack
Sold by: good natured Products
Return window closed on August 5, 2024
$57.99

Buy it again          View your item

Get product support

Problem with order

Write a product review

**Shipping Address**

linda

11 HILL TOP LN

POUGHKEEPSIE, NY 12603-6826

United States

**Payment method**

VISA  Visa ending in 2508

**Order Summary**

| | |
|---|---:|
| Item(s) Subtotal: | $98.98 |
| Shipping & Handling: | $0.00 |
| Your Coupon Savings: | -$15.00 |
| Total before tax: | $83.98 |
| Estimated tax to be collected: | $6.82 |
| **Grand Total:** | **$90.80** |

See tax and seller information

Fameill White Farmhouse Storage Cabinet with 2 Drawers & Shelves,Freestanding Storage Cabinet with Doors & Open Storage,Floor Storage Cabinet for Living Room,Bathroom,Kitchen,Laundry

Sold by: Fameill

Return window closed on August 3, 2024

$98.98

Buy it again     View your item

Get product support

Problem with order

Write a product review

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
VISA  Visa ending in 2508
Do not apply equal monthly payments

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $289.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $289.99 |
| Estimated tax to be collected: | $23.56 |
| **Grand Total:** | **$313.55** |

See tax and seller information

TOSOT 8,000 Air Conditioner Cools up to 350 sq. ft. Quiet, LED, Smart Remote Control, Energy Efficient Window AC, 8000 BTU, White
Sold by: Sain Store
Return window closed on July 29, 2024
$289.99

Buy it again    View your item

Get product support

Problem with order

Write a product review

Your Account › Your Orders › Order Details

# Order Details

Order placed June 28, 2024 | Order # 112-6204159-3288236          [ View invoice ]

**Shipping Address**
linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**
VISA  Visa ending in 2508

**Order Summary**

| | |
|---|---:|
| Item(s) Subtotal: | $458.00 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $458.00 |
| Estimated tax to be collected: | $37.22 |
| **Grand Total:** | **$495.22** |

---



Frigidaire FHWC063TC1 Window Air Conditioner, 2024 6,000 BTU Electronic
Controls, White
Sold by: Amazon.com
$229.00

( Buy it again )  ( View your item )          [ Write a product review ]

---



Frigidaire FHWC063TC1 Window Air Conditioner, 2024 6,000 BTU Electronic
Controls, White
Sold by: Amazon.com
Return window closed on July 29, 2024
$229.00

( Buy it again )  ( View your item )          [ Get product support ]

          [ Write a product review ]

**Shipping Address**

linda
11 HILL TOP LN
POUGHKEEPSIE, NY 12603-6826
United States

**Payment method**

VISA  Visa  ending in 2508

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $28.99 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $28.99 |
| Estimated tax to be collected: | $2.36 |
| **Grand Total:** | **$31.35** |



METOWARE Trailer Hitch Ball Mount with 2 in Ball & Hitch Pin, Solid Steel Trailer Hitch Ball Fits 2 Inch Receiver, 6000lbs Capacity Ball Hitch, 2-Inch Drop, Black
Sold by: BISON TOOL
Return window closed on July 21, 2024
$28.99

( Buy it again )    ( View your item )

( Get product support )

( Ask Product Question )

( Write a product review )





Customer
Linda Oliver

**Flooring Measure**
19229618

## Customer Contact

 Primary: 7138944626

 lindamiakoda@gmail.com     11 Hill Top Lane Poughkeepsie, NY, 12603

## Measure Details

| Measure Date | Measure Tech | Store-Order | Salesperson |
|---|---|---|---|
| 6-21-24 | 527 | 1266 | Online |

Calc Date
06-21-24 11:16:27

## Site Details

| Site Type | Year Built | Material Access | Restricted Parking |
|---|---|---|---|
| RESIDENTIAL | 1952 | | |
| Furniture Move? | Furniture Weight | Furniture Amount | |
| N | | | |
| Appliance Move? | Appliances | Toilets | |
| Y | 0 | | |
| Floor Removal | Floor Disposal? | Elevator? | |
| Y | | N | |
| Stairs? | Spindles | Coving | Capping |
| 13 | 0 | 0 | 10 |

# HOME SERVICES
**Let us do it for you.**

# Line Item 1 - CPT

## Room Information

### OTHER 2RIGHT (SECOND FLOOR) | Line Item 1 - CPT

| | | | |
|---|---|---|---|
| **Subfloor**<br>SUB: ROUGH PLYWD | **Walls**<br>WALLS: 72 LF, CABS: 0 LF | **Furniture**<br>FURNITURE: NONE | **Exist**<br>EXIST: CLEAR |
| **Furniture Pieces**<br>FURN AMT: NONE | **Heat Air**<br>HEAT: NO VENTS | **Area**<br>341 SQ FT | **Molding Type1**<br>WALL MOLDING: NONE |
| **Molding Type5**<br>CAB MOLDING: NONE | | | |

### UP HALL (SECOND FLOOR) | Line Item 1 - CPT

| | | | |
|---|---|---|---|
| **Subfloor**<br>SUB: ROUGH PLYWD | **Walls**<br>WALLS: 40 LF, CABS: 0 LF | **Furniture**<br>FURNITURE: NONE | **Exist**<br>EXIST: VINYL 9in TILE LT EMB |
| **Furniture Pieces**<br>FURN AMT: NONE | **Heat Air**<br>HEAT: NO VENTS | **Area**<br>85 SQ FT | **Molding Type1**<br>WALL MOLDING: BASE, NO SHOE |
| **Molding Type2**<br>BASE MOLDING: STAINED | **Molding Type5**<br>CAB MOLDING: NONE | **Existing FloorType1**<br>OPEN SEAMS ,<br>UNDERLAYMENT TELEGRAPHING | **Capping**<br>10 LF CAPPING |

### Other 1 (SECOND FLOOR) | Line Item 1 - CPT

| | | | |
|---|---|---|---|
| **Subfloor**<br>SUB: ROUGH PLYWD | **Walls**<br>WALLS: 65 LF, CABS: 0 LF | **Furniture**<br>FURNITURE: NONE | **Exist**<br>EXIST: VINYL 9in TILE LT EMB |
| **Furniture Pieces**<br>FURN AMT: NONE | **Heat Air**<br>HEAT: FLOOR VENT | **Area**<br>261 SQ FT | **Molding Type1**<br>WALL MOLDING: BASE, NO SHOE |
| **Molding Type2**<br>BASE MOLDING: STAINED | **Molding Type5**<br>CAB MOLDING: NONE | **Existing FloorType1**<br>OPEN SEAMS ,<br>UNDERLAYMENT TELEGRAPHING | |

**HOME SERVICES**
Let us do it for you.

Customer
Linda Oliver

Flooring Measure
19229618

---

## LW HALL (GROUND FLOOR) | Line Item 1 - CPT

| Subfloor | Walls | Furniture | Possible Asbestos |
|---|---|---|---|
| SUB: WOOD (CANNOT TELL TYPE) | WALLS: 8 LF, CABS: 0 LF | FURNITURE: NONE | POSSIBLE ASBESTOS: DON'T KNOW |

| Exist | Furniture Pieces | Heat Air | Area |
|---|---|---|---|
| EXIST: VINYL SOFT FULL SPRD LT EMB | FURN AMT: NONE | HEAT: NO VENTS | 12 SQ FT |

| Molding Type1 | Molding Type2 | Molding Type5 | Subfloor Main Because |
|---|---|---|---|
| WALL MOLDING: BASE, NO SHOE | BASE MOLDING: STAINED | CAB MOLDING: NONE | BECAUSE NO FLOOR VENTS |

---

## 13 STAIRS 2' 10 x 1' 8 | Line Item 1 - CPT

| Exist | Area | Sub | Stair Has Nose |
|---|---|---|---|
| Exist: CLEAR | 61.4 SQ FT | Sub: WOOD | STAIR HAS NOSE: YES |

| Thicker Tread |
|---|
| TREAD THICKER THAN 1 ' : YES |

---

NOTE: This calculation is based on generic rules and materials. The quote from HDMS will take into account the specific product and installer rules and may adjust quantities and options. The materials section below should be used as a guide only when manually building a quote.

