Christian H. Dribusch  
THE DRIBUSCH LAW FIRM  
187 Wolf Road  
Albany, New York 12205  
(518) 227-0026  

UNITED STATES BANKRUPTCY COURT  
NORTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 7 |
| KRIS DANIEL ROGLIERI | Case No. 24-10157 |
| *Debtor*. | |

-------------------------------------------------------------------X

## TRUTEE AFFIRMATION IN OPPOSITION TO DEBTOR'S FINAL SUBMISSION ON REMOVAL

CHRISTIAN H. DRIBUSCH, hereby affirms that:

1. I am an attorney duly licensed to practice law in the State of New York and in the United States District Court for the Northern District of New York.

2. I am the Chapter 7 Trustee appointed to administer the bankruptcy estate of the captioned Debtor.

3. This affirmation is made in response to Debtor's final submission on Debtor's motion to remove me as Chapter 7 trustee to the Debtor bankruptcy estate.

4. My administration of the debtor bankruptcy estate has been guided by 11 U.S.C. (the "*Bankruptcy Code*") section 704, Bankruptcy Court Turnover Orders, and the United States Trustee Handbook for Chapter 7 Trustees ("*Trustee Handbook*").

5. After the Debtor was detained at the Rensselaer County Correction Facility on June 3, 2024, I secured 40 North Road, Queensbury, New York ("*North Road Property*") and its

contents (collectively, the "*Bankruptcy Estate Property*") as required under the Bankruptcy Code section 704(a)(1), the Court Order for Turnover, and the Trustee Handbook.

6. Upon arriving at the North Road Property, I contacted Saratoga Automobile Museum ("*SAM*"), the auctioneer referred by the Debtor's bankruptcy counsel, who promptly sent over 4 representatives to assist me in securing the Ferrari[1] and Mercedes which were parked in front of the house as well as the Mercedes Black Series located in the back garage.

7. I repaired the front gate which had been left open so that it could be closed to provide some security for the North Road Property.

8. I met with the neighbor across the street and provided him with my contact information. The neighbor agreed to let me know if any issues had arisen at the North Road Property.

9. While securing Bankruptcy Estate Property, I was contacted by Linda Oliver. I informed Ms. Oliver that I was the chapter 7 trustee to the Debtor Bankruptcy Estate and that I had a duty to secure the Debtor Bankruptcy Estate property. I further advised Ms. Oliver that I was aware that Ms. Oliver had personal property located at the North Road Property and that I would try to work cooperatively with her to provide her with an opportunity to remove personal belongings.

10. I made it clear to Ms Oliver that I was securing the North Road Property for the benefit of the Debtor Bankruptcy Estate. Ms. Oliver was unmistakable that she understood and wanted to cooperate.

---

[1] At our May 23, 2024 meeting, I informed the Debtor that no one may drive the Ferrari and Mercedes Black Series and that they must remain in the back garage until I could arrange for their removal. The Ferrari was located at the front of the house when I arrived on June 3, 2024, and I was advised by the neighbor that the Debtor began driving the Ferrari around town soon after our May 23, 2024 meeting.

11. On June 4, 2024, I filed and served a supplemental motion for turnover. The purpose of the supplemental was, in part, to update the Bankruptcy Court, the Debtor, the United States Trustee, and the other parties in interest on what was being done to secure the North Road Property and to obtain a "comfort order" to provide to a third party should there be an issue about control and removal of Bankruptcy Estate Property.

12. I also contacted Tina Roglieri's counsel to coordinate Ms. Roglieri's access to the North Road Property so that she could remove any personal items that the children may have needed.

13. Finally, I scheduled a locksmith to come to the North Road Property to rekey the locks to secure it.

14. On June 5, 2024, the locksmith rekeyed the North Road Property.

15. SAM representatives were at the North Road Property to assist me in securing and inventorying the Bankruptcy Estate Property.

16. I met with a perspective purchaser to walk through the North Road Property and discuss an offer which would later be discussed at the June 7, 2024 supplemental turnover hearing.

17. On June 6, 2024, SAM was at the North Road Property to continue with the inventory of the Bankruptcy Estate Property.

18. On June 7, 2024, I appeared on the supplemental motion for turnover. The Debtor, the United States Trustee, and several other parties in interest also appeared on the supplemental motion. I updated the Bankruptcy Court and other parties on the status securing the North Road Property as well as possible sale. See Supplemental Turnover Hearing Tr. Exhibit "C".

19. The Debtor did not object to how the Bankruptcy Estate Property was being secured or the request for a "comfort order." See Supplemental Turnover Hearing Tr. Exhibit "C". The

Debtor only expressed a concern that I may be negotiating too low a price on the sale of the North Road real estate. See Supplemental Turnover Hearing Tr. Exhibit "C".

20. On June 9, 2024, I, together with SAM representatives, met with Ms. Oliver to walk through the North Road Property to confirm which items Ms. Oliver could remove.

21. Cigars and sunglasses were not among the items which Ms. Oliver was authorized to remove from the North Road Property.

22. Upon information and belief, on June 10, 2024, Ms. Oliver left the North Road Property and was not scheduled to return until the morning of June 12, 2024.

23. During SAM's June 11, 2024 inventory, SAM representatives discovered that Bankruptcy Estate Property consisting of at least cigars and sunglasses had been taken from the North Road Property.

24. Upon learning of the missing property, I made an inquiry and Ms. Oliver confirmed that she had taken Bankruptcy Estate Property without permission.

25. I secured the North Road Property with new keys.

26. I notified Ms. Oliver that access to North Road Property would be supervised.

27. At no time did Ms. Oliver produce a lease or assert tenancy in the North Road Property.

28. At our May 23, 2024 meeting, the Debtor told me that the Debtor was the sole person in possession of North Road Property and that his girlfriend, Linda Oliver, was an occasional guest who worked in New York City and visited on some weekends, primarily long weekends.

29. At our May 23, 2024 meeting, I inquired about the women's clothing located in one of the rooms and the Debtor told me that his girlfriend was a model who was allowed to keep her

clothes from modeling jobs. The Debtor also told me that because it was so expensive to store the clothes in New York City, the Debtor allowed Ms. Oliver to store the clothes at the North Road Property.

30. The Bankruptcy Estate artwork has been removed from the North Road Property and secured with SAM.

31. Most of the remaining personal property remaining at the North Road Property were sold at a Bankruptcy Court authorized on-site auction. Some items of personal property were not sold, and they remain secured at the North Road Property. The only two people with keys to North Road Property are the retained realtor and me.

32. I secured the North Road Property by winterizing it because I did not want the Bankruptcy Estate to incur the expense of utilities. I also determined that winterizing the North Road Property was prudent because there was less risk of damage resulting from mechanical failure.

33. I secured the North Road Property pool by winterizing it.

34. I obtained homeowner insurance on the North Road Property.

35. Based upon the communications I received from Debtor's criminal counsel in June 2024, I made the decision in an abundance of caution and deference to the criminal proceeding, and mindful of the Debtor's procedural due process in the bankruptcy proceeding, not to request a redirect of the Debtor mail.

36. Based upon the communications I received from Debtor's counsel in June 2024, I made the decision in an abundance of caution and deference to the criminal proceedings, not to further access the computer.

37. I have not acted as an agent or under the direction of the United States Government in the administration of the Bankruptcy Estate. I received no advance notice of the Debtor's arrest and was not aware of the Debtor's arrest until after it occurred. After the Debtor's arrest and subsequent detainment, I promptly secured the Bankruptcy Estate Property.

Dated: April 18, 2025

By: */s/ Christian H. Dribusch*
Christian H. Dribusch