Christian H. Dribusch
THE DRIBUSCH LAW FIRM
187 Wolf Road
Albany, New York 12205
(518) 227-0026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:

KRIS DANIEL ROGLIERI

                Debtor.

Chapter 7

Case No. 24-10157

-------------------------------------------------------------------X

## TRUSTEE MEMORANDUM OF LAW IN OPPOSITION TO REMOVAL MOTION

Removal of a bankruptcy trustee is governed by 11 U.S.C. ("Bankruptcy Code") § 324(a): "The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause."

"Cause" is not defined by the Bankruptcy Code. Bankruptcy Courts are to make that determination on a case-by-case basis. *In re Miller*, 302 B.R. 705 at 709 (B.A.P. 10th Cir. 2003). Circumstances that may constitute cause for removal include:

- trustee incompetence
- violation of a trustee's fiduciary duty
- misconduct or failure to perform the duties of a trustee
- unreasonable delay in the performance of trustee duties

See, *In re: United Tax Group, LLC*, 622 B.R. 148 at 157-58 (Bankr. D. Del 2020); *Brooke Corp.*, 2016 WL 519731, at 6; *Lundborg*, 110 B.R. 106 at 108 (Bankr. Conn. 1990) (citing cases); 3 *Collier on Bankruptcy* ¶ 324.02 (16th Ed. 2024).

Most courts require that cause be something that both the law and sound public policy recognize as sufficient to warrant removing the trustee, and that relates to and affects the administration of the trustee's office. *In re United Tax Group,* 622 B.R. at 157.

Generally, a party seeking the removal of a trustee must prove that in addition to cause there has been actual fraud or harm to the interests of the bankruptcy estate. *In re Varela*, 530 B.R. 573, 586 (Bankr. E.D.N.Y. 2012) (citing *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990)); See also, *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965); *Surabian v. Picard*, 2014 WL 917091, at *2, 2014 U.S. Dist. LEXIS 31356, at *5 (S.D.N.Y. Mar. 7, 2014) (collecting cases); *In re Regan*, 18-31694 (Bankr. N.D.N.Y. Oct 14, 2021); *In re Haworth*, 356 Fed. Appx. 529, 530 (2d Cir. 2009)

Some courts have held that a debtor lacks standing to seek removal of a trustee based on the trustee's administration of the estate in general. See *In re Baroni*, 643 B.R. 253, 287 (Bankr. C.D. Calif. 2022); *In re Martin*, 201 B.R. 338 (Bankr. N.D.N.Y. 1996); See also *In re Levitt*, 632 B.R. 527 (B.A.P. 8th Cir. 2021) (Chapter 7 debtors lack standing to appeal an order denying their motion to remove the trustee where estate was insolvent since there was no possibility a successful appeal would entitle them to a distribution of a surplus and there would be no impact on their discharge as they were ineligible for a discharge.)

The party seeking removal for cause has the burden of proof and must show specific facts supporting removal. *In re Brooke Corp*., 2016 WL 519731, at *6 (Bankr. D. Kan. Feb. 5, 2016) (citing *In re Miller*, 302 B.R. 705 (B.A.P. 10th Cir. 2003)). Since removal of a trustee for cause in one case shall result in removal from all other cases in which the trustee serves unless the court orders otherwise, removal of a trustee is considered an "extreme remedy, even when a trustee has acted negligently." *In re United Tax Group, LLC*, 622 B.R. 148, 157 (Bankr. D. Del. 2020).

Therefore, the movant must make a "strong showing" by at least a preponderance of the evidence. *Id*. "[H]orrible imaginings alone cannot be allowed to carry the day." *In re Huyck*, 22-80089-PRT (Bankr. E.D. Okla. Mar 29, 2024).

"[A] trustee will not be removed for mistakes in judgment where the judgment is discretionary and reasonable under the circumstances." *In re Haugen Constr. Serv., Inc.*, 104 B.R. 233, 240 (Bankr. D.N.D.1989).

