**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Esq., Successor Chapter 7 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                    Case No.: 24-10157-1-REL

KRIS DANIEL ROGLIERI,                     Chapter 7

                  Debtor.
---------------------------------------------------------X

**SUCCESSOR TRUSTEE'S MOTION SEEKING ENTRY OF AN ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE: (I) AUTHORIZING THE SUCCESSOR TRUSTEE'S SALE OF THE DEBTOR'S 1959 CADILLAC ELDORADO BIARRITZ AND 2017 FERRARI 488 GTB NLARGO; (II) APPROVING THE BIDDER CONTRACT AND TERMS AND CONDITIONS OF SALE; (III) APPROVING THE FORM, MANNER AND EXTENT OF NOTICE OF THE PUBLIC AUCTION SALE; (IV) AUTHORIZING PAYMENT OF THE AUCTIONEER'S BOND AND CERTAIN RESTORATION EXPENSES FROM THE BANKRUPTCY ESTATE; AND (V) GRANTING RELATED RELIEF**

TO THE HONORABLE ROBERT E. LITTLEFIELD, JR.,
UNITED STATES BANKRUPTCY JUDGE

      Marianne T. O'Toole, Esq., solely in her capacity as Successor Chapter 7 Trustee ("Successor Trustee") of the estate of Kris Daniel Roglieri ("Debtor"), by her undersigned counsel, seeks entry of an Order pursuant to §§ 105 and 363 of title 11 of the United States Code ("Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Local Bankruptcy Rule 6004-1 ("Local Rules"): (i) authorizing the public auction sale of the bankruptcy estate's right, title and interest in and to the Debtor's: (a) 1959 Cadillac Eldorado Biarritz, VIN ending 8951 ("1959 Cadillac"); and (b) 2017 Ferrari 488 GTB NLargo, VIN ending 8191 ("2017 Ferrari" and, together with the 1959 Cadillac, "Vehicles"), free and clear of all interests (if any); (ii) approving the form of Bidder Contract and Terms and

1

Conditions of Sale; (iii) approving the form, manner, and extent of notice of the public auction sale of the Vehicles; (iv) authorizing payment of the Auctioneer's Bond and certain restoration expenses relating to the 1959 Cadillac from the bankruptcy estate; and (v) granting such other and further relief as the Court deems just and proper. In support of the Motion, the Successor Trustee respectfully represents as follows:

## STATUTORY PREDICATES FOR RELIEF REQUESTED

1. The statutory predicates for the relief sought herein include sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Bankruptcy Rule 6004-1.

2. This Court has jurisdiction of the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and venue of this case and the Motion is proper in this District pursuant 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On February 15, 2024 ("Filing Date"), a voluntary petition pursuant Chapter 11, Subchapter V of the Bankruptcy Code was filed on the Debtor's behalf in the United States Bankruptcy Court for the Northern District of New York ("Court"). See ECF No. 1.

4. As of the Filing Date, the Debtor owned each of the Vehicles. See ECF No. 80 (Schedule A/B). The Debtor scheduled the fair market value of the 1959 Cadillac at $300,000.00 and the fair market value of the 2017 Ferrari at $350,000.00. See id. Upon information and belief, there are no liens on title to either of the Vehicles.

5. By Order entered on May 15, 2024, the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code. See ECF No. 159.

6. On May 15, 2024, Christian H. Dribusch was appointed as Chapter 7 Trustee of the Debtor's estate ("Prior Trustee"). See ECF No. 160.

2

7. By Order entered on August 7, 2024, the Saratoga Automobile Museum ("SAM") was employed as auctioneer of the Debtor's properties. See ECF No. 241.

8. By motion dated August 12, 2024, the Prior Trustee sought authority to sell property of the Debtor's estate. See ECF No. 242. By Orders entered on September 19, 2024, October 17, 2024, February 21, 2025 and May 6, 2025, the Court approved the Prior Trustee's sale of certain personal property assets of the Debtor's estate, which did not include the Vehicles. See ECF Nos. 265, 278, 357, 474.

9. Pursuant to a stipulation that was So Ordered by the Court on December 2, 2024 [ECF No. 318], the Prior Trustee paid an allowed priority, administrative claim of Cadillac Parts & Restoration relating to the 1959 Cadillac and, thereafter, the 1959 Cadillac was retrieved on behalf of the Prior Trustee.

