Campolo, Middleton & McCormick, LLP
*Counsel to Rahanrey Capital, LLC*
4175 Veterans Memorial Highway
Suite 400
Ronkonkoma, NY 11779
(631) 738-9100
Jeffrey Basso, Esquire

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X    Case No.: 24-10157-1-REL

In Re:    Chapter 7

Kris Daniel Roglieri,

                        Debtor.
------------------------------------------------------------------X

### AMENDED MOTION OF RAHARNEY CAPITAL, LLC TO COMPEL THE SUCCESSOR TRUSTEE TO RECOVER AND ADMINISTER ASSETS OF NATIONAL ALLIANCE OF COMMERCIAL LOAN BROKERS PROPERTY PURSUANT TO SECTION 363, FREE AND CLEAR OF CLAIMS, LIENS AND ENCUMBRANCES

TO THE HONORABLE PATRICK G. RADEL
UNITED STATES BANKRUPTCY JUDGE

      Raharney Capital, LLC ("Raharney"), by and through its undersigned counsel, Bovarnick and Associates, admitted to this Court pursuant to an Order authorizing pro hac admission, and Campolo, Middleton & McCormick, LLP, hereby files this, its Amended Motion of Raharney Capital, LLC to Compel the Successor Trustee to Recover and Administer Assets of National Alliance Commercial Loan Brokers, Pursuant to Section 363, Free and Clear of Claims, Liens and Encumbrances and, in support thereof, states as follows:

### INTRODUCTION

      The Debtor, Kris Roglieri, was the sole owner of, *inter alia*, two entities, Commercial Capital Training Group ("CCTG") and the National Alliance of Commercial Loan Brokers ("NACLB"). In his Schedules, the Debtor valued CCTG at Five Hundred Thousand ($500,000.00) Dollars and NACLB at One Million ($1,000,000.00) Dollars. As set forth in

Motion of Raharney Capital, LLC to Compel the Trustee to Sell the Commercial Capital Training Group Intellectual Property, Pursuant to Section 363(b), Free and Clear of Claims, Liens and Encumbrances (the "CCTG IP Motion") (doc. 560), Raharney has requested that this Court compel the Successor Trustee to consummate the sale of the CCTG IP (as defined in that Motion) to Raharney. Pursuant to this Motion, Raharney requests that this Court direct the Successor Trustee to sell the remaining assets of NACLB and CCTG, pursuant to Section 363, free and clear of claims, liens and encumbrances. As set forth in the CCTG IP Motion, the Trustee rescinded the sale of the CCTG IP as it was an asset of CCTG, a single member limited liability company, and not of the Debtor. Setting aside that Raharney believes that the Successor Trustee can, and must, sell the assets of single member limited liability companies, it appears that at least one asset of NACLB, its customer list (the "NACLB Customer List"), was sold by the Trustee. So, to the extent the Trustee has sold an asset of NACLB, the Successor Trustee must sell the remaining assets of, *inter alia*, NACLB and CCTG. Conversely, if the Successor Trustee continues to maintain she cannot sell assets of NACLB and CCTG, she must take steps to recover the NACLB Customer List, currently being utilized by a third party.

## JURISDICTION AND AUTHORITY

1. This Court has jurisdiction over this Motion pursuant to Sections 157 and 1334 of Title 28 of the United States Code.

2. This Motion is filed in accordance with Sections 363, 542 and 549 of the Bankruptcy Code, together with Bankruptcy Rules 6004 and 7001(a), and with Local Bankruptcy Rule 6004-1.

3. Venue of this case and this Motion in this district is proper pursuant to Sections 1408 and 1409 of Title 28 of the United States Code.

4. This matter is a core proceeding pursuant to Section 157(b)(2) of Title 28 of the United States Codee.

## RELIEF REQUESTED AND BASIS FOR RELIEF

5. By this Motion, Raharney seeks the entry of an Order (a) directing the Successor Trustee to sell the assets of NACLB and CCTG, (b) the extent (i) the Successor Trustee continues to maintain that she cannot sell the assets of the single member limited liability company where the Debtor is the sole member, and (ii) the Court agrees with this position, the Successor Trustee must take steps to recover all assets of NACLB including, but not limited to, the NACLB customer list (c) granting such other and further relief as this Court deems appropriate. A copy of the proposed form of Order is attached as Exhibit "A."

## BACKGROUND

6. Movant is Raharney Capital, LLC ("Raharney"), a New York limited liability company. Raharney is a media company headquartered in New York City.

