**LaMONICA HERBST & MANISCALCO, LLP**　　　　　　Noticed for Hearing on October 30, 2025
*Counsel to Marianne T. O'Toole, Successor Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:　　　　　　　　　　　　　　　　　　　　Case No.: 24-10157-1-pgr

KRIS DANIEL ROGLIERI,　　　　　　　　　　　　Chapter 7

　　　　　　Debtor.
---------------------------------------------------------X

### OBJECTION OF SUCCESSOR TRUSTEE TO MOTION OF RAHARNEY CAPITAL, LLC TO COMPEL THE SALE OF THE COMMERCIAL CAPITAL TRAINING GROUP INTELLECTUAL PROPERTY

TO THE HONORABLE PATRICK G. RADEL,
UNITED STATES BANKRUPTCY JUDGE

　　　Marianne T. O'Toole, solely in her capacity as the successor Chapter 7 Trustee ("Successor Trustee") of the estate of Kris Daniel Roglieri ("Debtor"), by her undersigned counsel, submits this objection to the motion of Raharney Capital, LLC ("Raharney") to compel the Successor Trustee to sell the Commercial Capital Training Group intellectual property pursuant to 11 U.S.C. § 363(b) ("Bankruptcy Code"), free and clear of claims, liens and encumbrances ("Motion") [ECF Nos. 560, 566, 567],[1] and respectfully represents as follows:

### PRELIMINARY STATEMENT

　　　By the Motion, Raharney seeks to compel the sale of the intellectual property of a limited liability company, i.e., Commercial Capital Training Group, a non-debtor entity owned by the

---

[1]　　Pursuant to Local Bankruptcy Rule 9013-1(g), answering papers are required to served and filed not later than seven (7) days prior to the return date on the Motion. In contravention of Local Bankruptcy Rule 9013-1(g), the Motion was noticed for hearing on October 30, 2025, with answering papers to be filed by October 15, 2025. See ECF Nos. 560, 566, 567.

-1-

Debtor. First and foremost, Raharney does not have standing to compel a sale under section 363 of the Bankruptcy Code. See In re Edward Mejia, 576 B.R. 464, 468 (Bankr. S.D.N.Y. 2017) (explaining that only the Chapter 7 trustee has authority to use, sell or lease property of the estate pursuant to section 363 of the Bankruptcy Code) (citing cases). Equally important, the Successor Trustee cannot be compelled to consummate a sale that was never authorized by the Court. Prior to the appointment of the Successor Trustee on May 25, 2025, the Prior Trustee (defined below) did not seek authority to sell the intellectual property of Commercial Capital Training Group, the Successor Trustee has not sought authority to sell such property, and there is no Order of the Court authorizing the sale of such property. Finally, there is no authority cited for the extraordinary proposition that the Successor Trustee can be compelled to sell the intellectual property of Commercial Capital Training Group to Raharney or anyone else. For these and the reasons set forth more fully below, the Motion should be denied in its entirety.

## BACKGROUND

1. On February 15, 2024 ("Filing Date"), a voluntary petition pursuant Chapter 11, Subchapter V of the Bankruptcy Code was filed on the Debtor's behalf in the United States Bankruptcy Court for the Northern District of New York ("Court"). See ECF No. 1.

2. According to the Debtor's Schedule A/B, as of the Filing Date, the Debtor owned, inter alia, 100% of Commercial Capital Training Group ("CCTG"). See ECF No. 80 at Question 19. Upon information and belief, CCTG is a New York limited liability company that was formed in or around November 6, 2009. According to the United States Patent Trademark Office website, the service marks "Commercial Capital Training Group" are owned by CCTG and not the Debtor individually. See **Exhibit A**.

3. By Order entered on May 15, 2024, the Court converted the Debtor's case to a case

under Chapter 7 of the Bankruptcy Code. See ECF No. 159.

4. On May 15, 2024, Christian H. Dribusch was appointed as Chapter 7 Trustee of the Debtor's estate ("Prior Trustee"). See ECF No. 160.

5. By motion dated July 15, 2024, the Prior Trustee sought authority to retain the Saratoga Auto Museum ("SAM") as auctioneer. See ECF No. 229. Pursuant to an Order entered on August 7, 2024, the Court approved the employment of SAM as auctioneer for the bankruptcy estate. See ECF No. 241.

6. By motion dated August 12, 2024 ("Sale Motion"), the Prior Trustee sought entry of an Order authorizing the Prior Trustee to sell bankruptcy estate property. See generally ECF No. 242. The Sale Motion was noticed for a hearing on September 11, 2024. See ECF No. 243.

7. On September 11, 2024, the Court conducted a hearing on the Sale Motion. See ECF No. 259. The Prior Trustee indicated, inter alia, that estate property would be sold over time and not all at once. See id. The Court indicated, inter alia, that it needed an inventory of the estate property to be sold. See id.

