**LaMONICA HERBST & MANISCALCO, LLP**  Noticed for Hearing on November 25, 2025
*Counsel to Marianne T. O'Toole, Successor Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                    Case No.: 24-10157-1-pgr

KRIS DANIEL ROGLIERI,                                     Chapter 7

    Debtor.
---------------------------------------------------------X

**OBJECTION OF SUCCESSOR TRUSTEE TO MOTION OF RAHARNEY CAPITAL, LLC TO COMPEL THE SUCCESSOR TRUSTEE TO RECOVER AND ADMINISTER ASSETS OF NATIONAL ALLIANCE OF COMMERCIAL LOAN BROKERS PURSUANT TO SECTION 363, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES**

TO THE HONORABLE PATRICK G. RADEL,
UNITED STATES BANKRUPTCY JUDGE

  Marianne T. O'Toole, solely in her capacity as the successor Chapter 7 Trustee ("Successor Trustee") of the estate of Kris Daniel Roglieri ("Debtor"), by her undersigned counsel, submits this objection to the amended motion of Raharney Capital, LLC ("Raharney") to compel the Successor Trustee to sell the assets of National Alliance of Commercial Loan Brokers pursuant to 11 U.S.C. § 363(b) ("Bankruptcy Code"), free and clear of claims, liens and encumbrances ("Motion") [ECF No. 569],[1] and respectfully represents as follows:

**PRELIMINARY STATEMENT**

  By its Motion, Raharney seeks to compel the sale of the assets of a non-debtor, National

---

[1] Pursuant to Local Bankruptcy Rule 9013-1(g), answering papers are required to be served and filed not later than seven (7) days prior to the return date on the Motion. In contravention of Local Bankruptcy Rule 9013-1(g), the Motion was noticed for hearing on November 25, 2025, with answering papers to be filed by November 7, 2025. See ECF No. 574.

-1-

Alliance of Commercial Loan Brokers LLC ("NACLB"), free and clear of claims, liens and encumbrances, including any assets of NACLB in possession of a third party. See ECF No. 569-1. Raharney was the unsuccessful bidder at a June 6, 2025 auction sale of two tradenames owned by the Debtor, i.e., "NACLB" and "NATIONAL ALLIANCE OF COMMERCIAL LOAN BROKERS". By a similar motion returnable the same date as the Motion, Raharney seeks to compel the sale of assets of another non-debtor to itself.

First and foremost, Raharney does not have standing to compel a sale under section 363 of the Bankruptcy Code. See In re Edward Mejia, 576 B.R. 464, 468 (Bankr. S.D.N.Y. 2017) (explaining that only the Chapter 7 trustee has authority to use, sell or lease property of the estate pursuant to section 363 of the Bankruptcy Code) (citing cases). Equally important, NACLB is not the debtor in this case. The Debtor is an individual who scheduled ownership interests in several companies, including NACLB.[2] The Successor Trustee cannot administer assets of a non-debtor. To this end, there is no authority cited for the extraordinary proposition that the Successor Trustee can be compelled to sell the assets of NACLB to Raharney or anyone else.

For these and the reasons set forth more fully below, the Motion should be denied in its entirety.

**BACKGROUND**

1. On February 15, 2024 ("Filing Date"), a voluntary petition pursuant Chapter 11, Subchapter V of the Bankruptcy Code was filed on the Debtor's behalf in the United States Bankruptcy Court for the Northern District of New York ("Court"). See ECF No. 1.

2. NACLB is a New York limited liability company that was formed in or around July

---

[2] In response to question 19 on his Schedule A/B (i.e., non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership and joint venture), the Debtor listed "National lines of commercial loan, brokers". See ECF No. 80 at p. 36. Upon information and belief, the Debtor is the sole member of NACLB.

18, 2012. According to the Debtor's Schedule A/B, as of the Filing Date, the Debtor owned, inter alia, 100% of "National lines of commercial loan, brokers". See ECF No. 80 at Question 19. Upon information and belief, by the foregoing, the Debtor meant NACLB.

3. According to the United States Patent Trademark Office website, as of the Filing Date, the Debtor owned tradenames "NACLB" and "NATIONAL ALLIANCE OF COMMERCIAL LOAN BROKERS" (together, "NACLB Tradenames"). See id. According to the United States Patent Trademark Office website, the NACLB Tradenames were owned by the Debtor. See ECF No. 355 at p. 7.

4. According to the Debtor's Schedule A/B, as of the Filing Date, the Debtor owned, inter alia, 100% of Commercial Capital Training Group ("CCTG"). See ECF No. 80 at Question 19. Upon information and belief, CCTG is a New York limited liability company that was formed in or around November 6, 2009.

5. According to the United States Patent Trademark Office website, the service marks "Commercial Capital Training Group" (together, "CCTG Tradenames") are owned by CCTG and not the Debtor individually. See ECF No. 570 at Exhibit A.

6. By Order entered on May 15, 2024, the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code. See ECF No. 159.

7. On May 15, 2024, Christian H. Dribusch was appointed as Chapter 7 Trustee of the Debtor's estate ("Prior Trustee"). See ECF No. 160.

