Campolo, Middleton & McCormick, LLP
*Counsel to Raharney Capital, LLC*
4175 Veterans Memorial Highway
Suite 400
Ronkonkoma, NY 11779
(631) 738-9100
Jeffrey V. Basso, Esquire

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X    Case No.: 24-10157-1-REL

In Re:                                                                                    Chapter 7

Kris Daniel Roglieri,

                                              Debtor.

------------------------------------------------------------------X

**OBJECTION OF RAHARNEY CAPITAL, LLC TO MOTION OF SUCCESSOR TRUSTEE TO ABANDON OWNERSHIP INTERESTS IN CERTAIN BUSINESSES**

TO THE HONORABLE PATRICK G. RADEL
UNITED STATES BANKRUPTCY JUDGE

      Raharney Capital, LLC ("Raharney"), by and through its undersigned counsel, Bovarnick and Associates, admitted to this Court pursuant to an Order authorizing pro hac admission, and Campolo, Middleton & McCormick, LLP, hereby files this, its Objection to the Motion of the Successor Trustee to Abandon Ownership Interests in Certain Businesses and, in support thereof, states as follows:

**INTRODUCTION**

      For more than one (1) year, Raharney has been attempting to purchase either (1) specific assets to Commercial Capital Training Company ("CCTG") and (2) National Alliance of Commercial Loan Brokers ("NACLB"). Initially, Raharney contacted the original Trustee and made a bid on the NACLB tradename (that was owned by the Debtor in his individual name) and the intellectual property of CCTG. Raharney was the unsuccessful bidder for the NACLB tradenames and the CCTG intellectual property was inadvertently sold to it by the original Trustee.

1

Raharney then filed two motions, one to seek to compel the Successor Trustee to consummate the sale of the CCTG intellectual property and one to compel the Successor Trustee to market and sell the assets of NACLB and CCTG.

The Successor Trustee objected to both motions, contending, *inter alia*, that Raharney lacked standing to bring the Motions and the Successor Trustee was the only one who could decide if, and when, to sell assets of the estates. The Successor Trustee also alleged that, while she could sell the membership interests of CCTG and NACLB, she could not sell the assets of the two LLCs.

Upon agreement, the hearings on both Motions were continued until December 23, 2025.[1]

Immediately after the hearings were continued (and before the Motion to Abandon was filed), counsel for Raharney advised counsel for the Successor Trustee that Raharney was interested in purchasing the membership interests.

Not surprisingly, Raharney requested that it be permitted to conduct due diligence before making an offer.

On December 4, 2025 (the day before the Successor Trustee filed the Motion), counsel for the Successor Trustee advised counsel for Raharney that the Successor Trustee did not have any of the books and records of either CCTG or NACLB, as both were abandoned to Linda Oliver (the business partner of the Debtor).

Even though the Successor Trustee knew that Raharney was interested in purchasing the membership interests of CCTG and NACLB, which would bring additional money into the estate, on December 5, 2025, the Successor Trustee filed the Motion, seeking to abandon the membership interests of CCTG and NACB to the Debtor.

---

[1] On December 22, 2025, Raharney withdrew the first motion (the one related to the purchase of the CCTG intellectual property). After an initial hearing on the second motion (the one to compel the Successor Trustee to sell the assets of CCTG and NACLB) the Court continued the hearing to January 13, 2026.

2

It is curious as to why the Successor Trustee seeks to abandon the assets to the Debtor. Not only is the Debtor a criminal defendant in the case of *USA v. Roglieri*, Case No., 1:24-cr-00392-MAD, but three (3) weeks before the Motion was filed (on November 13, 2025), at a plea hearing, the following took place:

