

2026 FEB 19  PM 12: 11

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

# EXHIBITS SUBMITTED IN SUPPORT OF REQUEST FOR LEAVE

Plaintiff submits the following exhibits solely for purposes of demonstrating that her proposed claims are colorable under the Barton doctrine. Plaintiff does not request adjudication of the merits at this time.

# Exhibit A
# May 22, 2024 Turnover Order (ECF No. 188)

DOC. # 188

So Ordered.

Signed this 22 day of May, 2024.



_____

Robert E. Littlefield, Jr.

United States Bankruptcy Judge


UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

KRIS DANIEL ROGLIERI                              Chapter 7

                                                 Case No.  24-10157-1-REL
             *Debtor.*

----------------------------------------------------------------X


## ORDER ON THE CHAPTER 7 CASE TRUSTEE MOTION FOR TURNOVER

On the motion of Christian H. Dribusch ("*Trustee*") in his capacity as chapter 7 trustee to

the bankruptcy estate of the above-captioned Debtors made pursuant to §542 of title 11 of the

United States Code ("*Bankruptcy Code*") and Rule 9014 of the Federal Rules of Bankruptcy

Procedure ("*FRBP*") for an Order directing the Debtor to account for and turnover property of the

Debtor's bankruptcy estate (the "*Motion*") returnable on May 21, 2024, upon the appearances of

the parties on the record, the Court having considered the arguments and the Court having found:

(1) sufficient service; and (2) that the Trustee has established the factual and legal basis for the requested relief;

NOW, THEREFORE, over the objection of the Debtor, it is hereby **ORDERED** as follows:

1.  The Trustee Motion is granted.

2.  The Debtor is to immediately turn over possession, custody, and control of the Estate Assets including but not limited to those described in **EXHIBIT A** annexed hereto to the Trustee.

3.  If the Debtor is no longer in possession, custody, or control of an Estate Asset, the Debtor is to provide the Trustee with a detailed affidavit explaining why the Debtor is no longer in possession, custody, or control over the Estate Asset and providing details and contact information for whoever is in possession, custody, or control of the Estate Asset.

4.  The Debtor is to immediately turnover through an assignment of ownership interest or such other documentation as the Trustee may reasonably request the possession, custody, and control over the Debtor's ownership interest in the Estate Companies listed on **EXHIBIT B** and to disclose the location of all books and records of the Estate Companies.

5.  If the Trustee requires further Orders from the Bankruptcy Court to effectuate the terms of this Turnover Order (e.g., assistance of the U.S. Marshall), the Trustee may request such relief on 3-day notice to the Debtor.

####

# EXHIBIT A
## ESTATE ASSETS

| Make | Model | Year |
|------|-------|------|
| Cadillac | Eldorado Biarritz Convertible | 1959 |
| Mercedes | G63 | 2019 |
| Mercedes | GT | 2022 |

| Description |
|-------------|
| Rape of pillage sculpture |
| Sculpture mancaveq |
| Piller mancave |
| David and Goliath art |
| Spanish painting |
| French console |
| Chendelier ormolu |
| Marble French pillars |
| French statue of pheasants |
| Bust of cleopatra |
| Bust of Napoleon |
| French pedestal column |
| Bronze Ormolu sculpture |
| Andy Warhol: screen print John gotti |
| Charles Antonine Coypel painting |
| Franz Carl Stauder painting |
| Bottega di bartolomero schedoni painting |
| Bronze sculpture of Pericles |
| Bronze statue of soldiers fighting |
| Matching pair of French Guildwood consoles: |
| Da guido Reni painting |
| Sarrifcio di Marco Curzio painting |
| Thomas Stothard: horrors of war painting |
| Lodewijk de Vader painting |
| Tobias and the angle painting |
| French Ebony pillars |
| Italian marble busts of Roman emperors |
| French oral onyx pedestals: |

| |
|---|
| French Omalu Tazza |
| French Omalu cassettes |
| French Orlo painted bronze ewers |
| Nils Hans Christian painting |
| Alfred Bentley painting |

| Description |
|---|
| Taurus 357 revolver |
| Kel Tec 380 handgun |
| Smith and Wesson 44 mag revolver |
| Savage 22 long rifle |
| Henry 357 long gun |
| Remington super slug: 12 gauge |
| Mossberg 20 gauge |
| Remington 20 gauge |
| Browning A5 26 gauge |
| 1AB trap over under 12 gauge |
| Remington 700.375 HH |
| Mauser Kar 98 8mm |
| Purshbuchse over under 22 hornet |
| Browning magnum 22 gauge |
| Remington 742 3006 |
| Browning citovi over under 20 gauge |
| Mossberg 930 12 gauge |
| Bennelli unuci 12 gauge |
| Browning light twelve 12 gauge |
| Farm spa pump 12 gauge |
| Total |

| Description |
|---|
| Rolex Day-Date 40 Platinum Day-Date 40mm Ice Blue Dial |
| Roman Numerals Rolex Day-Date 40 Platinum Baguette Dial Blue |
| Rolex Day-Date 40mm Platinum with Baguette Bezel Meteorite |
| Rolex Day-Date 41 Rose Gold Black Ruby Dial |
| Rolex, 36 mm Gold and Turquoise Baguette |
| Richard Mille RM 65-01 Automatic Chronograph Full Rose Gold |
| Richard Mille RM 011 Felipe Massa Boutique Exclusive DLC Titanium Rose Gold |

| Description | Quantity |
|---|---|
| Leather Conference Chair Chrome | 14 |
| Conference Table Wood | 1 |
| Retractable Office Desk | 14 |
| Large Office Desk: 4 | 4 |
| Cherry Accent Chair: | 24 |
| Leather Conference Chair: | 28 |
| Marble Conference Table: | 1 |
| Basic Office Chair: | 22 |
| Brown Leather Couch: | 2 |
| Accent Chair Leather | 2 |
| Grey Leather Couch | 2 |
| Grey Leather Chair | 2 |
| Pool Table | 1 |
| Computers | 15 |
| Total | |

# EXHIBIT "B"
## ESTATE COMPANIES

| Name of Entity | % of Ownership |
|---|---|
| Commercial Capital training group | 100% |
| Digital marketing training group | 100% |
| Prime commercial lending | 100% |
| National lines of commercial loan, brokers | 100% |
| FUPME, LLC | 100% |
| Shark ventures LLC | 100% |

# Exhibit B
# June 10, 2024 Supplemental Order (ECF No. 205)

DOC #205

So Ordered.

Signed this 10 day of June, 2024.



_____

Robert E. Littlefield, Jr.

United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

KRIS DANIEL ROGLIERI,

       *Debtor.*

----------------------------------------------------------------X

Chapter 7

Case No.  24-10157-1-REL

### SUPPLEMENTAL ORDER ON THE CHAPTER 7
### CASE TRUSTEE MOTION FOR TURNOVER

On the motion of Christian H. Dribusch ("*Trustee*") in his capacity as chapter 7 trustee to

the bankruptcy estate of the above-captioned Debtor ("*Debtor Bankruptcy Estate*") made pursuant

to §542 of title 11 of the United States Code ("*Bankruptcy Code*") and Rule 9014 of the Federal

Rules of Bankruptcy Procedure ("*FRBP*") for an Order supplementing the prior Turnover Order

of the Court, upon the appearances of the parties on the record, the Court having considered the

arguments and the Court having found: (1) sufficient service; and (2) that the Trustee has established the factual and legal basis for the requested relief;

NOW, THEREFORE, it is hereby **ORDERED** as follows:

1.    The Trustee Motion is granted.

2.    The Trustee is authorized to secure 40 North Street, Queensbury, New York ("Residence") for the benefit of the Debtor Bankruptcy Estate and to secure and remove the property of the Debtor Bankruptcy Estate located at the Residence.

