

250 South Clinton Street, Suite 600
Syracuse, New York 13202

Telephone 315-474-2911
Facsimile 315-474-6015

*Syracuse | Buffalo*
*Hudson Valley | Long Island*

**Karen G. Felter**
Partner
kfelter@smithsovik.com

February 25, 2026

**VIA CM/ECF**
Hon. Patrick G. Radel, U.S. Bankruptcy Judge
United States Bankruptcy Court
Northern District of New York
James M. Hanley U.S. Courthouse
 and Federal Building
100 South Clinton Street
Syracuse, NY  13261

    RE:    In re Kris Daniel Roglieri (Chapter 7)
               Case No. 24-10157

Dear Judge Radel:

      This office is counsel for Christian H. Dribusch, the former Chapter 7 Trustee of the bankruptcy estate of the above-captioned debtor.  Attorney Dribusch received notice via CM/ECF of a Motion Requesting Leave to Commence a Civil Action (Dkt. # 645), filed by Linda Oliver on February 19, 2026.  The Court issued a Notice of Deficiency regarding the Motion on February 20, 2026, for failure to include a Notice of Hearing. (Dkt. # 646).  Ms. Oliver sent a Notice of Hearing to Attorney Dribusch and other counsel on February 23, 2026, but to date, she has not filed it on CM/ECF.  The Notice she sent via email would have been deficient even if filed on CM/ECF, however, because date of Hearing she noted for March 3, 2026, was less than 21 days from the date of filing of the Motion.  To our knowledge, Ms. Oliver did not seek a reduction of time for noticing a bankruptcy Hearing per Federal Rules of Bankruptcy Procedure 9006(c).

      In any event, by way of this letter, we are respectfully advising the Court, Ms. Oliver and the parties and counsel of record we intend to file opposition or objection to Ms. Oliver's Motion Requesting Leave in accordance with the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court if and when the Motion is scheduled for return before the Court.  Ms. Oliver already commenced an unauthorized action against Attorney Dribusch in District Court last year (*Oliver v. Dribusch*, Civil Action #: 1:25-CV-00724 (AJB/DJS).  Judge Brindisi granted our motion to dismiss (Dkt. # 11) on the ground of the Barton Doctrine, e.g., Ms. Oliver did not obtain leave from the Bankruptcy Court before filing suit against a Trustee in another court for actions taken in his official capacity as Trustee.  Notably, however, Judge Brindisi noted in his

Smith Sovik Kendrick & Sugnet P.C.

February 25, 2026
Page 2

Memorandum-Decision and Order:

> "There is no question that a trustee in bankruptcy may be held personally liable for breach of his fiduciary duties," but the *remedy for such a breach usually lies in the bankruptcy court, which is empowered to impose a surcharge "on the fiduciary in the amount of the actual or estimated financial harm."* In re Gorski, 766 F.2d 723, 727 (2d Cir. 1985) (collecting cases).

(Dkt. # 29 [attached]).  Based thereupon, and on well settled law concerning such claims against Bankruptcy Trustees for actions taken in the context of acting as Trustee, we will oppose any properly filed and supported motion by Ms. Oliver concerning Attorney Dribusch.

Respectfully,

Karen G. Felter
Bar Roll No.: 508182

Cc:   Linda Oliver, Pro Se (via CM/ECF and U.S. Mail)

All Counsel of Record (via CM/ECF)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LINDA OLIVER,

                Plaintiff,

         -v-                                        1:25-CV-724 (AJB/DJS)

CHRISTIAN DRIBUSCH,

                Defendant.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

LINDA OLIVER
Plaintiff, Pro Se
11 Hill Top Lane
Poughkeepsie, NY 12603

SMITH, SOVIK,                              KAREN G. FELTER, ESQ.
KENDRICK & SUGNET, P.C.           KEVIN E. HULSLANDER, ESQ.
Attorneys for Defendant
250 South Clinton Street, Suite 600
Syracuse, NY 13202

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I. INTRODUCTION

On June 9, 2025, *pro se* plaintiff Linda Oliver ("plaintiff"), the girlfriend of the debtor in a pending Chapter 7 bankruptcy proceeding, filed this civil rights action alleging that defendant Christian Dribusch ("defendant"), the former Chapter 7 bankruptcy trustee, unlawfully evicted her from the debtor's real property and engaged in misconduct vis-à-vis the bankruptcy estate.[1]

---

[1] The bankruptcy "estate" includes all the property of the debtor.

