**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Esq., Successor Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

**GERON LEGAL ADVISORS LLC**
*Counsel to Yann Geron, Esq., Plan Administrator*
370 Lexington Avenue, Suite 1208
New York, New York 10017
Telephone: (646) 560-3224
Yann Geron, Esq.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:                                                          Case No.: 24-10157-1-pgr

KRIS DANIEL ROGLIERI,                        Chapter 7

                    Debtor.
---------------------------------------------------------X

In re:                                                          Case No.: 24-11029-1-pgr

PRIME CAPITAL VENTURES, LLC,          Chapter 11 (Plan Confirmed)

                    Debtor.
---------------------------------------------------------X

**JOINT MOTION SEEKING ENTRY OF AN ORDER: (I) AUTHORIZING AND
APPROVING, PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, THE RETENTION OF
PHILLIPS AUCTIONEERS LLC IN ASSOCIATION WITH BACS & RUSSO AS
AUCTIONEER TO THE ESTATES TO MARKET AND SELL A CERTAIN RICHARD
MILLE WATCH IDENTIFIED AS AN RM 52-01 TOURBILLON SKULL; (II)
AUTHORIZING AND APPROVING, PURSUANT TO 11 U.S.C. §§ 363(b), (f), (m) AND
(n), THE SALE OF THE RICHARD MILLE WATCH IDENTIFIED AS AN RM 52-01
TOURBILLON SKULL PURSUANT TO THE SELLERS' AUCTION AGREEMENT
WITH ENHANCED HAMMER POTENTIAL; (III) AUTHORIZING AND APPROVING
THE FORM AND MATTER OF NOTICE OF THE AUCTION SALE; (IV)
AUTHORIZING AND APPROVING THE DIVISION OF THE NET PROCEEDS FROM
THE SALE AND PAYMENT TO THE AUCTIONEER; AND
(V) GRANTING RELATED RELIEF**

TO THE HONORABLE PATRICK G. RADEL,
UNITED STATES BANKRUPTCY JUDGE

Marianne T. O'Toole, Esq., solely in her capacity as Successor Chapter 7 Trustee

("Roglieri Successor Trustee") of the estate of Kris Daniel Roglieri ("Roglieri"), and Yann Geron,

1

Esq., , formerly the chapter 11 trustee of Prime Capital Ventures, LLC ("Prime") and now solely in his capacity as Plan Administrator of Prime's confirmed chapter 11 plan (the "Prime Administrator" and, together with the Roglieri Successor Trustee, the "Trustees"), by their respective undersigned counsel, jointly seek entry of an Order: (i) authorizing and approving, pursuant to 11 U.S.C. §§ 327(a) and 328, the Trustees' retention of Phillips Auctioneers LLC in association with Bacs & Russo ("Phillips") to market and sell a certain Richard Mille watch identified as an RM 52-01 Tourbillon Skull ("RM Skull Watch"); (ii) authorizing and approving, pursuant to 11 U.S.C. §§ 363(b), (f), (m) and (n), the sale of the RM Skull Watch pursuant to the Sellers' Auction Agreement with Enhanced Hammer Potential among the Trustees and Phillips ("Auction Agreement"); (iii) approving the form and matter of notice of the auction sale of the RM Skull Watch; (iv) authorizing and approving the division of the proceeds from the sale of the RM Skull Watch 50/50 between the Roglieri Estate and the Prime post-confirmation trust (together, the "Estates"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and authorizing payment to Phillips; and (v) granting such other and further relief as the Court deems just and proper. In support of the Motion, the Trustees respectfully represent as follows:

## STATUTORY PREDICATES FOR RELIEF REQUESTED

1. The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a), 327, 328 and 363 ("Bankruptcy Code"), Rules 2002, 2014, 6004, 6005 and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Local Bankruptcy Rules 2014-1, 6004-1 and 6005-1.

