# **EXHIBIT C**

**PHILLIPS**

━━━━ IN ASSOCIATION WITH ━━━━

**BACS & RUSSO**

Date: 20 March 2026

# Sellers' Auction Agreement with Enhanced Hammer Potential

This document sets out the terms of the agreement between you ("**you**","**your**" and/or the "**Trustees**") and us, Phillips Auctioneers LLC in association with Bacs & Russo ("**Phillips**" "**we**", "**our**", and/or "**us**"), regarding the sale of the Property identified in Part 3 by public live auction.

This document is comprised of Part 1 (Summary of Commercial Terms), Part 2 (Terms of Sale), Part 3 (Property Schedule), and Part 4 (the Retention/Sale Order) which altogether form the terms of the agreement between you and Phillips (the "**Agreement**"). This Agreement is not binding until all parties have signed it and the Bankruptcy Court has approved it. Capitalised words are explained in the Glossary at the end of Part 2.

# Part 1
# Summary of Commercial Terms
(summarised commercial terms are subject to terms and conditions set out more fully in the Agreement)

| | |
|---|---|
| Name: Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri and Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed Chapter 11 Plan | Agreement No: 99NY1222 |
| Address:<br><br>Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri:<br>2 Depot Plaza, Suite 2E<br>Bedford Hills, NY 10507<br><br>Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed Chapter 11 Plan:<br>370 Lexington Avenue<br>Suite 1208<br>New York, NY 10017<br>United States | Email: motoole@otoolegroup.com; ygeron@geronlegaladvisors.com |
| Client Number: 977055 | |
| Property Consigned for Sale<br>See Part 3 (the "**Property Schedule**") | Scheduled Live Auction Date and Venue<br>We plan to offer the Property at the **Auction(s)** in the location(s) and on the date(s) set forth in the Property Schedule. |
| Commission You Will Pay:<br>We will not charge you a Sellers' commission on the sale of any Property. | Physical Loss and Damage to Property<br>Phillips accepts responsibility for physical loss or damage to the Property at Phillips' expense on the terms set out in Part 2 below (see Part 2, Physical Loss or Damage). |

# PHILLIPS

— IN ASSOCIATION WITH —

## BACS & RUSSO

### Sale Expenses You Pay

Any actual packing and shipping charges, to be approved by you in advance in writing, if any Property must be returned to you from Phillips.

Any actual costs related to any applicable repair, restoration and actual conservation, to be approved by you in advance in writing.

With your prior written consent, any actual costs related to any certificates or physically non-invasive tests or analyses that Phillips considers necessary to verify the authenticity, attribution or quality of the Property, provided it is approved by you in advance in writing.

(the "**Estates' Expenses**")

### Sale Expenses We Pay

Any actual packing and shipping charges related to the delivery of the Property from its current location to Phillips' New York premises ("**Phillips' Premises**").

Any applicable installation costs.

Any applicable photography fees.

Any applicable marketing fees.

(the "**Sale Expenses**")

### Delivery of the Property

Phillips will arrange delivery of the Property from its current location to the Phillips' Premises.

If the Property is unsold following the Auction, Phillips will arrange for it to be collected and for it to be returned to you in the United States.

### Fees for Withdrawn Property

See Part 2, Paragraph 6, *Withdrawal*.

### Payment

We will make payment only to the Sellers named on this Agreement.

We will send you the Property's Sale Proceeds within five (5) Working Days after we receive the full cleared payment of the **Purchase Price** from the Buyer. (see Part 2, *Payment*).
(any date above that payment is made is a "**Settlement Date**").

(See Part 2, *Payment.*)

#### Enhanced Hammer Amount

We will pay you an **Enhanced Hammer Amount** as part of the Property's Sale Proceeds that is equal to 5 percent (5%) of the Property's Hammer Price.

2

# PHILLIPS

IN ASSOCIATION WITH

## BACS & RUSSO

# Part 2
# Terms of Sale: Your Agreement With Us

## 1. PHILLIPS AS AGENT

This Agreement appoints Phillips as your exclusive agent to offer the Property for sale in the Auction from the date of entry of an order substantially in the form of the Proposed Retention/Sale Order (defined below) until the sale of the Property hereunder or its return to you, unless extended in writing (the "**Term**"). The contract for sale of the Property will be between you and the Buyer and will be as set out in Phillips' Conditions of Sale published in the Auction catalogue and/or at www.phillips.com for the relevant Auction. (the "**Conditions of Sale**"), a copy of which shall be provided to you. This Agreement shall be submitted to the United States Bankruptcy Court for the Northern District of New York (the "**Bankruptcy Court**") by Marianne T. O'Toole, Esq., solely in her capacity as Successor Chapter 7 Trustee ("**Successor Trustee**") in the Chapter 7 bankruptcy case of Kris Daniel Roglieri ("**Roglieri Estate**") pending under Case No.: 24-10157-1-pgr, and Yann Geron, Esq., solely in his capacity as Chapter 11 Trustee ("**Chapter 11 Trustee**" and, together with the Successor Trustee, the "**Trustees**" or "**Sellers**") in the Chapter 11 bankruptcy case of Prime Capital Ventures, LLC ("**Prime Estate**" and, together with the Roglieri Estate, the "**Estates**") pending under Case No.: 24-11029-pgr (together the "**Bankruptcy Cases**") in order to obtain Bankruptcy Court approval after execution and attached to an applicable motion to provide notice to allow any parties to file any objections. For the avoidance of doubt, this Agreement is conditional upon the entry of an Order in both Bankruptcy Cases (the "**Retention/Sale Order**"). If the Property remains physically with Phillips after expiration of the Term, it shall be treated as withdrawn under the terms of paragraph 6(b) below. Nothing in this paragraph shall prevent Phillips from amending or modifying its Conditions of Sale for any Auction, provided that such amendment does not vary the agreed terms of this Agreement or the Retention/Sale Order. In the event of any conflict between an Auction's published Conditions of Sale and this Agreement or the Retention/Sale Order, the terms of this Agreement and the Retention/Sale Order shall govern the rights and responsibilities of the Sellers and Phillips.

## 2. ABOUT YOU AND THE PROPERTY

To ensure Phillips can offer the Property for sale and that any Buyer will acquire full ownership rights in the Property pursuant to appropriate court order, you provide Phillips and the Buyer with the following confirmations:

(a) *Your Confirmations*: You represent and warrant to Phillips and to any Buyer that, to the best of your knowledge and belief:

    (i) The Trustees will file a joint motion (the "Retention/Sale Motion"), requesting various relief in the Retention/Sale Motion, which motion and relief is fully incorporated herein as if fully set forth, including seeking entry of the: (a) Retention/Sale Order; and (b) authorization to sell the Property under 11 U.S.C. §§ 363(b), (f), (m) and (n).

