**LaMONICA HERBST & MANISCALCO, LLP**                    **Relates to a Hearing on April 16, 2026**
*Counsel to Marianne T. O'Toole, Esq., Successor Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                    Case No.: 24-10157-1-pgr

KRIS DANIEL ROGLIERI,                                     Chapter 7

               Debtor.
-----------------------------------------------------------X
In re:                                                    Case No.: 24-11029-1-pgr

PRIME CAPITAL VENTURES, LLC,                              Chapter 11 (Plan Confirmed)

               Debtor.
-----------------------------------------------------------X

**REPLY IN FURTHER SUPPORT OF JOINT MOTION RESPECTING, <u>INTER ALIA</u>, SALE OF A CERTAIN RICHARD MILLE WATCH IDENTIFIED AS AN RM 52-01 TOURBILLON SKULL AND DIVISION OF NET PROCEEDS AND IN RESPONSE TO LIMITED OBJECTION AND SUPPLEMENTAL SUBMISSION OF PLAN ADMINISTRATOR OF PRIME CAPITAL VENTURES, LLC**

TO THE HONORABLE PATRICK G. RADEL,
UNITED STATES BANKRUPTCY JUDGE

      Marianne T. O'Toole, Esq., solely in her capacity as Successor Chapter 7 Trustee

("<u>Roglieri Successor Trustee</u>") of the estate of Kris Daniel Roglieri ("<u>Roglieri</u>"), submits this

reply: (i) in further support of the joint motion ("<u>Joint Motion</u>")[1] [ECF No. 656][2] with Yann Geron,

Esq., formerly the chapter 11 trustee of Prime Capital Ventures, LLC ("<u>Prime</u>" and, together with

Roglieri, "<u>Debtors</u>") and now solely in his capacity as Plan Administrator of Prime's confirmed

---

[1]    Defined terms not otherwise defined herein shall have the same meanings ascribed to them in the Joint Motion.

[2]    References to docket entries in the Roglieri case hereinafter shall be referred to as "ECF No."

1

chapter 11 plan ("Prime Administrator"), seeking entry of an Order, inter alia: (a) authorizing and approving, pursuant to 11 U.S.C. §§ 327(a) and 328 ("Bankruptcy Code"), the retention of Phillips Auctioneers LLC in association with Bacs & Russo ("Phillips") to market and sell a certain Richard Mille watch identified as an RM 52-01 Tourbillon Skull ("RM Skull Watch" or "Watch"); (b) authorizing and approving, pursuant to sections 363(b), (f), (m) and (n) of the Bankruptcy Code, the sale of the RM Skull Watch pursuant to the Sellers' Auction Agreement with Enhanced Hammer Potential among the Roglieri Successor Trustee, the Prime Administrator and Phillips ("Auction Agreement"); and (c) authorizing and approving the division of the proceeds from the sale of the RM Skull Watch 50/50 between the Roglieri estate and the Prime post-confirmation trust (together, "Estates"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure and authorizing payment to Phillips; and (ii) in response to the limited objection ("Objection") [ECF No. 666] of Compass-Charlotte 1031, LLC, on behalf of itself and the Oversight Committee created under Prime's confirmed Chapter 11 Plan (Oversight Committee and Compass-Charlotte, sometimes collectively referred to as "Compass-Charlotte"), and the supplemental submission [ECF No. 667] of the Prime Administrator, and respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      By the Joint Motion, the Roglieri Successor Trustee and the Prime Administrator jointly seek approval of multiple related forms of relief, including approval of the Auction Agreement among the Roglieri Successor Trustee, the Prime Administrator and Phillips, and the 50/50 division of the proceeds from the sale of the Watch. Prior to filing the Joint Motion, the Roglieri Successor Trustee and the Prime Administrator, together with their respective counsel, engaged in extensive discussions concerning the sale process, the choice of auctioneers, and, most importantly, how the proceeds of any sale of the Watch might be allocated between the Debtors'

two estates. In this regard, the Roglieri Successor Trustee and the Prime Administrator each assert title to the Watch, and, as such, the division of the proceeds of any sale was paramount in the negotiations between the fiduciaries of the respective bankruptcy estates.

2.     Although characterized as a "Limited Objection," Compass-Charlotte[3] seeks to rewrite the Auction Agreement and the settlement between the fiduciaries for the Debtors' estates so that "all proceeds" from the sale of the RM Skull Watch will be "distributed solely to the Prime estate." See ECF No. 666 at ¶25. Plainly stated, Compass-Charlotte is without authority to rewrite the settlement and the Auction Agreement, and the request should be denied in its entirety.

