So Ordered.

Signed this 28 day of April, 2026.



_____

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

_____

In re:

     Kris Daniel Roglieri,

                   Debtor.

_____

Chapter 7
Case No. 24-10157-1-pgr

APPEARANCES:

| | |
|---|---|
| Kris Daniel Roglieri<br>*Debtor* | *Pro se* |
| Linda Oliver<br>*Movant* | *Pro se* |
| Smith, Sovik, Kendrick, & Sugnet, P.C.<br>*Attorneys for Former Chap 7 Trustee,*<br>*Christian H. Dribusch* | THOMAS J. DEBERNARDIS, ESQ. |
| William K. Harrington<br>*United States Trustee* | HARRISON E. STRAUSS, ESQ. |

**MEMORANDUM DECISION AND ORDER DENYING
<u>MOTION REQUESTING LEAVE TO COMMENCE A CIVIL ACTION</u>**

On February 19, 2026, Linda Oliver ("Oliver") filed a Motion Requesting

Leave to Commence a Civil Action ("Motion") against Christian H. Dribusch, the

former Chapter 7 Trustee ("Trustee Dribusch"). In June of 2025, Oliver filed a lawsuit against Trustee Dribusch in the United States District Court for the Northern District of New York, which was dismissed for lack of subject matter jurisdiction under the "*Barton* Doctrine." *Oliver v. Dribusch*, No. 1:25-CV-724 (AJB/DJS), 2025 WL 3251000, at \*6 (N.D.N.Y. Nov. 21, 2025).[1]

Trustee Dribusch, by and through his counsel, objected to the Motion. (Docket No. 662). Oliver filed a Reply in further support of her Motion. (Docket No. 664).

A hearing on the Motion was held in Albany, New York, on April 16, 2026, with appearances as indicated above.  After hearing argument from the parties and counsel, this Court reserved decision.

For the reasons set forth below, Oliver's Motion is denied.

## JURISDICTION

The Court has core jurisdiction over the parties and the subject matter of this contested matter in accordance with 28 U.S.C. §§ 1334(b) and 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

This case was initially filed as a voluntary chapter 11 case on February 15, 2024.  (Docket No. 1).   At the time of filing, Debtor was represented by Pashman Stein Walder Hayden, PC.  The case was converted to chapter 7 on May 15, 2024,

---

[1] The *Barton* Doctrine requires a putative plaintiff to obtain the Bankruptcy Court's permission before suing a bankruptcy trustee. *See Oliver*, 2025 WL 3251000. at \*3 (citing *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir. 1996)).

and Christian H. Dribusch, Esq.[2] was appointed as Chapter 7 Trustee.  (Docket Nos. 159 & 160).

On May 20, 2024, the Honorable Robert E. Littlefield, Jr.,[3] United States Bankruptcy Judge, held a hearing to consider Trustee Dribusch's Motion for Turnover ("Turnover Motion") (Docket No. 166). Judge Littlefield granted the Turnover Motion and an Order was entered on May 22, 2024 ("Turnover Order"). (Docket No. 188).  On May 29, 2024, Pashman Stein Walder Hayden, PC was granted permission to withdraw as counsel for Debtor. (Docket No. 192).

On May 31, 2024, Debtor was taken into federal custody and has been in custody since that time.  On June 4, 2024, Trustee Dribusch made a Supplemental Motion for Enforcement of the Turnover Order ("Supplemental Motion") (Docket No. 197), which was granted on June 10, 2024 ("Supplemental Order"). (Docket No. 205).

The Supplemental Order authorized Trustee Dribusch to enter "40 North Street, Queensbury, New York ('Residence') for the benefit of the Debtor Bankruptcy Estate and to secure and remove the property of the Debtor Bankruptcy Estate located at the Residence."  (Docket No. 205, at ¶ 2).

Prior to his incarceration, Debtor was living at the Residence. Oliver claims she resided full-time with the Debtor at the Residence until his arrest and continued to reside there until she was restricted from accessing the property by Trustee Dribusch. (Docket No. 645 at 2-4).