---

## Materials List | Line Item 1 - CPT

| Area | Wall | Cabinets | Install Material |
|---|---|---|---|
| 761 SQ FT | 185 LF | | 873 SQ FT |

| Length | Yardage |
|---|---|
| 12' 0 x 72' 9 FT | 97.0 SQ YD |

**Suggested Moldings (please verify)**

CUT DETAILS:
1: 12'0x20'0 (OTHER 2RIG)-A
2: 12'0x16'9 (Other 1)-A
3: 12'0x10'2 (UP HALL)-A
4: 12'0x25'10 (OTHER 2RIG)-A
ASK CUSTOMER ABOUT THEIR
INTEREST IN PAD UPGRADE
DISCUSS RAMPING TO
CERAMIC WITH INSTALLER

**Notes**

AND/OR CUSTOMER.

**HOME SERVICES**
Let us do it for you.

Customer
Linda Oliver

Flooring Measure
19229618

---

**Fill Pieces**

a = 4' 0 x 3' 1(CUT #3)
b = 0' 9 x 2' 9(CUT #3)
c = 5' 8 x 16' 6(CUT #4)
d = 5' 8 x 5' 2(CUT #4)

## Issues & Warnings

STRINGERS WERE NOT CALCED VERIFY W/ CUSTOMER
CLEAR STAIRS ON PLAN - DISCUSS W/ CUSTOMER IF THEY WANT HOLLYWOOD OR WATERFALL STAIRS.
STAIRS MAY BE RUNNING IN A DIFFERENT DIRECTION THAN THE ROOMS. DISCUSS THIS WITH THE CUSTOMER.
FLR 2/HARD/STAIRS TURN
POSSIBLE FLOOR PROBLEMS
CHECK ROOM INFO LIST

Case 24-10157-1-rel   Doc 417   Filed 04/07/25   Entered 04/07/25 16:33:43   Desc
Main Document   Page 139 of 187
Customer
Linda Oliver

**Flooring Measure**
19229618

**HOME SERVICES**
Let us do it for you.

## Floorplan Drawings

### Line Item 1 - CPT - OTHER 2RIGHT, UP HALL, Other 1, LW HALL



| Door # | Width | Other Side | Height Diff | Door | Type | Trans | Clearance |
|--------|-------|------------|-------------|------|------|-------|-----------|
| 1 | 2' 6 | UP HALL VNYL | EVEN | REG | WD | | 1+" |
| 2 | 2' 6 | TW | EVEN | REG | WD | | 1+" |
| 3 | 2' 11 | STR/2 TW | STPDN | NONE | WD | | |
| 4 | 6' 4 | STR/1 TW | STPDN | NONE | WD | | |
| 5 | 2' 6 | VNYL | EVEN | REG | WD | | 1+" |
| 6 | 2' 6 | UP HALL VNYL | EVEN | REG | WD | | 1+" |
| 7 | 2' 6 | UTIL CER | EVEN | REG | WD | WOOD | 1+" |

**HOME SERVICES**
Let us do it for you.

| 8 | 2' 10 | STR/2 TW | STPUP | NONE | WD |
|---|---|---|---|---|---|

Customer
Linda Oliver

Flooring Measure
19229618

**HOME SERVICES**
Let us do it for you.

## Site Photos

19229618-26-UP HALL-527.jpg



19229618-30-Other 1-527.jpg



19229618-25-UP HALL-527.jpg



19229618-27-13 STAIRS 2'10 X 1'8-527.jpg



**HOME SERVICES**
Let us do it for you.

19229618-28-13 STAIRS 2'10 X 1'8-527.jpg



19229618-29-LW HALL-527.jpg



19229618-24-OTHER 2RIGHT-527.jpg



→ After Carpet Installment



**Statement of Lost Wages Due to Illegal Eviction and Forced Move**

This statement is submitted by me, **Linda Oliver**.

Due to the illegal eviction and forced move from my residence at **40 North Road**, I had to take off four days of work: **June 14, 17, 18, and 21, 2024**.

I work as a **fashion fit model**, earning **$275 per hour**. I lost **17.5 hours**, which amounts to **$4,812.50 in lost wages**.

I have attached:

- Screenshots from my work app showing the days I took off work.
- Screenshots of my typical schedule, including hours worked per day and client names.

The hardship of the illegal eviction and relocation directly caused this time off and financial loss.

**Linda Oliver**
**April 7, 2025**

01 Jul – 07 Jul, 2024

Weekly Schedules

| Mo | Tu | We | Th | Fr | Sa | Su |
|----|----|----|----|----|----|----|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |

**Mon 1 Jul**

10:00 AM – 05:00 PM
Cancelled: Option with Attersee LLC

**Tue 2 Jul**

09:15 AM – 11:15 AM
Confirmed with Bagatelle NY

11:30 AM – 01:00 PM
Confirmed with MMJ APPAREL LLC - Milly

01:30 PM – 03:00 PM
Confirmed with Attersee LLC

03:15 PM – 04:45 PM
Confirmed with Bagatelle NY

**Wed 3 Jul**

11:00 AM – 12:00 PM
Confirmed with MMJ APPAREL LLC - Milly

01:30 PM – 03:30 PM
Cancelled: Option with Bagatelle NY

04:00 PM – 05:00 PM
Cancelled: Confirmed with Natori (kefco)





## 08 Jul – 14 Jul, 2024    〈 〉

| Mo | Tu | We | Th | Fr | Sa | Su |
|----|----|----|----|----|----|----|
| 8  | 9  | 10 | 11 | 12 | 13 | 14 |



**Fri 12 Jul**

10:45 AM – 11:45 AM
Confirmed with Autumn Cashmere

12:00 PM – 01:00 PM
Confirmed with MMJ APPAREL LLC – Milly

*Friday's Schedules* ↗

*@ $275 per. Hour*



## 10 Jun – 16 Jun, 2024    ‹ ›

| Mo | Tu | We | Th | Fr | Sa | Su |
|----|----|----|----|----|----|----|
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |



**Fri 14 Jun**
09:00 AM – 05:00 PM
Out Period

**Sat 15 Jun**
09:00 AM – 05:00 PM
Out Period

**Sun 16 Jun**
09:00 AM – 05:00 PM
Out Period

TOOK off



**17 Jun - 23 Jun, 2024**    ‹ ›

| Mo | Tu | We | Th | Fr | Sa | Su |
|----|----|----|----|----|----|----|
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |

**Mon 17 Jun**
09:00 AM - 05:00 PM
Out Period

09:00 AM - 05:00 PM
Out Period

**Tue 18 Jun**
09:00 AM - 05:00 PM
Out Period

**Wed 19 Jun**
09:00 AM - 11:00 AM
Out Period

TOOK off

📅 17 Jun – 23 Jun, 2024                    ‹  ›

| Mo | Tu | We | Th | Fr | Sa | Su |
|----|----|----|----|----|----|----|
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |



12:45 PM – 03:15 PM
**Confirmed with Bagatelle NY**

03:45 PM – 05:15 PM
**Confirmed with Stateless**

Fri
21
Jun

09:00 AM – 05:00 PM
**Out Period**



TOOK OFF

   

# EXHIBIT 1-C

## Statement Regarding Credit Score Impact

Following my illegal eviction and the resulting financial hardship, I experienced a significant drop in my credit score. Prior to being removed from my home, my scores were in the "Good" range – **729 (TransUnion)** and **733 (Equifax)**.