Courts should consider the best interests of the estate rather than the interest of a single movant when determining whether to remove a trustee. *In re Ideal Mortgage Bankers, Ltd*., 539 B.R. 409 (Bankr. E.D. N.Y. 2015), aff'd, 2016 WL 4046767 (E.D. N.Y. 2016).

The Debtor's submission does not sustain a case for the removal of the Trustee.

**THE DEBTOR DOES NOT HAVE STANDING TO MAKE THE REMOVAL MOTION**

Since chapter 7 debtors are divested of all rights, title, and interest in nonexempt property through the creation of the bankruptcy estate at the commencement of their cases, debtors generally lack any pecuniary interest in the trustee's disposition of that property. See, *Levitt v. Jacoway (In re Levitt)*, 632 B.R. 527 (B.A.P. 8th Cir. 2021). Thus, a debtor does not have general case administration standing. A debtor may have standing if the debtor can show that one of two exceptions apply: (1) there is a reasonable possibility – not just a theoretical chance – that a successful appeal would entitle the debtor to the distribution of a surplus under 11 U.S.C. § 726(a)(6); or (2) the appealed order impacts the terms of the debtor's bankruptcy discharge. *Id.*

This Bankruptcy Court has previously held that a chapter 7 debtor lacked standing to sue the trustee for breach of fiduciary duty and to object to the trustee's administration of assets where the claims against the estate exceeded the value of its assets by tens of millions. *In re Martin,* 201 B.R. 338, 343-44 (Bankr. N.D.N.Y. 1996). The Bankruptcy Court's decision has been adopted by

other Bankruptcy Court's. See, *In re Baroni*, 643 B.R. 253 (Bankr. C.D. Cal. 2022)( debtor lacks standing to challenge the Trustee's administration of the estate unless she provides admissible evidence that she has a pecuniary interest in the estate or in the specific asset or claim at issue.).

As evidenced by the Debtor's claim register there is no reasonable possibility that removal of the trustee would entitle the debtor to the distribution of a surplus under 11 U.S.C. § 726(a)(6). The Debtor has acknowledged at the numerous hearings on the removal motion that he has no pecuniary interest in the bankruptcy estate property.

The Debtor's discharge has been denied, so the removal of the Trustee will not impact on the terms of the debtor's bankruptcy discharge.

In *Martin*, the debtor asserted "that he has standing based on the denial of his discharge which provides him with a financial interest in the estate along with the possibility of a surplus if the Trustee properly administers the estate." 201 B.R. 388, at 344. This Bankruptcy Court denied standing explaining that:

> To allow Martin to have standing based upon the highly speculative conjecture of a surplus, particularly in light of the claims filed in this case, would be to open the floodgates for debtors to object to a variety of the Trustee's actions in a case and frustrate the goals of the bankruptcy law, namely, an orderly and efficient administration of the debtor's estate.
> *In re Martin*, 201 B.R. 338, at 344 (emphasis added).

This case demonstrates the strong policy reasons for this Court's rationale in *Martin* as to why a debtor without a pecuniary interest in the outcome of the case should not have generalized standing concerning the administration of the bankruptcy estate.[1] Debtor lists personal grievances which do not amount to either fraud or harm to the Debtor bankruptcy estate. Allowing the Debtor

---

[1] Trustee acknowledges that a debtor may have standing on specific matters. For example, matters pertaining to a specific exemption or seeking an abandonment of specific property of the bankruptcy estate. See, *In re Baroni*, 643 B.R. 253 (Bankr. C.D. Cal. 2022)

to use a bankruptcy court as a venue for personal grievances has resulted in the drastic slowdown of case administration and frustrates the goals of the bankruptcy law, namely, an orderly and efficient administration of the debtor's estate.[2]  A debtor already has a venue for redress through the Office of the United States Trustee which is tasked with oversight of the panel of chapter 7 trustees.[3]  If the Office of the United States Trustee determines there is veracity to a debtor's grievance, the United States Trustee has the right to seek the removal of the chapter 7 trustee.

The Debtor's removal motion should be denied because the Debtor does not have standing to request removal of the Trustee.