10. In or around May 23, 2025, the Prior Trustee resigned.

11. On May 27, 2025, Marianne T. O'Toole, Esq. was appointed as successor interim trustee of the Debtor's estate pursuant to section 703(a) of the Bankruptcy Code. See ECF No. 491. By operation of law, Marianne T. O'Toole, Esq. is now the permanent Chapter 7 Trustee of the Debtor's estate.

12. The Successor Trustee is informed as follows with respect to the Vehicles: (a) SAM currently has possession of the 2017 Ferrari and has been advertising it for inclusion in a public auction sale scheduled for September 20, 2025; (b) Ensign Autobody and Restoration Services ("Ensign") currently has possession of the 1959 Cadillac, which is completing certain restoration services and preparing the vehicle for sale; and (c) SAM has been advertising the 1959 Cadillac for inclusion in a public auction sale scheduled for September 20, 2025.

**RELIEF REQUESTED AND BASIS FOR RELIEF**

13. By this Motion, the Successor Trustee seeks the entry of an Order: (a) authorizing the public auction sale of the bankruptcy estate's right, title and interest in and to the Vehicles, free and clear of all interests (if any); (b) approving the form of Bidder Contract and Terms and Conditions of Sale; (c) approving the form, manner, and extent of notice of the public auction sale; (d) authorizing payment of the Auctioneer's Bond and certain restoration expenses relating to the 1959 Cadillac from the bankruptcy estate; and (e) granting such other and further relief as the Court deems just and proper. A proposed Order is annexed as **Exhibit A**.

**A.    The Successor Trustee's Sale Of The Vehicles Should Be Approved**

14. Pursuant to section 704(a) of the Bankruptcy Code, Chapter 7 trustees are required to "reduce to money the property of the estate for which such trustee serves." 11 U.S.C. §704(a)(1).

15. Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 govern the sale of assets outside of the ordinary course of a debtor's business. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

16. Under Bankruptcy Rule 6004(f)(1), a trustee is permitted to sell property of the estate pursuant to section 363(b) of the Bankruptcy Code by private sale or public auction. FED. R. BANKR. P. 6004(f)(1). Local Bankruptcy Rule 6004-1(c) sets forth certain requirements for sale motions. See generally Local Rule 6004-1.

17. The Successor Trustee is statutorily charged with liquidating property of the Debtor's estate as expeditiously as is compatible with the best interests of the estate. See 11 U.S.C. § 704(a)(1). In this case, the Successor Trustee has exercised her sound business judgment in

4

determining that the sale of the Vehicles by SAM at the public auction sale scheduled for September 20, 2025 ("Auction Sale") is appropriate and in the best interests of the Debtor's estate.

18. SAM intends to conduct the Auction live on September 20, 2025 at 10:00 a.m. (EST) at the Saratoga Casino Hotel located at 342 Jefferson Street, Saratoga Springs, New York 12866. Phone bidding and online bidding will also be available. Following the Auction Sale, SAM shall file a report of sale of the Vehicles with the Court in accordance with Local Rule 6005-1(c),

19. As detailed below, the proposed Bidder Contract and Terms and Conditions of Sale, and the proposed form, manner, and extent of notice of the public auction sale are designed to ensure that the highest and best offers for the Vehicles are obtained.

20. Further, because the sale of the Vehicles is subject to competing bids at the Auction Sale itself, the ability of the Successor Trustee to receive the highest and best value for the Vehicles is increased. The fairness and reasonableness of the consideration to be received by the Debtor's estate will be demonstrated by a "market check" through the Auction Sale, which is the best means for establishing that a fair and reasonable price is being paid.

21. Section 363(f) of the Bankruptcy Code permits the sale of assets to be free and clear of interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest is in bona fide dispute; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. See 11 U.S.C. § 363(f). Accordingly, a trustee may sell property of a bankruptcy estate free and clear of interests if one of the five conditions under section 363(f) is satisfied. See In re Grubb & Ellis Co., Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27, 2012) (discussing Bankruptcy Code § 363(f)); In re Borders Group,

Inc., 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (discussing Bankruptcy Code § 363(f)). In this case, there are no known liens on the Vehicles and the Vehicles can be sold pursuant to section 363(f) of the Bankruptcy Code.

22. For these reasons, the Successor Trustee submits that the sale of the Vehicles at the Auction Sale should be authorized and approved.