7. The above captioned case was originally filed under Subchapter V, by Kris Daniel Roglieri (the "Debtor"), *pro se*.

8. On February 16, 2024, Mark J. Schlant was appointed as the Subchapter V Trustee (the "Sub V Trustee").

9. On or about March 22, 2024, the Debtor filed his Schedules (doc. 80).

10. In response to question 19 on Schedule B, the Debtor stated that he had non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture with a value of $2,000,000.00. A copy of Schedule B, together with the referenced attachment is attached hereto as Exhibit "B."

11. Included in the list was (a) National Alliance of Commercial Loan Brokers ("NACLB") and (b) Commercial Capital Training Group, LLC ("CCTG"), both of which the Debtor is the one hundred (100%) percent owner.

12. The Debtor represented that NACLB had a value of One Million ($1,000,000.00) Dollars and CCTG had a value of Five Hundred Thousand ($500,000.00) Dollars.

13. On May 15, 2024, this case was converted to Chapter 7 (doc. 159). Christian H. Dribusch was appointed as the Chapter 7 Trustee (the "Trustee") (doc. 160).

14. On May 20, 2024, this Court entered the Order on the Chapter 7 Trustee Motion for Turnover (the "Turnover Order") (doc. 188).

15. The Turnover Order directed the Debtor "to immediately turnover through an assignment of ownership interest or such other documentation as the Trustee may reasonably request the possession, custody, and control of the Debtor's ownership interest in the Estate Companies listed on EXHIBIT B and to disclose the location of the books and records of Estate Companies."

16. Included in the Estate Companies on Exhibit B were Commercial Capital Training Group (CCTG) and National lines of commercial loan, brokers (it is assumed that this was supposed to be NACLB).

17. As such, the Trustee (and now the Successor Trustee) has been the sole member of CCTG and NACLB since on or about May 20, 2024, and has had the books and records since about that time.

18. On or about August 12, 2024, the Trustee filed the Motion For Trustee Authority to Sell Property of the Bankruptcy Estate (doc. 242) (the "Sale Motion").

19. Pursuant to the Sale Motion, the Trustee requested authority "to sell bankruptcy estate property (the "Estate Property").

20. The Sale Motion did not specify whether any property of the Debtor was excluded from the Sale.

21. At that time, included in the Estate Property was the Debtor's One Hundred (100%) percent interest in NACLB and his One Hundred (100%) interest in CCTG.

22. Since 2024, Raharney had been in communication with the Trustee and expressed an interest in purchasing either the NACLB entity or the assets.

23. On February 21, 2025, the Trustee supplemented the Sale Motion (doc. 355) by stating, inter alia, "The Trustee seeks authority to sell...tradenames listed on the attached list..."

24. On or about June 6, 2025, the Trustee, through Saratoga Automobile Museum, conducted a sale of certain assets of the Debtor.

25. Among the assets sold were (a) the trademark of NACLB and (b) the intellectual property of CCTG.

26. With respect to NACLB, the only assets the Trustee sought to sell were the tradenames "NACLB" and "National Alliance of Commercial Brokers." There was no indication on the docket that the Trustee sought authority to sell any other assets of NACLB including, but not limited to, the NACLB Customer List.

27. On May 27, 2025, Marianne O'Toole was appointed as Successor Trustee (the "Successor Trustee") (doc. 491).

28. Exhibit B from the Auctioneer's Report of June 6, 2025 Sale of Certain Shoes, Sunglasses and Tradenames NACLB and National Alliance of Commercial Loan Brokers (doc.

510) indicates that, with respect to NACLB, only the NACLB IP was sold. There is no indication that the NACLB Customer List was sold.

29. Subsequent to the purchase, Raharney was advised by the Successor Trustee that the CCTG IP could not be purchased as it was not property of the Debtor's estate.

30. The Auctioneer's Report further stated that "On June 5, 2025, due to an administrative error, the trademark Commercial Capital Training Group and the tradename "CCTG" were inadvertently added to the Auction by the Auctioneer. The Bankruptcy Estate does not own the trademark Commercial Capital Training Group or the tradename "CCTG" and there was no authorization to sell the trademark Commercial Capital Training Group or the tradename "CCTG." The Successor Trustee has directed the Auctioneer to return the funds of $3,627.30 received from the bidder for lot 199 at the Auction."