8. On September 11, 2024, the Prior Trustee supplemented the Sale Motion with an inventory of specific bankruptcy estate property to be sold ("First Supplement"). See ECF No. 258. The First Supplement did not include CCTG or any property of CCTG, including any intellectual property of CCTG. See id.

9. By Interim Order entered on September 19, 2024 ("First Interim Sale Order"), the Court authorized the sale of the bankruptcy estate's interest in the property listed in the First Supplement. See ECF No. 265. A corresponding Report of Sale was filed by the Prior Trustee on October 2, 2024. See ECF No. 267. See also ECF No. 305 (amended report).

10. On October 7, 2024, the Prior Trustee supplemented the Sale Motion with an

inventory of specific bankruptcy estate property to be sold ("Second Supplement"). See ECF No. 268. The Second Supplement did not include CCTG or any property of CCTG, including any intellectual property of CCTG. See id.

11. By Interim Order entered on October 17, 2024 ("Second Interim Sale Order"), the Court authorized the sale of the bankruptcy estate's interest in the property listed in the Second Supplement. See ECF No. 278. A corresponding Report of Sale was filed by the Prior Trustee on December 9, 2024. See ECF No. 319.

12. On February 21, 2025, the Prior Trustee supplemented the Sale Motion with an inventory of specific bankruptcy estate property to be sold ("Third Supplement"). See ECF No. 354, 355. A copy of the Third Supplement is annexed as **Exhibit B**. The Third Supplement included tradenames "NACLB" and "NATIONAL ALLIANCE OF COMMERCIAL LOAN BROKERS" (together, "NACLB Tradenames"). See id. According to the United States Patent Trademark Office website, the NACLB Tradenames were owned by the Debtor. See id. at p. 7. The Third Supplement did not include CCTG or any property of CCTG, including any intellectual property of CCTG. See id.

13. By Interim Order entered on February 21, 2025 ("Third Interim Sale Order"), the Court authorized the sale of bankruptcy estate's interest in certain artwork and sculptures on June 6, 2025 ("June 6 Auction"). See ECF No. 357. A copy of the Third Interim Sale Order is annexed as **Exhibit C**. Pursuant to the Third Interim Sale Order, the Sale Motion was further adjourned with respect to the bankruptcy estate's interest in sunglasses, the NACLB Tradenames, the remaining property of the bankruptcy estate. See id.

14. The Debtor objected to the Prior Trustee's proposed sale of personal property through auction. See ECF No. 364. The Prior Trustee replied. See ECF No. 459. An Auctioneer

Affidavit of Valuation with respect to the shoes and sunglasses was also filed with the Court. See ECF No. 460.

15.  By Interim Order entered on May 6, 2025 ("Fourth Interim Sale Order"), the Court authorized the sale of bankruptcy estate's interest in the shoes, sunglasses and NACLB Tradenames through an auction to be conducted by no later than June 6, 2025. See ECF No. 474. A copy of the Fourth Interim Sale Order is annexed as **Exhibit D**.

16.  On May 22, 2025, the Prior Trustee filed a report of auction reserve pricing respecting the artwork and sculptures to be auctioned through SAM at the June 6 Auction. See ECF No. 486.

17.  In or around May 23, 2025, the Prior Trustee resigned.

18.  On May 27, 2025, Marianne T. O'Toole was appointed as successor interim trustee of the Debtor's estate pursuant to section 703(a) of the Bankruptcy Code. See ECF No. 491.

19.  On May 28, 2025, the Successor Trustee and her counsel appeared at a hearing. See ECF No. 492.

20.  On June 6, 2025, in accordance with the Third Interim Sale Order and the Fourth Interim Sale Order, SAM conducted the June 6 Auction online and in-person. On June 27, 2025, the corresponding Reports of Sale were filed with the Court. See ECF Nos. 509, 510. As reflected in the Auctioneer's Report of June 6, 2025 Sale of Certain Shoes, Sunglasses and Tradenames NACLB and National Alliance of Commercial Loan Brokers:

> On June 5, 2025, due to an administrative error, the trademark Commercial Capital Training Group and the tradename "CCTG" were inadvertently added to the [June 6] Auction by the [SAM]. The Bankruptcy Estate does not own the trademark Commercial Capital Training Group or the tradename "CCTG" and there was no authorization to sell the trademark Commercial Capital Training Group or the tradename "CCTG". Accordingly, the Successor Chapter 7 Trustee did not confirm the sale of the trademark Commercial Capital Training Group and the tradename

"CCTG". The Successor Trustee has directed [SAM] to return the funds of $3,627.30 received from the bidder for lot 199 at the [June 6] Auction.

See ECF No. 510 at ¶4.

21. By letter dated June 27, 2025, a copy of which is annexed as **Exhibit E**, the Successor Trustee informed Raharney in writing that the Successor Trustee did not and could not confirm the bid made for trademark Commercial Capital Training Group and tradename "CCTG" at the June 6 Auction, and that there was no authorization to sell Commercial Capital Training Group and tradename "CCTG". On June 27, 2025, a check payable to Raharney for the sum of $3,627.30 was issued by SAM and sent to Raharney by FedEx.