8. By motion dated July 15, 2024, the Prior Trustee sought authority to retain the Saratoga Auto Museum ("SAM") as auctioneer. See ECF No. 229. Pursuant to an Order entered on August 7, 2024, the Court approved the employment of SAM as auctioneer for the bankruptcy estate. See ECF No. 241.

9. By motion dated August 12, 2024 ("Sale Motion"), the Prior Trustee sought entry of an Order authorizing the Prior Trustee to sell bankruptcy estate property. See generally ECF No. 242. The Sale Motion was noticed for a hearing on September 11, 2024. See ECF No. 243.

10. On September 11, 2024, the Court conducted a hearing on the Sale Motion. See ECF No. 259. The Prior Trustee indicated, inter alia, that estate property would be sold over time and not all at once. See id. The Court indicated, inter alia, that it needed an inventory of the estate property to be sold. See id.

11. On February 21, 2025, the Prior Trustee supplemented the Sale Motion with an inventory of specific bankruptcy estate property to be sold ("Third Supplement"). See ECF No. 354, 355. The Third Supplement included the NACLB Tradenames. See id. The Third Supplement did not include CCTG or any property of CCTG, including the CCTG Tradenames. See id.

12. By Interim Order entered on February 21, 2025 ("Third Interim Sale Order"), the Court authorized the sale of bankruptcy estate's interest in certain artwork and sculptures on June 6, 2025 ("June 6 Auction"). See ECF No. 357. Pursuant to the Third Interim Sale Order, the Sale Motion was further adjourned with respect to the bankruptcy estate's interest in sunglasses, the NACLB Tradenames, the remaining property of the bankruptcy estate. See id.

13. The Debtor objected to the Prior Trustee's proposed sale of personal property through auction. See ECF No. 364. The Prior Trustee replied. See ECF No. 459. An Auctioneer Affidavit of Valuation with respect to the shoes and sunglasses was also filed with the Court. See ECF No. 460.

14. By Interim Order entered on May 6, 2025 ("Fourth Interim Sale Order"), the Court authorized the sale of bankruptcy estate's interest in the shoes, sunglasses and NACLB Tradenames through an auction to be conducted by no later than June 6, 2025. See ECF No. 474.

-4-

15. On May 22, 2025, the Prior Trustee filed a report of auction reserve pricing respecting the artwork and sculptures to be auctioned through SAM at the June 6 Auction. See ECF No. 486.

16. In or around May 23, 2025, the Prior Trustee resigned.

17. On May 27, 2025, Marianne T. O'Toole was appointed as successor interim trustee of the Debtor's estate pursuant to section 703(a) of the Bankruptcy Code. See ECF No. 491.

18. On May 28, 2025, the Successor Trustee and her counsel appeared at a hearing. See ECF No. 492.

19. On June 6, 2025, in accordance with the Third Interim Sale Order and the Fourth Interim Sale Order, SAM conducted the June 6 Auction online and in-person ("June 6 Auction"). On June 27, 2025, the corresponding Reports of Sale from the June 6 Auction were filed with the Court. See ECF Nos. 509, 510.

20. As reflected in the Auctioneer's Report of June 6, 2025 Sale of Certain Shoes, Sunglasses and Tradenames NACLB and National Alliance of Commercial Loan Brokers, the winning bid for the NACLB Tradenames was $218,500.00 (plus a buyer's premium of $28,405.00 for a total of $246,905.00). See ECF No. 510 at Exhibit B. Raharney was the second highest bidder for the NACLB Tradenames at the June 6 Auction, i.e., the unsuccessful bidder.

21. As further reflected in the Auctioneer's Report of June 6, 2025 Sale of Certain Shoes, Sunglasses and Tradenames NACLB and National Alliance of Commercial Loan Brokers:

> On June 5, 2025, due to an administrative error, the trademark Commercial Capital Training Group and the tradename "CCTG" were inadvertently added to the [June 6] Auction by the [SAM]. The Bankruptcy Estate does not own the trademark Commercial Capital Training Group or the tradename "CCTG" and there was no authorization to sell the trademark Commercial Capital Training Group or the tradename "CCTG". Accordingly, the Successor Chapter 7 Trustee did not confirm the sale of the trademark Commercial Capital Training Group and the tradename

"CCTG". The Successor Trustee has directed [SAM] to return the funds of $3,627.30 received from the bidder for lot 199 at the [June 6] Auction.

See ECF No. 510 at ¶4.

22. By letter dated June 27, 2025, the Successor Trustee informed Raharney in writing that the Successor Trustee did not and could not confirm the bid made for trademark Commercial Capital Training Group and tradename "CCTG" at the June 6 Auction, and that there was no authorization to sell Commercial Capital Training Group and tradename "CCTG". See ECF No. 570 at Exhibit E. On June 27, 2025, a check payable to Raharney for the sum of $3,627.30 was issued by SAM and sent to Raharney by FedEx. See ECF No. 570 at p. 6, ¶21.