> TEXT Minute Entry for Change of Plea Hearing as to Kris Roglieri held on 11/13/2025 before U.S. District Judge Mae A. D'Agostino… The defendant is sworn and questioned by the Court; A written plea agreement is handed up for filing; The defendant is questioned by the Court - the defendant acknowledges receipt and review of the Superseding Indictment and acknowledges that the superseding indictment has been reviewed with counsel; The parties waive a formal reading of the superseding indictment; *Plea entered by Kris Roglieri (1) Guilty Count 1s of the Superseding Indictment*; The defendant acknowledges and admits to the first forfeiture allegation contained within the superseding indictment; Counsel for the Government addresses the Court regarding the factual basis for the plea, guidelines, maximum penalties, and stipulations; The defendant and defense counsel are further questioned by the Court- the defendant waives his right to appeal any sentence of 70 months or less; Counsel for the defendant addresses the Court; The written Plea Agreement is Accepted as to Kris Roglieri; The Court accepts the defendant's plea of Guilty to Count 1 of the Superseding Indictment and his admission to forfeiture… Sentencing is set for March 11, 2026 at 10:00 a.m. in Albany… (emphasis added)

In other words, with full knowledge that the Debtor pleaded guilty to Conspiracy to Commit Wire Fraud and will be sentenced on or about March 11, 2026 (See, Case No. 1:24-cr-00392-MAD-1, doc. 91), the Successor Trustee seeks to abandon valuable assets of the estate to him.

Contrast that with the offer of Raharney to purchase the membership interests of CCTG and NACLB.

## JURISDICTION AND AUTHORITY

1. The allegations set forth in paragraph 1 of the Motion are admitted.

2. The allegations set forth in paragraph 2 of the Motion are admitted.

3. The allegations set forth in paragraph 3 of the Motion are admitted.

3

4. The allegations set forth in paragraph 4 of the Motion are admitted. By way of further response, the Debtor stated in the Schedules that the value of CCTG was $500,000.00 and the value of NACLB was $1,000,000.

5. The allegations set forth in paragraph 5 of the Motion are admitted.

6. The allegations set forth in paragraph 6 of the Motion are admitted.

7. The allegations set forth in paragraph 7 of the Motion are admitted.

8. Upon information and belief, the allegations set forth in paragraph 8 of the Motion are admitted.

9. Upon information and belief, the allegations set forth in paragraph 9 of the Motion are admitted.

10. The allegations set forth in paragraph 10 of the Motion are admitted.

11. While Raharney lacks information sufficient to form a belief as to the trust of the allegations set forth in paragraph 11 of the Motion, Raharney has basis to question the accuracy of the allegations.

12. The allegations set forth in paragraph 12 of the Motion are admitted.

13. The allegations set forth in paragraph 13 of the Motion are admitted.

14. The allegations set forth in paragraph 14 of the Motion are admitted.

15. While Raharney lacks information as to why the Successor Trustee would allow the former partner of the Debtor/criminal defendant to have access to the referenced books and records, Raharney has no basis to question the accuracy of the allegations set forth in paragraph.

16. Upon information and belief, the allegations set forth in paragraph 16 of the Motion are admitted. Of greater specificity and importance, the Successor Trustee recognizes that

Raharney had not only expressed interest in the NACLB Tradenames, but that it was the second highest bidder.

17. With respect to the allegations set forth in paragraph 17 of the Motion, it is admitted that Raharney filed the First Raharney Motion, which speaks for itself. While Raharney admits that the Successor Trustee made the allegations as set forth in both paragraph 17 of the Motion and her Objection to the First Raharney Motion, it is denied that the Successor Trustee lacked the authority to sell the CCTG assets.[2]

18. With respect to the allegations set forth in paragraph 18 of the Motion, it is admitted that Raharney filed the Second Raharney Motion, which speaks for itself. It is also admitted that the Successor Trustee filed the objection to the Second Raharney Motion, which also speaks for itself.

19. With respect to the allegations set forth in paragraph 19 of the Motion, Raharney is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth therein. By way of further response, the Successor Trustee has failed to set forth any basis as to how she reached the conclusion that the Non-Debtor Interests are burdensome and/or of inconsequential value. This is particularly surprising since, four (4) days prior to the filing of the Motion, counsel for Raharney advised counsel for the Successor Trustee that Raharney has interest in purchasing the membership interests of CCTG and NACLB. Counsel for the Successor Trustee and counsel for Raharney are continuing to discuss the terms for the purchase of those membership interests. Notwithstanding the fact that the parties are discussing the purchase of the membership interests, the Successor Trustee continues to press this Motion.