# # #

# Exhibit C
# USB Filing Confirmation (ECF No. 409)



2025 APR -4 PM 3:50
CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY
RECEIVED

2025 APR -4 PM 4:23
CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY
FILE

**EXHIBIT 1-G**

**Kris Roglieri- 24-10151**

**Video footage**

The thumb drive has 3 files

① June 4th        Ring Camera footage
                        of Dribusch
② June 5th        Stating he entered the
                        Property via garage
③ June 19        w/ no court order

                   Saratoga auto museum
                   staff, a nieghbor,
                   and dribusch enter
                   property w/ out Letting
                   anyone know and no
                   court order.

                   Dribusch had a open house
                   w/ out Linda or Kris knowing
                   while Linda still lives the and
You can see the person talking about
                        stealing something

CASE NO: 24-10157

FILE

2025 APR -4 PM 4:23

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

RECEIVED

2025 APR -4 PM 4:00

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

I Linda Oliver, PQA will be sending a usb drive with Videos & Mp3s of Evidence Via USPS To Trustee Christian Dribusch & United States assistant UST Lisa Penpaze sending on Monday 4/7/25

4/4/25



# Exhibit D
# Certificate of Service for Second USB (ECF Nos. 419 and 419-1)



R&F

2025 APR -7  PM 4: 40

CLERK OF THE
BANKRUPTCY COURT
N.D. OF NY
ALBANY

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

**In re:**
**Kris D. Roglieri, Debtor**
**Chapter 7 Case No. 24-10157-REL**

**CERTIFICATE OF SERVICE**

I, Linda Oliver, hereby certify that on April 5, 2025, I served a copy of the following documents:

- Final Response in Support of Motion #345 to Remove Trustee

- UBS thumb drive with Audio and Video June 4, 5, 19, 2024

- Affidavit of Hardship and Damages Ms. Oliver EXHIBIT 1

- All accompanying exhibits and evidence Ms. Oliver EXHIBITS 1-A-1G

via First Class U.S. Mail, postage prepaid, upon the following recipients:

- **Clerk of the United States Bankruptcy Court**
  United States Bankruptcy Court
  Northern District of New York
  445 Broadway, Suite 330
  Albany, NY 12207

- **Christian H. Dribusch, Chapter 7 Trustee**
  Dribusch Law Firm
  187 Wolf Road, Suite 300-020
  Albany, NY 12205

- **Lisa M. Penpraze, Assistant U.S. Trustee**
  Office of the United States Trustee
  Leo W. O'Brien Federal Building
  11A Clinton Avenue, Room 620
  Albany, NY 12207

I certify under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: April 7, 2025
**Kris D. Roglieri**
**By: Linda Oliver, as Attorney-in-Fact**
Inmate ID: N-4 #45131
Rensselaer County Correctional Facility

4000 Main Street
Troy, NY 12180



June 19th





# Exhibit E
# Affidavit of Hardship and Damages (ECF No. 417 excerpts)

\+ proof of Residence

Doc . 417

## Exhibit 1-A – Request for Treble Damages

**Submitted by:** Linda Oliver
**Date:** April 7, 2025
**Subject:** Legal Basis and Calculation for Treble Damages

## 1. Legal Justification for Treble Damages

RPAPL § 853 provides that any person"ejected or put out of the real property in a forcible or unlawful manner" may recover treble damages against the wrongdoer. In my case, I was a lawful resident at 40 North Road and was locked out of my home by the Chapter 7 Trustee **without a court order**, proper notice, and due process.

On **June 4, 2024**, Trustee Christian H. Dribusch entered the property through the garage without permission or court authorization, including auctioneers who were in my home going through all of our things without proper notice. The trustee and auctioneers had no authority to be at our home as there was no court order, which was very uncomfortable and unjust. The court had **not yet approved** his request to take possession of the estate property—a hearing on that motion wasn't scheduled until **June 7, 2024**. The trustee acted outside of his legal authority and violated my possessory rights. It was not until **June 10th** that the court approved his motion to turnover estate. Days later,  **EXHIBIT1-F**

on June 12th, I was **again locked out** without a court order, as confirmed by a text message by the Trustee **EXHIBIT 1-A**

This conduct constitutes a **willful abuse of power** by an officer of the court. As a trustee, Mr. Dribusch holds a fiduciary duty and is expected to uphold the law, not violate it. His actions reflect **bad faith, lack of due process,** and a **disregard for my legal rights as a lawful occupant.**

### Relevant Legal Precedents:

- **Lyke v. Anderson (1989):** A New York jury awarded treble damages under RPAPL § 853 for unlawful eviction.

- **Wagoner v. Bennett (1991):** Oklahoma court allowed punitive damages for egregious landlord behavior.

- **Ault v. Phillips (1940):** Indiana court recognized emotional distress as compensable for wrongful eviction.

## 2. Total Actual Damages

As outlined in my declaration, my total actual financial damages are as follows:

**EXHIBIT 1-B** (requested bank documents be sealed)

- **Forced Early Retirement Withdrawals: $37,777.78**

- **Lost Interest on Retirement Accounts: $1,888.89**

- **Rent for 11 Months (@ $2,800/month): $30,800.00**

- **Security Deposit: $2,800.00**

- **Realtor Fee: $2,000.00**

- **Relocation & Displacement Expenses (including car down payment): $14,384.06**

- **Lost Wages (17.5 hrs @ $275/hr): $4,812.50**

**Total Actual Financial Damages: $94,463.23**

This total includes a **vehicle down payment** I made **under duress** two days before I was locked out of the home. While the trustee did not explicitly demand the return of the debtor's vehicle, I understood from the surrounding circumstances and escalating pressure of the Trustee and action house moving and taking the Debtor's vehicles on June 4th (video submitted in Exhibit 1-G) that the car would no longer be available to me. At the time, I was commuting via the train from Albany, which totals **8 hours round-trip door-to-door** for work, and I was terrified I would be left without a vehicle. I felt forced to purchase a used car urgently to continue working and avoid being left completely stranded—only to be **locked out of my home 48 hours later.**

Additionally, due to the urgency of my situation, the landlord allowed me to move in early for an extra fee and rented the home to me in **as-is condition.** As a result, I was responsible for covering several repairs out-of-pocket—including replacing the upstairs carpeting and making other essential improvements to make the home livable. These expenses were unavoidable and directly related to being displaced on such short notice and being that I was homeless from June 12 on because of Mr. Dribusch's abuse of power, which caused extreme hardship.

**A full explanation and documentation are included in EXHIBIT 1-E.**

This total also includes emergency early withdrawals from my Roth and SEP retirement accounts, which were under financial duress due to the eviction. These funds were accessed solely to survive and cover urgent relocation and housing costs, resulting in early withdrawal penalties, taxes, and lost interest of 0.05% per month per account.

## 3. Treble Damages Calculation (Financial Losses Only)

Under RPAPL § 853, I respectfully request treble damages for the above financial losses:

$94,463.23 × 3 = $283,389.69

This request reflects the seriousness of the wrongful eviction, the abuse of legal authority, and the long-term financial consequences of the trustee's actions.

## 4. Separate Request for Emotional & Professional Distress

In addition to the financial damages, I respectfully request a separate award of **$25,000** for emotional and professional distress. The trustee's conduct caused severe emotional harm, impacted my mental health and sense of safety, and directly interfered with my modeling work.

This request is supported by: **EXHIBIT 1-D**

- A client text message noting the impact on my body measurements

- Documentation of housing instability and financial strain

- My inability to maintain the stability and appearance required for work

I understand this amount falls **outside the scope of treble damages,** but I request it as an additional award based on the total harm I experienced.