- 1 -

On August 29, 2025, defendant moved under Rule 12(b) of the Federal Rules of Civil Procedure seeking to dismiss plaintiff's complaint. Dkt. No. 11. According to defendant, a special bankruptcy jurisdictional doctrine bars plaintiff from pursuing this action because she has not obtained leave from the bankruptcy court that appointed defendant.

The motion has been fully briefed, Dkt. Nos. 21, 22, 23, 26, and will be considered on the basis of the submissions without oral argument.

## II.   BACKGROUND

The following facts are taken from the complaint, Dkt. No. 1, and will be assumed true for the purpose of assessing the motion to dismiss.

Plaintiff is the girlfriend of Kris Daniel Roglieri. Compl. at 4.[2] Mr. Roglieri is the debtor in a Chapter 7 bankruptcy case (No. 24-10157). *Id*. Mr. Roglieri owned and managed a property at 40 North Road in Queensbury, New York (the "Property"). *Id*. Plaintiff "had legal possession of the home with the [d]ebtor's consent and was a lawful tenant under New York law, with full-time occupancy and personal property on the premises." *Id*.

On May 24, 2024, Mr. Roglieri did a "complete property walkthrough" of the Property with defendant. Compl. at 4. During this walkthrough, Mr. Roglieri informed defendant that plaintiff "resided at the home." *Id*. At that time, defendant also observed plaintiff's "belongings and acknowledged her occupancy." *Id*.

On May 31, 2024, Mr. Roglieri was taken into custody. Compl. at 5. Plaintiff remained at the Property, maintained it, and cooperated with defendant in good faith. *Id*. Even so, on June 4, 2024, defendant "unlawfully entered the residence by breaking in through the garage without a court order or prior notice." *Id*. Plaintiff was not at the Property at the time, but her "personal

---

[2]   The pleading is not numbered by paragraph. Instead, the Court cites to the pagination generated by CM/ECF.

belongings and dog were inside." *Id*. Thereafter, on June 4th and 5th, other individuals entered the Property unlawfully, including "auction staff and a neighbor." *Id*. This violated plaintiff's "constitutional and housing rights." *Id*.

On June 10, 2024, the bankruptcy court authorized "turnover." *See* Compl. at 5. Two days later, on June 12th, defendant informed plaintiff "by text that the locks had been changed." *Id*. Plaintiff "was given no notice, hearing, or copy of the court order." *Id*. "She was locked out without due process." *Id*.

On June 19, 2024, defendant "hosted an open house" at the Property while plaintiff's belongings were inside. Compl. at 5. "She was not notified in advance and only became aware after checking her Ring camera." *Id*. "This intrusion caused extreme emotional distress." *Id*.

On April 29, 2025, a Saratoga Auto Museum ("SAM") representative, "working under the [defendant], submitted an affidavit under oath falsely accusing" plaintiff of theft. Compl. at 5. In particular, the affidavit accused plaintiff of "the unauthorized removal of sunglasses from the [e]state." *Id*. at 6. According to plaintiff, this accusation was false because Mr. Roglieri had instructed her "to retrieve exempt personal items, including shoes, clothing, family photographs, and cigars for his family." *Id*.

Even so, plaintiff returned all of the items. Compl. at 6. The representative reviewed them, determined that "they had no estate value," and returned them to plaintiff, "except the cigars, which were retained despite being unboxed and worthless." *Id*. "Later, it was discovered that cigars were included in the auction of a large cigar case, raising legal questions about the sale of tobacco products without proper licensing." *Id*. Defendant acknowledged this issue in a text message. *Id*. But the SAM representative "never corrected her false affidavit." *Id*.

Plaintiff alleges that "[t]he pink box that held the sunglasses was never removed from the [e]state." Compl. at 6. Instead, plaintiff alleges that she "personally handed the box to the SAM representative" when plaintiff was granted access to the estate under the supervision of the SAM representative. *Id*. According to plaintiff, the "false affidavit caused reputational harm and was used to justify" plaintiff's "unlawful eviction" even though "no eviction proceeding, order, or hearing occurred beforehand." *Id*.

Plaintiff further alleges that items belonging to her, such as an office chair, "were sold without notice or inventory." Compl. at 6. Although some items were returned to her after she "provided proof of ownership," defendant never provided plaintiff with a written inventory that distinguished between Mr. Roglieri's property and that of others, including her own. *Id*. In plaintiff's view, this "reflects gross mismanagement, negligence, and a broader abuse of power in the administration of the bankruptcy estate." *Id*. at 6–7.