2. This Court has jurisdiction of the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and venue of this case and the Motion is proper in this District pursuant 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On January 12, 2024, Compass-Charlotte 1031, LLC filed a complaint with the United States District Court for the Northern District of New York ("District Court") against, among others, Prime, which was assigned Case No. 24-cv-00055 ("District Court Action"). Roglieri is the sole member of Prime.

4. Paul A. Levine, Esq. was appointed by the District Court as the federal equity receiver for the defendants in the District Court Action, including Prime ("Receiver").

5. On January 26, 2024, counsel to the Receiver obtained possession of the RM Skull Watch, which RM Skull Watch remains in the possession of the Receiver.

6. On February 15, 2024, Roglieri filed a voluntary petition pursuant Chapter 11, Subchapter V of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of New York ("Court"). On his Schedule A/B that was filed with the Court, Roglieri listed the RM Skull Watch as an asset of his bankruptcy estate,

7. On May 14, 2024, the Receiver filed a voluntary petition for Prime under Chapter 11 of the Bankruptcy Code in the Court ("First Prime Case"). On the Schedule A/B that was filed with the Court, the Receiver listed the RM Skull Watch as an asset of Prime's bankruptcy estate;

8. By Order entered on May 15, 2024, the Court converted Roglieri's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

9. On May 15, 2024, Christian H. Dribusch was appointed as Chapter 7 Trustee of Roglieri's estate ("Prior Roglieri Trustee").

10. On July 23, 2024, the First Prime Case was dismissed.

11. On September 16, 2024, the Prior Roglieri Trustee filed a voluntary petition for Prime under Chapter 11 of the Bankruptcy Code in the Court. On the Schedule A/B that was filed

3

with the Court, the Prior Roglieri Trustee listed the RM Skull Watch as an asset of Prime's bankruptcy estate.

12.     At a hearing conducted on April 23, 2025, the Court, inter alia, denied a motion without prejudice respecting the RM Skull Watch and approved the Receiver's continued possession of the RM Skull Watch pending further Order of the Court. See Case No.: 24-10157-1-pgr, ECF Nos. 455 (audio), 456 (Order).

13.     On May 27, 2025, Marianne T. O'Toole was appointed pursuant to section 703(a) of the Bankruptcy Code as successor interim trustee of Roglieri's Chapter 7 bankruptcy estate.

14.     On June 5, 2025, the United States Trustee appointed Yann Geron, Esq. as Chapter 11 Trustee for Prime. By Order entered on June 10, 2025, the Court approved the appointment of Yann Geron, Esq. as Chapter 11 Trustee for Prime.

15.     By Order entered on February 11, 2026, the Court approved the Disclosure Statement for the Prime Trustee's Plan of Liquidation and confirmed the Prime Trustee's Plan of Liquidation ("Prime Confirmed Plan").

16.     The Estates each assert an interest in the RM Skull Watch. The RM Skull Watch was purchased in 2023 for $2.225 million. There are no known liens on the RM Skull Watch. The Trustees believe that the RM Skull Watch has value that can be realized through a sale.

17.     Phillips is a well-known auction house with an established watch department that is well versed in sale of watches similar to the RM Skull Watch. Phillips' live *New York Watch Auction: XIV* is scheduled for June 13-14, 2026 at Phillips' New York location at 432 Park Avenue, New York, New York 10022 ("Auction").

18.     The Trustees conferred and determined, in their business judgment, that: (a) the retention of Phillips as auctioneer to market and sell the RM Skull Watch pursuant to the Auction

4

Agreement is in the best interests of the Estates; (b) the sale of RM Skull Watch at the Auction

will maximize the value of the RM Skull Watch for the benefit of the Estates; and (c) the division

of the proceeds of the sale of the RM Skull Watch 50/50 between the Estates avoids litigation and

is reasonable under the circumstances of these cases.