    (ii) Upon the Retention/Sale Order becoming final and non-appealable, Phillips shall be authorized to sell the Property (which will be listed in the Property Schedule to be annexed hereto as Part 3): (a) free and clear of all liens, claims, encumbrances and interests of whatever kind or nature with such liens, claims, interests and encumbrances, if any, attaching only to the Sale Proceeds in such order and

priority as they existed immediately prior to the date of the relevant Auction; and (b) upon the sale of the Property and the Purchase Price having been paid for in full and cleared funds by the successful bidder, that successful bidder shall receive along with Phillips' invoice representing the bill of sale for the Property, the rights of a good faith purchaser pursuant to Bankruptcy Code sections 363(m) and 363(n).

    (iii) the Estates will pay applicable income taxes that are incurred by the Estates (if any) that are due from the Estates in connection with the sale of the Property; and

    (iv) You will submit your W-9 Forms to us prior to the Auction;

(b) Phillips represents and warrants to you that:

    (i) the Trustees will not be personally responsible for any debts of the Estates to Phillips;

    (ii) other than: (a) the Estates' Expenses; and (b) if applicable, an amount equal to the out-of-pocket costs and expenses actually incurred by Phillips in connection with the Property pursuant to section 6(c) of this Agreement, the Estates will not be responsible to Phillips; and

    (iii) where we are required to do so under applicable law, Phillips will collect any applicable sales taxes from the Buyer and remit such taxes to the appropriate taxing authorities, as set forth in paragraph 14 below.

## 3. PHYSICAL LOSS OR DAMAGE

If the Property is lost or physically damaged while in Phillips' custody and/or control, we will be responsible to you as set out in this Paragraph. We shall not charge you any fee for accepting such liability. As with any such arrangement, there are some limits and exclusions as follows:

    a) *Period of Cover:*
    The Trustees agree that Phillips shall not be responsible for any physical loss or damage to the Property however so occurring until the Property's risk of loss has passed to Phillips as set forth in this paragraph. The Property's risk of loss shall pass to Phillips after Phillips has removed the Property from its current location.

    Phillips agrees that it will have the Trustees named as additional insureds and loss payees on its insurance policy with respect to the Property, which will be evidenced by a written certificate of insurance provided to the Trustees prior to Phillips' removal of the Property from its current location.

    When the risk of loss has passed to Phillips, Phillips will be responsible to the Trustees and the Estates for physical loss or damage to the Property from until either the Property ceases to be in Phillips' custody and control and the risk of loss has passed to the Buyer, or if the Property is to be returned to the Trustees, then until such time possession, custody or control is returned to the Trustees and no longer in our or our shipper's possession, custody and control.

Agreement No. 99NY1222

# PHILLIPS

### IN ASSOCIATION WITH

## BACS & RUSSO

b) *Extent of Cover:* Phillips' liability will be limited to an amount up to but not exceeding: (i) US $2,225,000 (Two Million Two Hundred Twenty-Five Thousand US dollars), for physical loss or damage prior to the Auction; (ii) the Property's Hammer Price, for physical loss or damage to sold Property prior to delivery to the Property's Buyer; or (iii) the Property's Reserve price, for physical loss or damage to an unsold Property. In the event of loss of the Property or damage which is determined to be a total loss, as determined by an independent third-party appraiser, you shall be entitled to the full amount of the insurance proceeds set out in this Paragraph. In the event of a partial loss, you shall be entitled to an amount which is proportionate to the extent of the loss, as determined by an independent third-party appraiser.

c) *Limits and Exclusions*: Neither Phillips nor our insurers will be responsible for physical loss or damage to the Property resulting from the following causes:
   (i) inherent defects in the Property;
   (ii) humidity or change of weather or other atmospheric conditions not within Phillips' control;
   (iii) damage caused by the Property's mechanical fault or breakdown (if applicable);
   (iv) wear and tear and gradual deterioration of the Property;
   (v) damage to the Property caused by war, radioactive contamination and/or cyberattack;
   (vi) damage occurring while the Property is in the care or custody of a restorer approved by Trustees in writing; and
   (vii) damage occurring while the Property is in Trustees' possession, custody or control or in the care or custody of shipping and packing agents retained by you (even if recommended by Phillips).

## 4.    BEFORE THE AUCTION

You agree to Phillips using its experience, judgment and knowledge in deciding when, where and how best to present, market and sell the Property, including:

(a) *Auction Venue and Date:* The Property will be offered for sale in the Auction described in the Property Schedule. We will have the right, after consultation with the Trustees (time permitting prior to the Auction), to change or reschedule the place, date, time and manner of sale for the Auction of the Property.

(b) *Marketing and Catalogue:* Phillips will decide, at no cost or expense to you, how best to present and market the Property for sale. You agree that Phillips will decide upon:
   (i) after consultation with you, the marketing and promotion of the sale of the Property and the Auction;
   (ii) the description, illustration and presentation of the Property in the relevant Auction catalogue, on Phillips' website, and in other marketing materials and, if applicable, the manner and place of any display, exhibition or viewing of the Property by interested bidders;
   (iii) the contents of any condition report, saleroom notice or announcement;
   (iv) the positioning of the Property in the Property order of the Auction;
   (v) research and consultation with such experts and databases as Phillips considers necessary in relation to the Property; and
   (vi) any physically non-invasive tests or analyses to verify the authenticity, attribution, quality or condition of the Property

whether before or after the Auction; *provided however* we shall require the Trustees' prior written consent if any such test or analyses are to be at the Estates' expense.

(c) *Copyright*: You agree that Phillips will have the right to photograph, illustrate or otherwise produce images of the Property for marketing purposes. Phillips will own the copyright in all catalogues, images, illustrations and descriptions of the Property created by us and will have the exclusive right to use such materials as we consider appropriate, subject to Phillips obtaining any required third-party copyright permissions. After each applicable Auction, such images will only be used for internal record keeping purposes; provided however, we will not use these images for any commercial purposes other than for the applicable Auction, and they shall be archived in Phillips' digital catalogues including websites and social media accounts.

## 5.    RESERVES AND ESTIMATES

Property in Phillips' auctions is offered for sale with a Low and High Estimate, which are published in the relevant auction's catalogue. It is also subject to a confidential Reserve price below which the Property will not be sold.

(a) *Estimates:* The estimates for the Property shall be set out in the Auction catalogue. The low and high estimates provide a guide for potential Buyers of the price range within which the Property may sell. They are statements of opinion and are not a prediction or guarantee of the price at which the Property will be sold.

(b) *Reserves:* The Reserve is the confidential threshold amount below which Phillips will not sell the Property. The Reserve cannot be higher than the low estimate.

(c) *Selling below the Reserve:* You agree that Phillips may sell the Property below the Property's agreed Reserve; *provided, however*, that we agree that you shall receive the amount of Sale Proceeds that you would have received had the Property been sold at its Reserve.