3.     Compass-Charlotte's bold assertion that "the Watch is indisputably an asset of Prime," see ECF No. 666 at ¶25, is not only counterfactual but belied by the record in these cases. There has never been a determination as to the title to the Watch. Further, the issue of title or ownership of the Watch has plagued these cases for some time. See, e.g., ECF No. 455 (audio of hearing on April 23, 2025) (the Court (J. Littlefield) observing, inter alia, that the question of ownership of the Watch had been well-known to the parties for "months" yet was not mentioned at all in the motion for turnover and sale of the Watch); ECF No. 456 (Order Denying Motion For Turnover and Sale of Watch). Short of the amicable settlement reflected in the Joint Motion, the issue of the ownership of the Watch -- a tangible item of personal property -- will need to be resolved by the Court, presumably in an adversary proceeding to be commenced by either estate seeking declaratory relief, and affording the respective parties the safeguards and protections of discovery rules.

---

[3]     It should be noted that Compass-Charlotte now has an allowed $650,000.00 claim in the Prime case that is on parity with other administrative creditors such that Compass-Charlotte will be paid ahead of other victims of Roglieri and unsecured creditors of Prime. See Case No.: 24-11029, ECF No. 413. Compass Charlotte also filed nearly identical proofs of claim in both the Roglieri and Prime bankruptcy cases. Compare Case No.: 24-10157, claim no. 10 ($51,305,136.00), with Case No.: 24-11029, claim no. 2 ($53,583,962.61).

3

4.      Compass-Charlotte's suggestion that the Prime Administrator and the Successor Roglieri Trustee may not have been fully informed at the time they agreed to the division of the proceeds among the estates, or the lack of historical perspective and knowledge of counsel to Compass-Charlotte, is both supercilious and self-serving. The ownership and the sale of the Watch was always at the forefront in both Debtors' cases. Any suggestion that the Prime Administrator or the Successor Roglieri Trustee did not fully educate themselves and were not fully informed in reaching the agreement to sell the Watch and split the proceeds should be rejected.

5.      As a technical matter, Compass-Charlotte complains that the Prime Administrator was obligated but failed to consult with the Oversight Committee about the settlement memorialized in the Joint Motion. See ECF No. 666 at ¶5. Compass-Charlotte notes that if the "Oversight Committee objects to a proposed settlement, the Plan Administrator may decide to either abandon the settlement or seek this Court's approval of the settlement over the Oversight Committee's objection upon a motion on notice."[4] Id. However, Prime's confirmed Chapter 11 plan does not grant the Oversight Committee veto power, authorize Compass-Charlotte to unilaterally rewrite the Auction Agreement among the Successor Roglieri Trustee, the Prime Administrator and Phillips, or authorize Compass-Charlotte to alter a settlement between the Successor Roglieri Trustee and the Prime Administrator. Here, the Prime Administrator has not abandoned the settlement and Compass-Charlotte, on behalf of itself and the Oversight Committee, has filed an objection.

6.      In the Supplemental Submission of the Prime Administrator, the Prime Administrator acknowledges, as he must, that "[a]fter many months of negotiations," the Roglieri

---

[4]      Compass-Charlotte emphasizes the fact that if the Prime Administrator had followed the protocol, counsel for the Oversight Committee would be entitled to have his firm's fees paid for filing this Limited Objection. See ECF No. 666 at ¶5.

4

Successor Trustee and now Prime Administrator "reached an agreement which was memorialized in the recently filed Motion to sell the RM Skull Watch. The agreement involved the joint sale of the RM Skull Watch through Phillips, and a 50/50 slip of the net sale proceeds between the Roglieri and Prime estates." See ECF No. 667 at ¶3. The Prime Administrator offers that after the Joint Motion was filed, the Oversight Committee "explained that it cannot realistically evaluate the proposed inter-estate distribution until it has a full understanding of the market value of the RM Skull Watch. [Which] can only be determined . . . after the auction sale occurs and the market value of the RM Skull Watch is known."[5] See id. at ¶6. However, it defies logic that the market value or auction sale price of Watch somehow informs the appropriate inter-estate division of the proceeds. In the Supplemental Submission, the Prime Administrator has not abandoned the settlement.