---

[2] Trustee Dribusch voluntarily resigned as trustee for personal reasons in May of 2025.  (Docket No. 487; *see also* Docket No. 662, Dribusch Decl. ¶¶ 40-41).
[3] The case was reassigned to this Court on October 1, 2025, upon Judge Littlefield's retirement.

Oliver asserts that prior to the entry of the Supplemental Order, Trustee Dribusch entered the Residence without authority and that after the Supplemental Order was entered he improperly locked her out. (Docket No. 645).  She argues that these actions were *ultra vires*. (*Id.*).  She also claims that Trustee Dribusch converted her personal property. (*Id.*).

Trustee Dribusch opposes the Motion, arguing that every action he took was within the scope of his authority as the Chapter 7 Trustee and that Oliver has failed to establish a *prima facie* case against him. (Docket No. 662).

## DISCUSSION

By and through her Motion, Oliver is seeking permission to commence a civil state court action against Trustee Dribusch.  In order to do so, she must meet the requirements of the *Barton* Doctrine.

### The *Barton* Doctrine

The *Barton* Doctrine requires that a would-be plaintiff obtain leave from the appointing court "before a suit may go forward in another court against the trustee." *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir. 1996) (citing *Barton v. Barbour*, 104 U.S. 126, 26 L.Ed. 672 (1881)).

The *Barton* Doctrine applies to bankruptcy trustees. *Vass v. Conron Bros. Co.*, 59 F.2d 969, 971 (2d Cir. 1932) ("[A]n action against a trustee in bankruptcy for transactions of his own, must be brought in the bankruptcy court, unless it gives leave to liquidate elsewhere.").  Although some courts recognize exceptions to the *Barton* Doctrine, the district court determined that these exceptions do not apply in

this case. *Oliver v. Dribusch*, No. 1:25-CV-724 (AJB/DJS), 2025 WL 3251000, at *4 (N.D.N.Y. Nov. 21, 2025).

The *Barton* Doctrine is meant to protect the bankruptcy court's "overriding interest in the administration of the estate." *In re Endo Int'l plc*, No. 22-22549 (JLG), 2025 WL 272853, at *6 (Bankr. S.D.N.Y. Jan. 22, 2025) (internal quotation marks omitted). "A central purpose of the *Barton* Doctrine is to ensure the [bankruptcy court's] control over the [estate] assets." *Id.* (cleaned up). "Relatedly, the doctrine gives effect to the appointing court's strong interest in protecting the trustee from personal liability for acts taken within the scope of the trustee's official duty." *Id.*

In order to obtain permission to sue a trustee in another forum, the prospective plaintiff must establish a *prima facie* case against the trustee. *In re Eerie World Ent., L.L.C.*, No. 00-13708 (ALG), 2006 WL 1288578, at *3 (Bankr. S.D.N.Y. Apr. 28, 2006).

To meet this standard, the movant "must do more than meet the liberal notice-pleading requirements of Rule 8." *S.E.C. v. Nutmeg Grp., LLC*, No. 09 C 1775, 2011 WL 5042092, at *3 (N.D. Ill. Oct. 19, 2011). She must "plead facts with a reasonable degree of particularity which support, either directly or inferentially, the elements of the claim asserted." *In re Smith*, No. 97-00126-JKC-11, 2002 Bankr. LEXIS 1893, at *18 (Bankr. S.D. Ind. Apr. 24, 2002); *see also Eerie World*, 2006 WL 1288578, at *3. This standard reflects a "middle ground . . . that meets the concerns underlying the *Barton* Doctrine but does not unfairly prevent a

claimant, who has not been given a full and fair opportunity to develop its case, from going forward." *Smith*, 2002 Bankr. LEXIS 1893, at \*18.

As a *pro se* party, Oliver's filings "must be 'construed liberally' with 'special solicitude' and interpreted to raise the strongest claims they suggest." *Oliver*, 2025 WL 3251000, at \*3 (quoting *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013)).

**Prima Facie Analysis of Oliver's Proposed Claims**

Oliver seeks permission to bring the following state law claims in New York State Supreme Court: 1) trespass or unauthorized entry prior to June 10, 2024; 2) *ultra vires* conduct exceeding judicial authorization; 3) constructive dispossession of a non-debtor occupant; and 4) conversion of non-estate personal property.