After the eviction and related expenses, my credit score dropped to **640 (TransUnion)** and **642 (Equifax)**, now falling into the "Fair" range. This decline reflects the strain caused by sudden relocation costs, missed financial obligations, and loss of income. **This is largely due to maxing out all of my credit cards to cover emergency expenses.**

Attached are screenshots showing my credit scores before and after the eviction to illustrate this impact. **EXHIBIT 1-C**

**Linda Oliver**
**April 7, 2025**

6/10/24



## Today

Personalize

**729**
TransUnion
Good

**733**
Equifax
Good

✺ Next check tomorrow

Scores calculated using VantageScore 3.0 ⓘ

> **Grow your savings for free with a high-yield interest rate at 5.10% APY.**
>
> Get started

## You have Outstanding Approval Odds[1]

Apply with more confidence through Credit Karma.

Legal Disclosure

Credit cards    ⬇ More updates
9 offers
Compare rewards, APRs and more.



| Today | Credit | Cards | Loans | Money |



# For you

3|31|25

Dashboard    Tax    AI Assistant    Credit    Accour

**All tax forms are in!**
W-2, 1099 and 1098 forms are available

✕

**TransUnion**
## 640
▼ 4 pts  today

Fair

**Equifax**
## 642
▼ 4 pts  today

Fair

Your W-2 is ready
CK '24 avg tax refund
## $0

State: NY
**Get refund**

# You have Outstanding Approval Odds*

Apply with more confidence through Credit Karma.

Legal Disclosure



🔲 **Credit cards**
3 offers

⬇ More updates

💰 **Personal loans**
4 offers

For you    Cards    Loans    Insurance    Money

**EXHIBIT 1-D**

AFFIDAVIT OF ████████████

**STATE OF NEW YORK**
**COUNTY OF [NEW YORK] ·**

I, ████████████, being duly sworn, depose and state as follows:

1. **Personal Knowledge:** I submit this affidavit based on my personal knowledge of Linda Oliver and the hardship she endured.

2. **Linda Oliver's Homelessness:** On or about June 13, 2024, after working with us, **Linda Oliver came to me in extreme distress,** explaining that she had been locked out of her home without warning. She was visibly upset and stated that she only had the clothing she was wearing at the time.

3. **Wrongful Eviction Circumstances:** Linda informed me that the Trustee had changed the locks on her residence while she was at work, leaving her without access to her belongings or a place to stay. She had **no prior notice** of this action and was left homeless as a result.

4. **Impact on Her Professional Career:** Linda works in the fashion industry, where **her appearance and wardrobe are essential** to her career. The sudden eviction and loss of access to her clothing and personal items created **severe hardship**, making it difficult for her to attend castings, work events, and maintain her professional obligations. The stress of her housing situation **greatly affected her well-being** and her ability to focus on her career.

5. **Immediate Assistance:** Understanding the severity of her situation, I allowed Linda to take clothing from my showroom **closet** to help her manage the immediate aftermath of her eviction.

6. **Emotional and Psychological Toll:** Linda's **emotional distress** was evident. She was in tears and expressed **deep anxiety** about where she would stay and how she would recover from this abrupt displacement. The **sudden eviction** placed an extreme burden on her personally and professionally.

7. **Wrongful Hardship:** The hardship Linda suffered was **unjust, unnecessary, and entirely preventable** had the proper legal process been followed. I firmly believe that Linda Oliver endured **significant financial, emotional, and professional hardship** due to the Trustee's actions.

I declare under **penalty of perjury under the laws of the United States** that the foregoing is true and correct to the best of my knowledge.

Dated: March 17, 2025
Signature: _____

JOYEETA ANILA
Notary Public - State of New York
NO. 01AN0019979
Qualified in Queens County
My Commission Expires Jan 17, 2028

AFFIDAVIT OF ▓▓▓▓▓▓
STATE OF NEW YORK
COUNTY OF [Nassau]

I, ▓▓▓▓▓▓▓, being duly sworn, depose and state as follows:

### 1. Personal Knowledge & Relationship with Linda Oliver
I have known Linda Oliver for many years, and she is one of my closest friends. On June 12, 2024, I received an urgent call from Linda, who was in a state of panic and distress after learning that she had been locked out of her home without warning. She explained that Trustee Christian Dribusch had changed the locks while she was at work, leaving her with nowhere to go and no way to access her belongings.

### 2. Immediate Shock & Concern Over the Lockout
Linda was devastated and completely blindsided by the situation. She was in tears, explaining how she had never received any formal eviction notice or court documentation regarding her removal. I was shocked and outraged that someone could be locked out of their home like this, especially without legal due process.

### 3. My Immediate Decision to Help
Understanding the urgency of her situation, I told Linda that I would drive up to help her move. I made the trip from Long Island to Queensbury, which is not a short distance, just to assist her during this extremely difficult time. I knew she had no other help, and I couldn't let her go through this alone.

### 4. The Difficulty of Moving on Short Notice
The moving process was chaotic and extremely stressful. Linda had very little time to gather her belongings, and there was a large amount of stuff that needed to be packed and moved quickly. The short notice and urgency of the situation made it an exhausting and overwhelming experience for her.

### 5. Caring for Linda's Dog During the Crisis
In addition to helping her move, I also took care of Linda's dog, ensuring that she was safe and did not experience unnecessary stress from the sudden upheaval. This situation was not just emotionally and physically exhausting for Linda but also for her pet, who was affected by the drastic changes.

### 6. Violation of Linda's Rights
What stood out most was how unfair and unjust this situation was. No legal eviction notice was provided, and no court order was issued to remove Linda from the home. Trustee Dribusch took it upon himself to change the locks without warning, knowing that Linda was at work and had no way to protect herself or her property.

### 7. Extreme Hardship & Unnecessary Suffering
Watching Linda go through this was heartbreaking. No one should be put in a position where they suddenly lose access to their home without due process. The financial burden, stress, and emotional toll this took on her was beyond anything she should have had to endure.

### 8. Final Statement
I strongly believe that Linda was wrongfully removed from her home, and Trustee Dribusch's actions were completely unjustified. The lack of notice, disregard for legal procedures, and the distress this caused Linda were completely avoidable. Linda was put through an unnecessary and cruel situation, and I believe she deserves justice for the hardship she endured.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: 3/14/25
Signature: ▓▓▓▓▓▓▓▓

ERICK GUERRERO
Notary Public, State of New York
Qualified In Nassau County
Reg. 01GU6165605
Expires on 5/14/20 27

I have known Linda for over 12 years, and she is a person of integrity, professionalism, and respect for the law. It is unjust and deeply concerning that Trustee Dribusch falsely claimed he had a court order to remove her from her home when, in fact, no such legal eviction notice was ever issued.