### THE DEBTOR DOES NOT SUBMIT SUFFICIENT EVIDENCE TO SUPPORT THE REMOVAL MOTION

A court may draw on its judicial experience and common sense to determine whether the factual content of a motion for removal plausibly gives rise to an entitlement to relief. See, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Although lengthy, the Debtor's removal motion consists almost entirely of Debtor's unsworn hearsay statements which lack personal knowledge. The Debtor has been detained at the Rensselaer County Correctional Facility since May 31, 2024 and thus was not present as a witness

---

[2] The Bankruptcy Court may take notice of its own docket that the Debtor has filed not less than 14 separate pleadings in support of Debtor' removal alone.  Moreover, the Bankruptcy Court may likewise take notice of all the adjournments flowing from the multitude of Debtor filings.

[3] Per Trustee Handbook Page 1-1: "The Bankruptcy Reform Act of 1978 removed the bankruptcy judge from the responsibilities for day-to-day administration of cases. Debtors, creditors, and third parties litigating against bankruptcy trustees were concerned that the court, which previously appointed and supervised the trustee, would not impartially adjudicate their rights as adversaries of that trustee. To address these concerns, judicial and administrative functions within the bankruptcy system were bifurcated.

Many administrative functions formerly performed by the court were placed within the Department of Justice through the creation of the Program. Among the administrative functions assigned to the United States Trustee were the appointment and supervision of chapter 7 trustees. This Handbook is issued under the authority of the Program's enabling statutes."

Per Trustee Handbook Chapter 6, the United States Trustee engages in extensive oversight of chapter 7 trustees and have broad powers to implement remedies.

to the Trustee's administration of the bankruptcy estate property located at 40 North Road, Queensbury, New York ("North Road Property"). Accordingly, the Debtor has no personal knowledge.

The Debtor, without any foundation of personal knowledge and minimal, if any, relevant admissible evidence, asks the Bankruptcy Court to infer a "strong showing" of Trustee misconduct from a hodge podge of undated photos, snippets, innuendo, misstatements, and conjecture all of which provide no foundation.[4]  As other courts have noted, "[H]orrible imaginings alone cannot be allowed to carry the day." *In re Huyck*, 22-80089-PRT (Bankr. E.D. Okla. Mar 29, 2024).  As with any motion, a removal motion needs to be predicated on evidence.

Even if the Bankruptcy Court were to accept the Debtor's deficient submissions as evidence, the Debor does not show that the Trustee has engaged in misconduct under 11 U.S.C. section 324.

## TRUSTEE COMPETENCE.

After the Debtor was detained, the Trustee promptly secured property of the Debtor bankruptcy estate consisting of the real estate and contents located at the North Road Property.[5] Dribusch Affirmation ¶5 - 15.  In addition to the statutory authority, the Trustee obtained a turnover Order pursuant to a hearing confirming the Trustee's authority so secure the property of the Debtor bankruptcy estate (See generally, Turnover Hearing Tr. Exhibit "B"). Finally, the Trustee operated in accordance with the guidelines of the Trustee Handbook which was prepared by the United States Trustee Program as an instructional guide regarding the duties owed by a chapter 7 trustee.

---

[4] The Trustee reserves all evidentiary objections and the right to discovery, should it be necessary.  Additionally, it is noted that while the Trustee was provided with USBs containing alleged video and audio recordings, the Trustee was unable to access them.

[5] Per the Trustee Handbook Page 4-1: "The principal duty of the trustee is to collect and liquidate the property of the estate and to distribute the proceeds to creditors."

According to the Trustee Handbook, when the trustee thinks assets of value exist, the trustee has a duty to control and preserve those assets:

> In those cases where the property appears to have value for the estate, the *trustee must obtain control over the property, which may include changing the locks at the premises*, hiring guards, etc. The trustee also must immediately take all other steps which may be reasonably necessary to preserve the assets. It is not always sufficient to wait until after the meeting of creditors to take action to preserve assets. 11 U.S.C. § 704. Trustee Handbook, ch. 4.C.3.f. (emphasis added).
> . . . .
> When the debtor has control or possession of assets that have equity, *the trustee must seek to gain control of those assets as soon as possible*. 11 U.S.C. § 704. Normally, the assets will be delivered to the trustee voluntarily and without court order. Id. at ch. 4.C.6 (emphasis added).