**B.     The Bidder Contract And Terms And Conditions Of Sale Should Be Approved**

23. By this Motion, the Successor Trustee also seeks approval of the proposed Bidder Contract and Terms and Conditions of Sale, substantially in the form annexed as **Exhibit B**. The Bidder Contract and Terms and Conditions of Sale were negotiated between the Successor Trustee and SAM and provide, inter alia, as follows:

   a. A 10% buyer's premium will be charged on each vehicle sold and added to the purchase price (for online bidders, an additional 3% buyer's premium -- for a total of 13% -- will be added to the purchase price), plus document fees of $150. See id. at ¶4.

   b. Payment in full is required by 5:00 p.m. the second business day after the Auction and, in the event of a payment default, a $2,500.00 service fee will be charged. See id. at ¶5.

   c. The Vehicles shall be sold "as is", "where is", "with all faults", with no warranties or guaranties of any kind. See id. at ¶7.

24. The Successor Trustee submits in her reasonable business judgment that the proposed Bidder Contract and Terms and Conditions of Sale are designed to ensure that the Debtor's estate receives the maximum benefit from the sale of the Vehicles and therefore warrant Court approval.

**C.    The Form, Manner, And Extent Of Notice Of The Auction Sale Should Be Approved**

25.    By this Motion, the Successor Trustee also seeks approval of the proposed form, manner and extent of notice of the Auction Sale.

26.    Notice, substantially in the form annexed as **Exhibit C**, will be provided in accordance with Bankruptcy Rules 6004(a) and (c) and 2002(a)(2) to all creditors listed in the Debtor's schedules, all parties who have filed a notice of appearance in the Debtor's case, all known parties with an interest in the Vehicles (if any), and the Office of the United States Trustee. The Notice sets forth all the information a potential bidder or other party in interest should require about the Auction Sale to be conducted by SAM, including the date and location of the Auction Sale and details on how to obtain further information regarding the sale of the Vehicles.

27.    The Successor Trustee is informed that SAM has already promoted the Auction Sale at the following offsite events: (a) Amelia Island Concours, Florida event, which occurred on March 5-8, 2025, (b) Premier Auction Group, Florida event, which occurred on March 14-15, 2025, (c) Mecum Auctions Harrisburg, Pennsylvania event, which occurred on July 23-26, 2025, and (d) Regional Car Shows which occurred/are scheduled to occur from May 2025 through September 2025. In addition, full page ads were run in the DUPONT REGISTRY, SPORTS CAR MARKET, HEMMINGS MOTOR NEW, OLD CARS, POST STAR, SARATOGA LIVING MAGAZINE, and SARATOGA REPORT.

28.    The Successor Trustee is informed that SAM intends to generate additional interest in the Auction Sale through enhanced marketing efforts, including: (a) mailing flyers to SAM's list of over 1,000 potential bidders and custom car collectors; (b) sending email blasts to SAM's contact list of over 25,000 potential bidders and custom car collectors; (c) including promotional

materials at SAM Events; (d) advertising on social media platforms; and (e) advertising the Auction Sale online and through e-blasts.

29. The Successor Trustee submits that good and sufficient notice of the Auction Sale will be given and that no additional notice is required.

**D.** **The Successor Trustee Should Be Authorized To Pay For The Auctioneer's Bond And Restoration Expenses**

30. By this Motion, the Successor Trustee also seeks authority under sections 363(b) and 105(a) to pay: (a) the premium for the Auctioneer's Bond; and (b) certain restoration expenses up to $50,000.00 relating to the 1959 Cadillac.

31. Section 363(b) of the Bankruptcy Code provides in relevant part that: "[t]he [T]rustee, after notice and hearing, may use . . ., other than in the ordinary course of business…property of the estate . . . ." 11 U.S.C. § 363(b)(1). See In re St. Joseph Cleaners, Inc., 346 B.R. 430 (Bankr. W.D. Mich. 2006) (noting that a chapter 7 trustee "may use" property of the estate during the administration of the case if there has been prior notice and hearing, pursuant to section 363(b) of the Bankruptcy Code, including by paying administrative expense claimants). Pursuant to Local Rule 6005-1(a)(2), auctioneers can be reimbursed for bond premium costs attributable to a sale, subject to certain limitations, unless the Court orders otherwise. See Local Rule 6005-1(a)(2). Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

**i.** **The Auctioneer's Bond**

32. In this case, the affidavit submitted in support the motion to approve SAM's employment provides, inter alia, that SAM would have a blanket bond covering this case. See ECF

8

No. 229. A bond was secured prior to the appointment of the Successor Trustee, but it expired on July 31, 2025. See ECF No. 240.