31. Assuming the Successor Trustee was correct in that she could not sell the CCTG IP, she would similarly not be authorized to sell the NACLB Customer List.

32. Undersigned counsel has spoken with counsel for the Successor Trustee.

33. While the Successor Trustee would be comfortable selling the membership interest, she is hesitant to sell any of the assets of CCTG including, but not limited to the CCTG IP.

34. It is believed that the Trustee sold the NACLB IP as, according to the USPTO website, it was owned by the Debtor, and not NACLB.

35. But, to the extent the NACLB Customer List was sold, it is believed, and therefore averred, that is an asset of NACLB, and not the Debtor.

36. The Trustee sought to sell the "tradenames of the bankruptcy estate." (doc. 354). The NACLB Customer List would be a trade secret, which is a separate and distinct type of intellectual property.

37. In early October, Raharney received an email regarding the NACLB 2026 conference. *See, e.g.*, https://naclbconference.com/, "a new chapter begins for NACLB. Under fresh ownership and visionary leadership, we're bringing new energy, transparency, and integrity to the nation's premier commercial loan broker conference." A copy of the home page of this website is attached as Exhibit "C."

38. It is believed Reharney received the email as the "fresh ownership" had possession of the NACLB Customer List.

39. Since the Successor Trustee refused to sell the CCTG IP, as it was an asset of CCTG and not the Debtor, the Successor Trustee must take the same position regarding the NACLB Customer List, and it was an asset that should not have been sold.

40. Considering the Trustee knew that Raharney was interested in purchasing either NACLB or its assets, it is surprising that a third party now claims to have acquired them, presumably without the agreement of the Trustee or approval by the Court.

41. Raharney remains interested in purchasing the assets of NACLB.

42. Conversely, if the Successor Trustee maintains that it was proper to sell the NACLB Customer List, then she should consummate the sale of the CCTG IP to Raharney.

43. While a creditor cannot compel a chapter 7 trustee to administer a case in a manner that overrides the trustee's statutory authority, Section 704 requires a chapter 7 trustee is required to "collect and reduce to money the property of the estate."

44. If the NACLB Customer List is in the possession of a third party, then the Trustee should take steps under Section 542 or Section 549 to recover it.

## RELIEF SOUGHT

45. Raharney requests that this Court direct that (1) the Trustee sell the assets of NACLB and CCTG and (2) to the extent some or all of the NACLB assets are being held by third parties, take steps under Section 542 or Section 549 to recover those assets.

46. Under 11 U.S.C.A. § 704(a)(1), a Chapter 7 trustee is required to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."

47. One limitation on this duty is if there would be little or no value to the unsecured creditors of the estate (such as where there is an over-encumbered security interest on an asset).

48. Since the Trustee, and now the Successor Trustee, has had the books and records of NACLB and CCTG for in excess of a year, she would know if any of the assets of those two entities are encumbered with security interests.

49. The Successor Trustee should sell the assets of CCTG and NACLB pursuant to Section 363.

50. To the extent the NACLB Customer List is in the possession of a third party, who has obtained same without going through Section 363, the Success Trustee must take steps to recover that asset.

51. If the third party obtained the NACLB Customer List prior to the commencement of this Case, the Successor Trustee should proceed under Section 542. Conversely, if the third party obtained the NACLB Customer List after the commencement of the Case, the Successor Trustee should proceed under Section 549.

52. For the foregoing reasons, it is respectfully requested that this Court to approve the sale of the CCTG IP pursuant to Sections 363(b) and (f) of the Bankruptcy Code, and enter an Order, substantially in the form annexed hereto, approving the terms and conditions of the sale as set forth herein pursuant to 11 U.S.C. §363(b) and (f) of the Bankruptcy Code.

## NOTICE AND NO PRIOR REQUEST

53. Notice of this Motion will be provided in accordance with Bankruptcy Rule 2002(a)(2).

54. Except as set forth herein, no previous request for the relief sought herein have been made to this or any other Court.

**WHEREFORE**, it is requested that this Court enter an Order directing the Successor Trustee to sell the CCTG IP Assets to Raharney under the same terms and conditions as before.

Dated: October 14, 2025
Ronkonkoma, NY 11779

**Campolo, Middleton & McCormick, LLP**
Counsel to Raharney Capital, LLC

BY: /s/ Jeffrey Basso
Jeffrey Basso, Esq.
4175 Veterans Memorial Highway Suite 400
Ronkonkoma, NY 11779
(631) 738-9100