22. On October 1, 2025, Raharney filed the Motion by which it purports to seek to compel the Successor Trustee to sell the CCTG intellectual property under the same terms and conditions as the June 6 Auction. See ECF No. 560.

23. On October 10, 2025, the Debtor's objection to the Motion was filed with the Court. See ECF No. 565.

**THE MOTION SHOULD BE DENIED IN ITS ENTIRETY**

**A.     Raharney Does Not Have Standing To Prosecute The Motion**

24. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he **trustee**, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . [.]" 11 U.S.C. § 363(b)(1) (emphasis added). The authority of a Chapter 7 trustee to sell property of the estate is exclusive. Indeed, in a Chapter 7 case, "**only the Trustee** [has] the authority to use, sell or lease property of the estate pursuant to Bankruptcy Code § 363." In re Edward Mejia, 576 B.R. 464, 468 (Bankr. S.D.N.Y. 2017) (emphasis added).

25. Raharney, which undoubtedly is not the Chapter 7 trustee for the Debtor, does not have standing to compel the sale of the intellectual property of CCTG to itself pursuant to section

-6-

363 of the Bankruptcy Code. Raharney, which is not a creditor of the Debtor and has no pecuniary interest in this Chapter 7 case, does not have standing to seek relief here.

**B.    The Court Never Authorized the Sale Of The Intellectual Property Of CCTG**

26. Assuming <u>arguendo</u> Raharney did have standing (and it does not), the Motion should nevertheless be denied.

27. The June 6 Auction was conducted in accordance with the Third Interim Sale Order and the Fourth Interim Sale Order. As reflected in the Auctioneer's Report of Sale, the trademark Commercial Capital Training Group and the tradename "CCTG" were inadvertently added to the June 6 Auction by SAM on June 5, 2025, <u>i.e.</u>, the day before the June 6 Auction, due to an administrative error. <u>See</u> ECF No. 510. The Successor Trustee did not confirm the sale of the trademark Commercial Capital Training Group and the tradename "CCTG", and the Successor Trustee notified Raharney in writing that the sale was not confirmed. <u>See</u> **Exhibit E**. At the direction of the Successor Trustee, SAM issued a check to Raharney for all monies paid by Raharney.

28. Unlike the NACLB Tradenames, which the Prior Trustee expressly included in the Third Supplement and which Court expressly authorized be sold by the Fourth Interim Order, the Prior Trustee did not seek to sell the intellectual property of CCTG and the Court never authorized the sale of such property. <u>See</u> ECF Nos. 354, 355, 357, 474. The Court cannot compel the Successor Trustee to confirm a sale that was not previously authorized.

**C.    The Court Should Not Compel A Sale By The Successor Trustee**

29. To obtain approval of a sale of assets, a Chapter 7 trustee must "satisfy [her] fiduciary duty to the debtor, creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." <u>In</u>

re Cont'l Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986) (citations omitted); see Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) (requiring a "good business reason" to conduct a sale of property of the estate outside the ordinary course (citing In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983)); In re MF Global Inc., 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) (citing cases). "Once a court determines that a sound business justification exists, the court must determine whether (i) the [trustee] has provided all interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith." See id. Great judicial deference is given to a trustee's exercise of business judgment. See In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)); see also Smith v. Silverman (In re Smith), Docket Nos. 10-1565-bk (L), 10-1655-bk (con), 2011 U.S. App. LEXIS 10309, at *10–11 (2d Cir. May 20, 2011) (noting appellants' "remarkable chutzpah" in criticizing a decision that both the bankruptcy court and the district court determined was a sound exercise of the trustee's business judgment).

30. In this case, there is no motion before this Court by the Successor Trustee seeking authority to sell the intellectual property of CCTG to Raharney (or anyone), and the Court should not compel such a sale by the Successor Trustee. Multiple considerations inform the Successor Trustee's sound business judgment including, without limitation, that the bankruptcy estate does not own the trademark Commercial Capital Training Group and tradename "CCTG". Indeed, the Successor Trustee cannot sell property that is not property of the Debtor's bankruptcy estate. Moreover, the sale of the intellectual property of CCTG was not adequately noticed, let alone authorized by the Court, prior to the June 6 Auction.

31. As, if and when the Successor Trustee determines in her business judgment to proceed with a sale of the Debtor's interest in CCTG, the Successor Trustee will file an appropriate

motion with the Court, on notice and with an opportunity for a hearing in accordance with section 363(b) of the Bankruptcy Rule, Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Northern District of New York. The sound business judgment of the Successor Trustee should not be supplanted with the self-interested judgment of Raharney.

32. Based on the foregoing, and the record in this case, the Motion should be denied in its entirety.

Dated: October 15, 2025
      Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Successor Trustee*

By:    *s/ Holly R. Holecek*
       Holly R. Holecek, Esq.
       A Partner of the Firm
       3305 Jerusalem Avenue, Ste. 201
       Wantagh, New York 11793
       Telephone: (516) 826-6500