23. On October 1, 2025, Raharney filed a motion by which Raharney purports to seek to compel the Successor Trustee to sell the CCTG intellectual property under the same terms and conditions as the June 6 Auction. See ECF No. 560 ("CCTG Motion"). On October 10, 2025, the Debtor's objection to the CCTG Motion was filed with the Court. See ECF No. 565. On October 15, 2025, the Successor Trustee's objection to the CCTG Motion was filed with the Court. See ECF No. 570.

24. On October 14, 2025, Raharney filed the instant Motion by which Raharney purports to compel the Successor Trustee to sell the assets of NACLB. See generally ECF No. 569.

25. As of the date of this Objection, the Successor Trustee has not received any offers from Raharney to purchase any property of the Debtor's estate, including the Debtor's interest in NACLB or CCTG.

## THE MOTION SHOULD BE DENIED IN ITS ENTIRETY

A. **Raharney Does Not Have Standing To Prosecute The Motion**

26. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he **trustee**, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate . . . [.]" 11 U.S.C. § 363(b)(1) (emphasis added). The authority of a Chapter 7 trustee to sell property of the estate is exclusive. Indeed, in a Chapter 7 case, "**only the Trustee** [has] the authority to use, sell or lease property of the estate pursuant to Bankruptcy Code § 363." In re Edward Mejia, 576 B.R. 464, 468 (Bankr. S.D.N.Y. 2017) (emphasis added).

27.     Raharney, which undoubtedly is not the Chapter 7 trustee for the Debtor, does not have standing to compel the sale of the assets of NACLB pursuant to section 363 of the Bankruptcy Code. Raharney was the unsuccessful bidder for the NACLB Tradenames at the June 6 Auction. Raharney, which is not a creditor of the Debtor and has no pecuniary interest in this Chapter 7 case, does not have standing to seek relief here.

**B.     The Court Should Not Compel A Sale By The Successor Trustee**

28.     Assuming arguendo Raharney did have standing (and it does not), the Motion should nevertheless be denied.

29.     To obtain approval of a sale of assets, a Chapter 7 trustee must "satisfy [her] fiduciary duty to the debtor, creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." In re Cont'l Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986) (citations omitted); see Licensing by Paolo v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) (requiring a "good business reason" to conduct a sale of property of the estate outside the ordinary course (citing In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983)); In re MF Global Inc., 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) (citing cases). "Once a court determines that a sound business justification exists, the court must determine whether (i) the [trustee] has provided all interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith." See id. Great judicial deference is given to a trustee's exercise of business judgment.

-7-

See In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998)); see also Smith v. Silverman (In re Smith), Docket Nos. 10-1565-bk (L), 10-1655-bk (con), 2011 U.S. App. LEXIS 10309, at *10–11 (2d Cir. May 20, 2011) (noting appellants' "remarkable chutzpah" in criticizing a decision that both the bankruptcy court and the district court determined was a sound exercise of the trustee's business judgment).

30.     Furthermore, section 363(f) of the Bankruptcy Code only permits the sale of assets to be free and clear of interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest is in bona fide dispute; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. See 11 U.S.C. § 363(f). Accordingly, a trustee may only sell property of a bankruptcy estate free and clear of interests if one of the five conditions under section 363(f) is satisfied. See In re Grubb & Ellis Co., Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27, 2012) (discussing Bankruptcy Code § 363(f)); In re Borders Group, Inc., 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (discussing Bankruptcy Code § 363(f)).

31.     In this case, the Debtor is an individual who scheduled a 100% membership interest in NACLB. The Debtor's membership interest in NACLB is property of his bankruptcy estate, but the assets of NACLB are not. See, e.g., Pryor v. D'Alessio (In re D'Alessio), 2014 Bankr. LEXIS 221 at *32-33, 2014 WL 201871 (Bankr. E.D.N.Y. January 17, 2014) ("A corporation has a separate identity from its owners and, therefore, assets held by corporate entities are not property of an individual shareholder's bankruptcy estate.") (citing cases). The Successor Trustee may administer property of the Debtor, not the corporate assets of NACLB. See id. (dismissing Chapter

7 trustee's turnover claim because corporate assets were not property of individual debtor's estate).

32. There is no motion before this Court by the Successor Trustee seeking authority to sell the Debtor's interest in NACLB to Raharney (or anyone), and the Court should not compel such a sale by the Successor Trustee. If and when the Successor Trustee determines in her business judgment to proceed with a sale of the Debtor's interest in NACLB, the Successor Trustee will file an appropriate motion with the Court, on notice and with an opportunity for a hearing in accordance with section 363(b) of the Bankruptcy Rule, Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Northern District of New York. The sound business judgment of the Successor Trustee should not be supplanted with the self-interested judgment of Raharney.

33. Based on the foregoing, and the record in this case, the Motion should be denied in its entirety.

Dated: November 7, 2025
      Wantagh, New York

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Successor Trustee*

By:   *s/ Holly R. Holecek*
      Holly R. Holecek, Esq.
      A Partner of the Firm
      3305 Jerusalem Avenue, Ste. 201
      Wantagh, New York 11793
      Telephone: (516) 826-6500