---

[2] *See*, the Memorandum of Law in Support of Motion of Raharney Capital, LLC to Compel the Successor Trustee to Recover and Administer Assets of National Alliance Commercial Loan Brokers, Pursuant to Section 363, Free and Clear of Claims, Liens and Encumbrances, to be filed on January 6, 2025.

5

20. With respect to the allegations set forth in paragraph 20 of the Motion, it is admitted only that the Successor Trustee seeks the relief as alleged in this paragraph.

21. To the extent the allegations set forth in paragraph 21 of the Motion are conclusions of law, no response is required. By way of further response, the Successor Trustee must meet a *prima facie* burden of proof to abandon assets under Section 554. *See, e.g., In re Gifford*, 634 B.R. 909, 916 (Bankr. M.D. N.C. 2021).

22. To the extent the allegations set forth in paragraph 22 of the Motion are conclusions of law, no response is required. An example of where property can be found as burdensome is where the Court makes a finding that a trustee met their burden for *prima facie* abandonment by demonstrating that the property was operating at a loss and efforts to sell the property produced no purchase offers. *See, In re Blockfi, Inc.*, 2025 WL 1811970, *2 (Bankr. D. N.J. 2025) (citing *In re St. Lawrence Corp.*, 239 B.R. 720, 727 (Bankr. D.N.J. 1999), aff'd, 248 B.R. 734 (D.N.J. 2000)). Here, the membership interests cannot be burdensome to the estate. Membership interests are pieces of paper (if there even is an actual document). Maintaining the membership interests is not a financial burden on the estate.

With respect to "inconsequential value," there is no bright line test. Rather, courts look at this on a case-by-case basis, focusing on whether the estate can derive any "potential value" from administering the property. The determination requires proof of both inconsequential value and inconsequential benefit as separate elements. The Successor Trustee bears the burden of proving both elements by a preponderance of the evidence.

In the Motion, the Successor Trustee quotes the *DiTech* case for the proposition that Section 554 "enables the trustee to rid the estate of burdensome or worthless assets, and so speeds up the administration of the estate…and also protects the estate from diminution." Here, it is

surprising that the Successor Trustee contends the membership interests are "worthless" as she knew BEFORE she filed the Motion, that Raharney was interested in purchasing them.

On October 10, 2025, the Debtor filed an Objection to the First Raharney Motion (doc. 565). In that objection, the Debtor reiterated the value of the assets of CCTG to be Five Hundred Thousand ($500,000.00) Dollars. More importantly, he described the assets owned by CCTG as "a fully developed training and licensing platform with recognized intellectual property…" Setting aside that Raharney has expressed interest in purchasing the Membership Interests; in order to meet her burden, the Successor Trustee would need to demonstrate to this Court that the "fully developed training and licensing platform with recognized intellectual property" has no value.

23. To the extent the allegations set forth in paragraph 23 of the Motion are conclusions of law, no response is required. By way of further response, the business judgment standard for trustees seeking to abandon property under Section 554 requires the Court apply a four-part test to see if the Successor Trustee made: (1) a business judgment (2) in good faith (3) upon some reasonable basis and (4) within the trustee's scope of authority under the Bankruptcy Code. *See, e.g., In re Stack*, 290 B.R. 282, 284 (D. N.J. 2003). This standard provides trustees with wide discretionary authority to abandon property that is burdensome to the estate or of inconsequential value, and courts defer substantially to trustee decisions that meet these criteria. The burden then falls on parties opposing abandonment to prove an abuse of the trustee's discretion and demonstrate some likely benefit to the estate. *See, e.g., In re Wilton Armetale,* Inc., 618 B.R. 424, 433 (Bankr. E.D. Pa. 2020)

Here, as set forth above, for months the Successor Trustee has been aware of Raharney's interest in the assets, either initially as the assets of the LLCs and now, the membership interests themselves. Therefore, it is submitted that the Successor Trustee has not met her burden.