## 5. Summary of Damages Requested

- **Treble Damages (Financial Losses × 3): $283,389.69**

- **Separate Emotional/Professional Distress: $25,000.00**

Total Compensation Requested: **$308,389.69**

Sincerely,
Linda Oliver

Page 8

1          THE COURT:  Do we now have all the appearances?

2     Mr. Dribusch, you requested this hearing to, as I understand

3     it -- correct me if I'm wrong, to aid you in the turnover of

4     administration -- administrative process with perhaps some

5     more specificity in orders to give comfort to third parties

6     or whatever.  And in a minute, I'd like you to elaborate on

7     that if you could.

8               You also -- and once again, correct me if I'm

9     wrong, we've set a 105 conference for next Wednesday

10    regarding authority of a lot of people to do a lot of

11    things.  It seems that your motion today advances some part

12    of that, but once again, let me turn it over to you and you

13    can explain where you want us to go and what you want us to

14    do.

15          MR. DRIBUSCH:  Absolutely.  Thank you, Your Honor.

16    And you're accurate with respect to both points.  There's

17    too big premises or issues that I'm seeking to resolve today

18    with respect to this motion.  Part one deals with securing

19    assets of the bankruptcy estate pursuant to the turnover

20    order and otherwise our bankruptcy estate property.  Those

21    are primarily located at the residence of Mr. Roglieri or

22    the bankruptcy estate now and 40 North Street.

23              And then the other aspect of it is going to be

24    dealing with the membership interest with respect to the

25    entities that are property of the bankruptcy estate.

212-267-6868                                          516-608-2400

Page 10

1          MR. DRIBUSCH:  In a secure location.  They're

2    located right now at the Saratoga Auto Museum inside and

3    insured.  The -- with respect to the residents, the

4    following day on Wednesday I did have a locksmith there and

5    we changed out the locks so that it secures the location

6    there.

7          I had the opportunity to coordinate with Mr.

8    Coleman, Ms. Roglieri's attorney, and I met with Ms.

9    Roglieri yesterday to remove some of the children's items

10   that were located there.  And we are going to try to

11   schedule the second walk-through opportunity to remove the

12   children's items from the home.  The children, by the way,

13   Your Honor, are residing with Ms. Roglieri.

14          And then there is another individual residing or

15   occupant of the premises, Ms. Oliver, Linda Oliver, who has

16   a number of items located within the premises.  And I have

17   been coordinating with Ms. Oliver.  Basically a -- kind of

18   coordinating the ability for her to be there and to remove

19   her items from the premises as well as at the same time have

20   my professionals be going into the premises to inventory and

21   remove the bankruptcy estate items and secure them at a

22   different location to prepare them for a sale.

23          And we're going to be meeting again Sunday

24   afternoon at 12:00 to kind of hammer out the mechanics of

25   how we going to implement all of that in a way that's

Page 11

1    least intrusive to Ms. Oliver and allows her get done what

2    she needs to get done while at the same time allowing the

3    state to accomplish what it needs to accomplish.  And so

4    those are the items on that.

5            Just as an aside, Your Honor, I did also, you

6    know, communicate with some parties and was able to solicit

7    an offer with respect to the real estate itself, which the

8    State of New York had put a tax lien on in December of 2023,

9    which was within the 90-day period of filing the bankruptcy

10   petition.  However, it is a priority claim so I don't know

11   if it would be avoidable under 547.

12           But in any event, I've had some conversation with

13   Attorney Rock, who's counsel at the AG's office for the

14   state of New York.  And in principal, we're having a

15   conversation about working for it on a sale if it comes to

16   fruition that would hopefully generate some benefit to the

17   estate.

18           And also from the estate administration

19   perspective, Your Honor, it is a very large house.  It --

20   and the upkeep and maintenance of that house is very

21   expensive.  And so we would not want to keep that real

22   estate in the estate very long.

23           THE COURT:  Mr. Dribusch, can you give an idea of

24   the house situation in terms of liens, mortgages, equity,

25   value --

Page 20

1          THE COURT:  Does anyone have a problem with Mr.

2    Dribusch receiving more detailed specified orders regarding

3    the turnover situation?  Does anyone have a problem with

4    that either on the phone or in the court?  Ms. Penpraze?

5          MS. PENPRAZE:  Lisa Penpraze, Office of the U.S.

6    Trustee.  No, Your Honor.  We believe that the trustee has

7    the statutory authority already.  But given the number of

8    people involved, different entities involved, and some of

9    the sensitivities with the case, Mr. Dribusch consulted with

10   me and we both agree that it would be prudent for him to

11   have some additional orders.  That way there's no question

12   when he's at the property going into the property.

13          We were really scrambling this week to get a lot

14   done.  And when I say "we", it's mostly Mr. Dribusch.  You

15   know, when he went up there subsequent to Mr. Roglieri being

16   detained and found the property virtually open, he really

17   had to do a lot of work to line up the professionals to get

18   in there and do what they had to do.  Of course without --

19   we didn't know about security and what not and the

20   possibility that he would trip alarms and there would be the

21   -- you know.

22          So there's complexities to the trustee going in,

23   especially because this case is different on a couple of

24   levels, one that it's a residence.  It's not, you know,

25   Joe's Garage.  It's someone's house.  And because of the

Page 21

1    circumstances, that someone isn't there to open the door and

2    say, okay, Mr. Dribusch, come on in like he had done

3    previously.  So that's why I think it's very prudent for the

4    trustee to get whatever comfort orders he needs that

5    reinforce to third parties, yes, this individual is the

6    trustee, he has these statutory powers, and it's

7    memorialized in the court's order.

8            THE COURT:  Mr. Dribusch, why don't you take a

9    shot at drafting what you need?  I'm going to assume -- does

10   anyone want to see these orders before they come in?  I'm

11   going to assume that they're more or less unique, expensive

12   housekeeping orders to assist the trustee in doing what you

13   have to do.

14           Meanwhile, the other part of this motion, we've

15   scheduled a 105 hearing for Wednesday regarding an

16   interesting series of events that were -- where all the

17   parties are familiar with.  Mr. Levine filed an entity, a

18   Prime and an 11.  Mr. Van Tol has moved to dismiss that.

19   You have tried to trump Mr. Van Tol by withdrawing the

20   motion to dismiss.

21           And your papers today that you've submitted

22   attempt to deal with that.  But my question, why wouldn't

23   that just simply wait until next Wednesday when we're

24   dealing with the entirety of the problem?

25           MR. DRIBUSCH:  Well, a couple of things, Your



00488

## PAYEE INSTRUCTIONS

FOR COMPLETING CLAIM FORM FS 1133, CLAIM AGAINST THE UNITED
STATES FOR THE PROCEEDS OF A U.S. TREASURY CHECK.

LINDA M OLIVER
40 NORTH RD
QUEENSBURY, NY 12804

00488-1-5

0002152

## PLEASE READ AND FOLLOW THE INSTRUCTIONS

1. The check you asked about has been cashed. The Treasury's Check Claims is responsible for handling claims involving U.S. Treasury checks.

2. Review the attached check copy, especially the handwritten and/or stamped endorsements.

3. Pay particular attention to the date of the check. If the check is not the one you are missing, or if you have a question about the check amount, contact the federal agency which approved the payment giving them enough information to locate the check in question.

4. If the check copy shows that the check was deposited at your financial organization, take the check copy to the bank or credit union and ask them to verify that your account was credited. If you are unable to settle this matter, complete and return the Claim Form (Pages 2 and 3) and check copy.