Plaintiff alleges that her unlawful eviction from the Property is part of a "broader pattern of misconduct during [defendant's] tenure as Chapter 7 trustee." Compl. at 7. As she explains, defendant seized and concealed high-value items, including twenty-five boxes of wine, shoes, clothing, and sunglasses, from Mr. Roglieri's estate. *Id*. Plaintiff alleges that some of the wine belonged to her. *Id*. According to plaintiff, these items were not listed on defendant's original asset reports and were only acknowledged after Mr. Roglieri raised concerns. *Id*. Although plaintiff's wine was "eventually returned," there was "significant delay and confrontation." *Id*. In plaintiff's view, defendant's "shifting explanations suggest an attempt to justify unlawful conduct retroactively," which violated the bankruptcy code "and reflects bad faith administration, conversion, and abuse of process." *Id*.

On May 23, 2025, defendant resigned as Chapter 7 trustee in Mr. Roglieri's bankruptcy case. Compl. at 7. According to plaintiff, "his resignation was the result of escalating scrutiny over his handling of the [e]state, not a voluntary act." *Id*. at 8.

## III.  LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id*.

Rule 12(b)(1) motions can be "facial" or "fact-based." *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016). A "facial" Rule 12(b)(1) motion is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id*. at 56. Under those circumstances, the plaintiff bears no evidentiary burden. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). Instead, the court must determine whether the complaint and its exhibits plausibly allege facts giving rise to subject-matter jurisdiction. *Carter*, 822 F.3d at 56.

In contrast, a "fact-based" Rule 12(b)(1) motion permits a defendant to proffer evidence outside of the pleading. *See Carter*, 822 F.3d at 57. In that scenario, the plaintiff will ordinarily need to come forward with evidence of their own to controvert the defendant's showing. *Id*. If the defendant identifies "material and controverted" extrinsic evidence, the court "will need to make findings of fact in aid of its decision." *Id*. However, "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show [subject-matter jurisdiction]," the plaintiff may rely on their pleading. *Id*.

IV.   **DISCUSSION**

As an initial matter, plaintiff is *pro se*. That means she is not represented by an attorney. Therefore, her pleadings and filings must be held to less stringent standards than those that might be drafted by a lawyer. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). As the Second Circuit has explained, *pro se* filings must be "construed liberally" with "special solicitude" and interpreted to raise the strongest claims they suggest. *See, e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013). "This is particularly so when the *pro se* plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Even so, plaintiff's complaint must be dismissed. "There is no question that a trustee in bankruptcy may be held personally liable for breach of his fiduciary duties," but the remedy for such a breach usually lies in the bankruptcy court, which is empowered to impose a surcharge "on the fiduciary in the amount of the actual or estimated financial harm." *In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985) (collecting cases).

There may be situations in which litigation against a trustee outside the bankruptcy action is warranted. But because "[a] trustee in bankruptcy is an officer of the court that appoints him," the court that appointed him "has a strong interest in protecting him from unjustified liability for acts taken within the scope of his official duties." *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

"A well-recognized line of cases starting with *Barton v. Barbour*, 104 U.S. 126 (1881), extends such protection by requiring leave of the appointing court before a suit may go forward in another court against the trustee." *In re Lehal Realty Assocs.*, 101 F.3d at 276 (collecting cases). "The Second Circuit has recognized that the *Barton* Doctrine extends to bankruptcy as well as receivership, and lower courts have applied it to declaratory judgment actions, as well as

- 6 -

suits seeking damages." *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 772 (S.D.N.Y. 2015) (cleaned up). "The *Barton* doctrine is jurisdictional in nature, and failure to seek leave of the receiver's appointing court bars exercise of subject matter jurisdiction over any third-party suit." *Id*. (collecting cases).

Broadly construed, the allegations in plaintiff's complaint involve conduct that is covered by the *Barton* doctrine. Plaintiff alleges that defendant violated her constitutional rights when he entered the Property without permission, changed the locks, unlawfully evicted her, took actions to secure Mr. Roglieri's assets, including certain personal items, and performed other tasks, such as preparing to liquidate Mr. Roglieri's assets.