**RELIEF REQUESTED AND BASIS FOR RELIEF**

19. By this Motion, the Trustees jointly seek entry of an Order: (a) authorizing and

approving, pursuant to sections 327(a) and 328 of the Bankruptcy Code, the Trustees' retention of

Phillips to market and sell the RM Skull Watch pursuant to Auction Agreement; (b) authorizing

and approving, pursuant to sections 363(b), (f), (m) and (n), the sale of the RM Skull Watch

pursuant to Auction Agreement; (c) approving the form and matter of notice of the sale of the RM

Skull Watch at the Auction; (d) authorizing and approving the division of the proceeds from the

sale of the RM Skull Watch 50/50 between the Estates; and (e) granting such other and further

relief as the Court deems just and proper. A proposed Order is annexed as **Exhibit A**.

**A.** **The Retention of Phillips Should be Approved**

20. The Trustees hereby seek to retain Phillips as auctioneer to the Estates pursuant to

sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 6005 and Local

Bankruptcy Rules 2014-1 and 6005-1. In support of the retention, Phillips submits the declaration

of Hartley Waltman, Esq., in-house general counsel to Phillips ("Declaration"), a copy of which

is annexed as **Exhibit B**.

21. Pursuant to section 327(a) of the Bankruptcy Code, subject to Court approval, the

Trustees "may employ one or more . . . auctioneers . . . that do not hold or represent an interest

adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying

out the trustee's duties under this title." 11 U.S.C. § 327(a).

22.      The United States Court of Appeals for Second Circuit defines an adverse interest as (1) possessing or asserting "'any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant'" or (2) possessing "'a predisposition under circumstances that render such a bias against the estate.'" <u>Bank Brussels Lambert v. Coan (In re Arochem Corp.)</u>, 176 F.3d 610, 623 (2d Cir. 1999) (citation omitted).

23.      Pursuant to section 101(14) of the Bankruptcy Code, to be "disinterested" means that the person:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

24.      Pursuant to section 328(a) of the Bankruptcy Code, subject to Court approval, the Trustees "may employ or authorize the employment of a professional person under section 327 . . . of this title, . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

25.      Pursuant to Bankruptcy Rule 2014(a), the "court may approve the employment of an . . . auctioneer . . . only on the trustee's application." FED. R. BANKR. P. 2014(a). Local Bankruptcy Rule 2014-1 sets forth certain additional requirements with respect to applications for employment of professional persons.

26.      Pursuant to Bankruptcy Rule 6005,  "[a] court order approving the employment of

an . . . auctioneer must set the amount or rate of compensation." FED. R. BANK. P. 6005. Pursuant to Local Bankruptcy Rule 6005-1(a), the compensation and reimbursement of expenses for an auctioneer appointed by the Court is limited unless the Court orders otherwise.

27.     The Trustees have determined that the sale of the RM Skull Watch is in the best interests of the Estates and their respective creditors, and the Trustees jointly selected Phillips as their auctioneer to market and sell the RM Skull Watch. As set forth above and in the Declaration, Phillips is a well-known auction house with an established watch department that is well versed in sale of watches similar to the RM Skull Watch. The Trustees selected Phillips because of its reputation and expertise selling watches similar to the RM Skull Watch.

28.     As reflected in the Declaration, Phillips does not hold or represent any interest adverse to the Estates and has no connections with Roglieri or Prime, their creditors or any other parties in interest or their respective attorneys in these cases. To the best of the Trustees' knowledge, Phillips is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, and Phillips does not hold or represent an interest adverse to the Estates.

29.     As set forth in the Declaration and the Auction Agreement, Phillips will be entitled to compensation in the form of a buyer's premium calculated as follows: (a) 27% of the hammer price up to and including $1,000,000; plus (b) 21% of the portion of the hammer price above $1,000,000 up to and including $6,000,000; plus (c) 14.5% of the portion of the hammer price above $6,000,000 ("Buyer's Premium"). As further set forth in the Declaration and the Auction Agreement, Phillips will be responsible for, inter alia, the actual packing and shipping charges to deliver the RM Skull Watch to Phillips, any applicable photography fees and any applicable marketing fees, and will not be seeking reimbursement of such expenses from the Estates.