## 6.    WITHDRAWAL

(a) *Withdrawal by Phillips:* We may withdraw the Property at any time before the Auction without any liability if in Phillips' reasonable opinion:

   (i) there is doubt as to the authenticity, authorship or attribution of the Property;
   (ii) there is doubt as to your ownership of the Property, your authority to sell it, or the Property's provenance;
   (iii) the Property has been delivered to Phillips but the Bankruptcy Court has not issued an order directing the sale of the Property by April 17, 2026;
   (iv) you have breached any material provision of this Agreement in any material respect that negatively affects our ability to offer the affected Property;
   (v) the Property is damaged or not in the same condition as when Phillips agreed to sell it;
   (vi) a hidden defect or restoration is discovered prior to the sale which was not reasonably apparent when Phillips agreed to sell it;
   (vii) the Property has not been received by Phillips at our sale site prior to the pre-Auction exhibition;

4

Agreement No. 99NY1222

# PHILLIPS

━━━ IN ASSOCIATION WITH ━━━

## BACS & RUSSO

(viii)  offering the Property for sale could be illegal or expose you, Phillips or the Buyer to legal action or reputational damage; or

(ix)  the Bankruptcy Court issues an Order requiring Phillips to withdraw the Property from sale.

(b)  ***Withdrawal by you:***

You may not withdraw the Property from the Auction without: (i) Phillips' prior written consent; or (ii) an order of the Bankruptcy Court.

(c)  ***Consequences of Withdrawal:*** If Phillips agrees to you withdrawing the Property, or an order of the Bankruptcy Court authorizes and/or directs the withdrawal of the Property from the Auction for any reason, or if Phillips withdraws the Property for any set forth in subparagraph (a) above, then the Estates will pay Phillips an amount equal to the out-of-pocket costs and expenses actually incurred by Phillips in connection with the Property in an amount not to exceed $5,000.00 plus; provided however, the Estates shall only be responsible for such amounts if the withdrawal of the Property occurs after April 27, 2026.

## 7.  CONDUCT OF THE AUCTION

You agree to Phillips using its experience, judgment and knowledge to conduct and administer the Auction including the following aspects relating to the sale of the Property.

(a)  ***Auction Arrangements:*** Subject to the Retention/Sale Order, Phillips has complete discretion in all aspects of the arrangement and conduct of the Auction, including, but not limited to, the time, manner and place of exhibition and Auction of the Property, the placement of the Property within the Auction, which bids to accept and the rules and procedures relating to bidding and sale.

(b)  ***Sale Contract:*** Subject to the Retention/Sale Order, the Auction and sale of the Property will be conducted in accordance with Phillips' Conditions of Sale applicable to the Auction, as published in the relevant catalogue and/or on www.phillips.com.

(c)  ***Bidding below the Reserve:*** The Auctioneer, in accordance with fine art auction house best practices, may protect the value of the Property by bidding on behalf of Phillips and the Sellers in increments up to but below the Property's Reserve.  In no event shall Phillips purchase the Property from the Auction on its account by doing such bidding nor will Phillips purchase the Property on behalf of Sellers by doing such bidding.

(d)  ***Charges to the Buyer:*** Phillips will charge the Buyer a Buyer's Premium, which Phillips will be entitled to as its compensation for the sale of the Property. The Buyer's Premium is defined in Phillips' Conditions of Sale.

## 8.  PAYMENT

(a)  ***Date of Payment:*** Provided Phillips has received payment in full from the Property's Buyer, and provided the Property's sale has not been cancelled for any reason allowed under this Agreement, Phillips will pay you the Sale Proceeds, as set forth in Part 1 *Payment* section of this Agreement and as set forth below.

(b)  ***Currency:*** The Sale Proceeds will be paid to you in US dollars.

(c)  ***Credit Terms:*** The grant of extended payment terms to potential bidders may encourage bidding in the Auction or the Online Auction. Upon the request of a potential bidder determined by Phillips as being a credit worthy client, and upon the prior written consent of the Trustees, Phillips may grant extended payment terms to them if they are the successful bidder of the Property.  Any extended payment terms granted by us shall not exceed ninety (90) days from the date of the Auction. We will pay you any instalment portion of the Sale Proceeds no later than five (5) Working Days after we receive cleared payment in full of such instalment from a Buyer.

(d)  ***Non-payment or late payment by the Buyer:*** We do not guarantee that payment will be received from the Buyer of the Property. If the Buyer is late or fails to pay us when payment is due, Phillips will consult with you to discuss the options available, including the ability for you to pursue the Property's Buyer as set forth in the Conditions of Sale. Notwithstanding the foregoing, Phillips shall have absolute discretion over whether Phillips pursue the Buyer and, if so, by what means, and whether to cancel the sale of the Property that has not been paid.

(e)  ***Cancellation of Sale:***

Phillips may, upon notice to you, cancel a sale of the Property where Phillips reasonably determines in its good faith judgment, that:

(i)  A Buyer of the Property has defaulted on their payment and Phillips has not received full payment of the Property's Purchase Price from the Property's Buyer.

For the purposes of this paragraph, the term "cancel" includes the terms "cancellation", "termination", and "rescission" as those terms are defined under the Uniform Commercial Code.

(ii)  If the sale of the Property is cancelled in any of the circumstances in 8(e)(i) above and
(1)  we have not already paid you the sums due under this paragraph, our obligation to pay you such sums will end; or
(2)  we have paid you full or partial Sale Proceeds due to you, then, in order to put you, Phillips, and the Property's Buyer back to the position we were all in prior to the sale, Phillips will require the Buyer to return the Property to us, and you will return to Phillips the Property's Sale Proceeds received by you and Phillips will return to the Property's Buyer the full amount of the Property's proceeds paid to us by the Property's Buyer. Once we receive the Property and the Sale Proceeds, we will return the Property to you.

(f)  ***Transfer of Ownership:*** Pursuant to the Retention/Sale Order, the Property's Buyer who has paid the Property's full Purchase Price will be deemed a good faith purchaser and entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).

(g)  ***Phillips' responsibility for Payment:*** Phillips will assume the obligation to pay you the Property's Sale Proceeds itself, only if we release the Property to the Buyer before receiving payment in full. In such event, Phillips will be treated as the

5

Agreement No. 99NY1222

# PHILLIPS

**IN ASSOCIATION WITH**

## BACS & RUSSO

owner of the Property and entitled to the protections of a good faith purchaser under Bankruptcy Code section 363(m).