7.      What is clear, and what the Limited Objection demonstrates, is that there is a bona fide dispute as to the ownership of the RM Skull Watch and that two independent fiduciaries reached a reasonable resolution to avoid the risk, expense and delay of litigation between two bankruptcy estates. Indeed, although the funds to purchase the RM Skull Watch came from Prime, Roglieri was the sole member of Prime, and the RM Skull Watch was worn by Roglieri and in his possession, custody and control until January 2024 when his fraudulent scheme was exposed. Roglieri and Prime each scheduled the RM Skull Watch as an asset in their bankruptcy cases, and the issue of the disputed ownership of the RM Skull Watch is well documented in this Court. Notwithstanding, there has been no determination by this Court or any other court as to ownership of the RM Skull Watch. Absent the proposed settlement set forth in the Joint Motion, an adversary proceeding seeking declaratory relief would need to be commenced by either the Roglieri

---

[5]      This exact proposal was expressly rejected by the Court (J. Littlefield) in denying the first motion to sell the watch. See ECF No. 455 (audio of April 23, 2025 hearing).

Successor Trustee or the Prime Administrator. In this regard, the Successor Roglieri Trustee disputes that the RM Skull is owned by Prime and, on behalf of the Roglieri estate, does not consent to its sale solely for the benefit of the Prime estate.

8.      The settlement reflected in the Joint Motion was the product of arm's length negotiations between the Roglieri Successor Trustee and the Prime Administrator, each of whom is represented by separate, competent counsel, and reflects a prudent exercise of the Roglieri Successor Trustee's and the Prime Administrator's respective business judgment. Moreover, given the history of the Debtors' cases and competing ownership claims, it is certainly a reasonable resolution for the Roglieri Successor Trustee and the Prime Administrator to split the proceeds from the sale of the RM Skull Watch.

9.      For these and the reasons set forth more fully below, the Successor Roglieri Trustee respectfully requests that the Limited Objection be overruled and that the relief requested in the Joint Motion be approved.

### SUPPLEMENTAL BACKGROUND

10.      Documents turned over to the Roglieri Successor Trustee reflect that the RM Skull Watch was purchased from Platinum Times Company in or around January 2023 for $2.225 million. The invoice from Platinum Times Company is addressed to Prime. See, e.g., ECF No. 666 at ¶11(d). Roglieri is the sole member of Prime. See Case No.: 24-10531, ECF No. 31.

11.      Upon information and belief, Roglieri took possession of the RM Skull Watch and maintained the RM Skull Watch at his former residence in Queensbury, New York from approximately January 2023 through late January 2024. Indeed, photographs of Roglieri that are annexed to the Limited Objection evidence Roglieri wearing the RM Skull Watch, including in his garage at the Queensbury, New York property. See ECF No. 666 at Exhibit B.

6

12.     On January 12, 2024, Compass-Charlotte filed a complaint in the United States District Court for the Northern District of New York ("District Court") against, among others, Prime, which was assigned Case No. 24-cv-00055 ("District Court Action").[6] Roglieri is not a party to the District Court Action. See id.

13.     On January 12, 2024, Paul A. Levine, Esq. was appointed by the District Court as the federal equity receiver for the defendants in the District Court Action in a temporary capacity, including Prime ("Receiver"). See DC ECF No. 8.

14.     Pursuant to a Memorandum-Decision and Order entered on January 24, 2024 ("Permanent Receiver Order"), the Receiver was appointed as the permanent receiver in the District Court Action with certain circumscribed powers. See generally DC ECF No. 56.

15.     As evidenced by the e-mails annexed to the Limited Objection, on or about January 24, 2024, the Receiver made a demand to counsel to Prime in the District Court Action for the turnover of the RM Skull Watch. See ECF No. 666 at Exhibit D. On January 26, 2024, counsel to Prime in the District Court Action replied that the RM Skull Watch was in Roglieri's possession and that it would be delivered to the Receiver that day. See id. at Exhibit E. On January 26, 2024, counsel to the Receiver obtained possession of the RM Skull Watch from or on behalf of Roglieri personally.

16.     On February 15, 2024, Roglieri filed a voluntary petition pursuant Chapter 11, Subchapter V of the Bankruptcy Code in this Court. See ECF No. 1. On his Schedule A/B that was filed with the Court on March 22, 2024, Roglieri listed the RM Skull Watch as an asset of his bankruptcy estate. See ECF No. 80.

17.     On April 22, 2024, the Receiver filed a complaint against Roglieri objecting to his

---

[6]     References to the docket in the District Court Action shall hereinafter be referred to as "DC ECF No."

discharge pursuant to section 727 of the Bankruptcy Code ("Receiver 727 Complaint"). See Adv. Pro. No.: 24-90010, ECF No. 1. The Receiver 727 Complaint alleges that, inter alia, Roglieri made purchases of luxury vehicles, watches, jewelry, and antiques using funds of Prime, including the RM Skull Watch. See id.