### *Trespass*

Under New York law, "[t]he elements of a cause of action sounding in trespass are an intentional entry onto the land of another without justification or permission, or a refusal to leave after permission has been granted but thereafter withdrawn." *Del Vecchio v. Gangi*, 207 N.Y.S.3d 540, 544 (App. Div. 2024).

In support of her claim for trespass, Oliver asserts that Trustee Dribusch entered the Residence on June 4, 2024 and June 5, 2024 with third-parties, to inventory and photograph the contents of the home. (Docket No. 645 at 3). This argument presupposes that Trustee Dribusch needed specific authority from the Court prior to entering the Residence.

However, Trustee Dribusch was entitled to enter the Residence pursuant to statutory authority and did not need to obtain the Supplemental Order first.

Upon conversion of Debtor's case to Chapter 7, "all legal or equitable interests of the debtor in property" became property of the estate by operation of law.  *See* 11 U.S.C. § 541(a).

Upon his appointment, Trustee Dribusch, as the representative of the estate under § 323(a), "acquire[d] . . . all pre-petition property interests of the debtor as representative of the estate." *Slack v. The Saint Paul/Seaboard Surety Co.* (*In re Slack*), 164 B.R. 19, 22 (Bankr. N.D.N.Y. 1994).

There is no dispute that the Debtor's real property and its contents were property of the estate and as the estate representative, Trustee Dribusch was empowered pursuant to §§ 541 and 704(1) of the Bankruptcy Code, to inventory, pursue, and protect that property. *See In re Dow*, 132 B.R. 853, 861 (Bankr. S.D. Ohio 1991) ("[T]he trustee stands in the debtor's shoes and thereby is empowered to pursue property and causes of action of the debtor.").

Under § 704 of the Bankruptcy Code, Trustee Dribusch was required to "collect and reduce to money the property of the estate…" and "investigate the financial affairs of the debtor." 11 U.S.C. § 704.

Additionally, under the Bankruptcy Code, a debtor is required to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties" and is required to "surrender to the trustee all property of the estate . . . ." 11 U.S.C. § 521(a)(3-4).  "Surrender" in this context generally means to make the property available to the trustee. *In re McCann*, 537 B.R. 172, 179 (Bankr. S.D.N.Y. 2015).

As the representative of the estate, Trustee Dribusch was entitled to enter and secure the Residence. *Belfor USA Grp. Inc. v. Helms* (*In re Helms*), 467 B.R. 374, 383 (Bankr. W.D.N.C. 2012) ("When a Trustee liquidates a debtor's property . . . he is acting as the debtor's legal successor-in-interest."); *see also* 3 Collier on Bankruptcy P 323.02 ("The trustee . . . is entitled to administer the property of the estate wherever located.")

Trustee Dribusch did not need an order from the Bankruptcy Court to inventory, collect, or secure property of the estate. *Crawford v. Margabandhu* (*In re Maya Restaurants, Inc.*), 585 B.R. 761, 773 (Bankr. W.D. Pa. 2018) (holding that a complaint that a chapter 7 trustee committed a trespass and illegally entered a property was "'objectively baseless' by any measure" as a chapter 7 trustee is "entitled to consolidate, preserve, and liquidate the assets in the Debtor's estate"). Thus, he did not enter the Residence "without justification or permission" and Oliver has failed to establish a *prima facie* claim for trespass.

### ***Constructive dispossession of a non-debtor occupant***

Oliver asserts a claim for constructive dispossession of a non-debtor occupant. The Court will construe this as a claim under New York Real Property Actions and Proceedings Law § 853 ("NY RPAPL § 853") as that is what Oliver cites in the exhibit to her motion. (Docket No. 645, Ex. E).

NY RPAPL § 853 provides: "If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful

means, he is entitled to recover treble damages in an action therefor against the wrong-doer." N.Y. Real Prop. Acts. Law § 853 (McKinney).

In order for NY RPAPL § 853 to apply, "it is not enough for the would-be plaintiff merely to have occupied the premises; rather, the party must have been in 'peaceable possession' of it." *Andujar v. Hewitt*, No. 02 CIV. 2223 (SAS), 2002 WL 1792065, at \*11 (S.D.N.Y. Aug. 2, 2002).