## 7. Violation of New York Law:

Under New York state law, a legal resident cannot be evicted without a court order. In Linda's case, she was never served with any legal eviction documents, and she had no opportunity to contest her removal before a judge. This is a clear violation of her rights, and no one should ever have to endure such an ordeal.

## 8. Trustee Dribusch's Accountability:

Given these circumstances, Trustee Dribusch must be held accountable for falsely claiming he had a court order and for causing Linda unnecessary emotional, financial, and professional hardship. His actions were unjust, and the distress caused to Linda was entirely preventable had the proper legal process been followed.

## 9. Final Statement:

Linda Oliver is a talented and hardworking individual who has endured unwarranted hardship due to the reckless and illegal actions of Trustee Dribusch. No one should ever be put in this situation, and I strongly believe that justice must be served to prevent such misuse of authority from happening again.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: [Date] 3|15|2025

Signature: _____

ALYSSA FRANZO
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in
Richmond County
01FR6245228
MY COMMISSION EXPIRES 07/19/2027

R&F

2025 MAR 24  PM 3: 20

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

AFFIDAVIT OF ███████████

STATE OF NEW YORK

COUNTY OF RICHMOND

I, ███████████, being duly sworn, depose and state as follows:

1. Personal Knowledge & Professional Background:

I submit this affidavit based on my personal knowledge of Linda Oliver and the hardship she experienced due to her wrongful eviction. I am a fashion stylist and have worked with Linda in a professional capacity. She is a respected model in the fashion industry, and maintaining a polished appearance is essential to her career.

2. Immediate Contact After Lockout:

On June 12, 2024, I received a distressed phone call and text messages from Linda Oliver informing me that Christian Dribusch, the bankruptcy trustee, had changed the locks to her home while she was at work. She had received a text message from Dribusch himself confirming this action.

3. Extreme Hardship Due to Commute & Denial of Access to Belongings:

This was particularly devastating for Linda because she had a demanding commute, totaling approximately eight hours daily, traveling between her home in Queensbury and her job in Manhattan. The sudden lockout left her stranded, with no personal access to her belongings, including essential items for work. She was left with only the clothes she was wearing at the time, which caused significant stress and hardship in both her personal and professional life.

4. Impact on Career & Professional Appearance:

As a fashion stylist, I understand how important it is for professionals in the fashion industry to present themselves well at all times. For a model like Linda, being locked out of her home and separated from her wardrobe was a major obstacle in maintaining her professional image. She expressed to me that she felt helpless and embarrassed not having access to proper clothing for her work commitments. This directly impacted her ability to work and maintain her career during an already difficult time.

5. Helping Linda Find Housing:

Given the severity of her situation, I immediately offered Linda assistance in securing permanent housing. Knowing her distress, I helped search for housing options and sent her various listings to assist in finding a new residence.

6. Character and Integrity of Linda Oliver:

But I'm going the hardest part of my life right now

I booked a hotel by Kris house today until Sunday

I'm so tight with money now bc I'm doing all this alone on every pinch

Thank god for credit cards

I told ya to come stay w me this week! I wish you would have.. especially going to work!

Are they going to let you pack your stuff?

I can't believe this

I can't bc I have to do all this other like packing etc

They're not allowed to kick you out without notice??

1 Reply

You know I went to ___ with the guys they kinda know what's going on and I told them I have no clothes and homeless they had me take clothes for the next few days

It made me cry so hard they tried to even give me money I said no

It was so so sweet

Now I don't have to use the same 2 shirts and pants

I feel so blessed

You're a good soul you will always have people around supporting you. You're never alone sis 🩶

8:25

B████e Tech

I'm on train coming from soho will be 4 min late, but can give you 5 min after 4

Read

Ok, no problem!

client text

Mon, Jun 10 at 8:53 AM

Hi Linda! This is ████ from B████e. Macy's is complaining that our dresses are too small. So, on Wednesday Sarah and sales team will review some of the dress styles on you. Also, Sarah would like to check your measurements. So, please be prepared. It should stay between us. Thank you!

# EXHIBIT 1-E

## Exhibit 1-E – Retirement Account Withdrawals (ROTH and SEP)

**Submitted by:** Linda Oliver
**Date:** April 7, 2025
**Subject:** Breakdown of Financial Losses Due to Early Retirement Account Withdrawals

Due to the emergency circumstances caused by the wrongful eviction and loss of housing, I was forced to make early withdrawals from my **ROTH IRA** and **SEP IRA** retirement accounts on **July 1, 2024**. These withdrawals were made under financial duress and were necessary to cover urgent relocation and living expenses after being locked out of my home.

As a result, I incurred **early withdrawal penalties, tax liabilities, and lost investment interest**, which caused significant financial harm that would not have occurred otherwise.

## Breakdown of Losses

### Roth IRA Account

- **Net Funds Received:** $6,000.00

- **10% Early Withdrawal Penalty:** $666.67

- **10% Taxes Owed:** $666.67

- **Total Gross Distribution:** $6,666.67

- **Total Loss from Roth Withdrawal: $7,333.34**

### SEP IRA Account

- **Net Funds Received:** $28,000.00

- **10% Early Withdrawal Penalty:** $3,111.11

- **10% Taxes Owed:** $3,111.11

- **Total Gross Distribution:** $34,222.22

- **Total Loss from SEP Withdrawal: $34,222.22**

## Lost Investment Interest

- **Estimated Monthly Interest Rate:** 0.05%

- **Estimated Lost Earnings Over 11 Months**: **$1,888.89**

## Total Retirement Account Losses:

- Roth: $7,333.34

- SEP: $34,222.22

- Lost Interest: $1,888.89

## Total Financial Impact Due to Forced Early Withdrawals:

**$43,444.45**

These financial losses represent long-term harm to my retirement savings and future stability. I was forced to access these funds only because of the sudden financial emergency created by the trustee's unauthorized and unlawful actions.

**Sincerely,**
Linda Oliver

## Form 1099-R — Copy B

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC.<br>3000 SCHWAB WAY<br>WESTLAKE TX 76262<br>1-800-435-4000 | $ 31,111.11 | **2024** | |
| | 2a Taxable amount<br>$ 31,111.11 | Form **1099-R** | |
| | 2b Taxable amount not determined [X]   Total distribution ☐ | | **Copy B** |

| PAYER'S TIN | RECIPIENT'S TIN | 3 Capital gain (included in box 2a)<br>$ | 4 Federal income tax withheld<br>$ 3,111.11 | Report this income on your federal tax return. If this form shows federal income tax withheld in box 4, attach this copy to your return. |
|---|---|---|---|---|

| RECIPIENT's name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code | 5 Employee contributions/ Designated Roth contributions or insurance premiums<br>$ | 6 Net unrealized appreciation in employer's securities<br>$ | |
|---|---|---|---|
| LINDA MICHELLE OLIVER<br>CHARLES SCHWAB & CO INC CUST<br>SEP-IRA<br>POUGHKEEPSIE, NY 12603 | 7 Distribution code(s)  1 | IRA/ SEP/ SIMPLE [X] | 8 Other<br>$ _____ % | This information is being furnished to the IRS. |
| | 9a Your percentage of total distribution _____ % | 9b Total employee contributions $ | |

| 10 Amount allocable to IRR within 5 years<br>$ | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 14 State tax withheld<br>$<br>$ | 15 State/Payer's state no. | 16 State distribution<br>$<br>$ |
|---|---|---|---|---|---|
| Account number (see instructions) | | 13 Date of payment | 17 Local tax withheld<br>$<br>$ | 18 Name of locality | 19 Local distribution<br>$<br>$ |