The Trustee acted competently by following 11 U.S.C. section 704(a)(1), a Bankruptcy Order for Turnover, and the Trustee Handbook, in promptly securing the property of the Debtor bankruptcy estate[6] by changing the locks, repairing the front gate sufficiently enough to close it, securing the vehicles, obtaining insurance on the North Road Property, winterizing the pool, and winterizing the residence. See, Dribusch Affirmation generally. The Debtor bankruptcy estate has not been harmed by the Trustee promptly securing the North Road Property.

The Trustee also acted competently in retaining Saratoga Automobile Associates ("SAM")[7] to assist him in securing the North Road Property and inventorying the Debtor bankruptcy estate property.  With the assistance of SAM, the Trustee filed an inventory of assets which substantially

---

[6] Debtor argument that the Trustee needed to delay accessing property of the bankruptcy estate was raised by the Debtor at the May 20, 2024 turnover hearing when the Debtor's request for a 30-day stay on turnover, which request was denied (Turnover Hearing Tr. Exhibit "B").

[7] Debtor was negotiating a retention agreement with Saratoga Automobile Museum pre-petition. Dribusch Affirmation ¶6.

exceeded the Debtor's Schedule disclosures[8], with only a few items not included.[9] Items the Debtor asserts were missing from the inventory (wine, shoes, sunglasses) are in the possession of the Trustee representative and the Trustee is attempting to sell the shoes and sunglasses and abandon the wine. See, ECF #354, #355 and #395.  Even if the Trustee mistakenly missed a few items on the inventory, the Debtor has not shown that the Trustee did so with fraudulent intent or that there has been any harm to the Debtor estate where the Truste has secured and is seeking to liquidate the property of the bankruptcy estate.

The Trustee has sold assets after obtaining prior Bankruptcy Court approvals and such sales were conducted by public auction through SAM. See, e.g., ECF #265 and #278.  The Trustee filed reports on sales and SAM has filed auctioneer reports. See, e.g. ECF #267 and #319.  There is no evidence (or even allegation) that the Trustee deviated from the Bankruptcy Court Orders or bankruptcy procedure in liquidating the property of the Debtor bankruptcy estate.  Thus, there is nothing in the record to support the Debtor's assertion that the Trustee acted with any incompetence or gross mismanagement in the disposition of the Debtor bankruptcy estate property.[10]

The Debtor submits no proof that the Trustee decision to secure the North Road Property by winterizing it was either incompetence or gross mismanagement. The Trustee winterized the North Road Property because the Trustee determined that it would be better for the Debtor

---

[8] The Debtor never amended the Debtor Schedules to more fully disclose the property of the bankruptcy estate.  See, ECF case docket.

[9] Per Trustee Handbook Page 4-3: "The inventory must be sufficient to enable a trustee to later verify whether an auctioneer or other liquidator has accounted for all property turned over for sale."

[10] The Debtor may have a differing opinion on value, but that is not evidence of Trustee gross mismanagement or incompetence.  Contrary to the Debtor's assertions, the Order authorizing the sale of the artwork provides for a reserve.  The Trustee has repeatedly stated on the record that the sale of the artwork would be subject to a reserve based upon the unique issues arising from their sale and that the artwork may need a "plan B" should they not generate sufficient value through a SAM auction being held in Saratoga over the Belmont weekend.

bankruptcy estate not to incur the utility expenses, and that winterizing would be safer to preserve the property should there be a mechanical failure.[11] Dribusch Affirmation ¶32.

Debtor submits no evidence of Trustee incompetence and no evidence of fraud or harm to the Debtor bankruptcy estate resulting from the Trustee's administration of the bankruptcy case.