33.     The Successor Trustee was able to secure a quote for an Auctioneer's Bond in the amount of $600,000.00 by a surety company approved by the Department of Treasury with an annual premium of $6,100.00. The Successor Trustee seeks authority to pay for the Auctioneer's Bond from the bankruptcy estate. The Auctioneer's Bond will be issued in favor of the United States of America and will be delivered to the Office of the United States Trustee. A copy of the Auctioneer's Bond will also be filed with the Court prior to the scheduled Auction Sale.

34.     While bond premiums are generally borne by estate auctioneers, the Successor Trustee submits that cause exists in this instance for the bond premium to be paid by the Debtor's estate due to the unique circumstances surrounding the proposed auction sale of the Vehicles and the character and value of the assets involved. First, the Successor Trustee was amenable to this arrangement because the prior bond expired and SAM does not have a general auctioneer's bond on file. Second, the contemplated auction sale is an annual, one-of-a-kind auction, designated solely to the sale of classic and custom cars. This annual event is well attended by the specific buyer pool that is likely to generate increased value for the Vehicles, which ultimately benefits the Debtor's estate and its creditors. SAM brings these special circumstances to the estate. Third, the bond premium represents a small fraction of the anticipated net sale proceeds (which are anticipated to exceed several hundred thousand dollars) and, thus, this cost is a reasonable and proportional expense.

    ii.    **The Restoration Expenses**

35.     Prior to the appointment of the Successor Trustee, the 1959 Cadillac was delivered to Ensign. The Successor Trustee is informed that Ensign is in the process of performing certain

9

mechanical assembly and restoration of the 1959 Cadillac. It is anticipated that the cost for Ensign's labor and parts will not exceed $50,000.00, and Ensign has agreed it will not seek compensation in excess of $50,000.00 from the bankruptcy estate. Ensign has advised the Successor Trustee that its work will be completed in advance of the scheduled Auction Sale. Upon information and belief, the fair market value of the 1959 Cadillac well exceeds the fees to be paid to Ensign.

36. Based on the foregoing, the Successor Trustee submits that the payment of the bond premium and the restoration expenses up to $50,000.00 by the Debtor's estate without further Order of the Court is fair and reasonable and should be authorized and approved.

**E.  The Successor Trustee Should Be Granted Related Relief**

37. Pursuant to Bankruptcy Rule 6004(h), orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. See FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h). Although little guidance is provided by either Bankruptcy Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." See 10 COLLIER ON BANKRUPTCY § 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). If an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. Id.

38. In this case, a waiver of the stay requirement under Bankruptcy Rule 6004(h) will

allow the Auction Sale scheduled for September 20, 2025 by SAM to timely proceed and for the Successor Trustee to close on transfer of title to the Vehicles promptly. Based on the foregoing, the Successor Trustee respectfully requests that the Court waive the requirement under Bankruptcy Rule 6004(h).

39. Further, the Successor Trustee should be authorized pursuant to sections 105(a) and 363 of the Bankruptcy Code to pay estate taxes owed from the sale of the Vehicles (if any), which she will do in consultation with her retained professionals. The total amount, if any, of such taxes cannot be calculated at this time but, based on the information now available to the Successor Trustee, there should remain sufficient funds for estate obligations after payment of any such taxes.

## NOTICE AND NO PRIOR REQUEST

40. Notice of this Motion will be provided in accordance with Bankruptcy Rule 2002(a)(2).

41. Except as set forth herein, no previous request for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Successor Trustee respectfully requests that this Court grant the relief requested in this Motion, together with such further relief as this Court deems proper.

Dated: August 15, 2025
      Wantagh, New York                **LaMONICA HERBST & MANISCALCO, LLP**
                                        *Counsel to Marianne T. O'Toole, Successor Trustee*

                          By:    *s/ Holly R. Holecek*
                                   Holly R. Holecek, Esq.
                                   A Partner of the Firm
                                   3305 Jerusalem Avenue, Ste. 201
                                   Wantagh, New York 11793
                                   Telephone: (516) 826-6500