24. With respect to the allegations set forth in paragraph 24 of the Motion, Raharney is without information or knowledge sufficient to form a belief as to the truth of the allegations set forth by the Successor Trustee. However, in 2024, Raharney, though its principal, advised the original Trustee of an interest in purchasing the membership interests of CCTG and NACLB (if the Successor Trustee would not, or could not, sell the assets of CCTG and NACLB). With respect to the Successor Trustee, in July 2025, undersigned counsel contacted counsel for the Successor Trustee regarding purchasing the assets of CCTG and NACLB. In July 2025, undersigned counsel spoke with counsel for the Successor Trustee, which is when counsel for the Successor Trustee advised that he did not believe the Successor Trustee could sell the assets of the two LLCs but would be willing to sell the membership interests. In October 2025, undersigned counsel wrote a letter to counsel for the Successor Trustee. At the end of that letter, undersigned counsel referred to the May 24, 2024, Order (doc. 188) directing the Debtor to turnover the books and records of the Non-Debtor Companies to the Trustee. At no time did counsel for the Successor Trustee advise that the books and records were abandoned to the partner of the Debtor. After the foregoing letters and conversations, Raharney filed the First Raharney Motion and the Second Raharney Motion. Interestingly, the Successor Trustee did not say in either of her objections that books and records had been abandoned.

In addition to the foregoing, and of greater importance, is that FOUR DAYS BEFORE the Motion was filed, the Successor Trustee knew that Raharney was interested in purchasing the membership interests. Specifically, undersigned counsel stated: "As I mentioned

8

to you, Raharney is interested in purchasing the membership interests of both NACLB and CCTG. Before Raharney can make an offer, it would like to engage in some due diligence."

On December 3, 2025, ONE DAY BEFORE the Successor Trustee filed the Motion, undersigned counsel responded to the December 1, 2025, letter. The entirety of the letter only addressed the books and records of the Non-Debtor Entities. It neither addressed Raharney's interest in purchasing the membership interests or that, within two (2) days, the Successor Trustee would be filing the Motion.

Raharney and counsel discussed making an offer of the membership interests in light of the fact that the purchase would be without the opportunity to conduct due diligence. Notwithstanding the fact that it would be doing so without the ability to conduct due diligence, on December 9, 2025, Raharney made an offer to purchase the membership interests.

Since that time, counsel for Raharney and counsel for the Successor Trustee have engaged in discussions regarding the membership interests. It appears that the parties have agreed to the purchase price offered by Raharney. One of the remaining issues is whether the sale will be by private sale or subject to higher and better bids. Considering the Successor Trustee believes the membership interests are of inconsequential value, it is surprising that she doesn't simply agree to the private sale.

25. Based on the foregoing, it is submitted that the Motion be denied, and the Successor Trustee sell the membership interests of CCTG and NACLB to Raharney.

**NOTICE AND NO PRIOR REQUEST**

26. With respect to the allegations set forth in paragraph 26, it is believed, and therefore averred, that the Successor Trustee has made service as set forth therein.

9

27. With respect to the allegations set forth in paragraph 27, it is believed, and therefore averred, that the Successor Trustee has made service as set forth therein.

**WHEREFORE**, it is requested that this Court enter an Order denying the Motion and directing the Successor Trustee to sell the membership interests of CCTG and NACLB under the terms set forth in the December 9, 2025 offer.

Dated: January 6, 2026
      Ronkonkoma, NY 11779

**Campolo, Middleton & McCormick, LLP**
*Counsel to Raharney Capital, LLC*

BY:  /s/ Jeffrey V. Basso
      Jeffrey V. Basso, Esq.
      4175 Veterans Memorial Highway Suite 400
      Ronkonkoma, NY 11779
      (631) 738-9100

**Bovarnick and Associates, LLC**
*Counsel to Raharney Capital, LLC (admitted pro hac vice)*

BY:  /s/ Robert M. Bovarnick
      Robert M. Bovarnick, Esquire
      555 City Ave., Suite 480
      Bala Cynwyd, PA 19004
      (215) 568-4480