5. If you signed the check or the check was cashed with your permission, or if for any reason you do not want to make a claim for the amount of the check, do not return the Claim Form.

6. Answer all questions on both pages. Signatures are required for Parts 1 and 2 since this form is sent to two separate destinations for processing.

7. If you did not sign the check, did not give someone else permission to cash the check, or did not benefit in any way from the check, then fill in BOTH PAGES (Pages 2 and 3) of the Claim Form. It is important that you:

   A. ANSWER ALL QUESTIONS ON BOTH PAGES (items 1 through 8 on page 2) (items 9 through 16 on page 3). Please fill out the Claim Form in black ink.

   B. Sign your name where indicated. If the check is issued to two payees, both payees must sign the Claim Form.

   C. The signature of a Witness is required only when one or both payees sign their names with a mark.

   D. RETURN THE CHECK COPY, YOUR COMPLETED FS 1133 CLAIM FORM (PAGES 2 & 3) TO THE FOLLOWING ADDRESS.

U.S. Department of the Treasury        **PAYEE: RETAIN THIS PAGE FOR YOUR RECORDS.**
Bureau of the Fiscal Service
Post Payment Division
PO Box 51318
Philadelphia, PA 19115-6318



FS 1133                              Page 1

**Shipping Address**
linda
40 NORTH RD
QUEENSBURY, NY 12804-2033
United States

**Payment method**
VISA  Visa  ending in 0070

**Order Summary**

| | |
|---|---|
| Item(s) Subtotal: | $491.69 |
| Shipping & Handling: | $0.00 |
| Total before tax: | $491.69 |
| Estimated tax to be collected: | $34.42 |
| **Grand Total:** | **$526.11** |
| Refund Total | $95.46 |

(#430.65)

**Delivery 1 of 2    8 packages via UPS**

More actions ∨

| | | |
|---|---|---|
| 12 * 12 Inch Packing Paper for Moving 100 Sheets Protecting Fragile China and Glasses,Small Wrapping Paper for Shipping and Moving Box Filler  $6.99 ¦ Sold by: Wu's China | $6.99 | Buy it again |
| Amazon Basics Perforated Bubble Cushioning Wrap, Small 3/16", 12-inch x 175 Foot Long Roll, Clear  $24.54   Qty: 3 ¦ Sold by: Amazon.com Services, Inc | $73.62 | Buy it again |
| uBoxes Extra Large (Pack of 5) 23x23x16" Standard Corrugated Moving Box", brown corrugated  $36.55 ¦ Qty: 4 ¦ Sold by: Amazon.com Services, Inc | $146.20 | Buy it again |
| Amazon Basics Packaging Tape for Shipping, Moving and Storing, 1.88" x 54.6 yds, 12-pack, Translucence  $21.64   Qty: 3 ¦ Sold by: Amazon.com Services, Inc | $64.92 | Buy it again |

**Delivery 2 of 2  ,  4 packages via Amazon Logistics**

**Return complete** Your return is complete. Your refund has been issued.
When will I get my refund? ∨

More actions ∨

| | | |
|---|---|---|
| Bankers Box 3 Pack Large Wardrobe Moving Boxes with Handles, 24 x 24 x 40 inches  $49.99   Qty: 3 ¦ Sold by: Amazon.com Services, Inc | $149.97 | Buy it again |

 **Gmail**

LINDA OLIVER <lindaoliver███████████>

**Your USPS Change-of-Address Mover Savings**
3 messages

**U.S. Postal Service** <ChangemyAddress@usps.gov>
Reply-To: no-reply@usps.gov
To: lindaoliver███████████████

Tue, Feb 27, 2024 at 7:58 PM

*Change of Address:*
*TO: 40 North Road*
*Queensbury, NY 128c*



**Linda,** you're eligible for these exclusive offers as part of your Change-of-Address submitted on February 27, 2024. *Personal mail*

Click below to view and redeem offers.

Access to the offers, via this email, will expire in 30 days from the date it was sent.

**Spectrum**

**Get our Best Internet + TV deal with no contracts**

Self-install kits are available to get you settled in sooner.



**HELLO FRESH**

**+ 16 FREE Meals & First Box Ships FREE**

Case 24-10157-1-pgr    Doc 466    Filed 05/02/25    Entered 05/02/25 16:03:04    Desc

Anyone submitting false or inaccurate information on this form is subject to punishment by fine or imprisonment or both under Sections 2, 1001, 1702 and 1708 of Title 18, United States Code.

**Not Changing Your Address?**
For help or to contact us about an erroneous Change-of-Address, please call 1-800-ASK-USPS or visit usps.com and click on the Contact Us Link.

**Receiving Duplicate Emails from Us?**
This might be happening if:

- You filed more than one Change-of-Address order using the same email address;

- You share an email address with someone who also used this email address for their Change-of-Address.

- You moved more than once within the 12-month period. In this case, use the Order Submitted date at the top of this email to determine which Change-of-Address order this email applies to.

**Unsubscribe**
You are currently subscribed as lindaoliverofficial@gmail.com . We sent you this email because you filed a Change-of-Address with the U.S. Postal Service®. Please click here to unsubscribe if you no longer wish to receive USPS mail forwarding notifications.

**Privacy Notice**
For more information regarding our privacy policies visit usps.com/privacypolicy .

**Feedback**
To provide feedback, mail your comments to:
National Customer Support Center
United States Postal Service
225 N Humphreys Blvd Ste 501, Memphis, TN 38188-1001.

MYMOVE® and the U.S. Postal Service® cannot guarantee the accuracy of the statements made by the advertisers or the content of the editorial material. Neither MYMOVE® nor the U.S. Postal Service® endorses any company, product or service listed or advertised in this email. Neither MYMOVE® nor the U.S. Postal Service® will be held liable in any manner for any claim, loss, expense, damage or consumer dissatisfaction arising out of or in connection with the use of this email or the MoversGuide Online™ product.

Copyright © 2024 MYMOVE, LLC and United States Postal Service. All Rights Reserved.

---

U.S. Postal Service <ChangemyAddress@usps.gov>
Reply-To: no-reply@usps.gov
To: lindaoliv█████████████

Tue, Feb 27, 2024 at 8:03 PM



 **Oliver Group Management LLC,** you're eligible for these exclusive offers as part of your Change-of-Address submitted on <u>February 27, 2024.</u>

Click below to view and redeem offers.

Access to the offers, via this email, will expire in 30 days from the date it was sent.

Reply-To: no-reply@usps.gov
To: lindaolive





**Hands On Masks LLC,** you're eligible for these exclusive offers as part of your
Change-of-Address submitted on <u>February 27, 2024.</u>

Click below to view and redeem offers.

Access to the offers, via this email, will expire in 30 days from the date it was sent.

**MAKE YOUR MOVE WITH DIRECTV**

DIRECTV

View Offer          Call 866.921.3217

**+ 16 FREE Meals & First Box Ships FREE\*\***

HELLO FRESH

Claim Now

**Get up to $600 for your new home.**

Citizens

Switch to Citizens checking and savings, meet offer requirements and get
paid†.

Member FDIC. Expiration Date: 4/30/2024

View Offer

# Exhibit F
# June 5, 2024 Lock Change Text Messages

7:36





Christian Dribush

Text Message • SMS
Tue, Jun 4 at 9:05 PM

I followed up with Ms Roglieri attorney
and tentative scheduled Thursday
afternoon for her to retrieve remaining
items for children. Thought I would try
to get it done when you were out.

Also gate is closed but you only need
to push open.

I will try to have locks rekeyed
tomorrow and provide you with a key.