This conduct, even though it is allegedly wrongful or unlawful, would require leave of the bankruptcy court that appointed defendant before filing this lawsuit in this court. *See In re Cumberbatch*, 657 B.R. 683, 697 (E.D.N.Y. Bankr. 2024) (applying *Barton* doctrine to dismiss the plaintiffs' claims for unlawful eviction against agents of Chapter 7 trustee where plaintiffs did not seek leave of bankruptcy court prior to filing).

Plaintiff does not claim that she has sought or received leave from the bankruptcy court. Instead, plaintiff argues that defendant's conduct is not shielded by the *Barton* doctrine because it "was ultra vires outside the scope of his authority and both retaliatory and unconstitutional." Dkt. No. 21 at 2. According to plaintiff, "[t]his lawsuit is not an attempt to interfere with the administration of the bankruptcy estate." *Id*. at 2.

This argument does not permit a different outcome. Although some courts recognize an exception to the *Barton* doctrine where a trustee acts outside of, or beyond the scope of, his legal authority, "the Second Circuit has not yet endorsed" any of these non-statutory exceptions to the

- 7 -

*Barton* doctrine.[3]  *See, e.g.*, *Plimpton v. Bank of Jackson Hole*, 2021 WL 765243, at *12 (D. Conn. Feb. 26, 2021) (collecting cases); *see also In re MF Global Holdings Ltd.*, 562 B.R. 866, 876 (S.D.N.Y. 2017) ("Courts have consistently applied the *Barton* doctrine broadly to prevent suits against court-appointed officers in a wide variety of circumstances[.]").

To be clear, this does not mean that plaintiff has no avenue to recover against defendant for alleged wrongs.  The *Barton* doctrine "does not preclude all suits against a trustee for actions taken in their official capacity."  *Brookins v. Napolitano*, 2025 WL 297390, at *2 (D. Conn. Jan. 24, 2025).  Instead, a plaintiff "must simply obtain leave of the court that appointed the trustee before suing the trustee in another court."  *Plimpton*, 2021 WL 765243, at *11 (cleaned up).

This is a sound requirement.  The bankruptcy court is the subject matter expert, both in the general sense (when it comes to the rules governing a trustee's power) and, specifically, on the legal obligations of defendant with respect to Mr. Roglieri's estate (and whether any of that conduct might have violated those legal obligations).

With that in mind, the *Barton* doctrine clearly applies to this case.  Plaintiff is alleging that defendant engaged in conduct (including but not limited to entering the Property) before the bankruptcy court permitted it, and took certain actions (including but not limited to liquidating estate assets) in ways that violated the bankruptcy code.  Those are issues that the bankruptcy court is particularly well-suited to review to determine whether a third-party tort suit might be warranted.  As the Seventh Circuit has explained, the leave-of-bankruptcy-court requirement

---

[3] Under 28 U.S.C. § 959(a), a trustee "may be sued, without leave of the court appointing them, with respect to any of their acts or transactions carrying on business connected with such property."  However, that exception "does not apply where, as here, a trustee acting in his official capacity conducts no business connected with the property other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate."  *In re Lehal Realty Assocs.*, 101 F.3d at 276.

- 8 -

"enables bankruptcy judges to monitor the work of the trustees more effectively." *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998).

Again, plaintiff has not claimed that she received leave, which means that this action must be dismissed for lack of subject matter jurisdiction. But assuming, for present purposes, that the *Barton* doctrine did not bar plaintiff's constitutional claims, this lawsuit would still have to be dismissed. Federal courts only have "original" jurisdiction over cases in which: (1) there is a "federal question," in that a colorable claim arises under the "Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331; or (2) when there is "complete diversity of citizenship" and at least $75,000 in controversy between the parties, 28 U.S.C. § 1332.

Plaintiff is a Poughkeepsie resident and defendant is a lawyer in Albany. Because both parties are residents of New York, "complete diversity of citizenship" is absent. *See Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53–54 (2d Cir. 2019) (explaining the meaning of "citizenship" in a § 1331 diversity action). Accordingly, the Court would lack the subject-matter jurisdiction needed to entertain this dispute unless it raised one or more "federal questions" under § 1332; *i.e.*, claims that arise under the constitution or a federal law.

Plaintiff's complaint alleges that defendant violated her constitutional rights. The federal law that would apply is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The problem for plaintiff is that defendant was not "acting under color of state law" when he performed his duties, even if wrongfully, as the Chapter 7 trustee in Mr. Roglieri's bankruptcy estate. To avoid dismissal, a § 1983 plaintiff must plausibly allege that the challenged conduct

constitutes "state action." *See Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). "[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

As the Supreme Court has recognized, "there is no single test to identify state actions and state actors." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294 (2001). Although a host of factors can bear on this question, three main tests have emerged:

> For purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up).