30.     The Trustees believe that the proposed compensation is reasonable in light of: (a)

industry practice; (b) market rates charged for comparable services by other auction houses; (c) Phillips's substantial experience and expertise; and (d) the nature and scope of work to be performed by Phillips. Accordingly, the Trustees submit that the proposed compensation to Phillips is reasonable and market based under the standards set forth in section 328(a) of the Bankruptcy Code.

31.     As set forth in Section D below, and consistent with the Auction Agreement, to the extent the Court approves the relief requested in this Motion and the Trustees receive the Sale Proceeds, i.e., the Hammer Price, plus any applicable Enhanced Hammer Amount, plus the Buyer's Premium (each as defined in the Auction Agreement), from Phillips, the Trustees request authority to pay Phillips the Buyer's Premium from the Estates without further application or Order of the Court.

32.     Based on the foregoing, the Trustees respectfully request that the Court authorize the Trustees to retain Phillips as their auctioneer to market and sell the RM Skull Watch.

**B.     The Sale of the RM Skull Watch Should Be Authorized**

33.     The Trustees also seek, pursuant to sections 363(b), (f), (m) and (n), authority to sell the RM Skull Watch pursuant to the Auction Agreement, a copy of which is annexed as **Exhibit C**.

34.     Pursuant to section 704(a) of the Bankruptcy Code, Chapter 7 trustees are required to "reduce to money the property of the estate for which such trustee serves." 11 U.S.C. §704(a)(1). Thus, the Roglieri Successor Trustee is statutorily charged with liquidating property of the Roglieri estate as expeditiously as is compatible with the best interests of the estate. See id.

35.     Pursuant to the Prime Confirmed Plan, Prime's interest in the RM Skull Watch is included among the assets of Prime to be liquidated for the benefit of the Prime post-confirmation

trust and its creditors.

36.     Section 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 govern the sale of assets outside of the ordinary course of a debtor's business. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

37.     Under Bankruptcy Rule 6004(f)(1), a trustee is permitted to sell property of the estate pursuant to section 363(b) of the Bankruptcy Code by private sale or public auction. See FED. R. BANKR. P. 6004(f)(1). Local Bankruptcy Rule 6004-1(c) sets forth certain requirements for sale motions. See generally Local Rule 6004-1.

38.     In this case, the Trustees have exercised their sound business judgment in determining that the sale of the RM Skull Watch by Phillips pursuant to the Auction Agreement is appropriate and in the best interests of the Estates. The salient terms of the Auction Agreement are as follows:[1]

    a.    Delivery. Phillips will arrange for delivery of the RM Skull Watch from its current location to Phillips' location.

    b.    Risk of Loss and Insurance. Risk of loss shall pass to Phillips after Phillips has removed the RM Skull Watch from its current location. Phillips will have the Trustees named as additional insureds and loss payees on its insurance policy with respect to the RM Skull Watch, which will be evidenced by a written certificate of insurance provided to the Trustees prior to Phillips' removal of the RM Skull Watch from its current location.

    c.    Conditions of Sale. The RM Skull Watch will be sold at the Auction pursuant to Phillips' New York Conditions of Sale for Live Auctions ("Sale Conditions"), a copy of which is annexed as **Exhibit D**.

    d.    Enhanced Hammer Amount. Phillips will pay the Trustees an Enhanced Hammer Amount that is equal to 5 percent (5%) of the Hammer Price, i.e., the amount of the highest bid accepted for the RM Skull Watch at the Auction.