(h)   *Enhanced Hammer Amount:* Phillips shall only have an obligation to pay you an Enhanced Hammer Amount for the Property calculated as described in Part 1 of this Agreement if: (i) the Property is sold at the Auction; (ii) we have received full payment of the Property's Purchase Price in cleared funds from the Property's Buyer; and (iii) the sale of the Property has not been cancelled for any reason. If payable, the Enhanced Hammer Amount will be treated as part of the Property's Sale Proceeds. For the avoidance of doubt, if the Property is not sold in the Auction, we will not pay you any Enhanced Hammer Amount as part of the Sale Proceeds for the Property.

## 9.   POST-AUCTION SALES

Provided Sellers have given us their prior written approval, then for a period of ninety (90) days following (i) the applicable Auction, and (ii) the Closing Date of the Online Auction, Sellers agree that Phillips may sell in a private sale, if the Property was unsold in the applicable Auction. In such circumstances, if the Property is sold for a post-sale Hammer Price that is the equivalent to the Property's Reserve or greater, then you shall receive the Sale Proceeds that you would have received had the Property sold at that Hammer Price during the Auction or the Online Auction. For the Property that is sold post-sale for a Hammer Price that is less than the Property's Reserve, we will not pay you any Enhanced Hammer Amount as part of the Sale Proceeds.

Any post-Auction sale by Phillips is subject to the terms and conditions of this Agreement.

## 10.   LIMITATIONS ON OUR LIABILITY

(a)   While Phillips makes no representations or warranties to you regarding the Property, its provenance, authenticity, attribution, condition or otherwise, we will take reasonable care when preparing Auction catalogue descriptions and condition reports based on information provided by you, experts we may consult, the risks inherent in describing unique works of art and collectibles, and the time and resources available to us before the Auction.

(b)   Phillips will not be responsible to you:

(i)   for any mistakes or omissions in the description of the Property;
(ii)   if the Property fails to sell or to achieve a particular Hammer Price;
(iii)   if the Property's Buyer fails to pay for the Property;
(iv)   for any special, consequential, incidental or indirect losses, costs or charges of any kind or any loss of profits; or
(v)   for any acts or omissions of restorers, experts, or authentication bodies.

(c)   If, despite the terms of this Agreement, we are found to be responsible to you for any matters arising out of or in connection with this Agreement and/or the services Phillips provides to you in connection with the sale of the Property, we will not have to pay you more than:
(i)   the Property's Hammer Price, if the Property is sold;
(ii)   the Property's low estimate if the Property is not offered for sale for any reason; or
(iii)   the Property's Reserve price in all other circumstances.

## 11.   DISPUTES AND CLAIMS

This Agreement shall be governed by Federal law, and, where applicable the laws of New York. The United States Bankruptcy Court for the Northern District of New York shall retain exclusive jurisdiction with respect to all Auctions and Private Sales conducted pursuant to this Agreement, and including, but not limited to, interpretation of any the terms and conditions in the Agreement; challenges, disputes, or claims arising out of or in connection with this Agreement; and claims arising while the Property is in the care, custody or control of Phillips or the Trustee.

## 12.   ENDING THE AGREEMENT

*Events beyond our control:* Phillips will not be responsible if for reasons beyond our control we fail or are unable to meet our obligations under this Agreement. Such circumstances include, but are not limited to strike, lockout, adverse weather, flood, storm, earthquake, subsidence and other natural disasters, malicious acts by third-parties, failure and shortage of power supply, war, armed conflict, riot, civil unrest, terrorist action, nuclear and chemical contamination, epidemics, pandemics, and travel bans or other government restrictions on commercial activity.

## 13.   PRIVACY

We take the privacy of your information seriously. Unless necessary for the provision of services you have requested from us or as otherwise agreed with you, we do not share your personal data with anyone outside of the Phillips Group.

(a)   *Verifying Identity:*

(i)   You confirm that your name and address as set out in Part 1 of this Agreement are accurate. You will provide us with any documents or evidence required to verify your identity to comply with our compliance and verification procedures.
(ii)   If you are acting as agent for the owner(s) of the Property, you will identify them to us and will provide us with any documents or evidence required to comply with our compliance and verification procedures.

(b)   *Using Your Personal Data:*
You understand that we may use your personal data in accordance with our privacy policy as published at www.phillips.com or available by emailing dataprotection@phillips.com.

Our privacy policy sets out:

(i)   the types of personal data we will or may collect and use;
(ii)   the purposes for which we will or may use your personal data, including for example the provision of auction, private sale, shipping, storage and related services; the performance and enforcement of these terms and conditions; the carrying out of identity and credit checks; keeping you informed about upcoming auctions, exhibitions and special events; and generally where reasonably necessary in the management and operation of our business;
(iii)   the lawful bases on which we rely in undertaking our use of your personal data;
(iv)   your rights in respect of our use of your personal data; and
(v)   other information as required by applicable laws.

6

Agreement No. 99NY1222

# PHILLIPS

### IN ASSOCIATION WITH

## BACS & RUSSO

(c) *Your rights over your personal data:* Our privacy policy explains the rights you have in respect of your personal data, including accessing the personal data we hold about you and correcting it if it is outdated or incorrect.

(d) *Sharing personal data:* We may share your personal data with other parties as described in our privacy policy.

(e) *Transferring personal data:* Phillips is an international business and operates globally through a network of affiliates worldwide. Your personal data may therefore be transferred and used by companies within the Phillips' Group worldwide. If you are resident in the United Kingdom ("UK") or the European Economic Area ("EEA") we will put in place appropriate safeguards to ensure adequate protection of your personal data when it is transferred outside of the UK or the EEA.

## 14. TAXES

(a) *Sales Tax:* We agree to collect sales taxes from the Property's Buyer and remit that tax payment to the appropriate taxing authority where and when we are required to do so under applicable law. You will not be responsible for collecting any sales tax from the Property's Buyer.

(b) *Your Tax Liability:* The Estates agree to pay any income taxes (if any) for which the Bankruptcy Estate is liable for from the sale of the Property when and where required.

(c) You are a "U.S. person", as defined under the US Internal Revenue Code of 1986 (the "IRC"), as such, Phillips will be required to file an informational Form 1099-K report with the Internal Revenue Service (the "IRS") if our payments to you in settlement of this Agreement exceed two thousand five hundred US Dollars (USD $2,500), we must report: (i) the gross amount of all reportable payments made to you under this Agreement; and (ii) your name, address, and your taxpayer identification number. After the completion of a calendar year, we shall provide you with a copy of the Form 1099-K applicable to transactions that occurred under this Agreement in such calendar year. You shall have fourteen (14) days from our delivery of such Form 1099-K to you to provide us with any comments or corrections you may have. If we do not receive any comments or corrections from you within such fourteen (14) day period, such non-response shall constitute a representation by you that all information contained in the Form 1099-K is true and accurate to the best of your knowledge.