18.     Also on April 22, 2024, the Receiver filed a proof of claim in the Roglieri case on behalf of Prime in the amount of $100,000,000 ("Claim 11"). In support of Claim 11, the Receiver attached the Receiver 727 Complaint.

19.     On May 14, 2024, the Receiver filed a voluntary petition for Prime under Chapter 11 of the Bankruptcy Code in the Court ("First Prime Case"). See Case No.: 24-10531[7] at ECF No. 1.

20.     On the Schedule A/B that was filed with the Court on May 28, 2024, the Receiver listed the RM Skull Watch as an asset of Prime's bankruptcy estate. See Prime 1 ECF No. 31.

21.     By Order entered on May 15, 2024, the Court converted Roglieri's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code. See ECF No. 159.

22.     On May 15, 2024, Christian H. Dribusch was appointed as Chapter 7 Trustee of Roglieri's estate ("Prior Roglieri Trustee"). See ECF No. 194.

23.     On May 28, 2024, the United States of America filed a criminal complaint against Roglieri in the District Court ("Criminal Action"). See Case No.: 24-cr-00392,[8] ECF No. 1.

24.     On July 23, 2024, the Court issued a Memorandum Decision and Order dismissing the First Prime Case ("Prime 1 Dismissal Order"), concluding that the Receiver did not have the requisite authority under the Permanent Receiver Order to file the First Prime Case. See Prime 1

---

[7]     References to the docket in the First Prime Case shall hereinafter be referred to as "Prime 1 ECF No."

[8]     References to the docket in the Criminal Case shall hereinafter be referred to as "Crim. ECF No."

ECF No. 85. The Court held, inter alia, that in drafting the Permanent Receiver Order, the District Court removed, inter alia, the Receiver's control over "claims, demands, or causes of action of any kind." See id. at 7-8. The Court also declined to issue a stay pending appeal, finding that none of the four requisite factors could be satisfied. See id. at 14-16.

25. On July 29, 2024, a notice of appeal from the Prime 1 Dismissal Order was filed on behalf of Compass-Charlotte, Prime, the Prior Roglieri Trustee and the Receiver. See Prime 1 ECF No. 89. The parties moved for a stay pending appeal in the District Court, which the District Court denied. See District Court Case No.: 24-00939 at ECF No. 21.

26. By Memorandum Decision and Order entered on August 9, 2024, the Court dismissed the Receiver 727 Complaint based on the Receiver's lack of authority to file an adversary proceeding on behalf of Prime and the Prior Roglieri Trustee's lack of authority to ratify the adversary proceeding. See Adv. Pro. No.: 24-90010 at ECF No. 22.

27. On September 16, 2024, the Prior Roglieri Trustee filed a voluntary petition for Prime under Chapter 11 of the Bankruptcy Code in the Court ("Second Prime Case"). See Case No.: 24-11029.[9] On Prime's Schedule A/B that was filed with the Court, the Prior Roglieri Trustee listed the RM Skull Watch as an asset of Prime's bankruptcy estate. See id.

28. On November 5, 2024, the United States of America filed a Verified Complaint for Forfeiture In Rem against various personal property assets, including *seven (7) watches* ("Forfeiture Action"). See Case No.: 24-cv-01345,[10] ECF No. 1. The Forfeiture Action does not name the RM Skull Watch as a defendant. See id.; see also id. at ECF No. 20 (amended complaint).

29. On December 6, 2024, Prime, by the Prior Roglieri Trustee, filed a proposed

---

[9] References to the docket in the Second Prime Case shall hereinafter be referred to as "Prime 2 ECF No."

[10] References to the docket in the Criminal Case shall hereinafter be referred to as "Forfeiture ECF No."

Chapter 11 plan of liquidation ("First Prime Plan") and related disclosure statement ("First Prime DS"). See Prime 2 ECF Nos. 77, 78. The First Prime Plan contemplated, inter alia, the sale of RM Skull Watch among the assets to be liquidated. See id. at ECF No. 77. On December 23, 2024, Prime, by the Prior Roglieri Trustee, amended the First Prime Plan and related disclosure statement. See Prime 2 ECF Nos. 91, 92.

30. On January 8, 2025, the Court entered an Order scheduling a combined hearing on the adequacy of the amended First Prime DS and, inter alia, procedures for objections to the amended First Prime Plan. See Prime 2 ECF No. 114.