"Generally[,] any overt acts indicating dominion and a purpose to occupy and not to abandon the premises will satisfy the requirements as to possession." *Lyke v. Anderson*, 541 N.Y.S.2d 817, 821 (App. Div. 1989) (internal quotation marks omitted). For the possession to be peaceable, "entry into possession must have been uncontested." *Truglio v. VNO 11 E. 68th St. LLC*, 953 N.Y.S.2d 554 (Civ. Ct. 2012).

Here, Oliver has asserted that she "resided full-time" at the Residence.[4] (Docket No. 645 at 2).  And it is not disputed that Trustee Dribusch changed the locks on June 12, 2024.  (Docket No. 645, Ex. G). However, Oliver's claim fails for several reasons.

First, there is a one-year statute of limitations for bringing a cause of action under NY RPAPL § 853. *Gold v. Schuster*, 694 N.Y.S.2d 646, 648 (App. Div. 1999) ("'Wrongful eviction' claims are governed by the one-year Statute of Limitations applicable to intentional torts."); *Kolomensky v. Wiener*, 522 N.Y.S.2d 156, 158 (App. Div. 1987) ("Causes of action under RPAPL 853 warrant applying a one-year

---

[4] While the Court accepts Oliver's claim as true for purposes of this motion, the Court notes that Oliver has provided no evidence beyond her own assertions that she resided at the Residence. Debtor testified under oath at his 341 meeting on March 14, 2024 that no other adults were living in his home.  He clarified that "occasionally my girlfriend comes and stays with me."  (341 Tr. at 18:10-12, Docket No. 448, Ex. at 21).

Statute of Limitations due to the fact that they seek to recover for an intentional tort."). The statute of limitations "begins to run when 'it is reasonably certain that the tenant has been unequivocally removed with at least the implicit denial of any right to return.'" *PK Rest., LLC v. Lifshutz*, 30 N.Y.S.3d 13, 17 (App. Div. 2016). Thus, Debtor had one-year from June 12, 2024 to bring this claim.

In addition, and in the alternative, when Trustee Dribusch changed the locks and prevented Oliver from entering the Residence without supervision, he was acting pursuant to a court order and consistent with his statutory duties. After the Debtor was taken into federal custody, Trustee Dribusch made the Supplemental Motion seeking explicit authorization to secure the Residence.

At the June 7, 2024 hearing on the Supplemental Motion, Trustee Dribusch advised the Court that when he arrived at the Residence, the property was not secure.[5] (June 7, 2024 Hr'g Tr. at 9:8-12, Docket No. 444). The gate was open; a Ferarri was in the driveway with the doors open and keys in the car; and the doors to the Residence were damaged. (*Id.).* Trustee Dribusch advised the Court that he had a locksmith change the locks on the home. (*Id.* at 10:5).

At that hearing, Trustee Dribusch advised the Court that Oliver was residing or occupying the premises and advised that he was coordinating with her to facilitate and supervise the removal of her personal items from the premises. (*Id.* at 14-22).

---

[5] This was apparently a result of the federal authorities entering the property. (June 7, 2024 Hr'g Tr. at 9, Docket No. 444).

With these facts known to Judge Littlefield, he entered the Supplemental Order on June 10, 2024.  (Docket No. 205).

Changing locks to secure estate property is part of a chapter 7 trustee's statutory duties. *See Phoenician Mediterranean Villa, LLC v. Swope* (*In re J & S Props., LLC*), 545 B.R. 91, 113 (Bankr. W.D. Pa. 2015) ("[A] Chapter 7 Trustee has a duty to secure and preserve estate assets, including changing the locks to a building when circumstances warrant."), *aff'd*, 554 B.R. 747 (W.D. Pa. 2016), *aff'd*, 872 F.3d 138 (3d Cir. 2017); *see also Wilson v. Nandlal Corp.* (*In re Cumberbatch*), 657 B.R. 683, 699 (Bankr. E.D.N.Y. 2024) (citing *Phoenician* for same premise).