Form **1099-R**    www.irs.gov/Form1099R    Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

## Form 1099-R — Copy C

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC.<br>3000 SCHWAB WAY<br>WESTLAKE TX 76262<br>1-800-435-4000 | $ 31,111.11 | **2024** | |
| | 2a Taxable amount<br>$ 31,111.11 | Form **1099-R** | |
| | 2b Taxable amount not determined [X]   Total distribution ☐ | | **Copy C**<br>**For Recipient's Records** |

| PAYER'S TIN | RECIPIENT'S TIN | 3 Capital gain (included in box 2a)<br>$ | 4 Federal income tax withheld<br>$ 3,111.11 | |
|---|---|---|---|---|

| RECIPIENT's name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code | 5 Employee contributions/ Designated Roth contributions or insurance premiums<br>$ | 6 Net unrealized appreciation in employer's securities<br>$ | |
|---|---|---|---|
| LINDA MICHELLE OLIVER<br>CHARLES SCHWAB & CO INC CUST<br>SEP-IRA<br>POUGHKEEPSIE, NY 12603 | 7 Distribution code(s)  1 | IRA/ SEP/ SIMPLE [X] | 8 Other<br>$ _____ % | This information is being furnished to the IRS. |
| | 9a Your percentage of total distribution _____ % | 9b Total employee contributions $ | |

| 10 Amount allocable to IRR within 5 years<br>$ | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 14 State tax withheld<br>$<br>$ | 15 State/Payer's state no. | 16 State distribution<br>$<br>$ |
|---|---|---|---|---|---|
| Account number (see instructions) | | 13 Date of payment | 17 Local tax withheld<br>$<br>$ | 18 Name of locality | 19 Local distribution<br>$<br>$ |

Form **1099-R**    (keep for your records)    www.irs.gov/Form1099R    Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

## Form 1099-R — Copy 2

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC.<br>3000 SCHWAB WAY<br>WESTLAKE TX 76262<br>1-800-435-4000 | $ 31,111.11 | **2024** | |
| | 2a Taxable amount<br>$ 31,111.11 | Form **1099-R** | |
| | 2b Taxable amount not determined [X]   Total distribution ☐ | | **Copy 2**<br>File this copy with your state, city, or local income tax return, when required. |

| PAYER'S TIN | RECIPIENT'S TIN | 3 Capital gain (included in box 2a)<br>$ | 4 Federal income tax withheld<br>$ 3,111.11 | |
|---|---|---|---|---|

| RECIPIENT's name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code | 5 Employee contributions/ Designated Roth contributions or insurance premiums<br>$ | 6 Net unrealized appreciation in employer's securities<br>$ | |
|---|---|---|---|
| LINDA MICHELLE OLIVER<br>CHARLES SCHWAB & CO INC CUST<br>SEP-IRA<br>POUGHKEEPSIE, NY 12603 | 7 Distribution code(s)  1 | IRA/ SEP/ SIMPLE [X] | 8 Other<br>$ _____ % | |
| | 9a Your percentage of total distribution _____ % | 9b Total employee contributions $ | |

| 10 Amount allocable to IRR within 5 years<br>$ | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 14 State tax withheld<br>$<br>$ | 15 State/Payer's state no. | 16 State distribution<br>$<br>$ |
|---|---|---|---|---|---|
| Account number (see instructions) | | 13 Date of payment | 17 Local tax withheld<br>$<br>$ | 18 Name of locality | 19 Local distribution<br>$<br>$ |

Form **1099-R**    www.irs.gov/Form1099R    Department of the Treasury - Internal Revenue Service

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC. 3000 SCHWAB WAY WESTLAKE TX 76262 1-800-435-4000 | $ 6,666.67 | **2024** | |
| | 2a Taxable amount $ | Form **1099-R** | |

2b Taxable amount not determined ☒   Total distribution ☐

**Copy B**
Report this income on your federal tax return. If this form shows federal income tax withheld in box 4, attach this copy to your return.

| PAYER'S TIN | RECIPIENT'S TIN | 3 Capital gain (included in box 2a) $ | 4 Federal income tax withheld $ 666.67 |
|---|---|---|---|

RECIPIENT's name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code

LINDA MICHELLE OLIVER
CHARLES SCHWAB & CO INC CUST
ROTH CONTRIBUTORY IRA
POUGHKEEPSIE, NY 12603

5 Employee contributions/Designated Roth contributions or insurance premiums $
6 Net unrealized appreciation in employer's securities $
7 Distribution code(s) J   IRA/SEP/SIMPLE
8 Other $ %
9a Your percentage of total distribution %
9b Total employee contributions $

This information is being furnished to the IRS.

| 10 Amount allocable to IRR within 5 years $ | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 14 State tax withheld $ | 15 State/Payer's state no. | 16 State distribution $ |
|---|---|---|---|---|---|
| Account number (see instructions) | | 13 Date of payment | 17 Local tax withheld $ | 18 Name of locality | 19 Local distribution $ |

Form **1099-R**   www.irs.gov/Form1099R   Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC. 3000 SCHWAB WAY WESTLAKE TX 76262 1-800-435-4000 | $ 6,666.67 | **2024** | |
| | 2a Taxable amount $ | Form **1099-R** | |

2b Taxable amount not determined ☒   Total distribution ☐

**Copy C**
For Recipient's Records

| PAYER'S TIN | RECIPIENT'S TIN | 3 Capital gain (included in box 2a) $ | 4 Federal income tax withheld $ 666.67 |
|---|---|---|---|

RECIPIENT's name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code

LINDA MICHELLE OLIVER
CHARLES SCHWAB & CO INC CUST
ROTH CONTRIBUTORY IRA
11 HILL TOP LN
POUGHKEEPSIE, NY 12603

5 Employee contributions/Designated Roth contributions or insurance premiums $
6 Net unrealized appreciation in employer's securities $
7 Distribution code(s) J   IRA/SEP/SIMPLE
8 Other $ %
9a Your percentage of total distribution %
9b Total employee contributions $

This information is being furnished to the IRS.

| 10 Amount allocable to IRR within 5 years $ | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 14 State tax withheld $ | 15 State/Payer's state no. | 16 State distribution $ |
|---|---|---|---|---|---|
| Account number (see instructions) 1036-4003 | | 13 Date of payment | 17 Local tax withheld $ | 18 Name of locality | 19 Local distribution $ |

Form **1099-R**   (keep for your records)   www.irs.gov/Form1099R   Department of the Treasury - Internal Revenue Service

---

☐ CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | 1 Gross distribution | OMB No. 1545-0119 | Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. |
|---|---|---|---|
| CHARLES SCHWAB & CO., INC. 3000 SCHWAB WAY WESTLAKE TX 76262 1-800-435-4000 | $ 6,666.67 | **2024** | |
| | 2a Taxable amount $ | Form **1099-R** | |