### THE TRUSTEE HAS NO FIDUCIARY DUTY TO THE DEBTOR

Ordinarily, a trustee's fiduciary duties are with the bankruptcy estate and its creditors. When courts have held that a trustee owes a debtor fiduciary duties, they have generally done so only if the debtor has an interest in surplus proceeds distributed under 11 U.S.C. § 726(a)(6) or properly exempted property of the estate. See, *In re Christensen*, 598 B.R. 658 (Bankr. Utah 2019) which explained:

> But the scope of any fiduciary duty must be defined precisely. Without such definition, the term "fiduciary duty" takes on an amorphous quality that leaves parties in a fiduciary relationship unsure of their respective rights and obligations. In the case of a chapter 7 trustee and debtor, a fiduciary relationship between the two does not exist until the trustee holds property to which the debtor is entitled either because the debtor has a validly claimed exemption in it or it constitutes a surplus after payment of all claims. The context in which that relationship arises defines the scope of the trustee's duties. A debtor's entitlement to exempt or surplus property does not create a vast array of fiduciary duties running from a trustee to a debtor, nor does it oblige a trustee to act broadly in the debtor's best interests. A trustee becomes a fiduciary vis-à-vis a debtor because he holds property that belongs to the debtor by operation of law. The scope of his duty, therefore, is strictly limited to safeguarding property of the estate in the trustee's possession or the proceeds from the sale thereof to which the debtor is entitled and ensuring that the debtor receives that property.

---

[11] The Bankruptcy Court docket shows that the Debtor did not file an "adequate assurance" application under Bankruptcy Code section 366. Since no Order for adequate assurance was in place 30-days post filing, pursuant to Bankruptcy Code 366(c)(2) either the Debtor or the utility could have terminated the utilities at any time without further Order of the Bankruptcy Court. The Trustee did nothing to interfere with either the Debtor or any utility right to terminate service. The Debtor points to no authority that a chapter 7 trustee has a duty to discontinue a debtor's utilities or that a chapter 7 trustee has a duty to maintain utilities when they are not needed to preserve the bankruptcy estate. The chapter 7 trustee's duty is to secure the bankruptcy estate property, and the chapter 7 trustee may exercise reasonable business judgment in doing so.

There is no reasonable prospect of a surplus and the Debtor has claimed no exemptions, so the Trustee has no fiduciary duty to the Debtor. See, *In re Wisdom*, 478 B.R. 394 (Bankr. Idaho 2012) ("it is obvious that a chapter 7 trustee owes no fiduciary duty to a debtor to honor an exemption that has not been properly claimed and allowed by that debtor.") [12]

Assuming, *arguendo*, that the Debtor did file exemptions[13], the Trustee has not violated his fiduciary duty to the Debtor concerning exempt assets. The Debtor interest is the amount of any applicable exemption and not the property itself. See, *Schwab v. Reilly*, 560 U.S. 770 (2010) ("property" as the debtor's "interest"—up to a specified dollar amount—in the assets described in the category, not as the assets themselves"). Any potential exempt property of the Debtor has been sold pursuant to Bankruptcy Court Order and the Trustee is holding sufficient funds to pay the "amount" of any applicable exemption with respect to its administration. Accordingly, even if *arguendo* one were owed, the Trustee has not breached any fiduciary duty owed to the Debtor.

## THE TRUSTEE HAS NOT ENGAGED IN MISCONDUCT

The Debtor incorrectly argues that it was an "abuse of power" for the Trustee's representative, SAM, to require Linda Oliver to provide proof of ownership before allowing her to remove personal property from the North Road Property. The Debtor, who was incarcerated, was not a witness to the interactions between Ms. Oliver and SAM and therefore submits no admissible evidence on personal knowledge about what occurred between them. Linda Oliver submits no evidence of the interactions which occurred between her and SAM. As the Bankruptcy Court explained to the Debtor at the May 20, 2024 hearing "And realize that he has, if you're the

---

[12] Per Trustee Handbook Page 4-5: "The trustee must object to a claimed exemption if doing so benefits the estate." The Trustee's duty is to object to exemptions where appropriate not, as the Debtor asserts, file the Debtor's exemptions.