Wed, Jun 5 at 1:00 PM

Locksmith will be at 49 North this
afternoon

40

Ok I'm at work and won't be home late
but my cleaning lady might be there as
she helps me with my dog etc. Thanks
for letting me know. Also thanks for
working out the gate it made me feel
safe last night

Wed, Jun 5 at 5:30 PM

I left the key with the house keeper. It
works on the front door and side door
by "Man cave"

Text Message • SMS

# Exhibit G
# June 12, 2024 Lockout Text Message

11:55



Christian Dribush

Wed, Jun 12 at 4:45 PM

I had a legal duty to inform the United States Trustee (UST) Office concerning the above matter. Per UST guidance and Bankruptcy Court Order, it was necessary for me to change the locks again. Either me or my representative will need to be in attendance when you remove items so as to ensure that no property of the bankruptcy estate is removed. In addition to the above items, anything that you may have received from Mr. Roglieri or removed from the bankruptcy estate (e.g, jewelry, sunglasses, etc.) need to be returned to the estate. This is a regrettable situation but there can be no unauthorized removal of bankruptcy estate assets.

Wed, Jun 12 at 9:10 PM

Hi Christian,
Sorry for the phone tag but I didn't get off work till late and my service is on and off on the train. I did try to call you back.
I thought I could take what I took and once I got your text I agreed to return the stuff. I have no intention to violate any bankrupcy laws.
For the cigars I thought they would be thrown out so I packed them and wanted to give it to his family. Also a

Text Message · SMS

# Exhibit H
# United States District Court Decision and Order

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

LINDA OLIVER,

Plaintiff,

-against-

CHRISTIAN DRIBUSCH, in his individual capacity and former role as Chapter 7

Trustee, Defendant.

SUMMONS AND COMPLAINT

Civil Action No.:

TO THE ENTITY/PERSON(S) NAMED AS DEFENDANT(S) ABOVE:

PLEASE TAKE NOTICE that you are hereby summoned to appear in this action by

serving a notice of appearance on the Plaintiff at the address set forth below within

twenty (21) days after service of this Summons (not counting the day of service itself), or

within thirty (30) days after service is complete if the summons is not delivered

personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED that should you fail to answer or appear, a judgment

will be entered against you by default for the relief demanded below.

NAME AND ADDRESS OF DEFENDANT:


Christian Dribusch

Dribusch Law Firm

187 Wolf Road, Suite 300-020

Albany, NY 12205



NOTICE:


The nature of this action is:

Violation of Civil Rights (42 U.S.C. § 1983 and Bivens)

Violation of the Fourth and Fourteenth Amendments

Abuse of Process

Conversion and Unauthorized Seizure of Property

Invasion of Privacy

Unlawful Eviction under Real Property Law § 223-b and RPAPL § 853

Intentional Infliction of Emotional Distress

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, CONVERSION, ILLEGAL

EVICTION, AND RELATED CLAIMS

Plaintiff Linda Oliver, proceeding pro se, brings this civil rights and tort action against

Christian Dribusch, in his individual capacity and former role as a Chapter 7 bankruptcy

trustee, and alleges as follows:

INTRODUCTION

This action is brought under 42 U.S.C. § 1983 and/or the federal equivalent under Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), for violations of Plaintiff's constitutional rights by a federal officer acting under color of law.

This case arises from Trustee Christian Dribusch's unlawful eviction of Plaintiff, a legal tenant at 40 North Road, Queensbury, NY, through unconstitutional entry, false claims of court authority, and denial of access to Plaintiff's home and property. Plaintiff's personal property — including work attire, legal documents, clothing, food, electronics, and other essential belongings — was rendered inaccessible for days and potentially lost or mishandled as a result.

STATEMENT OF FACTS

The Plaintiff is the girlfriend of Kris Daniel Roglieri, the Debtor in a pending Chapter 7 bankruptcy case (Case No. 24-10157). Plaintiff resided full-time at 40 North Road, Queensbury, NY — a property owned by Mr. Roglieri and managed as part of the bankruptcy estate. The Plaintiff had legal possession of the home with the Debtor's consent and was a lawful tenant under New York law, with full-time occupancy and personal property on the premises.

On May 24, 2024, during a complete property walkthrough, Debtor Kris Roglieri informed Trustee Dribusch that Plaintiff resided at the home. The Trustee observed the Plaintiff's belongings and acknowledged her occupancy.

On May 31, 2024, Mr. Roglieri was taken into custody. Plaintiff remained at the property, maintained it, and cooperated with the Trustee in good faith.

On June 4, 2024, the Trustee unlawfully entered the residence by breaking in through the garage without a court order or prior notice. The Plaintiff was at work. Her personal belongings and dog were inside. A video confirms the Trustee admitted to entering via the garage in a phone call with the Plaintiff.

The Court did not authorize turnover until June 10, 2024. Thus, the June 4 and 5 entries, which included auction staff and a neighbor, occurred unlawfully, in violation of the Plaintiff's constitutional and housing rights.

On June 12, 2024, while the Plaintiff was at work in New York City, the Trustee informed her by text that the locks had been changed. The Plaintiff was given no notice, hearing, or copy of the court order. She was locked out without due process.

On June 19, 2024, the Trustee hosted an open house at the property while the Plaintiff's belongings were still inside. She was not notified in advance and only became aware after checking her Ring camera and confirming with the SAM representative. This intrusion caused extreme emotional distress.

On April 29, 2025, the representative of the Saratoga Auto Museum (SAM), working under the Trustee, submitted an affidavit under oath falsely accusing the Plaintiff of theft

—

Specifically, the unauthorized removal of sunglasses from the Estate. The accusation was false. The Debtor had instructed the Plaintiff to retrieve exempt personal items, including shoes, clothing, family photographs, and cigars for his family. The Plaintiff returned all items to the SAM representative. After reviewing the items, the SAM representative stated they had no estate value and returned them to the Plaintiff, except the cigars, which were retained despite being unboxed and worthless.

Later, it was discovered that cigars were included in the auction of a large cigar case, raising legal questions about the sale of tobacco products without proper licensing. The Trustee later acknowledged the issue in a text message asking, "Do you know anything about the cigars and some other personal belongings of Mr. Roglieri?" The Trustee's representative never corrected her false affidavit.

The pink box that held the sunglasses was never removed from the Estate. The Plaintiff personally handed the box to the SAM representative when the Plaintiff was granted access to the Estate, with the SAM representative supervising. The false affidavit caused reputational harm and was used to justify the Plaintiff's unlawful eviction. However, no eviction proceeding, order, or hearing occurred beforehand.

Additional items belonging to Plaintiff — including her office chair (Lot #E24-122) — were sold without notice or inventory. Several items of the Plaintiff were returned only after the Plaintiff provided proof of ownership. The Trustee never provided an inventory to the Plaintiff, distinguishing between the Estate and third-party property reflects gross

mismanagement, negligence, and a broader abuse of power in the administration of the
bankruptcy estate.


PATTERN OF TRUSTEE MISCONDUCT

In addition to unlawfully evicting Plaintiff, Defendant engaged in a broader pattern of
misconduct during his tenure as Chapter 7 trustee. This included seizing and concealing
high-value property such as 25 boxes of wine (some belonging to the Plaintiff), shoes,
clothing, and sunglasses. These items were not listed in the Trustee's original asset reports
and were only acknowledged after the Debtor raised concerns. The wine was eventually
returned, but only after a significant delay and confrontation. The Trustee's shifting
explanations suggest an attempt to justify unlawful conduct retroactively. This violated 11
U.S.C. § 704 and reflects bad faith administration, conversion, and abuse of process.

The Defendant's conduct reflects a form of "bankruptcy-for-profit," in which Estate and
non-estate assets were seized or prepared for liquidation without oversight, inventory, or
court authority. This conduct, including misleading the Court, supports punitive damages
and an investigation into systemic abuse.