Defendant, as a Chapter 7 bankruptcy trustee, does not satisfy any of these tests for "state action." First, federal courts have repeatedly held that private attorneys and private law firms do not engage in "state action" or become "state actors" because they are performing licensed legal duties. *See Harrison v. New York*, 95 F. Supp. 3d 293, 329 (E.D.N.Y. 2015) (collecting cases). Second, and more particularly, "courts have determined that bankruptcy trustees are not state actors because of their appointment as bankruptcy trustees." *Mortimer v. Grodsky*, 2020 WL 6729118, at *4 (S.D.N.Y. Nov. 13, 2020) (collecting cases).

Defendant, as a trustee appointed by a federal bankruptcy court, might be considered to have been acting "under color of federal law." In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).

"In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under [42 U.S.C. § 1983].'" *Iqbal*, 556 U.S. at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006)). Importantly, though, "[b]ecause implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or category of defendants.'" *Id.* at 675 (citation omitted). As the Supreme Court has cautioned, "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017).

A review of the applicable case law confirms that the *Bivens* remedy is unavailable to plaintiff. In fact, the Seventh Circuit recently rejected an attempt to expand the *Bivens* remedy to a claim against a Chapter 7 bankruptcy trustee. *Estate of Wattar v. Fox*, 71 F.4th 547, 553 (7th Cir. 2023) (concluding "the unique nature of a bankruptcy trustee's role is more than sufficient reason to pause before recognizing a *Bivens* action against a trustee"); *Balser v. Dep't of Justice, Office of U.S. Trustee*, 327 F.3d 903, 909–11 (9th Cir. 2003) (rejecting a *Bivens* claim against Chapter 7 bankruptcy trustee).

Plaintiff's complaint also asserts a number of state-law claims, including for conversion, invasion of privacy, intentional infliction of emotional distress, abuse of process, and illegal and wrongful eviction. Compl. at 8 –9. As explained *supra*, this Court cannot entertain these state-

law claims on the basis of its "diversity" jurisdiction because both parties are domiciled in New York. Instead, this Court acquired "supplemental jurisdiction" over these claims when plaintiff filed her suit in this federal forum. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (explaining contours of supplemental jurisdiction).

However, when a federal court has dismissed all of the claims over which it has original jurisdiction (*i.e.*, the federal-law claims under § 1983), the trial court should decline to exercise supplemental jurisdiction over any state-law claims. *See, e.g.*, *Kolari v. New York-Presbyterian Corp.*, 455 F.3d 118, 122 (2d Cir. 2006). Because all of plaintiff's federal-law claims have to be dismissed, the Court must decline to exercise supplemental jurisdiction over her state-law claims. Accordingly, plaintiff's state-law claims will be dismissed without prejudice.

The final question is whether plaintiff should be given an opportunity to try to amend her pleading to cure these defects. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [she] has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up). However, if it "appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

After considering the matter, leave to amend must be denied. Under the *Barton* doctrine, this Court lacks subject matter jurisdiction to consider plaintiff's third-party tort action against the Chapter 7 trustee for any of the actions taken during the course of his work on Mr. Roglieri's bankruptcy estate. To the extent that the *Barton* doctrine might not bar plaintiff's constitutional claims, she cannot establish, as a matter of law, that defendant is either a state actor for purposes of § 1983 or that, to the extent he might be a federal actor, the *Bivens* remedy should be extended

to cover his conduct. And because plaintiff's federal-law claims must be dismissed, there is no basis on which to retain jurisdiction over her state-law claims Plaintiff remains free to attempt to replead those claims in state court.

V. **CONCLUSION**

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 11) is GRANTED; and

2. Plaintiff's complaint is DISMISSED without leave to amend.[4]

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated: November 21, 2025
Utica, New York.

Anthony J. Brindisi
U.S. District Judge

---

[4] In a response to plaintiff's sur-reply, defendant suggests that plaintiff might have used an AI tool to generate an inaccurate legal citation. *See* Dkt. No. 26. The Court refrains from reproducing the citation in this footnote. And while the Court declines to wade into this dispute, both parties are cautioned that the use of "hallucinated" or fake case citations in legal submissions to a federal court is sanctionable conduct.

- 13 -