---

[1]     This is intended only to summarize the general terms of the Auction Agreement, and all parties are respectfully referred to the Auction Agreement for its specific terms.

e.   Payment. Phillips will send the Trustees the Sale Proceeds, i.e., the Hammer Price, plus any applicable Enhanced Hammer Amount, plus the Buyer's Premium, within five (5) working days after Phillips receives the full cleared payment from the buyer.

f.   Phillips' Commission. Phillips shall be entitled to the full amount of the Buyer's Premium, less any applicable Enhanced Hammer Amount as compensation for its services. For the purposes of the Trustees obtaining Court approval following the Auction, Phillips shall remit the entire Buyer's Premium to the Trustees along with the Net Sale Proceeds. The Trustees agree that the Buyer's Premium shall be payable to Phillips in full, less any applicable Enhanced Hammer Amount, and shall be remitted back to Phillips within Seven (7) Working Days of the date payment of the Sale Proceeds is made to the Trustees in cleared funds.

g.   Sales Tax. Phillips will collect sales taxes from the buyer and remit that tax payment to the appropriate taxing authority where and when we are required to do so under applicable law. The Estates will not be responsible for collecting any sales tax from the buyer.

h.   Sale Expenses to be Paid by the Estates. The Estates shall be responsible for: (a) any actual packing and shipping charges, to be approved by Trustees in advance in writing, if the RM Skull Watch must be returned to Trustees from Phillips; and (b) only with the prior written consent of the Trustees, any actual costs related to repair, restoration, and/or any certificates or physically non-invasive tests or analyses.

i.   Withdrawal Expenses. If Phillips agrees to the withdrawal of the RM Skull Watch from the Auction, or an order of the Court authorizes and/or directs such withdrawal for any reason, or if Phillips withdraws it per the Auction Agreement, then the Estates will pay Phillips an amount equal to the out-of-pocket costs and expenses actually incurred by Phillips in connection with the Property in an amount not to exceed $5,000.00; provided however, the Estates shall only be responsible for such amounts if the withdrawal of the Property occurs after April 27, 2026.

j.   Disputes and Claims/Jurisdiction. The Court shall retain exclusive jurisdiction with respect to the interpretation of any of the terms and conditions in the Auction Agreement; challenges, disputes, or claims arising out of or in connection with the Auction Agreement; and claims arising while the RM Skull Watch is in the care, custody or control of Phillips or the Trustees.

39.   Because the sale of the RM Skull Watch is subject to competing bids at the Auction itself, the ability of the Trustees to receive the highest and best value for the RM Skull Watch is increased. The fairness and reasonableness of the consideration to be received by the Estates will

10

be demonstrated by a "market check" through the Auction, which is the best means for establishing that a fair and reasonable price is being paid. Following the Auction Sale, Phillips shall file a report of sale of the RM Skull Watch with the Court in accordance with Local Rule 6005-1(c).

40.    The Auction Agreement was negotiated at arm's length, and the Trustees believe that it is in the best interests of the Estates for the RM Skull Watch to be sold per the Auction Agreement.

41.    Section 363(f) of the Bankruptcy Code permits the sale of assets to be free and clear of interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest is in bona fide dispute; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the property. See 11 U.S.C. § 363(f). Accordingly, a trustee may sell property of a bankruptcy estate free and clear of interests if one of the five conditions under section 363(f) is satisfied. See In re Grubb & Ellis Co., Case No. 12-10685 (MG), 2012 Bankr. LEXIS 1279, at *31 (Bankr. S.D.N.Y. Mar. 27, 2012) (discussing Bankruptcy Code § 363(f)); In re Borders Group, Inc., 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011) (discussing Bankruptcy Code § 363(f)). In this case, there are no known liens on the RM Skull Watch and the RM Skull Watch can be sold pursuant to section 363(f) of the Bankruptcy Code.

42.    Section 363(m) of the Bankruptcy Code affords protection to a good faith purchaser in any interest in property purchased from an estate, whether the sale conducted is later reversed or modified on appeal. Specifically, section 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless

such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m); see also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").