(d) You hereby agree that:
(i) you will timely provide Phillips with either the applicable completed IRS forms and any other related documentation we may require to satisfy our Form 1099-K reporting obligations;
(ii) you will provide Phillips with an IRS Form W-9;
(iii) in the event you do not complete a Form or any other documentation we request from you which is related to our obligation to file Form 1099-K: (x) Phillips may delay payment to you of any Sale Proceeds; and (y) Phillips will be entitled to withhold any U.S. federal taxes due on any payment made to you as may be required by law; and
(iv) if Phillips does not receive any comments or corrections from you to any Form 1099-K provided to you within the fourteen (14) day period described in subparagraph (a) above, such non-response by you shall constitute a representation by you that all information contained in any

such Form 1099-K is true and accurate to the best of your knowledge.

## 15. MISCELLANEOUS PROVISIONS

(a) *Entire Agreement:* Subject to signature by you and by Phillips of this Agreement, this Agreement and the Retention/Sale Order, and any further orders of the Court relating to any sale by Phillips of any of the Property which may be excluded from the sale f o r m the whole agreement between you and Phillips in respect of the sale of the Property, superseding any agreements you may have previously signed with Phillips with respect to the Property. By signing this Agreement, you agree that there are no other promises, terms, conditions, understandings, arrangements or obligations oral or written other than those contained in this Agreement and the Retention/Sale Order and any other relevant orders of the Bankruptcy Court.

(b) *Amendment:* No variation of this Agreement will be valid unless confirmed in writing and signed by you and us. If necessary, the modification of this Agreement shall be subject to approval by the Bankruptcy Court.

(c) *Validity:* If a court of competent jurisdiction finds part of this Agreement invalid, illegal or unenforceable, that part of the Agreement will be considered deleted, and the rest of this Agreement will not be affected and will remain in full force and effect.

(d) *Transferring Rights and Responsibilities:* This Agreement will be binding upon you and us and permitted successors and assigns. Neither you nor Phillips may assign this Agreement without the prior written consent of the other party, except that Phillips may assign this Agreement to any of Phillips' G r o u p companies without your prior consent.

(e) *Notices:*
(i) Notices to Phillips must be in writing and addressed to the General Counsel, Americas of Phillips, Hartley Waltman at hwaltman@phillips.com.

(j) Notices to the Trustees must be in writing and addressed to:

Marianne T. O'Toole, Esq at motoole@otoolegroup.com; Holly R. Holecek, Esq. at hrh@lhmlawfirm.com;
Yann Geron, Esq. at ygeron@geronlegaladvisors.com; and
Nicole Santucci, Esq. at nsantucci@geronlegaladvisors.com.

(k) *Third Party Rights:* A person, firm, company or corporation who or which is not a party to this Agreement will have no right to enforce any term of this Agreement.

(k) *Signing:* Each of us may sign this Agreement by way of separate documents and electronically. Each document taken together will constitute one and the same signed Agreement.

## GLOSSARY

**Agreement:** The terms and conditions of all parts of this document taken together.

7

# PHILLIPS

IN ASSOCIATION WITH

# BACS & RUSSO

**Auction:** is a Phillips physical auction where bidding is accepted by a live in-person auctioneer through various means of bidding that may include, in-room bidding, phone bidding, absentee written bids, as well bidding through internet platforms.

**Buyer**: The highest bidder and successful Buyer of the Property at the Auction accepted by the Auctioneer.

**Buyer's Premium:** The commission Phillips charges the successful highest bidder and Buyer of the Property of the Property for Phillips' Services, which is detailed in the Conditions of Sale and which amount is calculated as:

27% of the Hammer Price for the amount of the Hammer Price up to and including $1,000,000,000; plus 21% of the portion of the Hammer Price above $1,000,000 and up to and including $6,000,000; plus 14.5% of the portion of the Hammer Price exceeding $6,000,000.

Phillips shall be entitled to the full amount of the Buyer's Premium less any applicable Enhanced Hammer Amount as compensation for its services. For the purposes of Seller obtaining court approval following the Auction, Phillips shall remit the entire Buyer's Premium to Seller along with the Net Sale Proceeds. Trustees agree that the Buyer's Premium shall be payable to Phillips in full, less any applicable Enhanced Hammer Amount, and shall be remitted back to Phillips within Seven (7) Working Days of the date payment of the Sale Proceeds is made to you in cleared funds.

**Conditions of Sale:** The terms governing bidders and Buyers on one hand and Phillips and Sellers on the other hand, as published on our website and in the Auction catalogue, i.e., the New York Conditions of Sale for Live Auctions.

**Enhanced Hammer Amount**: The additional amount of Sale Proceeds that shall be retained by you as calculated as set out in Part 1.

**Hammer Price:** The amount of the highest bid the auctioneer accepts for the Property in the Auction.

**High Estimate:** The higher figure in the estimate range within which Phillips in its reasonable opinion considers the Property may sell.

**Low Estimate:** The lower figure in the estimate range within which Phillips in its reasonable opinion considers the Property may sell.

**Phillips:** The company or companies listed on page 1 of this Agreement.

**Phillips Group:** All companies from time to time within the Phillips group of companies and in respect of watches, Phillips Fine Watches Limited.

**Property**: The Property as listed in Part 3.

**Purchase Price:** The amount of the Property's Hammer Price plus the Property's applicable Buyer's Premium plus any applicable sales, use and/or VAT taxes due from the Property's Buyer.

**Reserve:** The confidential value below which the Property may not be sold. The reserve for the Property cannot exceed the Low Estimate.

**Sale Proceeds:** In relation to the Property, the Hammer Price, plus any applicable Enhanced Hammer Amount, plus the Buyer's Premium.

**Sellers:** The persons identified in Part 1.

**Working Day:** is any day other than a weekend or public holiday that Phillips' offices are open for business in the Auction site for the Property. If payment is to be remitted to you on a date that is not a Working Day, we will remit that payment on the next day that is a Working Day.

8

Agreement No. 99NY1222

# PHILLIPS

━━━ IN ASSOCIATION WITH ━━━

# BACS & RUSSO

I agree to the terms of Parts 1, 2 and 3 of this Agreement Number 99NY1222


Signed by: _____
Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri
Dated: _____


Signed by: _____
Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed
Chapter 11 Plan
Dated: _____




Signed: _____
For and on behalf of Phillips Auctioneers LLC
Title: _____
Dated:_____

Agreement No. 99NY1222

# P H I L L I P S

## Part 3
## Property Schedule

**Consignor:** Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri and Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed Chapter 11 Plan
**Client Number:** 977087
**Agreement Number:** 99NY1222

The following is the Property that will be offered at Auction by Phillips. All estimates are provisional until the work is viewed in person by a Specialist.