31. On March 28, 2025, the Court issued a Memorandum Decision and Order denying confirmation of the amended First Prime Plan. See Prime 2 ECF No. 178. In denying confirmation of the First Prime Plan, the Court (J. Littlefield) held that, inter alia, the amended First Prime Plan did not comply with section 1129(a)(4) of the Bankruptcy Court insofar as it "remove[d] the Court's ability to review and approve expenses incurred by members of the Oversight Committee, professionals of the Oversight Committee and professionals of the Prime Administrator." See id. at p. 7. The Court also had concerns insofar as the amended First Prime Plan called for Compass-Charlotte to be appointed as a member of the Oversight Committee because Prime had an outstanding cause of action against Compass-Charlotte, which "seemingly create[d] a conflict of interest." See id. at 7-8.

32. Five (5) days later, on April 2, 2025, the Prior Roglieri Trustee filed a motion seeking entry of an Order directing the turnover of the RM Skull Watch by the Receiver and authorizing the sale of the RM Skull Watch for the benefit of the Roglieri estate ("Prior Roglieri Trustee Sale Motion"). See ECF No. 398. No objections to the Prior Roglieri Trustee Sale Motion were filed, including by Compass-Charlotte or the Receiver.

33. A hearing on the Prior Roglieri Trustee Sale Motion was conducted on April 23, 2025. See ECF Nos. 455 (audio). The Prior Roglieri Trustee, the U.S. Trustee and the Receiver appeared at the hearing. The Court raised concerns pertaining to the Prior Roglieri Trustee Sale Motion including, inter alia, the question of ownership of the RM Skull Watch and the potential conflict of interest of the Prior Roglieri Trustee vis-à-vis Prime. See id.; see also 456 (Order). By Order entered on April 24, 2026, the Court denied the Prior Roglieri Trustee Sale Motion without prejudice. See ECF No. 456.

34. In or around May 23, 2025, the Prior Roglieri Trustee resigned.

35. On May 27, 2025, Marianne T. O'Toole was appointed pursuant to section 703(a) of the Bankruptcy Code as successor interim trustee of Roglieri's Chapter 7 bankruptcy estate. See ECF No. 491.

36. On June 3, 2025, the Successor Roglieri Trustee filed a statement in the Second Prime Case indicating her consent to the appointment of a Chapter 11 Trustee for Prime. See Prime 2 ECF No. 280.

37. On June 5, 2025, the United States Trustee appointed Yann Geron, Esq. as Chapter 11 Trustee for Prime. See Prime 2 ECF No. 285. By Order entered on June 10, 2025, the Court approved the appointment of Yann Geron, Esq. as Chapter 11 Trustee for Prime ("Prime Trustee"). See id. at ECF No. 287.

38. On August 25, 2025, as amended on September 3, 2025, the District Court affirmed the Prime 1 Dismissal Order and entered judgment dismissing the appeal by Compass-Charlotte, Prime, the Prior Roglieri Trustee and the Receiver. See Prime 1 ECF Nos. 108, 109.

39. Beginning in late July 2025, the Successor Roglieri Trustee and the Prime Trustee engaged in discussions concerning, inter alia, the RM Skull Watch. The Roglieri Successor Trustee

and the Prime Administrator jointly secured insurance for the RM Skull Watch. The Roglieri Successor Trustee and the Prime Administrator also discussed taking joint possession of the RM Skull Watch. In or around November 2025, the Prime Trustee indicated that he was not prepared to take joint possession of the RM Skull Watch with the Roglieri Successor Trustee. The Roglieri Successor Trustee and the Prime Administrator, along with their counsel, then engaged in discussions concerning the inter-estate issues respecting the RM Skull Watch. Both the Roglieri Successor Trustee and Prime Trustee asserted an ownership interest in the RM Skull Watch.

40.     Following arm's length negotiations, and as set forth more fully in the Joint Motion, the Roglieri Successor Trustee and the Prime Trustee agreed to seek to sell the RM Skull Watch and to split the proceeds from the sale of the RM Skull Watch 50/50 between the Estates. By agreement of the Roglieri Successor Trustee and the Prime Trustee, the Roglieri Successor Trustee and her professionals took the lead on the sale process including, but not limited to, interviewing potential auctioneers.

41.     On December 16, 2025, the Prime Trustee filed a disclosure statement and proposed plan of liquidation ("Prime Liquidating Plan") and related documents in the Prime case. See Prime 2 ECF Nos. 365-367. On December 22, 2025, the Prime Trustee filed an amended disclosure statement ("Prime DS"). See id. at ECF No. 369. Exhibit B to the Prime DS is a liquidation analysis which reflects at footnote D the "estimated recovery net of (1) cost to sell the [RM Skull Watch] and (2) sharing with the Kris Roglieri Estate." See id. at p. 115.