"When a trustee acts pursuant to a court order or in accordance with statutory authority, then the trustee is entitled to quasi-judicial immunity." *Mendelsohn v. Schoolman* (*In re Hampton Transportation Ventures, Inc.*), No. 15-73837-AST, 2024 WL 3663204, at \*3 (Bankr. E.D.N.Y. Aug. 2, 2024); *In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009), *aff'd*, 426 B.R. 435 (E.D.N.Y. 2010), *aff'd*, 645 F.3d 186 (2d Cir. 2011).

If this Court were to permit this claim to proceed the issue would be whether Trustee Dribusch's business judgment in securing property of the estate was reasonable. Trustee Dribusch declared, under penalty of perjury, that he believed that Oliver was an occasional guest of Debtor's at the time and that she surreptitiously removed property of the estate (namely, cigars and sunglasses) from the Residence without his knowledge or consent.  (Docket No. 662, Dribusch Decl.

¶¶ 18-20).  He changed the locks to prevent Oliver from removing any more estate

property. (*Id*.).

These facts are not in dispute — Oliver has presented text messages from

Trustee Dribusch explaining why the locks were changed and her response

admitting that she took the items. (Docket No. 645, Ex. G).

When chapter 7 trustees act within their business judgment pursuant to a

court order and/or their statutory duties, they are immune from personal liability

for those acts. *Smith*, 400 B.R. at 377; *In re Varela*, 530 B.R. 573, 583 (Bankr.

E.D.N.Y. 2015) ("[A] trustee's actions are sanitized if the trustee, after full

disclosure, notice and hearing, obtains court approval and immunized if the trustee

makes a mistake in business judgment while carrying out his statutory duties.").

Oliver has not established a *prima facie* claim for constructive dispossession.

### *Ultra vires conduct exceeding judicial authorization*

While a "trustee may also be personally liable if the trustee's actions are

*ultra vires*—outside of the duties conferred by the Bankruptcy Code," *Varela*, 530

B.R. at 583, as explained above, none of the acts that Oliver claims Trustee

Dribusch committed were *ultra vires*.  Oliver alleges that Trustee Dribusch acted

with malicious motives.  Even assuming *arguendo* the truth of Oliver's allegation,

this does not make acts that Trustee Dribusch was entitled and required to take in

the scope of his trustee duties *ultra vires*.  *See id*.

### *Conversion of non-estate personal property*

"Conversion is the unauthorized exercise of dominion or control over specifically identified property which interferes with the owner's rights." *In re Coyle*, 864 N.Y.S.2d 765, 767–68 (Sur. Ct. 2008). "[W]here . . . possession of the property is initially lawful, conversion occurs when there is a refusal to return the property after a demand." *Id.* at 768.

Oliver has not specifically identified any property that she alleges has been converted by Trustee Dribusch. And her own evidence demonstrates that she was permitted access to the Residence to collect her property even after the lockout on June 12, 2024. (Docket No. 645, Ex. G).

Moreover, even if Oliver could show that Trustee Dribusch failed to return her property to her, she would need to overcome his immunity from personal liability when acting within the scope of his duties. *In re Varela*, 530 B.R. 573, 583 (Bankr. E.D.N.Y. 2015); *see also Lunan v. Jones* (*In re Lunan*), 489 B.R. 711, 727 (Bankr. E.D. Tenn. 2012) (a "sale was not and cannot be an ultra vires act").

Oliver failed to establish a *prima facie* claim for conversion.

### CONCLUSION

Chapter 7 trustees perform vital and underappreciated services to the bankruptcy court, estate, and public. Although most cases are routine, the trustee is periodically called upon to think quickly and act decisively to preserve estate assets and prevent fraud and abuse. This undoubtedly was such a case, with an incarcerated debtor, staggering losses to creditors, and vulnerable, valuable assets. The law rightly sets a high bar for suits against trustees. To do otherwise would be

to discourage qualified, dedicated individuals from serving and/or hinder them in the vigorous discharge of their duties.   Oliver has failed to meet this high bar with respect to any of her proposed causes of action against Trustee Dribusch.

For the foregoing reasons, this Court DENIES Oliver's Motion. (Docket No. 645).   The Clerk is requested to mail a copy of this Memorandum Decision and Order to Oliver.

###