2b Taxable amount not determined ☒   Total distribution ☐

**Copy 2**
File this copy with your state, city, or local income tax return, when required.

| PAYER'S TIN | RECIPIENT'S TIN | 3 Capital gain (included in box 2a) $ | 4 Federal income tax withheld $ 666.67 |
|---|---|---|---|

RECIPIENT's name, street address (including apt. no.), city or town, state or province, country, and ZIP or foreign postal code

LINDA MICHELLE OLIVER
CHARLES SCHWAB & CO INC CUST
ROTH CONTRIBUTORY IRA
POUGHKEEPSIE, NY 12603

5 Employee contributions/Designated Roth contributions or insurance premiums $
6 Net unrealized appreciation in employer's securities $
7 Distribution code(s) J   IRA/SEP/SIMPLE
8 Other $ %
9a Your percentage of total distribution %
9b Total employee contributions $

| 10 Amount allocable to IRR within 5 years $ | 11 1st year of desig. Roth contrib. | 12 FATCA filing requirement ☐ | 14 State tax withheld $ | 15 State/Payer's state no. | 16 State distribution $ |
|---|---|---|---|---|---|
| Account number (see instructions) | | 13 Date of payment | 17 Local tax withheld $ | 18 Name of locality | 19 Local distribution $ |

Form **1099-R**   www.irs.gov/Form1099R   Department of the Treasury - Internal Revenue Service

# EXHIBIT 1-F

Christian H. Dribusch (507021)  
187 Wolf Road, Suite 300  
Albany, New York 12205  
[T] 518.227.0026  

Date:  June 7, 2024  
Time:  1:30 p.m..  
Place: James T. Foley Courthouse  
445 Broadway, 3rd Floor  
Albany, NY 12207; **OR**  
Telephonic 518-217-2288;  
and Conference ID: 939500229#  

UNITED STATES BANKRUPTCY COURT  
NORTHERN DISTRICT OF NEW YORK  
----------------------------------------------------------------X

In re:

KRIS DANIEL ROGLIERI

Chapter 7

Case No.   24-10157

                         *Debtor.*

----------------------------------------------------------------X

## TRUSTEE MOTION FOR SUPPLEMENTAL

## ORDER TO ENFORCE TURNOVER ORDER

TO:  THE HONORABLE ROBERT E. LITTLEFIELD, JR.

Christian H. Dribusch ("*Trustee*") in his capacity as chapter 7 trustee to the bankruptcy

estate of Kris Daniel Roglieri ("*Debtor*") files this motion pursuant to §542 of title 11 of the United

States Code ("*Bankruptcy Code*") and Rule 9014 of the Federal Rules of Bankruptcy Procedure

("*FRBP*") for an Order supplementing the Bankruptcy Court's prior Order of Turnover directing

the Debtor to turnover property of the Debtor bankruptcy estate to the Trustee for case

administration (the "*Motion*").

In support of the Motion, the Trustee respectfully alleges as follows:

JURISDICTIONAL STATEMENT

1.      The The Court's Turnover Order which authorized the Trustee to file such

applications as may be needed to effectuate the Turnover Order on 3-day notice to the Debtor.

Page 1 of 8

Based upon recent events described below, the Trustee files this Motion to futher effectuate the

Turnover Orde issued by the Bankruptcy Court (ECF #188).

2.      Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy

Code with the Bankruptcy Court for the Northern District of New York. See, ECF #1.

3.      The Debtor case has been converted to Chapter 7 and the Trustee has been

appointed by the Office of the United States Trustee.See, ECF #159 and #160.

4.      This Motion made pursuant to Bankruptcy Code §542 is a core proceeding under

§157(b)(2)(A) of title 28 of the United States Code because it relates to matters concerning the

administration of the bankruptcy estate.

5.      This Court has jurisdiction over this proceeding pursuant to §157 and §1334 of

title 28 of the United States Code.

6.      Venue is proper by virtue of §1409(a) of title 28 of the United States Code as the

proceeding arises and relates to a case under the Bankrutpcy Code pending before the Northern

District of New York.

FACTUAL BASIS FOR THE MOTION

7.      The Bankruptcy Court issued an Order for the Debtor's Turnover of Estate

Assets to the Trustee. See ECF #188.

8.      On May 24, 2024, the Trustee met with the Debtor and inventoried a number of

items of artwork as well as reviewed the cars remaining in Debtor possession, custody, and control.

9.      Between May 24, and May 31, 2024, among other things, the Trustee negotiated

with an auction house on securing and selling the cars, artwork, and guns.

10.     On Friday, May 31, 2024, the Trustee tried to coordinate with the Debtor access to secure the cars and artwork.    On the dame day, the Debtor was detained by the Federal Government on a criminal allegation.

11.     On Monday, June 3, 2024, the Debtor's detention was extended.

12.     The Debtor no longer has access to 40 North Street, Queensbury or its contents and thus cannot comply with the Turnover Order to allow the Trustee to access and secure possession, custody, and control over the Estate Property.

13.     The Trustee seeks a supplemental Order authorizing the Trustee to secure the Debtor Estate property at 40 North Street, Queensbury, New York for the purpose of removing Estate Property for case administration

14.     The Debtor is also unable to comply with the turnover of possession, custody and control of Prime Capital Venture, LLC, Shark Ventures, LLC, FUPME, LLC, National Alliance of Commercial Loan Brokers, LLC, Commercial Capital Training Group, LLC, and Prime Commercial Lending LLC (collectively, the "Estate Companies").

15.     The Trustee requests a supplemental Order authorizing the Trustee to exercise control of the Debtor bankruptcy estate's sole membership interest in the Estate Companies to the exclusion of the Debtor and any representative purportedly acting through the Debtor.

### POINTS AND AUTHORITIES FOR TURNOVER

16.     Bankruptcy Code §542(a) provides that:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Page **3** of **8**

17.     Under Bankruptcy Code §541, governing "Property of the estate," the act of filing a petition for bankruptcy creates an estate comprised of (as relevant here) "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." Bankruptcy Code §541(a)(1). Section 541 gathers into the estate all such interests in property, "wherever located and by whomever held." *Weber v. Sefcu (In re Weber)*, 719 F.3d 72 (2nd Cir. 2013). The definition of property of the estate is interpreted broadly, and "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [Section] 541." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008).

18.     To assemble the bankruptcy estate, §542 of the Bankruptcy Code requires that, during bankruptcy proceedings, an entity "in possession, custody, or control" of certain property in the estate "shall deliver" that property to the trustee, "unless such property is of inconsequential value or benefit to the estate." Bankruptcy Code §542(a). The property subject to this delivery obligation is "property that the trustee may use, sell, or lease under section 363," which grants broad powers over the estate's property to the trustee. See, *Weber v. Sefcu (In re Weber)*, 719 F.3d 72 (2nd Cir. 2013).

19.     To prevail on a claim under §542(a), a trustee must establish three elements: (1) the property is in the possession, custody, or control of another entity; (2) the property can be used in accordance with the provisions of Bankruptcy Code §363; and (3) the property adds more than inconsequential value to the debtor's estate. *Geltzer v. Brizinova (In re Brizinova)*, 554 B.R. 64 (Bankr. E.D.N.Y. 2016) quoting *Zazzali v. Minert (In re DBSI, Inc.)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011).

20.    The first element is established because at the time of the bankruptcy filing the Debtor had an interest in the Estate Assets including the membership interest in the Estate Companies which are property of the bankruptcy estate under Bankruptcy Code §541.