[13] The Debtor is not entitled to any exemptions because no Schedule C claiming any exemptions has been filed and, even if a Schedule C were filed, the Trustee's time to object to it does pass not expire until 30-days after the close of the meeting of creditors. See, Federal Rule of Bankruptcy Procedure 4003(b)(1).

Trustee and you see a widget and it's in the Debtor's possession, there's a presumption that the widget is tied to the Debtor. If it's not, that can be corrected. Nothing is going to be liquidated. It's all just he's charged with gathering materials, and that's what he's trying to do." (Turnover Hearing Tr. Exhibit "B", Page 35, Lines 10-15). The Trustee representative was entitled to a presumption that the contents of the North Road Property was property of the Debtor bankruptcy estate until it was proven otherwise. There is no assertion that Ms. Oliver was prevented from removing what she proved belonged to her or that the Debtor bankruptcy estate retained possession of her property.

The Debtor inaccurately asserts that it was an "abuse of power" for the Trustee to limit Linda Oliver to supervised access to the property of the bankruptcy estate after the Truste learned that Ms. Oliver misappropriated property of the Debtor bankruptcy estate.[14]  Dribusch Affirmation ¶24. The Debtor asserts Ms. Oliver was a "legal resident."[15] The Debtor's argument fails because the Debtor is bound by his sworn testimony that "legal resident" means "occasionally my girlfriend comes and stays with me" (Debtor 341 Tr. Exhibit "A", Page 18). Moreover, Ms. Oliver's papers do not say that she was a tenant, nor has she provided the Trustee or the Bankruptcy Court with a lease or any other proof that she was a tenant.[16]

It would have been a breach of fiduciary duty to the Debtor bankruptcy estate and its creditors if the Trustee were to allow Ms. Oliver unsupervised access **knowing** that Ms. Oliver had misappropriated property of the Debtor bankruptcy estate.

---

[14] Debtor cites no authority to assert standing on behalf of Linda Oliver

[15] Throughout the Debtor's removal motion the Debtor refers to Ms. Oliver as a "legal resident," never a tenant.

[16] Ms. Oliver's "Affidavit of Hardship Due to Unlawful Eviction" does NOT assert that she was a tenant. Ms. Oliver's affidavit only alleges that she was "unlawfully evicted" because she was locked out and thus, she was denied "due process" which violated her "constitutional rights." Ms. Oliver's submission does not say that as an occasional guest, Ms. Oliver believed she was a tenant under New York State law.

The Debtor submits no proof of harm to the Debtor bankruptcy estate resulting from the Trustee limiting Ms. Oliver to supervised access to remove her personal belongings. By advancing Debtor's "legal resident" argument, the Debtor harms the Debtor bankruptcy estate by asserting an administrative claim on behalf of his girlfriend Linda Oliver against the Debtor bankruptcy estate which is detrimental to the interests of creditors which the Debtor alleges that he is purporting to be protecting at the multitude of Bankruptcy Court hearings necessitated by the Debtor's numerous pleadings.

The Debtor wrongly asserts it was an "abuse of power" for the Trustee to secure the property of the Debtor bankruptcy estate. The Debtor falsely suggests that the Trustee violated the Debtor's privacy rights. Restrictions regarding governmental searches are rarely implicated in this type of bankruptcy case because a chapter 7 trustee is not a law enforcement official:

> Trustees in bankruptcy are not law enforcement officials. …[A] trustee is required to assemble assets of the estate, liquidate those assets for the benefit of creditors, and distribute proceeds of the estate to creditors. Although trustees may seek the assistance of governmental officials in carrying out their statutory and fiduciary duties and orders of the court, they do not act to assist the government in its investigatory or administrative activities. Rather, the trustees act independently under their statutory mandate in the Bankruptcy Code. Accordingly, a trustee or agent to a trustee is only subject to the Fourth Amendment if (1) the government knew of and acquiesced in the conduct and (2) the trustee acted with the intent to assist the government in its investigatory or administrative purposes. *In re Kerlo*, 311 B.R. 256, 265 (Bankr. C.D. Cal. 2004)[17]