On May 23, 2025, following multiple objections, allegations of misconduct, and court
filings, Defendant Christian Dribusch formally resigned as Chapter 7 Trustee in the
underlying bankruptcy case. Although the Court later deemed the pending motion to
remove him "moot," Plaintiff asserts that his resignation was the result of escalating

scrutiny over his handling of the Estate, not a voluntary act. This resignation further

reinforces Plaintiff's claim that Defendant's conduct was unlawful, retaliatory, and in

direct violation of his fiduciary duties as a court-appointed officer.

IV. CAUSES OF ACTION

Count 1 – Violation of Civil Rights (42 U.S.C. § 1983 / Bivens)

Defendant, acting under color of federal law, deprived Plaintiff of rights under the Fourth

and Fourteenth Amendments.

Count 2 – Conversion

The Defendant wrongfully interfered with the Plaintiff's property without court authority.

Count 3 – Invasion of Privacy

The Defendant entered the Plaintiff's home and allowed auction staff and a neighbor to

access her belongings, thereby violating her right to privacy.

Count 4 – Intentional Infliction of Emotional Distress

The Defendant's actions were outrageous and caused severe emotional and professional

harm.

Count 5 – Abuse of Process

The Defendant exceeded his role and violated procedures designed to protect residents and lawful occupants, including individuals with independent property interests.

Count 6 – Illegal Eviction (Real Property Law § 223-b)

The Defendant removed the Plaintiff, a legal tenant, without a valid court order, thereby violating state law.

Count 7 – Wrongful Eviction (RPAPL § 853)

Unlawful removal justifies treble damages under RPAPL § 853, as in Lyke v. Anderson (1989).

V. RELIEF SOUGHT

Plaintiff respectfully requests:

Compensatory damages

Treble damages under RPAPL § 853

Punitive damages

Damages for emotional and reputational harm

Attorney's fees under 42 U.S.C. § 1988

Pre- and post-judgment interest

A jury trial

Any other relief the Court deems just and proper

Plaintiff reserves the right to amend this Complaint to include additional defendants or

claims as further facts come to light, including but not limited to the potential role of

Assistant U.S. Trustee Lisa Penpraze in enabling or failing to prevent the misconduct

described herein.

DATED: June 9, 2025

Linda Oliver

Plaintiff, Pro Se

11 Hill Top Ln

Poughkeepsie, NY 12603

Ph: (713) 894-4626

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LINDA OLIVER,

                Plaintiff,

        -v-                             1:25-CV-724 (AJB/DJS)

CHRISTIAN DRIBUSCH,

                Defendant.

_____

**APPEARANCES:**                      **OF COUNSEL:**

LINDA OLIVER
Plaintiff, Pro Se
11 Hill Top Lane
Poughkeepsie, NY 12603

SMITH, SOVIK,                       KAREN G. FELTER, ESQ.
KENDRICK & SUGNET, P.C.         KEVIN E. HULSLANDER, ESQ.
Attorneys for Defendant
250 South Clinton Street, Suite 600
Syracuse, NY 13202

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

**I.      INTRODUCTION**

      On June 9, 2025, *pro se* plaintiff Linda Oliver ("plaintiff"), the girlfriend of the debtor in

a pending Chapter 7 bankruptcy proceeding, filed this civil rights action alleging that defendant

Christian Dribusch ("defendant"), the former Chapter 7 bankruptcy trustee, unlawfully evicted

her from the debtor's real property and engaged in misconduct vis-à-vis the bankruptcy estate.[1]

---

[1]  The bankruptcy "estate" includes all the property of the debtor.

On August 29, 2025, defendant moved under Rule 12(b) of the Federal Rules of Civil Procedure seeking to dismiss plaintiff's complaint. Dkt. No. 11. According to defendant, a special bankruptcy jurisdictional doctrine bars plaintiff from pursuing this action because she has not obtained leave from the bankruptcy court that appointed defendant.

The motion has been fully briefed, Dkt. Nos. 21, 22, 23, 26, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The following facts are taken from the complaint, Dkt. No. 1, and will be assumed true for the purpose of assessing the motion to dismiss.

Plaintiff is the girlfriend of Kris Daniel Roglieri. Compl. at 4.[2] Mr. Roglieri is the debtor in a Chapter 7 bankruptcy case (No. 24-10157). *Id.* Mr. Roglieri owned and managed a property at 40 North Road in Queensbury, New York (the "Property"). *Id.* Plaintiff "had legal possession of the home with the [d]ebtor's consent and was a lawful tenant under New York law, with full-time occupancy and personal property on the premises." *Id.*

On May 24, 2024, Mr. Roglieri did a "complete property walkthrough" of the Property with defendant. Compl. at 4. During this walkthrough, Mr. Roglieri informed defendant that plaintiff "resided at the home." *Id.* At that time, defendant also observed plaintiff's "belongings and acknowledged her occupancy." *Id.*

On May 31, 2024, Mr. Roglieri was taken into custody. Compl. at 5. Plaintiff remained at the Property, maintained it, and cooperated with defendant in good faith. *Id.* Even so, on June 4, 2024, defendant "unlawfully entered the residence by breaking in through the garage without a court order or prior notice." *Id.* Plaintiff was not at the Property at the time, but her "personal

---

[2] The pleading is not numbered by paragraph. Instead, the Court cites to the pagination generated by CM/ECF.

belongings and dog were inside." *Id.* Thereafter, on June 4th and 5th, other individuals entered the Property unlawfully, including "auction staff and a neighbor." *Id.* This violated plaintiff's "constitutional and housing rights." *Id.*

On June 10, 2024, the bankruptcy court authorized "turnover." *See* Compl. at 5. Two days later, on June 12th, defendant informed plaintiff "by text that the locks had been changed." *Id.* Plaintiff "was given no notice, hearing, or copy of the court order." *Id.* "She was locked out without due process." *Id.*

On June 19, 2024, defendant "hosted an open house" at the Property while plaintiff's belongings were inside. Compl. at 5. "She was not notified in advance and only became aware after checking her Ring camera." *Id.* "This intrusion caused extreme emotional distress." *Id.*

On April 29, 2025, a Saratoga Auto Museum ("SAM") representative, "working under the [defendant], submitted an affidavit under oath falsely accusing" plaintiff of theft. Compl. at 5. In particular, the affidavit accused plaintiff of "the unauthorized removal of sunglasses from the [e]state." *Id.* at 6. According to plaintiff, this accusation was false because Mr. Roglieri had instructed her "to retrieve exempt personal items, including shoes, clothing, family photographs, and cigars for his family." *Id.*

Even so, plaintiff returned all of the items. Compl. at 6. The representative reviewed them, determined that "they had no estate value," and returned them to plaintiff, "except the cigars, which were retained despite being unboxed and worthless." *Id.* "Later, it was discovered that cigars were included in the auction of a large cigar case, raising legal questions about the sale of tobacco products without proper licensing." *Id.* Defendant acknowledged this issue in a text message. *Id.* But the SAM representative "never corrected her false affidavit." *Id.*

- 3 -

Plaintiff alleges that "[t]he pink box that held the sunglasses was never removed from the [e]state." Compl. at 6. Instead, plaintiff alleges that she "personally handed the box to the SAM representative" when plaintiff was granted access to the estate under the supervision of the SAM representative. *Id.* According to plaintiff, the "false affidavit caused reputational harm and was used to justify" plaintiff's "unlawful eviction" even though "no eviction proceeding, order, or hearing occurred beforehand." *Id.*

Plaintiff further alleges that items belonging to her, such as an office chair, "were sold without notice or inventory." Compl. at 6. Although some items were returned to her after she "provided proof of ownership," defendant never provided plaintiff with a written inventory that distinguished between Mr. Roglieri's property and that of others, including her own. *Id.* In plaintiff's view, this "reflects gross mismanagement, negligence, and a broader abuse of power in the administration of the bankruptcy estate." *Id.* at 6–7.