43.    The United States Court of Appeals for Second Circuit has held that a party would have to show fraud or collusion between a buyer and the debtor-in-possession or trustee in order to demonstrate a lack of good faith. See Kabro Assocs., L.L.C. v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 276 (2d Cir. 1997) (citations omitted) ("[t]ypically the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the Trustee, or an attempt to take grossly unfair advantage of other bidders."); see also In re Bakalis, 220 B.R. 525, 537 (Bankr. E.D.N.Y. 1998).

44.    Here, the Auction will be conducted at arm's length with an opportunity for competitive bidding. Further, as reflected in the Sale Conditions, all bidders must register prior to bidding, supplying information and references as required by Phillips. See Exhibit D at ¶4. Finality of the sale is critical to the Estates and is required by Phillips, as the successful bidder needs assurances that its purchase of the RM Skull Watch will not be subject to future attack by any person or entity. Additionally, such assurance is necessary to generate the maximum purchase price for the RM Skull Watch.

45.    Accordingly, as part of the approval of the Auction Agreement, the Trustees request

(and Phillips requires) that the Court find that the successful bidder at the Auction is entitled to the protections available under section 363(m) of the Bankruptcy Code, and that the sale of the RM Skull Watch at the Auction shall not be avoidable under section 363(n) of the Bankruptcy Code.

46.     For these reasons, the Trustees submit that the sale of the RM Skull Watch pursuant to the Auction Agreement should be authorized and approved.

**C.     The Form, Manner, and Extent of Notice of the Auction Should be Approved**

47.     By this Motion, the Trustees also seeks approval of the proposed form, manner and extent of notice of the Auction.

48.     Notice, substantially in the form annexed as **Exhibit E**, will be provided in accordance with Bankruptcy Rules 6004(a) and (c) and 2002(a)(2) to all creditors listed in the Roglieri's and Prime's schedules, all creditors who have filed proofs of claim in the Roglieri and Prime cases, all parties who have filed a notice of appearance in the Roglieri's and Prime's cases, all known parties with an interest in the RM Skull Watch (if any), and the Office of the United States Trustee. The Notice sets forth all the information a potential bidder or other party in interest should require about the Auction to be conducted by Phillips, including the date and location of the Auction and details on how to obtain further information regarding the sale of the RM Skull Watch.

49.     In addition, the Trustees are informed that Phillips' marketing will include, inter alia: (a) a printed sale catalogue with detailed imagery; (b) an editorial feature on Phillips' website; and (c) promotion on dedicated Phillips' Watches YouTube and social media platforms.

50.     The Trustees submit that good and sufficient notice of the Auction will be given and that no additional notice is required.

13

**D.** **The Division of the Sale Proceeds and Payment to Phillips Should be Approved**

51.     In connection with the proposed sale of the RM Skull Watch, the Trustees also seek approval of the division of the sale proceeds 50/50 between the Estates and authority to pay Phillips from the Estates.

52.     Settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. See In re Dewey & Leboeuf L.L.P., 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012).

53.     Under Bankruptcy Rule 9019, the court has the authority to "approve a compromise or settlement." FED. R. BANKR. P. 9019(A). A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement. See In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Comm. for Indep. S'holders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968)). See also Topwater Exclusive Fund III, L.L.C. v. SageCrest II, L.L.C. (In re Sagecrest II), Nos. 3:10cv978 (SRU), 3:10cv979 (SRU), 2011 WL 134893, at *8-9 (D. Conn. Jan. 14, 2011); Cousins v. Pereira (In re Cousins), No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010); In re Chemtura Corp., 439 B.R. 561, 593–94 (Bankr. S.D.N.Y. 2010); In re Lehman Bros. Holdings, Inc., 435 B.R. 122, 134 (S.D.N.Y. 2010).

54.     A court's responsibility is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Chemtura, 439 B.R. at 594 (quoting In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)) (internal quotations omitted). However, the court is not required to go so far as to conduct a trial on the terms to approve a settlement. Id. Rather, the court may rely upon the opinions of the trustee, the parties and their attorneys to evaluate the settlement and to make an independent judgment. See In re Adelphia Commc'ns.