**Phillips' New York, The New York Watch Auction: XIV, scheduled for 13-Jun-2026**

| Object | Property Description | Low Estimate | High Estimate | Reserve |
|--------|---------------------|--------------|---------------|---------|
| 231302 | Richard Mille, RM52-01 | TBD | TBD | Reserve to be confirmed |

I agree to the terms of this Property Schedule.

Signed:_____

Name: _____
For and on behalf of Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri and Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed Chapter 11 Plan

Title: _____

Dated:_____


Signed:_____

Name:_____
For and on behalf of Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri and Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed Chapter 11 Plan

Title: _____

Dated:_____

Signed:_____

Name: _____
For and on behalf of Phillips Auctioneers LLC

Dated:_____

PHILLIPS

IN ASSOCIATION WITH

BACS & RUSSO

## Part 4.  The Order

Agreement No. 99NY1222

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                                            Case No.: 24-10157-1-pgr

KRIS DANIEL ROGLIERI,                                          Chapter 7


                            Debtor.
--------------------------------------------------------X
In re:                                                                            Case No.: 24-11029-1-pgr

PRIME CAPITAL VENTURES, LLC,                          Chapter 11 (Plan Confirmed)


                            Debtor.
--------------------------------------------------------X

**ORDER: (I) AUTHORIZING AND APPROVING, PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, THE RETENTION OF PHILLIPS AUCTIONEERS LLC IN ASSOCIATION WITH BACS & RUSSO AS AUCTIONEER TO THE TRUSTEES TO MARKET AND SELL A CERTAIN RICHARD MILLE WATCH IDENTIFIED AS AN RM 52-01 TOURBILLON SKULL; (II) AUTHORIZING AND APPROVING, PURSUANT TO 11 U.S.C. §§ 363(b), (f), (m) AND (n), THE SALE OF THE RICHARD MILLE WATCH IDENTIFIED AS AN RM 52-01 TOURBILLON SKULL PURSUANT TO THE SELLERS' AUCTION AGREEMENT WITH ENHANCED HAMMER POTENTIAL; (III) AUTHORIZING AND APPROVING THE FORM AND MATTER OF NOTICE OF THE AUCTION SALE; (IV) AUTHORIZING AND APPROVING THE DIVISION OF THE NET PROCEEDS FROM THE SALE AND PAYMENT TO THE AUCTIONEER; <u>AND (V) GRANTING RELATED RELIEF</u>**

Upon the joint motion ("Motion")[1] of Marianne T. O'Toole, Esq., solely in her capacity as Successor Chapter 7 Trustee ("Roglieri Successor Trustee") of the estate of Kris Daniel Roglieri ("Roglieri"), and Yann Geron, Esq., formerly the chapter 11 trustee of Prime Capital Ventures, LLC ("Prime") and now solely in his capacity as Plan Administrator of Prime's confirmed chapter 11 plan (the "Prime Administrator" and collectively with the Roglieri Successor Trustee, the "Trustees") seeking entry of an Order: (i) authorizing and approving, pursuant to sections 327(a) and 328 of the Bankruptcy Code, the Trustees' retention of Phillips Auctioneers LLC in association with Bacs & Russo ("Phillips") to market and sell a certain Richard Mille watch identified as an RM 52-01 Tourbillon Skull ("RM Skull Watch"); (ii) authorizing and approving, pursuant to sections 363(b), (f), (m) and (n) of the Bankruptcy Code, the sale of the RM Skull Watch pursuant to the Sellers' Auction Agreement with Enhanced Hammer Potential among the Trustees and Phillips ("Auction Agreement"); (iii) approving the form and matter of notice of the auction sale of the RM Skull Watch; (iv) authorizing and approving the division of the proceeds from the sale of the RM Skull Watch 50/50 between the Roglieri Estate and the Prime post-confirmation trust (collectively, the "Estates"), pursuant to Bankruptcy Rule 9019(a) and authorizing payment to Phillips; and (v) granting such other and further relief as the Court deems just and proper; and it appearing that due and appropriate notice of the Motion having been made; and no other or further notice being required; and no other objections to the relief requested in the Motion having been filed; and upon the hearing conducted on April 16, 2026 ("Hearing"), the record of which is incorporated herein by reference; and upon the record herein; and after due deliberation thereon; and good and sufficient cause,

**THE COURT HEREBY FINDS THAT:**

---

[1]      Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The Trustees have articulated good and sufficient business reasons for the Court to grant the relief requested in the Motion, including this Court's approval of the public auction sale of the RM Skull Watch.

C.      The Trustees have established one or more of the grounds under section 363(f) of the Bankruptcy Code for the proposed sale of the RM Skull Watch to be free and clear of all interests to the successful bidders at the Auction Sale, with the same (if any) to attach to the proceeds thereof pursuant to section 363 of the Bankruptcy Code.

D.      The settlement of the Estates' respective claims in and to the RM Skull Watch falls above the lowest point in the range of reasonableness and represents a fair and reasonable exercise of the Trustees' respective business judgment.

E.      Good and sufficient notice of the Motion has been given, and no additional or further notice is required.

**NOW, THEREFORE, IT IS HEREBY**

**ORDERED** that, pursuant to sections 327(a) and 328 of the Bankruptcy Code, the Trustees are each authorized and empowered to employ Phillips as auctioneer to the Estates under the terms of the Auction Agreement; and, it is further

**ORDERED** that the Auction Agreement, a copy of which is annexed to the Motion as **Exhibit C**, is hereby approved in its entirety; and, it is further

**ORDERED** that, pursuant to sections 105(a) and 363 of the Bankruptcy Code, the Trustees are authorized to proceed with the public auction sale of the RM Skull Watch pursuant to the

Auction Agreement; and, it is further

**ORDERED** that, pursuant to Bankruptcy Rule 9019(a), the 50/50 division of the proceeds of the sale of the RM Skull Watch is approved and the Estates are each entitled to fifty-percent (50%) of the proceeds of the sale of the RM Skull Watch; and, it is further

**ORDERED** that the Receiver shall turn over custody, possession and control of the RM Skull Watch to Phillips, as the Trustees' retained auctioneer, and Phillips shall execute a receipt evidencing delivery of the RM Skull Watch by the Receiver to Phillips; and it is further

**ORDERED** that Phillips, as the Trustees' retained auctioneer, is authorized to sell the RM Skull Watch, pursuant to Bankruptcy Code sections 363(b), (f), (m) and (n), "as is" and "where is" and without any representations or warranties by the Estates or the Trustees, and without recourse against the Trustees or the Trustees' professionals, and without recourse against the Estates, free of all liens, claims, interests and encumbrances; and it is further

**ORDERED** that the Notice of Sale, in the form annexed to the Motion as **Exhibit D**, is hereby approved; and, it is further