42.     Compass-Charlotte did not object to the Prime DS or confirmation of the Prime Liquidating Plan.

43.     By Order entered on February 11, 2026, the Court approved the Prime DS and the Prime Liquidating Plan ("Prime Confirmed Plan"). See Prime 2 ECF No. 401. The Prime Trustee,

Yann Geron, Esq., is now the Plan Administrator of the Prime Confirmed Plan, i.e., the Prime Administrator.

44.     On February 24, 2026, the District Court entered a Preliminary Order of Forfeiture for Specific Property in the Criminal Action, which does not include the RM Skull Watch. See Crim. ECF No. 96.

45.     On March 4, 2026, the Court So Ordered a stipulation between the Prime Administrator and Compass-Charlotte that, inter alia, reduces and allows Compass-Charlotte's general unsecured claim in the Prime case, and reduces and allows a 503(b) claim of Compass-Charlotte in the amount of $650,000.00 in the Prime case. See Prime 2 ECF No. 413.

46.     On March 23, 2026, the Roglieri Successor Trustee and the Prime Administrator each filed the Joint Motion with the Court. See ECF No. 656; Prime 2 ECF No. 417. The Joint Motion was noticed for hearing on April 16, 2026 with objections to be filed by April 9, 2026. See ECF Nos. 657; Prime 2 ECF No. 418.

47.     As reflected in the Joint Motion, the Roglieri Successor Trustee and the Prime Administrator seek to jointly sell the RM Skull Watch through Phillips pursuant to the Auction Agreement among Phillips, the Prime Administrator, and the Successor Roglieri Trustee. See generally ECF No. 656. The Roglieri Successor Trustee and the Prime Administrator each represented in the Joint Motion that, among other things, the proposed 50/50 settlement provides finality for both Estates, avoids litigation and the risks and costs associated with litigation, ensures both Estates share equally in the sale proceeds, and is the product of arm's length bargaining. See id. at 14-16.

48.     Roglieri plead guilty to conspiracy to commit wire fraud, and, on April 6, 2026, judgment was entered against him in the Criminal Action ("Judgment"). See Crim. ECF No. 116.

The Judgment incorporates the Preliminary Order of Forfeiture for Specific Property in the Criminal Action, which again does not include the RM Skull Watch. Pursuant to the Judgment, Roglieri must make restitution to multiple payees, which do not include Compass-Charlotte. See id.

49.     On April 9, 2026, the Limited Objection was filed with the Court. See ECF No. 666. Compass-Charlotte asserts, inter alia, that approval of any split of the proceeds from the sale of the RM Skull Watch should be denied and that all proceeds should be distributed solely to the Prime estate. See id. Notwithstanding the foregoing, Compass-Charlotte asserts that that "all other aspects of the Joint Motion should be approved. See id.

## ARGUMENT

50.     The Joint Motion seeks approval of multiple related forms of relief, all of which are interrelated. Indeed, the Joint Motion seeks approval of, inter alia, Phillips as auctioneer to the Estates, approval of the Auction Agreement, authority to sell the RM Skull Watch at Phillips' live auction in June 2026, and a 50/50 split of the proceeds of sale between the Estates. The Auction Agreement is among Phillips as the auctioneer and the Prime Administrator and the Successor Roglieri Trustee as the sellers. The Auction Agreement was negotiated at length between Phillips and the Successor Roglieri Trustee on behalf of herself and the Prime Administrator.

51.     Notwithstanding the foregoing, Compass-Charlotte asks the Court to essentially rewrite the Joint Motion and Auction Agreement such that both Trustees sell the RM Skull Watch through Phillips, but only the Prime estate benefits from the sale. Such a result would be wholly inequitable to the Roglieri estate and should not be approved by the Court. Moreover, to the extent the Prime Administrator overlooked the Oversight Committee before filing the Joint Motion,[11] it

---

[11]     As set forth above, Exhibit B to the Prime DS is a liquidation analysis which reflects at footnote D the "estimated recovery net of (1) cost to sell the [RM Skull Watch] and (2) sharing with the Kris Roglieri

is either immaterial or fatal to the Joint Motion but does not allow the Oversight Committee to refashion the requested relief. Assuming arguendo the Court was not inclined to approve the proposed 50/50 division of proceeds between the Estates, the Joint Motion must be denied without prejudice.