21.    The second element is established when a trustee demonstrates that the turnover of property of the estate "can be put to use in connection with the administration of the estate, including paying the claims of creditors and the costs of administration of the estate." *Geltzer v. Brizinova*, 554 B.R. 64, 77 (Bankr. E.D.N.Y. 2016). The second element is established in this case because the Estate Assets and ownership interest in the Estate Companies can be liquidated in accordance with the provisions of Bankruptcy Code §363 thereby generating proceeds for the benefit of the Bankruptcy estate.

22.    The third element is established when the trustee can show that "some method of sale holds a reasonable prospect of a meaningful recovery in excess of the debtor's exemption in the asset." *In re Burgio*, 441 B.R. 218, 221 (Bankr. W.D.N.Y. 2010). In the present case, the Debtor Schedules A/B demonstrate that the Estate Assets and ownership interest in Estate Companies substantially exceed any applicable exemption amount such that the liquidation of the Estate Assets and Estate Companies will generate value to the Debtor bankruptcy estate. The Debtor interest is the amount of any applicable exemption and not the Estate Assets or Estate Companies. *See, Schwab v. Reilly*, 560 U.S. 770 (2010) ("property" as the debtor's "interest"— up to a specified dollar amount—in the assets described in the category, *not* as the assets themselves").

23.    Bankruptcy courts have routinely held that where the sole member of a single-member limited liability company files a chapter 7 bankruptcy petition, the chapter 7 trustee acquires not only the debtor's economic interest in the limited liability company, but also the

Page **5** of **8**

debtor's rights to control and manage the limited liability company. See, *Hagemeyer v. Peachy Adventures, LLC (In re Neal)*, 2013 WL 12108275, at *3 (Bankr. W.D. Tenn. Feb. 5, 2013) ("[T]he trustee in bankruptcy [or debtor in possession] is the only person who can assure that management rights are exercised for the benefit of the estate and its creditors."); *See also In re Modanlo*, 412 B.R. 715 (Bankr. D. Md. 2006), aff'd 266 Fed. Appx. 272 (4th Cir. 2008) (Under Delaware law, the Chapter 11 trustee possesses both the economic and governance rights to participate in the management of a limited liability company that debtor enjoyed prior to his bankruptcy filing); *In re First Protection, Inc.*, 440 B.R. at 830 (Debtors' contractual rights and interest in a limited liability company became property of their estate under § 541(a)(1) by operation of law when they filed their petition*); Fresno Rock Taco, LLC v. Nat'l Sur. Corp*, 2013 WL 5276132, at *18 (E.D. Cal. Sept 17, 2013) (Bankruptcy trustee was entitled to step into the shoes of the debtor and obtain 100 percent management control of the LLC through the filing of the sole member's chapter 7 bankruptcy petition); *In re B & M Land & Livestock, LLC*, 498 B.R. at 267 (Trustee for sole member obtains governance rights with respect to limited liability company upon filing of bankruptcy petition by member); *In re Neal*, 2013 WL 12108275, at *3 (Bankr. W.D. Tenn. Feb. 5, 2013); *In re Ellis*, 2011 WL 5147551, at *3 (Bankr. S.D. Ind. Oct. 27, 2011) (Debtor held all of his membership interests—both economic and noneconomic—when he filed his chapter 7 case and those interests became property of the estate*); Klingerman v. ExecuCorp, LLC (In re Klingerman)*, 388 B.R. 677, 679 (Bankr. E.D. N.C. 2008) ("Section 541(c) provides that all of the debtor's interest passes to the estate notwithstanding applicable nonbankruptcy law that effects a modification or termination of the debtor's interest upon the commencement of a bankruptcy case."); *In re Albright*, 291 B.R. at 540 (Sole member of limited liability company effectively assigned her entire membership interest in the LLC to Chapter 7 estate upon filing of bankruptcy

Page **6** of **8**

petition, and trustee obtained all of her rights, including right to control management of the LLC);

*In re Thomas*, Case No. 16-27850-L (Bankr. W.D. Tenn. May 07, 2020) (As a result, the Trustee

is well within his rights to ask the court to direct the Debtor (and all other persons) to cooperate

with his administration of the Debtor's membership interest in TI Properties, LLC (and all other

membership interests owned by the Debtor in single-member limited liability companies) and to

enjoin the Debtor (and all other persons) from interfering in his exercise of his rights and

responsibilities with respect to those membership interests.); *Schwartzer v. Cleveland (In re*

*Cleveland)*, 519 B.R. 304 (D. Nev. 2014) ("Numerous bankruptcy courts have held, and the Court

agrees, that where a debtor has a membership interest in a single-member LLC and files a petition

for bankruptcy under Chapter 7, the Chapter 7 trustee succeeds to all of the debtor's rights,

including the right to control that entity, and a trustee need not take any further action to comply

with state law before exercising such control."); *Gencanna Acquisition Corp. v. 101 Enters. (In*

*re Oggusa, Inc.)*, 20-50133, ADV. 23-5036 (Bankr. E.D. Ky. Aug 31, 2023) ("The Debtor's interest

in the Company was property of the estate. 11 U.S.C. § 541(a) ('[A]ll legal and equitable interests'

in prepetition property are assets of a debtor's estate.). This includes both the Debtor's governance

rights and its economic right to profits as a Member of the Company.")

## RELIEF REQUESTED

24.     The Bankruptcy Court has previously determined that the Estate Assets and

Estate Companies are property of the Debtor bankruptcy estate subject to turnover.

25.     The Debtor is unable to comply with the Bankruptcy Court Turnover Order.

26.     The Trustee requests an Order from the Bankruptcy Court authorizing the Trustee

to access 40 North Street, Queenbury, New York to obtain possession, custody, and control of the

Estate Assets, including cars and artwork.

27.     The Trustee also requests an Order from the Bankruptcy Court authorizing the Trustee to exercise governance control over the Debtor bankruptcy estate's sole membership interest in the Estate Companies to the exclusion of the Debtor and any representative purportedly acting through the Debtor.  The Debtor and such representatives should not interfere with the exercise of the Trustee rights and responsibilities with respect to the membership interests in the Estate Companies.   '

WHEREFORE, the Trustee seeks an Order for the relief requested in the Motion or such appropriate relief as the Court may deem just and proper.

/s/ Christian H. Dribusch
**Christian H. Dribusch**
cdribusch@chd-law.com

## CERTIFICATE OF SERVICE

I, Christian H. Dribusch, certify, as counsel to the Chapter 7 trustee that on the 4th day of June 2024, a true and correct copy of the trustee request for supplement aid to turnover Order and Order was served on the below in accordance with Bankruptcy Court Order and the Federal Rules of Bankruptcy Procedure.

Dated: June 3, 2024
Albany, New York

/s/ Christian H. Dribusch
Christian H. Dribusch

TO:     (2 copies and $15 to Rensselaer County Correction Facility)

Kris Roglieri
Rensselaer County Correctional Facility
Attn: Civil Process
4000 Main Street
Troy, NY 12180

So Ordered.

Signed this 4 day of June, 2024.