Neither of the *Kerlo* conditions exist in this case. The Debtor submits no proof that the government knew of or acquiesced in the Trustee performing chapter 7 trustee duties to secure property of the Debtor bankruptcy estate under 11 U.S.C. 704(a) (1), Bankruptcy Court Orders, or

---

[17] Also Per Trustee Handbook 2-8: "Care must be taken to avoid confusion in the public's mind between the trustee who is a private individual and a fiduciary for bankruptcy estates and the Program, its officials and employees, and other government personnel."

the Trustee Handbook. The Trustee acted with no intent to assist the government in its investigatory or administrative purposes. Dribusch Affirmation ¶37. In discussing the second part of the test, the court in *Kerlo* explained that "where the private party has had a *legitimate independent motivation* for' engaging in the challenged conduct, the fourth amendment would not apply.' *In re Kerlo*, 311 B.R. 256 (Bankr. C.D. Cal. 2004). The Trustee had a legitimate independent motivation to perform a core duty of a chapter 7 trustee under the Bankruptcy Code in effectuating the Bankruptcy Turnover Orders of which the Debtor had proper notice and opportunity to be heard, the Debtor was afforded due process of law in the initial turnover motion as well as the supplemental motion, Debtor participated throughout the process, and Debtor had consented to the turnover of the property of the Debtor bankruptcy estate. See, Turnover Hearing Tr. Exhibit "B" and Supplemental Hearing Tr. Exhibit "C"). Thus, since neither *Kerlo* element has been established, there was no violation of Debtor's privacy rights by the Trustee or the Bankruptcy Court.

The Debtor also mistakenly asserts that the Trustee attempts to assert control over the Debtor's mailbox is an "abuse of power."[18] Regardless of whether the mail itself is property of the bankruptcy estate, the Trustee as the sole representative of the Bankruptcy estate is the only person with authority to access the mailbox which is property of the bankruptcy estate.[19] Bankruptcy Code section (§) 362(a)(3) operates as a stay of "any act to obtain possession of

---

[18] Per Trustee Handbook Page 4-12: "In chapter 11 or chapter 13 cases that are converted to chapter 7, Fed. R. Bankr. P. 1019(4) requires that any debtor or trustee turn over to the chapter 7 trustee *all records **or** property of the estate in his or her possession or control*. See Handbook Chapter 4.N.2." (emphasis added).

[19] This Court explained the principle in *In re Martin*: "Martin is not a creditor of the estate and has no pecuniary interest in the estate. Martin's main bankruptcy case was converted from a case in Chapter 11 to one under Chapter 7. Accordingly, pursuant to 11 U.S.C. § 323(a), the trustee is the sole representative of the estate. Martin is *not* the representative of the estate, and it is within the Trustee's powers to institute any actions related to the disposition of property and the general administration of the estate." (emphasis in the original) 201 B.R. 343.

property of the estate or of property from the estate or to exercise control over property of the estate." Pursuant to Bankruptcy Code section 362(d) "on request of a party in interest and after notice and a hearing" the court may grant relief from the stay "by terminating, annulling, modifying, or conditioning such stay –" Accordingly, once the Trustee secured the North Road Property, it was the obligation of the Debtor who wanted access to the mailbox to request the Bankruptcy Court issue an Order authorizing access the mailbox.[20]

In any event, the Debtor does not prove how the Trustee trying to access the mail was fraud or how the Debtor bankruptcy estate was harmed by the Trustee's attempts to secure the mail. Based upon the financial records, it appears that the Debtor falsely asserts that Ms. Oliver filed a mail redirect (e.g. forwarding) with the United States Postal Service (USPS) on or about June 14, 2024 and that it took up until the middle of July, 2024 before the Debtor received the redirected mail. The financial records submitted by Ms. Oliver (Redacted Credit Card Statement Exhibit "D") show that on June 9, 2024, the day the Trustee instructed her not to interfere with the Debtor's mail, Ms. Oliver went online with USPS and initiated 3 mail redirects: (A) two at a cost of $41.10, and (B) one at a cost of $31.10. The usual cost to verify identity online for purposes of a mail redirect is $1.10 (Exhibit "E"). Generally, the standard redirect, which costs no more than $1.10, occurs within 3 business days (Exhibit "E"). But USPS offers a premium service which may allow the mail to be redirected sooner (Exhibit "E"). Based upon the credit card statement, the June 9, 2024 redirect may have been done using a USPS premium service and thus no subsequent first-class mail came to the North Road Property.[21]