Plaintiff alleges that her unlawful eviction from the Property is part of a "broader pattern of misconduct during [defendant's] tenure as Chapter 7 trustee." Compl. at 7. As she explains, defendant seized and concealed high-value items, including twenty-five boxes of wine, shoes, clothing, and sunglasses, from Mr. Roglieri's estate. *Id.* Plaintiff alleges that some of the wine belonged to her. *Id.* According to plaintiff, these items were not listed on defendant's original asset reports and were only acknowledged after Mr. Roglieri raised concerns. *Id.* Although plaintiff's wine was "eventually returned," there was "significant delay and confrontation." *Id.* In plaintiff's view, defendant's "shifting explanations suggest an attempt to justify unlawful conduct retroactively," which violated the bankruptcy code "and reflects bad faith administration, conversion, and abuse of process." *Id.*

- 4 -

On May 23, 2025, defendant resigned as Chapter 7 trustee in Mr. Roglieri's bankruptcy case. Compl. at 7. According to plaintiff, "his resignation was the result of escalating scrutiny over his handling of the [e]state, not a voluntary act." *Id*. at 8.

### III.    LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id*.

Rule 12(b)(1) motions can be "facial" or "fact-based." *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). A "facial" Rule 12(b)(1) motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id*. at 56. Under those circumstances, the plaintiff bears no evidentiary burden. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). Instead, the court must determine whether the complaint and its exhibits plausibly allege facts giving rise to subject-matter jurisdiction. *Carter*, 822 F.3d at 56.

In contrast, a "fact-based" Rule 12(b)(1) motion permits a defendant to proffer evidence outside of the pleading. *See Carter*, 822 F.3d at 57. In that scenario, the plaintiff will ordinarily need to come forward with evidence of their own to controvert the defendant's showing. *Id*. If the defendant identifies "material and controverted" extrinsic evidence, the court "will need to make findings of fact in aid of its decision." *Id*. However, "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject-matter jurisdiction]," the plaintiff may rely on their pleading. *Id*.

IV.    **DISCUSSION**

As an initial matter, plaintiff is *pro se*. That means she is not represented by an attorney. Therefore, her pleadings and filings must be held to less stringent standards than those that might be drafted by a lawyer. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *See, e.g., Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013). "This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Even so, plaintiff's complaint must be dismissed. "There is no question that a trustee in bankruptcy may be held personally liable for breach of his fiduciary duties," but the remedy for such a breach usually lies in the bankruptcy court, which is empowered to impose a surcharge "on the fiduciary in the amount of the actual or estimated financial harm." *In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985) (collecting cases).

There may be situations in which litigation against a trustee outside the bankruptcy action is warranted. But because "[a] trustee in bankruptcy is an officer of the court that appoints him," the court that appointed him "has a strong interest in protecting him from unjustified liability for acts taken within the scope of his official duties." *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

"A well-recognized line of cases starting with *Barton v. Barbour*, 104 U.S. 126 (1881), extends such protection by requiring leave of the appointing court before a suit may go forward in another court against the trustee." *In re Lehal Realty Assocs.*, 101 F.3d at 276 (collecting cases). "The Second Circuit has recognized that the *Barton* Doctrine extends to bankruptcy as well as receivership, and lower courts have applied it to declaratory judgment actions, as well as

- 6 -

suits seeking damages." *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 772 (S.D.N.Y. 2015) (cleaned up). "The *Barton* doctrine is jurisdictional in nature, and failure to seek leave of the receiver's appointing court bars exercise of subject matter jurisdiction over any third-party suit." *Id.* (collecting cases).

Broadly construed, the allegations in plaintiff's complaint involve conduct that is covered by the *Barton* doctrine. Plaintiff alleges that defendant violated her constitutional rights when he entered the Property without permission, changed the locks, unlawfully evicted her, took actions to secure Mr. Roglieri's assets, including certain personal items, and performed other tasks, such as preparing to liquidate Mr. Roglieri's assets.

This conduct, even though it is allegedly wrongful or unlawful, would require leave of the bankruptcy court that appointed defendant before filing this lawsuit in this court. *See In re Cumberbatch*, 657 B.R. 683, 697 (E.D.N.Y. Bankr. 2024) (applying *Barton* doctrine to dismiss the plaintiffs' claims for unlawful eviction against agents of Chapter 7 trustee where plaintiffs did not seek leave of bankruptcy court prior to filing).

Plaintiff does not claim that she has sought or received leave from the bankruptcy court. Instead, plaintiff argues that defendant's conduct is not shielded by the *Barton* doctrine because it "was ultra vires outside the scope of his authority and both retaliatory and unconstitutional." Dkt. No. 21 at 2. According to plaintiff, "[t]his lawsuit is not an attempt to interfere with the administration of the bankruptcy estate." *Id.* at 2.

This argument does not permit a different outcome. Although some courts recognize an exception to the *Barton* doctrine where a trustee acts outside of, or beyond the scope of, his legal authority, "the Second Circuit has not yet endorsed" any of these non-statutory exceptions to the

*Barton* doctrine.[3] *See, e.g.*, *Plimpton v. Bank of Jackson Hole*, 2021 WL 765243, at *12 (D. Conn. Feb. 26, 2021) (collecting cases); *see also In re MF Global Holdings Ltd.*, 562 B.R. 866, 876 (S.D.N.Y. 2017) ("Courts have consistently applied the *Barton* doctrine broadly to prevent suits against court-appointed officers in a wide variety of circumstances[.]").

To be clear, this does not mean that plaintiff has no avenue to recover against defendant for alleged wrongs. The *Barton* doctrine "does not preclude all suits against a trustee for actions taken in their official capacity." *Brookins v. Napolitano*, 2025 WL 297390, at *2 (D. Conn. Jan. 24, 2025). Instead, a plaintiff "must simply obtain leave of the court that appointed the trustee before suing the trustee in another court." *Plimpton*, 2021 WL 765243, at *11 (cleaned up).

This is a sound requirement. The bankruptcy court is the subject matter expert, both in the general sense (when it comes to the rules governing a trustee's power) and, specifically, on the legal obligations of defendant with respect to Mr. Roglieri's estate (and whether any of that conduct might have violated those legal obligations).

With that in mind, the *Barton* doctrine clearly applies to this case. Plaintiff is alleging that defendant engaged in conduct (including but not limited to entering the Property) before the bankruptcy court permitted it, and took certain actions (including but not limited to liquidating estate assets) in ways that violated the bankruptcy code. Those are issues that the bankruptcy court is particularly well-suited to review to determine whether a third-party tort suit might be warranted. As the Seventh Circuit has explained, the leave-of-bankruptcy-court requirement

---

[3] Under 28 U.S.C. § 959(a), a trustee "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions carrying on business connected with such property." However, that exception "does not apply where, as here, a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate." *In re Lehal Realty Assocs.*, 101 F.3d at 276.

"enables bankruptcy judges to monitor the work of the trustees more effectively." *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998).

Again, plaintiff has not claimed that she received leave, which means that this action must be dismissed for lack of subject matter jurisdiction. But assuming, for present purposes, that the *Barton* doctrine did not bar plaintiff's constitutional claims, this lawsuit would still have to be dismissed. Federal courts only have "original" jurisdiction over cases in which: (1) there is a "federal question," in that a colorable claim arises under the "Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; or (2) when there is "complete diversity of citizenship" and at least $75,000 in controversy between the parties, 28 U.S.C. § 1332.