14

Corp., 368 B.R. 140, 225-26 (Bankr. S.D.N.Y. 2007). The court must inform itself of "all facts

necessary for an intelligent and objective opinion of the probabilities of ultimate success should

the claim be litigated." O'Connell v. Packles (In re Hilsen), 404 B.R. 58, 70 (Bankr. E.D.N.Y.

2009) (quoting TMT Trailer Ferry, 390 U.S. at 424) (internal quotations omitted). The United

States Court of Appeals for the Second Circuit outlined the test for consideration of settlements

under the Bankruptcy Rules in Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium

Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007). The burden is on the settlement proponent to

persuade the court that the settlement is in the best interests of the estate. See 8 NORTON

BANKRUPTCY LAW AND PRACTICE 3D § 167:2 (3d ed. 2011).

55.     Pursuant to section 105(a) of the Bankruptcy Code, the Court "may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).

56.     Here, the Trustees each asserted an interest in the RM Skull Watch, which was

listed by both Roglieri and Prime as an asset of each of their respective Schedules A/B. However,

the Trustees recognized that it was prudent to resolve the ownership dispute quickly and without

litigation. To this end, the Trustees engaged in arm's length negotiations following which they

agreed to split the proceeds from the sale of the RM Skull Watch 50/50 between the Estates. The

proposed settlement provides finality for both Estates, avoids litigation and the risks and costs

associated with litigation, ensures both Estates share equally in the sale proceeds, and is the

product of arm's length bargaining. As a result of the foregoing, the Trustees exercised their best

business judgment in agreeing to the 50/50 split of proceeds from the sale of the RM Skull Watch.

57.     As reflected in the Auction Agreement, Phillips agreed to remit the entire Sale

Proceeds, i.e., the Hammer Price, plus any applicable Enhanced Hammer Amount, plus the

Buyer's Premium, to the Trustees, provided that, Phillips will be compensated within seven (7) days. Thus, to the extent Court approves the relief requested in this Motion and the Trustees receive such Sale Proceeds, the Trustees further request authority to pay Phillips the Buyer's Premium from the Estates without further application or Order of the Court.

**E.      The Trustees Should be Granted Related Relief**

58.      Pursuant to Bankruptcy Rule 6004(h), orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. See FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h). Although little guidance is provided by either Bankruptcy Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." See 10 COLLIER ON BANKRUPTCY § 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). If an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. Id.

59.      A waiver of the stay requirement under Bankruptcy Rule 6004(h) will allow the impending Auction to proceed under the timetable requested and needed by Phillips.

60.      Based on the foregoing, the Trustees respectfully request that the Court waive the requirement  under Bankruptcy Rule 6004(h).

**NOTICE AND NO PRIOR REQUEST**

61.      Notice of this Motion will be provided in accordance with Bankruptcy Rule

2002(a)(2).

62.     Except as set forth herein, no previous request for the relief sought herein has been

made by the Trustees to this or any other court.

**WHEREFORE**, the Trustees respectfully request that this Court grant the relief requested

in this Motion, together with such further relief as this Court deems proper.

Dated: March 23, 2026
      Wantagh, New York          **LaMONICA HERBST & MANISCALCO, LLP**
                                    *Counsel to Marianne T. O'Toole, Esq., Successor Trustee*

                By:    *s/ Holly R. Holecek*
                        Holly R. Holecek, Esq.
                        A Partner of the Firm
                        3305 Jerusalem Avenue
                        Wantagh, New York 11793
                        Telephone: (516) 826-6500

Dated: March 23, 2026
      New York, New York      **GERON LEGAL ADVISORS LLC**
                                      *Counsel to Yann Geron, Esq., Plan Administrator*

                By:    *s/ Yann Geron*
                        Yann Geron, Esq.
                        370 Lexington Avenue, Suite 1208
                        New York, New York 10017
                        Telephone: (646) 560-3224

17