**ORDERED** that, in accordance with Local Rule 6005-1(c), within thirty (30) days of the auction sale, Phillips shall file a report with the Court summarizing the results of the auction sale and stating the fees to be paid to Phillips under the terms of the Auction Agreement, which report of sale shall be served on the U.S. Trustee and any other interested party who specifically requests a copy; and it is further

**ORDERED** that upon transfer of title to the RM Skull Watch: (i) the successful bidder at the auction shall be entitled to the protections of section 363(m) of the Bankruptcy Code; and (ii) the sale of the RM Skull Watch shall not be avoidable under section 363(n) of the Bankruptcy Code; and it is further

**ORDERED** that: (i) Phillips shall be compensated in accordance with the terms of the Auction Agreement without the necessity of filing a fee application; and (ii) the Trustees are each authorized to pay Phillips from the Estates without further Order of the Court; and, it is further

**ORDERED** that the Trustees are each authorized to execute such documentation as the Trustees determine is reasonably necessary to effectuate the sale of the RM Skull Watch pursuant this Order; and, it is further

**ORDERED** that the Trustees are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order; and, it is further

**ORDERED** that, notwithstanding Bankruptcy Rule 6004(h), this Order shall not be stayed for fourteen (14) days after the entry hereof and shall be effective and enforceable immediately upon entry hereof; and, it is further

**ORDERED** that the Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

###

# PHILLIPS

IN ASSOCIATION WITH

# BACS & RUSSO

## Payment Instructions

| Consignor: **Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri and Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed Chapter 11 Plan**<br>Client Number: 977055 | Agreement Number: 99NY1222<br>Agreement Date: 20 March 2026 |
|---|---|

This letter authorises funds to be transferred to the account details below (please note that we can only send payment to our consignor). Sale Proceeds will be paid by bank transfer to the account specified below and in the currency of the auction unless specified otherwise at least three business days prior to the date of the sale. Please be advised that Phillips is only responsible for our own bank charges and not those of the beneficiaries/correspondent bank charges.

| Wire Transfers | |
|---|---|
| Beneficiary Bank Name: | |
| Beneficiary Bank Address: | |
| | |
| Beneficiary Bank Post Code/Zip Code: | |
| Beneficiary Bank Account Name: | Marianne T. O'Toole, Esq., as Successor Chapter 7 Trustee for Kris Daniel Roglieri and Yann Geron, Esq., Plan Administrator of Prime Capital Venture, LLC's Confirmed Chapter 11 Plan |
| Beneficiary Bank Account Number:<br>*(if outside the UK and EU)* | |
| Beneficiary Bank Account IBAN Number:<br>*(Required for all UK and EU banks)* | |
| Beneficiary Bank Account BIC/SWIFT Code:<br>*(or Fedwire Code if BIC/SWIFT not applicable)* | |
| Beneficiary Bank ABA Number:<br>*(Required for USA to USA Bank Transfers)* | |
| Please provide preferred correspondent bank details<br>(as recommended by your account holding bank): | |
| Special Instructions: | |
| | |
| Reference: | |
| ☐ I **am** a US Person under the IRS definition for 1099-K filings (please next page for IRS details)<br>OR<br>☐ I am **NOT** a US Person under the IRS definition for 1099-K filings (please see next page for IRS details) | |
| Signature:<br>*(Must* match *the Sellers' Agreement Signature)* | |

Agreement No. 99NY1222

# PHILLIPS

━━━ IN ASSOCIATION WITH ━━━

# BACS & RUSSO

Appendix: Notice to all Consignors of Updated US Tax reporting requirements.

- Effective January 1, 2022, the US Internal Revenue Code[1] ("IRC") requires auction houses to file an annual informational Form 1099-K that reports the sale proceeds paid and services given to "U.S. persons" under their sellers' consignment agreements. Phillips is not required to file this 1099-K report for non-U.S. persons.

- A U.S. person is any (i) U.S. citizen residing in any country worldwide and any non-U.S. citizen granted permanent residence in the United States; (ii) person, regardless of their nationality, substantially residing in the United States or its territories; (iii) any corporation, partnership or other entity organized under the laws of any State of the United States and (iv) any trust (a) primarily supervised by a U.S. court and (b) administered by a U.S. person controlling all substantial decisions for the trust .

- Phillips must report all consignment settlement payments made to U.S. persons in the prior calendar year that exceed two thousand five hundred US Dollars (US $2,500). Other required information includes: the U.S. person's name, their address, and their U.S. taxpayer identification number.

- In order to confirm your status to us as either a U.S. person or a non-U.S. person, please fully complete the correct form which is either a: (i) W-9 for U.S. persons; or (ii) a W-8 for non-U.S. persons. Please see the chart below that may help you distinguish which form you choose to use for this purpose. These forms will be kept confidential. We are not required to file these forms with the IRS.

- You must provide us with a copy of your W-9 or W-8 prior to your consignment's Settlement Date. We will not remit your Sale Proceeds due to you until you have done so. Please see below for a general description of each type of form that may be used for this purpose and to determine which one you should use.

| Form Name | General Description of who the form applies to* |
|---|---|
| W-9 | An individual or entity that is a citizen or resident in the US for tax purposes<br>W-9: https://www.irs.gov/pub/irs-pdf/fw9.pdf |
| W-8BEN | An individual who is not a tax resident in the US and is the beneficial owner of income. (Not used by entities).<br>W-8BEN:https://www.irs.gov/pub/irs-pdf/fw8ben.pdf |
| W-8BEN-E | An entity that is not a tax resident within the US and is the beneficial owner of income. (Not used by individuals)<br>W-8BEN-E:https://www.irs.gov/pub/irs-pdf/fw8bene.pdf |
| W-8ECI | An entity that receives income connected with the conduct of a trade or business in the US<br>W-8ECI:https://www.irs.gov/pub/irs-pdf/fw8eci.pdf |
| W-8EXP | A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a US possession.<br>W-8EXP:https://www.irs.gov/pub/irs-pdf/fw8exp.pdf |
| W-8IMY | An entity acting as an Intermediary or flow-through<br>W-8IMY:https://www.irs.gov/pub/irs-pdf/fw8imy.pdf |

For further questions you may have about this process, please see the FAQ sheet that has been added to this communication.

*This document does not constitute tax advice. You should consult with your own tax advisor to identify and complete the appropriate tax form. IRS tax forms and detailed instructions are available on the IRS website located at https://www.irs.gov/forms-instructions*

---

[1] Please refer to Internal Revenue Code of 1986, as amended, section 6050W for full details on the reporting requirements.

13

Agreement No. 99NY1222

# PHILLIPS

━━━ IN ASSOCIATION WITH ━━━

# BACS & RUSSO

**1099-K Information Reporting: Frequently Asked Questions**

All auction houses must file an annual Form 1099-K informational report to the Internal Revenue Service ("**IRS**") concerning transactions conducted on behalf of buyers and sellers of goods and services. Phillips Auctioneers LLC, and each of our worldwide affiliates ("**Phillips**", "**we**", "**our**"), are subject to this reporting obligation.