52.      In this regard, a settlement is a contract that, once entered, is both binding and conclusive. See Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 444 (2d Cir. 2005) (holding that an agreement to settle litigation is a "contract that is interpreted according to general principles of contract law"); see also Janneh v. GAF Corp., 887 F. 2d 432, 436 (2d Cir. 1989) ("[a] settlement is a contract, and once entered into is binding and conclusive."). "Settlement agreements are strongly favored in New York and may not be lightly cast aside. Afterthought or change of mind are not sufficient to justify rejecting a settlement." Brandever v. Port Imperial Ferry Corp., 2014 U.S. Dist. LEXIS 36844, *8 (S.D.N.Y. March 12, 2014) (internal quotation and citation omitted). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that a [sic] choice simply because his assessment of the consequences was incorrect." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007) (citation omitted). Applying New York law, courts have enforced settlements even without a written settlement agreement. See, e.g., id. at 129 (finding binding agreement where settlement was put on the record in open court); Sarsvatkumar Patel v. Long Island Univ., 2024 U.S. App. LEXIS 28735 at *7 (2d Cir. November 13, 2024) (affirming order enforcing oral settlement agreement).

53.      Once approval of a settlement has been sought pursuant to Bankruptcy Rule 9019, parties to a settlement agreement may not unilaterally repudiate it. See Liberty Towers Realty, 734 Fed. Appx. at 71. As explained by the United States Court of Appeals for the Second Circuit:

---

Estate." See Prime 2 ECF No. 369 at p. 115. At a minimum, Compass-Charlotte was on notice of a division of proceeds between the Estates.

> Allowing a party to withdraw from a settlement pending court approval would deter parties from entering into settlements in the first place, would permit parties to abuse the bankruptcy process, and would run contrary to generally applicable contract and settlement principles in this Circuit. Seminole Walls, 288 B.R. at 395; In re Turner, 274 B.R. 675, 681 (Bankr. W.D. Pa. 2002); United States v. Bank of New York, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."); 15B Am. Jur. 2d Compromise and Settlement § 9 ("[A] party's change of heart regarding a settlement is not a valid basis upon which a court may refuse approval.").

Id.

54.     In this case, there is no dispute that the Roglieri Successor Trustee and the Prime Administrator reached a resolution, following arm's length negotiations, to split the proceeds from sale of the RM Skull Watch 50/50 between the Estates. There is also no dispute that, by the Joint Motion, the Roglieri Successor Trustee and the Prime Administrator jointly seek, inter alia, approval of the proposed 50/50 division of the proceeds of sale pursuant to Bankruptcy Rule 9019. The settlement reflected in the Joint Motion is a contract that the Prime Administrator should not be permitted to unilaterally repudiate or renegotiate.

55.     Under Bankruptcy Rule 9019, the court has the authority to "approve a compromise or settlement." FED. R. BANKR. P. 9019(A). A court must determine that a settlement under Bankruptcy Rule 9019 is fair, equitable, and in the best interests of the estate before it may approve a settlement. See In re Drexel Burnham Lambert Grp., Inc., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing Protective Comm. for Indep. S'holders of TMT Trailer Ferry v. Anderson, 390 U.S. 414, 424 (1968)). See also Topwater Exclusive Fund III, L.L.C. v. SageCrest II, L.L.C. (In re Sagecrest II), Nos. 3:10cv978 (SRU), 3:10cv979 (SRU), 2011 WL 134893, at *8-9 (D. Conn. Jan. 14, 2011); Cousins v. Pereira (In re Cousins), No. 09 Civ. 1190(RJS), 2010 WL 5298172, at *3 (S.D.N.Y. Dec. 22, 2010); In re Chemtura Corp., 439 B.R. 561, 593–94 (Bankr. S.D.N.Y. 2010); In re Lehman Bros. Holdings, Inc., 435 B.R. 122, 134 (S.D.N.Y. 2010).

16

56.     A court's responsibility is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Chemtura, 439 B.R. at 594 (quoting In re W.T. Grant, Co., 699 F.2d 599, 608 (2d Cir. 1983)) (internal quotations omitted). However, the court is not required to go so far as to conduct a trial on the terms to approve a settlement. Id. Rather, the court may rely upon the opinions of the trustee, the parties and their attorneys to evaluate the settlement and to make an independent judgment. See In re Adelphia Commc'ns. Corp., 368 B.R. 140, 225-26 (Bankr. S.D.N.Y. 2007). The court must inform itself of "all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." O'Connell v. Packles (In re Hilsen), 404 B.R. 58, 70 (Bankr. E.D.N.Y. 2009) (quoting TMT Trailer Ferry, 390 U.S. at 424) (internal quotations omitted). The United States Court of Appeals for the Second Circuit outlined the test for consideration of settlements under the Bankruptcy Rules in Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007). The burden is on the settlement proponent to persuade the court that the settlement is in the best interests of the estate. See 8 NORTON BANKRUPTCY LAW AND PRACTICE 3D § 167:2 (3d ed. 2011).