_____
Robert E. Littlefield, Jr.
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
NORTHERN DISRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                              Chapter 7

                                                    Case No. 24-10157

KRIS DANIEL ROGLIERI

                        *Debtor.*

-----------------------------------------------------------X

**<u>EX PARTE ORDER APPROVING FORM, MANNER AND SUFFICIENCY OF NOTICE</u>**

        Upon the Turnover Order (ECF #188), and the chapter 7 trustee request for a supplemental

Order to aid in the execution of the Turnover Order, and sufficient cause appearing therefore, and

it is appearing that no further notice of the instant application is required; it is hereby

        **ORDERED**, that a hearing on the motion for a supplemental Order to aid in the Turnover

Order made pursuant to §542 of Title 11 of the United States Code ("<u>Bankruptcy Code</u>") and the

Turnover Order be held before the Hon. Robert E. Littlefield, United States Bankruptcy Judge, at

**1:30 p.m.**, or as soon thereafter as counsel may be heard, on the **7th day of June, 2024, <u>IN</u>**

**<u>PERSON</u> _OR_** through **<u>TELEPHONIC CONFERENCE</u>** at **<u>518-217-2288 with Conference ID:</u>**

939500229# with any issues pertaining to the TELEPHONIC CONFERENCE being directed to:

NYNBCRDALB@nynb.uscourts.gov; and it is further

      **ORDERED**, that a copy of the motion together with this Order shall be served upon the

ECF participants via ECF, and upon the Debtor through the Rensselaer County Correctional

Facility on or before **June 4, 2024, at 1:00 p.m.**; and it is further

      **ORDERED**, that notices, as set forth above, shall be deemed good and sufficient notice of

the subject motion and in accordance with the provisions of the Federal Rule of Bankruptcy

Procedure and local bankruptcy rules if served in accordance with this Order; and it is further

      **ORDERED**, that responses to the motion, if any, will be accepted at the hearing; and it is

further

      **ORDERED**, *that the Rensselaer County Correctional Facility is authorized to allow the*

*Debtor to participate in the hearing by Telephonic Conference.*

###

So Ordered.

Signed this 10 day of June, 2024.



_____

Robert E. Littlefield, Jr.
United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

KRIS DANIEL ROGLIERI,

                *Debtor.*

-------------------------------------------------------------X

Chapter 7

Case No.  24-10157-1-REL


## SUPPLEMENTAL ORDER ON THE CHAPTER 7
## CASE TRUSTEE MOTION FOR TURNOVER

      On the motion of Christian H. Dribusch ("*Trustee*") in his capacity as chapter 7 trustee to

the bankruptcy estate of the above-captioned Debtor ("Debtor Bankruptcy Estate") made pursuant

to §542 of title 11 of the United States Code ("*Bankruptcy Code*") and Rule 9014 of the Federal

Rules of Bankruptcy Procedure ("*FRBP*") for an Order supplementing the prior Turnover Order

of the Court, upon the appearances of the parties on the record, the Court having considered the

arguments and the Court having found: (1) sufficient service; and (2) that the Trustee has established the factual and legal basis for the requested relief;

NOW, THEREFORE, it is hereby **ORDERED** as follows:

1. The Trustee Motion is granted.

2. The Trustee is authorized to secure 40 North Street, Queensbury, New York ("Residence") for the benefit of the Debtor Bankruptcy Estate and to secure and remove the property of the Debtor Bankruptcy Estate located at the Residence.

# # #

**EXHIBIT 1-G**

CASE # 24 - 10157

RECEIVED
2025 APR -4 PM 3:58
CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

FILE
2025 APR -4 PM 4:23
CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

**EXHIBIT 1-G**

**Kris Roglieri- 24-10151**

**Video footage**

The thumb drive has 3 files

① June 4th        Ring Camera footage
                  of Dribusch
② June 5th        Stating he entered the
                  Property via garage
③ June 19         w/ no court order

Saratoga auto museum
staff, a nieghbor,
and dribusch enter
Property w/ out letting
any one know and no
court order.

Dribusch had a open house
w/ out Linda or Kris Knowing
while Linda still lives the and
You can see the person talking about
stealing Something

CASE NO: 24-10157

FILE

2025 APR -4  PM 4: 23
CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

I Linda Oliver, POA will
be Sending a vsb drive with
videos & mp3 of Evidence
via USPs. To Trustee
Christian Dribusch & United
States assitant UST Lisa Penpraze.
Sending on Monday 4/7/25

4/4/25

RECEIVED

2025 APR -4  PM 4: 00
CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

## Statement Regarding Lack of Notice and Emotional Distress Following Lockout

On **June 4, 2024**, the trustee called me and scheduled a walk-through for June 9th at my home at **40 North Road**. However, **before we ever met in person**, he entered the property independently — **without my consent and a court order**. At that time, he had **no legal authority** to enter or break into the home. He also had the auction house there, going through all of our things and removing assets. This was the most uncomfortable feeling. Which was the cause of my downfall to anxiety and depression; I just felt I could not catch a break.

I remained in the house until I was formally locked out on **June 12, 2024,** by Mr. Dribusch, stating he had a court order and that it was a lie.

After the lockout, I was told I could retrieve my belongings under **supervised access**. I coordinated with a representative from the **Saratoga Automobile Museum**, who was supposed to meet with me during any scheduled access to the property.

Despite this, on **June 19, 2024**, I received alerts from my **Ring camera** showing **unknown individuals** walking around the home and attempting to enter — **without my knowledge or permission**. At that point, many of my personal belongings, including **jewelry and other valuables**, were still inside.

I expressed my discomfort and concern through text, asking why strangers were allowed on the property and whether the trustee or his team supervised the access. I saw on the camera that they entered my home without my consent. I asked to remove my jewelry box because I no longer felt safe or secure with people coming in and out of the house without notice.

This is part of a larger pattern of **invasion of privacy, emotional distress, and lack of due process**. I was never formally served, yet the trustee entered my home without legal authority and later allowed others to do the same while my belongings remained inside. These actions left me feeling unsafe, violated, and wholly disregarded.

I have attached screenshots of my text exchanges and Ring video stills showing my efforts to protect my home and possessions and the emotional toll these violations caused. **EXHIBIT 1-G**

**Linda Oliver**
**April 7, 2025**



Saratoga Auto M. >

Wed, Jun 19 at 6:02 PM

Hi ████ is there a reason people are walking around the house trying to get in? I see a woman in scrubs with a white dog and a chubby guy. 3 cars etc. it popped up on my ring

I don't know if you are aware

I am aware that the house is being shown today.

Thank you for letting me know.



It makes me feel uncomfortable as my stuff is still there and my jewelry which I didn't pack.

Will it be supervised the whole way as I have my stuff there. I don't understand why they don't let me remove my stuff and show it after Sunday

Or at least they can let me know

I just wanted to make sure you knew as

iMessage



**Saratoga Auto M.**

It makes me feel uncomfortable as my stuff is still there and my jewelry which I didn't pack.

Will it be supervised the whole way as I have my stuff there. I don't understand why they don't let me remove my stuff and show it after Sunday

Or at least they can let me know

I just wanted to make sure you knew as the woman is seen trying to open doors.

Yes, Christian is there

Ok great. We'll just double checking as I got an alert. Wanted you to be aware just in case since our gates broken who knows.

Thank you for reaching out.

Can I come Friday to get my jewelry box I don't feel safe if he's showing the house I would like to remove it from the property

Or if you can take it out the house until you see me Sunday?

It's in our bedroom on the dresser. It's the pink box

iMessage

**June 5, 2024**

3:27 PM



June 19th