---

[20] At a May 20, 2024 turnover hearing the Bankruptcy Court advised the Debtor that if the Debtor had a disagreement with the trustee's administration, then the Debtor could bring it to the Bankruptcy Court's attention (Turnover Hearing Tr. Exhibit "B").

[21] Notably, the USPS site also specifies what mail is **not** forwarded on a redirect. Specifically, "USPS Marketing Mail® is not forwarded". This "Marketing Mail" which the USPS does not think is worthy of mail forwarding is what, in essence, the Trustee referred to as "junk mail. Thus, because the USPS does not forward the "Marketing

Based upon the request of criminal counsel and in an abundance or caution, the Trustee elected not to seek a redirect of the mail, so even if the Trustee made a mistake in attempting to secure the mail, such mistake was mitigated by the Trustee not seeking to redirect the mail. Dribusch Affirmation ¶35. The Debtor has shown no fraud or actual harm to the Debtor bankruptcy estate resulting from the Trustee's effort to secure the mail.

The Debtor assertion that the Trustee securing the computer was an "abuse of power" is incorrect. The computer is Bankruptcy Estate Property over which the Trustee as sole representative of the Bankruptcy Estate has exclusive control. The Debtor had a Bankruptcy Code 521 duty to surrender recorded information which includes computer data, so the Trustee was entitled to the information contained on the computer. In any event, after the request of Debtor's criminal counsel and in an abundance of caution and deference to the criminal process, the Trustee did not further access the computer. Dribusch Affirmation ¶36. So, even if the Trustee made a mistake in accessing the computer, the Debtor shows no actual harm to the Debtor bankruptcy estate.

### THE DEBTOR HAS NOT ESTABLISHED THAT THERE HAS BEEN AN UNREASONABLE DELAY IN THE PEFORMANCE OF THE TRUSTEE DUTIES

The Debtor neither asserts nor submits evidence of any unreasonable delay in the performance of the Trustee duties, so this is not addressed.

### TRUSTEE REMOVAL SHOULD NOT OCCUR IF THE RESULT IS THAT THE DEBTOR BANKRUPTCY ESTATE WOULD NOT BENEFIT.

Even if the Court found "cause" under Bankruptcy Code §324(a), removal should not occur if it would not result in any benefit to the estate. See, *In re Ampal-Am. L·real Corp.*, 554 B.R. 604, 624 (S.D.N.Y 2016), affd, 691 Fed. Appx. 12 (2d Cir. 2017) (*quoting Freeport Italian Bakery,*

---

Mail", the Trustee received it and this "Marketing Mail" is what the Trustee advised the Bankruptcy Court, and the other parties *at the time (ECF #348, paragraph 12)*, was being received by the Trustee.

*Inc.* 340 F.2d at 55).

Since the conversion to Chapter 7 in May 2024, the disclosed and undisclosed assets of the Debtor have been secured, the Debtor's discharge denied, and there have been two auction sales for which reports of sale have been filed with the Bankruptcy Court. Additionally, the Bankruptcy Court has approved a third auction of the artwork to be conducted during the 2025 Belmont Stakes weekend in Saratoga, New York, authorized the settlement and release of four (4) cars from the United States Government, authorized the settlement and release of two (2) other vehicles held by third parties, and authorized the retention of a professional to market the residence for sale. Continuation of the administration of the Debtor bankruptcy estate without a change of Chapter 7 trustee would be beneficial to the bankruptcy estate.

## CONCLUSION

For all the reasons set forth herein the Debtor motion for removal should be denied.

Dated: April 18, 2025

> Respectfully submitted,
>
> */s/ Christian H. Dribusch*
> Christian H. Dribusch