Plaintiff is a Poughkeepsie resident and defendant is a lawyer in Albany. Because both parties are residents of New York, "complete diversity of citizenship" is absent. *See Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53–54 (2d Cir. 2019) (explaining the meaning of "citizenship" in a § 1331 diversity action). Accordingly, the Court would lack the subject-matter jurisdiction needed to entertain this dispute unless it raised one or more "federal questions" under § 1332; *i.e.*, claims that arise under the constitution or a federal law.

Plaintiff's complaint alleges that defendant violated her constitutional rights. The federal law that would apply is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The problem for plaintiff is that defendant was not "acting under color of state law" when he performed his duties, even if wrongfully, as the Chapter 7 trustee in Mr. Roglieri's bankruptcy estate. To avoid dismissal, a § 1983 plaintiff must plausibly allege that the challenged conduct

- 9 -

constitutes "state action." *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

As the Supreme Court has recognized, "there is no single test to identify state actions and state actors." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294 (2001). Although a host of factors can bear on this question, three main tests have emerged:

> For purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up).

Defendant, as a Chapter 7 bankruptcy trustee, does not satisfy any of these tests for "state action." First, federal courts have repeatedly held that private attorneys and private law firms do not engage in "state action" or become "state actors" because they are performing licensed legal duties. *See Harrison v. New York*, 95 F. Supp. 3d 293, 329 (E.D.N.Y. 2015) (collecting cases). Second, and more particularly, "courts have determined that bankruptcy trustees are not state actors because of their appointment as bankruptcy trustees." *Mortimer v. Grodsky*, 2020 WL 6729118, at *4 (S.D.N.Y. Nov. 13, 2020) (collecting cases).

- 10 -

Defendant, as a trustee appointed by a federal bankruptcy court, might be considered to have been acting "under color of federal law."  In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).

"In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under [42 U.S.C. § 1983].'"  *Iqbal*, 556 U.S. at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)).  Importantly, though, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or category of defendants.'"  *Id.* at 675 (citation omitted).  As the Supreme Court has cautioned, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."  *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

A review of the applicable case law confirms that the *Bivens* remedy is unavailable to plaintiff.  In fact, the Seventh Circuit recently rejected an attempt to expand the *Bivens* remedy to a claim against a Chapter 7 bankruptcy trustee.  *Estate of Wattar v. Fox*, 71 F.4th 547, 553 (7th Cir. 2023) (concluding "the unique nature of a bankruptcy trustee's role is more than sufficient reason to pause before recognizing a *Bivens* action against a trustee"); *Balser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909–11 (9th Cir. 2003) (rejecting a *Bivens* claim against Chapter 7 bankruptcy trustee).

Plaintiff's complaint also asserts a number of state-law claims, including for conversion, invasion of privacy, intentional infliction of emotional distress, abuse of process, and illegal and wrongful eviction.  Compl. at 8 –9.  As explained *supra*, this Court cannot entertain these state-

- 11 -

law claims on the basis of its "diversity" jurisdiction because both parties are domiciled in New York. Instead, this Court acquired "supplemental jurisdiction" over these claims when plaintiff filed her suit in this federal forum. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (explaining contours of supplemental jurisdiction).

However, when a federal court has dismissed all of the claims over which it has original jurisdiction (*i.e.*, the federal-law claims under § 1983), the trial court should decline to exercise supplemental jurisdiction over any state-law claims. *See, e.g.*, *Kolari v. New York-Presbyterian Corp.*, 455 F.3d 118, 122 (2d Cir. 2006). Because all of plaintiff's federal-law claims have to be dismissed, the Court must decline to exercise supplemental jurisdiction over her state-law claims. Accordingly, plaintiff's state-law claims will be dismissed without prejudice.

The final question is whether plaintiff should be given an opportunity to try to amend her pleading to cure these defects. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up). However, if it "appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

After considering the matter, leave to amend must be denied. Under the *Barton* doctrine, this Court lacks subject matter jurisdiction to consider plaintiff's third-party tort action against the Chapter 7 trustee for any of the actions taken during the course of his work on Mr. Roglieri's bankruptcy estate. To the extent that the *Barton* doctrine might not bar plaintiff's constitutional claims, she cannot establish, as a matter of law, that defendant is either a state actor for purposes of § 1983 or that, to the extent he might be a federal actor, the *Bivens* remedy should be extended

- 12 -

to cover his conduct. And because plaintiff's federal-law claims must be dismissed, there is no

basis on which to retain jurisdiction over her state-law claims Plaintiff remains free to attempt to

replead those claims in state court.

**V.    CONCLUSION**

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 11) is GRANTED;  and

2. Plaintiff's complaint is DISMISSED without leave to amend.[4]

The Clerk of the Court is directed to terminate the pending motion, enter a judgment

accordingly, and close the file.

**IT IS SO ORDERED.**

Dated:  November 21, 2025
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge

---

[4] In a response to plaintiff's sur-reply, defendant suggests that plaintiff might have used an AI tool to generate an inaccurate legal citation. *See* Dkt. No. 26. The Court refrains from reproducing the citation in this footnote. And while the Court declines to wade into this dispute, both parties are cautioned that the use of "hallucinated" or fake case citations in legal submissions to a federal court is sanctionable conduct.

# Exhibit I
# June 21, 2024 Email to William Dreyer, Esq.

**From:** Christian Dribusch <cdribusch@chd-law.com>
**Date:** June 21, 2024 at 11:52:28 AM EDT
**To:** William Dreyer <WDREYER@dblawny.com>
**Cc:** Matthew Trainor <Matthew_Trainor@fd.org>
**Subject: Re:**


Except for some miscellaneous "junk" mail, no mail or other item has been either delivered to the premises or is under my possession, custody, or control.  If I should receive anything not related to the administration of the bankruptcy estate or otherwise not property of the bankruptcy estate, I will arrange for its turnover to either Mr. Trainor or Ms. Oliver.

Please remind Ms. Oliver that she is not to retain possession, custody, or control over any property of the bankruptcy estate which is, in essence, **everything** Mr. Roglieri owned directly or through his wholly owned LLCS as of the date of the filing of his bankruptcy petition, including all business records. Until the Bankruptcy Court issues an Order of Abandonment of the bankruptcy estate's interest, there should be no property for Ms. Oliver to remove or store as it belongs to the bankruptcy estate.   At some future date, I may file a motion under 11 USC 554 to abandon certain assets as inconsequential value or burdensome to administer at which time such property is no longer property of the bankruptcy estate and revests with Mr. Roglieri.  Naturally, once the property of the estate has been abandoned, Mr. Roglieri may do whatever he deems appropriate with it.

Thanks.

Chris


**Christian H. Dribusch**

**The Dribusch Law Firm**
p:  518.227.0026
e:  cdribusch@chd-law.com

w: www.chd-law.com

a:  187 Wolf Road • Suite 300-020 • Albany • N.Y. 12205


**From:** William Dreyer <WDREYER@DBLAWNY.COM>
**Sent:** Friday, June 21, 2024 10:53 AM
**To:** Christian Dribusch <cdribusch@chd-law.com>
**Cc:** Matthew Trainor <matthew_trainor@fd.org>
**Subject:**

Chris. I understand that your on-site team has collected documents and records of Roglieri. Linda Oliver now has a general power of attorney for him . Will you be able to give the documents and mail collected to her. She plans to put the documents in a storage facility. Otherwise can you give to either me or the FPD.c/o Matt trainor. Thanks. Bill

Sent from my iPhone