This FAQ describes (i) the persons for whom we must file a Form 1099-K; (ii) what information we are obligated to report on a Form 1099-K; (iii) how we may collect the information required for such form; and (iv) what notice we will provide to you prior to the filing of such form.

We note that while Phillips will prepare the annual Form 1099-K, and we provide you with a copy of the form for your review prior to it being filed with the IRS, we are not your tax advisor, and you should always seek advice from your tax advisor first with respect to any questions you may have about this process.

1.   **What is the purpose of the Form 1099-K?**

The 1099-K form is not to report any taxes due or collected. The form is only meant to collect information on transfers of funds so that the IRS may monitor suspected underreporting of income. The IRS primarily uses the form to ensure that income is not underreported on the income tax returns of people who have less conventional income streams (for example, freelance workers).

2.   **Why am I hearing about this now? Is this a new reporting requirement?**

Prior to January 1, 2022, auction houses only had to file a Form 1099-K when the auction house: (i) transferred more than $20,000 to a payee; and (ii) made an aggregate number of 200 payments to that payee in a calendar year. This reporting threshold, known as a de minimis rule, greatly limited the number of instances in which an auction house had to file a Form 1099-K.

However, effective as of January 1, 2025, the IRS altered the de minimis threshold and now we must report *any* payment to a U.S. person in settlement of a consignment in amounts that exceed two thousand five hundred US Dollars ($2,500). To be clear, this wider reporting obligation applies to payments made on or after January 1, 2025. It does not apply to any payments we have made to you prior to January 1, 2025.

3.   **How do I know if I am a person for whom Phillips must file a Form 1099-K?**

Phillips must file a Form 1099-K for any reportable payments made to U.S. persons only. A U.S. person for tax purposes means: (i) any U.S. citizen residing in any country worldwide and any non-U.S. citizen granted permanent residence in the United States; (ii) any person, regardless of their nationality, substantially residing in the United States or its territories; (iii) any corporation, partnership or other entity organized under the laws of any State of the United States and (iv) any trust (a) primarily supervised by a U.S. court and (b) administered by a U.S. person controlling all substantial decisions for the trust.

Phillips is not required to file the form for payments to persons or entities who are not U.S. persons. However, prior to making a payment to a non-U.S. person payee, we must have documentation that we can rely upon to ensure the payment is not being made to a U.S. person in order for us to not have to report that payment to the IRS.

If we do not have the appropriate documentation from you in our files, we will withhold our payment to you of the Sale Proceeds until you have provided us with this documentation.

4.   **What is reported on a Form 1099-K?**

Form 1099-K requires us to provide the name, address, and taxpayer identification number of each U.S. person payee. In addition, we must report the gross amount of all reportable payments made to each U.S. person in a calendar year.

Under the IRC, settlements payments of both auction and private sale consignment are reportable. We must report the gross amount which may include fees we have charged to you (such as seller's commission and/or sale expenses), so the reported gross amount may not exactly match the net amount of money actually remitted to you.

# PHILLIPS

### IN ASSOCIATION WITH

## BACS & RUSSO

The amount is reported on the form is aggregated by month and year. For instance, if we issue three instalment payments to you for a sale of a painting, two of which occur in the same month, the payments which occur in the same month would be aggregated on the form and the other will be in the other month noted.

5.  **What will Phillips request of me in order to properly file any necessary Form 1099-K's?**

In order to determine if we are required to file a 1099-K report, we must confirm if you are or are not a U.S. person. If you are a U.S. person, we must report payments made to you; we do not have a reporting obligation if you are not a U.S. person.

All consignors must submit to us a complete d IRS Form W-9 or W-8 if we don't already have your current Form in our records. Generally, U.S. persons will submit a W-9 form to us and non-U.S. persons will submit the applicable W-8 form to us as set out in the chart below. A properly filled out form will ensure that we only file a 1099-K Report with the IRS for U.S. person transactions.

| Form Name | General Description of who the form applies to* |
|-----------|-----------------------------------------------|
| W-9 | An individual or entity that is a citizen or resident in the US for tax purposes<br>W-9: https://www.irs.gov/pub/irs-pdf/fw9.pdf |
| W-8BEN | An individual who is not a tax resident in the US and is the beneficial owner of income. (Not used by entities).<br>W-8BEN: https://www.irs.gov/pub/irs-pdf/fw8ben.pdf |
| W-8BEN-E | An entity that is not a tax resident within the US and is the beneficial owner of income. (Not used by individuals)<br>W-8BEN-E: https://www.irs.gov/pub/irs-pdf/fw8bene.pdf |
| W-8ECI | An entity that receives income connected with the conduct of a trade or business in the US<br>W-8ECI: https://www.irs.gov/pub/irs-pdf/fw8eci.pdf |
| W-8EXP | A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a US possession.<br>W-8EXP: https://www.irs.gov/pub/irs-pdf/fw8exp.pdf |
| W-8IMY | An entity acting as an Intermediary or flow-through<br>W-8IMY: https://www.irs.gov/pub/irs-pdf/fw8imy.pdf |

*This does not constitute tax advice. You should consult with your own tax advisor to identify and complete the appropriate tax form. IRS tax forms and detailed instructions are available on the IRS website located at https://www.irs.gov/forms-instructions*

6.  **How do I get the proper Form W-9 or W-8 to Phillips?**

For the W-9 form, please direct your browser to the following link https://www.irs.gov/pub/irs-pdf/fw9.pdf and fully complete the W-9 form and return it to your Phillips contact.

For the W-8 form, please determine the correct form (using the matrix above or by going to: https://www.irs.gov/forms-pubs/about-form-w-8 for additional information), download it, complete it and then send it back to your Phillips contact.

**W-8BEN:** https://www.irs.gov/pub/irs-pdf/fw8ben.pdf
**W-8BEN-E**: https://www.irs.gov/pub/irs-pdf/fw8bene.pdf
**W-8ECI:** https://www.irs.gov/pub/irs-pdf/fw8eci.pdf
**W-8EXP:** https://www.irs.gov/pub/irs-pdf/fw8exp.pdf
**W-8IMY:** https://www.irs.gov/pub/irs-pdf/fw8imy.pdf

7.  **Will I have an opportunity to review the Form 1099-K that Phillips reports for any reportable payments made to me?**

If Phillips must file a Form 1099-K for any reportable payments made to you, Phillips will provide you with a completed Form 1099-K on or before January 31 of the calendar year after which such payment is made. You will have fourteen (14) days to review the return and confirm the accuracy of all information reported therein. You are required to notify us if there is any change in your identifying information that we must report on the Form 1099-K.

Agreement No. 99NY1222