57.     In this case, the Court should approve the proposed settlement between the Estates as falling well above the lowest point in the range of reasonableness. As reflected in the Joint Motion, the Roglieri Successor Trustee and the Prime Administrator reached a reasonable resolution to avoid the risk, expense, and delay of litigation between the Estates. Multiple considerations informed the Roglieri Successor Trustee's judgment in entering into the agreement with the Prime Trustee/Prime Administrator and were discussed among the Roglieri Successor Trustee and the Prime Administrator. First, a watch is an item of tangible personal property that is worn by a person, not a company. Here, although the funds to purchase the RM Skull Watch came

17

from Prime, the RM Skull Watch was worn by Roglieri and in Roglieri's possession, custody and control until January 2024 when his fraudulent scheme was exposed. See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70, 86 (2d Cir. 2002) (explaining that "[u]nder New York law, the party who possesses property is presumed to be the party who owns it."). Second, Roglieri scheduled the RM Skull Watch on his Schedule A/B that was filed with the Court. Third, the homeowner's insurance policy for Roglieri's Queensbury, New York property included a personal property rider of over $3 million, presumably to cover, inter alia, the Watch. Fourth, immediately after the Court declined to confirm the First Prime Plan, the Prior Roglieri Trustee moved for, inter alia, authority to sell the RM Skull Watch for the benefit of the Roglieri estate. Notably, no objections to the Prior Roglieri Trustee Sale Motion were filed by any creditors, including Compass-Charlotte. Fifth, the RM Skull Watch was not included either in the Forfeiture Action or the Preliminary Order of Forfeiture for Specific Property in the Criminal Action that is incorporated into the Judgment entered against Roglieri in the Criminal Action. Sixth, there has been no determination by this Court or any other court as to ownership of the RM Skull Watch. Absent the proposed settlement set forth in the Joint Motion, an adversary proceeding seeking declaratory relief would need to be commenced by either of the Roglieri Successor Trustee and the Prime Administrator to determine ownership of the RM Skull Watch.

58.      To the extent Compass-Charlotte argues that the equities favor Prime with respect to ownership, the Successor Roglieri Trustee disagrees. At best, the Prime estate has a claim for the fraudulent transfer for the Prime funds used to purchase the RM Skull Watch, which presumably formed the basis for a portion of Claim 11 filed on Prime's behalf in the Roglieri case. Equally important, the claims asserted against the Debtors' estates are equally large and overlap – over $288 million in the Roglieri case and over $217 million in the Prime case. The equities do

not decidedly tip in either Estates' favor. Victims of Roglieri's fraudulent scheme are creditors in both Debtors' cases, and one set of victims should not be favored over another.

59.     To the extent Compass-Charlotte opines about potential distributions in the Roglieri estate, such conjecture is premature, conclusory and speculative at best. The Successor Roglieri Trustee is administering the Roglieri estate in accordance with her statutory duties. The extent and nature of the allowed claims against the Roglieri estate is not now known. What is known, however, is that Compass-Charlotte already has an allowed $650,000.00 claim in the Prime case that is on parity with other administrative expense claims in the Prime case. See Prime 2 ECF No. 413. As such, Compass-Charlotte will be paid ahead of other victims of Roglieri and unsecured creditors of Prime.

60.     In light of the foregoing, coupled with the uncertainty, expense and delay associated with litigation, the Successor Roglieri Trustee submits that it is certainly a reasonable resolution for the Roglieri Successor Trustee and the Prime Administrator to split the proceeds from the sale of the RM Skull Watch. In no event, however, should the Successor Roglieri Trustee be forced to proceed with the sale of the RM Skull Watch solely for the benefit of the Prime estate as Compass-Charlotte suggests.

19

**WHEREFORE**, the Roglieri Successor Trustee respectfully requests that the Court overrule the Limited Objection, grant the relief requested in the Joint Motion, and grant such further relief as this Court deems proper.

Dated: April 13, 2026
Wantagh, New York          **LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Esq., Successor Trustee*

By:      *s/ Holly R. Holecek*
Holly R. Holecek, Esq.
A Partner of the Firm
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500